1

2

3

4                IN THE UNITED STATES DISTRICT COURT

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   CALIFORNIANS FOR DISABILITY                No. C 06-5125 SBA
    RIGHTS, INC. ("CDR"), CALIFORNIA
8   COUNCIL OF THE BLIND ("CCB"),              **ORDER**
    BEN ROCKWELL, AND DMITRI
9   BELSER, on behalf of all others similarly  [Docket Nos. 52, 78, 133, 134, 192, 193, 194 &
    situated,                                  195]

10
                  Plaintiffs,
11        vs.

12  CALIFORNIA DEPARTMENT OF
    TRANSPORTATION ("CALTRANS")
13  and WILL KEMPTON, in his official
    capacity,
14
                  Defendants.
15  _____/

16

17        Currently before the Court are: 1) defendants' motion for judgment on the pleadings pursuant

18  to Rule 12(c) of the Federal Rules of Civil Procedure  [Docket No. 52]  and  2) plaintiffs' Motion for

19  Class Certification [Docket No. 78]. Additionally, defendants have moved to strike the declarations of

20  Joseph Abbott  [Docket No. 133], Peter Margen [Docket No. 134], and Mary-Lee Kimber filed in

21  support of plaintiff's reply [Docket No. 192], as well as the Reply Appendix 1  [Docket No. 193], and

22  the Reply Declaration of Peter Margen [Docket No. 194], as well as a motion for a hearing on those

23  motions  [Docket No. 195]. Having read and considered the arguments presented by the parties in the

24  papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing.

25  For the reasons articulated below, the motion for judgment on the pleadings  is GRANTED WITHOUT

26  PREJUDICE with respect to plaintiffs' state law claims in the third, fourth, fifth and sixth causes of

27  action, DENIED with respect to plaintiffs' ADA claim, and GRANTED with respect to any right

28

plaintiffs assert to enforce the self-evaluation and transition regulations of Title II of the ADA. The motion for class Certification is GRANTED and the motions to strike are DENIED AS MOOT.

BACKGROUND

**A.     Factual Background**

The plaintiffs in this putative class action lawsuit are two disability rights groups (Californians for Disability Rights, Inc. and California Council of the Blind) and two disabled individuals acting on behalf of all others similarly situated.  They are suing the California Department of Transportation ("Caltrans") and its director, Will Kempton, to remedy an alleged "systematic pattern and practice of discrimination being committed by Caltrans against people with mobility and vision disabilities." Docket No. 4 at 1.  The plaintiffs allege that Caltrans, which provides an extensive network of facilities throughout the state including sidewalks, pedestrian crossings and a system of Park and Ride facilities, has systematically failed to maintain pedestrian rights of way or provide accessible alternative routes in construction areas. *Id.* at 2.  The complaint alleges a host of other state and federal violations on the part of Caltrans, including the failure to remedy "dangerous slopes and crumbled or uneven pavement," and the failure "to provide program access to Caltrans facilities in that they have not developed and implemented a comprehensive Self-Evaluation and Transition Plan covering pedestrian rights of way." *Id.*

The plaintiffs filed their amended complaint on September 19, 2006. *See* Docket Nos. 1, 4.  The complaint alleges seven causes of action, four of which are based on state law and two of which are federal claims.  The two federal claims arise under, respectively, the Americans with Disabilities Act of 1990 (the "ADA") and § 504 of the Rehabilitation Act of 1973.  The seventh cause of action requests declaratory relief "in order that each of the parties may know their respective rights and duties and act accordingly." Docket No. 4 at 21.  Plaintiffs do not seek damages[1] but rather an injunction to prevent Caltrans from continuing its alleged violations of state and federal law. *Id.*

---

[1]*See* Docket No. 65 at 4, line 16.

On September 20, 2007, Caltrans filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motion requests 1) a dismissal of all state law claims, 2) a dismissal of the ADA claim based upon 11th Amendment immunity, and 3) a judgment that plaintiffs have no private cause of action to enforce the ADA regulations which require the creation of Self-Evaluation and Transition plans. Caltrans' motion seeks dismissal of all of plaintiffs' claims except for their second cause of action, which alleges a violation of § 504 of the Rehabilitation Act of 1973. *See* Docket No. 4 at 18.

On October 23, 2007, Plaintiffs filed their motion for class certification, seeking class certification for their federal law claims only. Plaintiffs move for the certification of the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All persons with mobility and/or vision disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973 due to barriers along sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California which are owned and/or maintained by the California Department of Transportation.

> For purposes of class certification, persons with mobility disabilities are those who use wheelchairs, scooters, crutches, walkers, canes or similar devices to assist their navigation along sidewalks. For purposes of class certification, persons with vision disabilities are those who due to a vision impairment use canes or service animals for navigation along sidewalks. For purposes of class certification, Plaintiffs do not seek to certify a class with respect to any portions of Park and Ride, rest stops and/or vista point facilities owned and/or maintained by Caltrans.

**LEGAL STANDARDS**

**A.      Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) permits judgment on the pleadings after an answer to a complaint has been filed. "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989). "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). In determining whether judgment on the pleadings

3

1    should be entered, a district court may consider the allegations made in the complaint and the answer,

2    materials attached to the complaint in accordance with Federal Rule of Civil Procedure 10(c), and any

3    other materials that are (1) specifically referred to the in the complaint, (2) central to the plaintiff's

4    claim, and (3) of uncontested authenticity. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006). If any

5    other materials are to be considered, "the motion shall be treated as one for summary judgment and

6    disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all

7    material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c).

8    **B.**      **Motion for Class Certification**

9        Class certification is governed by *Federal Rule of Civil Procedure* 23, which sets forth a

10    two-step procedure. First, the Court must determine that the following four requirements of Rule 23(a)

11    have been satisfied: (1) numerosity; (2) common questions of law and fact; (3) typicality; and (4) fair

12    and adequate representation. Fed.R.Civ.P. 23(a). Once these requirements are met, the plaintiff must

13    also show that the lawsuit qualifies for class action status under one of the criteria found in Rule 23(b).

14    *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended and*

15    *superceded on denial of rehearing by Zinser v. Accufix Research Institute, Inc.*, 273 F.3d 1266 (9th

16    Cir.2001) (noting that Plaintiff "bears the burden of demonstrating that [he] has met each of the four

17    requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)").

18        Rule 23(b) requires that the plaintiff establish that either: (1) there is a risk of inconsistent

19    adjudication, or adjudication of individual class member's claims would substantially impair non-party

20    members' ability to protect their interests; (2) the defendant acted on grounds generally applicable to

21    the class; or (3) common questions of law or fact predominate and class resolution is superior to other

22    available methods. Fed.R.Civ.P. 23(b).

23        The plaintiff bears the burden of proving that certification is appropriate. *See Hawkins v.*

24    *Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir.2001). The Court maintains great discretion in

25    certifying a class action. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502 (5th Cir.2004). The Court

26    must rigorously analyze whether the class action allegations meet the requirements of Rule 23. *See*

27

28                              4

1     *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982). However, "[b]ecause the early

2     resolution of the class certification question requires some degree of speculation ... all that is required

3     is that the Court form a 'reasonable judgment' on each certification requirement." *In re Citric Acid*

4     *Antitrust Litig.*, 1996 WL 655791 *2 (N.D. Cal.1996). "In formulating this judgment, the Court may

5     properly consider both the allegations of the class action complaint and the supplemental evidentiary

6     submissions of the parties." *Id.* at * 2. The Court may also consider the manageability of trying the

7     plaintiffs' claims in the form of a class action. *Castano v. Am. Tabacco Co.*, 84 F.3d 734, 744 (5th

8     Cir.1996).

9                                       **ANALYSIS**

10     **I.**       **Motion for Judgment on the Pleadings**

11          **A.**       **Plaintiffs' State Law Claims**

12         Caltrans argues extensively and persuasively that the plaintiffs' state law claims should be

13     dismissed due to this Court's lack of jurisdiction over these causes of action. *See* Docket No. 52 at 7-12.

14     The plaintiffs agree with Caltrans, and in fact have offered to stipulate to a dismissal of the state law

15     claims. *See* Docket No. 65 at 4; Agarwal Decl., ¶ 4. Since there is no dispute between the parties that

16     the state law claims should be litigated in a competent state court, the plaintiffs' third, fourth, fifth and

17     sixth causes of action shall be dismissed.

18         However, the parties seem to dispute the manner in which the state law claims should be

19     dismissed.[2] Caltrans urges this Court to order plaintiffs to amend its First Amended Complaint (Docket

20     No. 4) because "[o]therwise, as this case proceeds from the class certification stage to the merits stage

21     of litigation, the Complaint on file will include several causes of action and supporting allegations that

22     are no longer at issue, which impacts how Defendants conduct discovery and make the appropriate legal

23     arguments to refute and undercut Plaintiffs' case through future motions." Docket No. 103 at 13.

24     Caltrans neither explains nor provides legal support for its conclusion that its discovery strategy will

25     ————————————————

26          [2]In its 12(c) motion, Caltrans requests the state claims be dismissed "with prejudice." Docket
No. 52 at 23. In its reply, however, Caltrans changes its tune: "Defendants do not contest the request

27     that the claims be dismissed without prejudice." Docket No. 103 at 12.

28                                          5

1    be affected by some difference between simply dismissing the state claims or amending the complaint

2    to remove the state claims.

3        The plaintiffs correctly note that "[d]ismissals for lack of jurisdiction should be without

4    prejudice so that a plaintiff may reassert his claims in a competent court." *Freeman v. Oakland Unified*

5    *School Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (quoting *Frigard v. United States*, 862 F.2d 201, 204

6    (9th Cir. 1988)) (quotation marks omitted).  Therefore, since the propriety of dismissal of the state law

7    causes of action is not in dispute, the plaintiffs' state law claims are dismissed without prejudice.

8

9        **B.      Plaintiff's federal claims**

10       Caltrans claims it is entitled to judgment -- or at least partial judgment -- pursuant to Federal

11   Rule 12(c) on the plaintiffs' federal ADA claim because 1) Congress' attempt to abrogate 11th

12   Amendment immunity under the ADA is invalid, and 2) the *Ex Parte Young* doctrine does not provide

13   an exception permitting defendant Will Kempton to be sued in his official capacity as director of

14   Caltrans.  *See* Docket No. 52 at 12.

15       **1.      The Eleventh Amendment**

16       Caltrans argues that it cannot be sued by California citizens in federal court because it enjoys

17   sovereign immunity under the 11th Amendment, and Congress' "attempt" to abrogate this immunity is

18   invalid.  Caltrans correctly notes that sovereign immunity extends to state agencies and departments.

19   *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Florida Department of*

20   *Health v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S.

21   781 (1978) (per curiam ).  Thus, Caltrans enjoys 11th Amendment protection unless a statute

22   unequivocally abrogates such immunity.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985),

23   *overruled on other grounds.*  Caltrans explains that in order for a statute to validly abrogate state

24   sovereign immunity, it must 1) contain an unequivocal expression of Congressional intent to abrogate,

25   2) be enacted pursuant to Congress' enforcement power under the 14th Amendment and 3) contain a

26   remedial scheme that is "congruent and proportional" to the identified harm.  *See* Docket No. 52 at 13;

27

28                                                    6

1   *see also City of Boerne v. Flores*, 521 U.S. 507 (1997). Caltrans concedes the ADA satisfies the first

2   two elements,[3] but argues that the statute's "proposed remedial scheme is not congruent and proportional

3   to any identified harm inflicted by the states in the context of sidewalks or Park and Ride lots." Docket

4   No. 52 at 13. For this reason, Caltrans concludes that Congress' attempt to abrogate sovereign

5   immunity under the ADA is invalid.

6       To reach such a conclusion, Caltrans urges this Court to ignore a host of Ninth Circuit decisions

7   that expressly find a valid abrogation in claims arising under Title II of the ADA. *Hason v. Medical Bd.*

8   *of California*, 279 F.3d 1167, 1170 (9th Cir. 2002); *see also Phiffer v. Columbia River Corr. Inst.*, 384

9   F.3d 791, 792 (9th Cir. 2004); *Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999); *Clark v.*

10  *California*, 123 F.3d 1267, 1270-71 (9th Cir. 1997). Ninth Circuit decisions have expressly considered

11  and rejected Caltrans' proposition that the remedial scheme of Title II of the ADA is not congruent and

12  proportional under the reasoning of *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356

13  (2001). *Thomas v. Nakatani*, 309 F.3d 1203, 1209 (9th Cir. 2002); *Lovell v. Chandler*, 303 F.3d 1039,

14  1050-51 (9th Cir. 2002). *Garrett*, on which Caltrans heavily relies, discusses the congruence and

15  proportionality of Title I of the ADA, not Title II. The Supreme Court in *Garrett* specifically reserved

16  any discussion of Title II, explaining that "[w]e are not disposed to decide the constitutional issue

17  whether Title II, which has somewhat different remedial provisions from Title I, is appropriate

18  legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing

19  on the statutory question." *Garrett*, 531 U.S. at 360, n. 1. Despite Ninth Circuit decisions specifically

20  rejecting Caltrans' immunity argument and despite *Garrett's* deferment of the question of the

21  constitutionality of Title II of the ADA, the defendants nevertheless pursue their argument by claiming

22  the Ninth Circuit has failed to "undertake[] the searching inquiry that the Supreme Court requires, as

23  set forth in *Garrett*, which included a detailed discussion of legislative findings of discriminations by

24  States." Docket No. 52 at 15. This Court declines the defendants' invitation to "overrule" Ninth Circuit

25

26      [3]A provision of the ADA, 42 U.S.C. § 12202, provides that "[a] State shall not be immune under
    the eleventh amendment to the Constitution of the United States from an action in Federal or State court
27  of competent jurisdiction for a violation of this chapter."

28
                                                    7

1    precedent.

2        By citing the dissenting opinions in two Ninth Circuit decisions as authority,[4] Caltrans indirectly

3    confirms that the only way this Court might embrace its reasoning would be to ignore clearly established

4    Ninth Circuit precedent.  Part of this precedent – the decisions in *Clark* and *Dare* – Caltrans claims is

5    faulty because these cases fail to undertake the "searching inquiry" required under *Garrett,* which

6    includes "a detailed discussion of legislative findings of discriminations by States." *See* Docket No. 52

7    at 15.  However, this argument is misdirected; as the plaintiffs point out, in *Dare,* the Ninth Circuit

8    explained that "Congress made extensive factual findings regarding the widespread arbitrary and

9    invidious discrimination which disabled people face.  The ADA's particular provisions for each sector

10   then indicate specifically the discrimination which is forbidden and the conduct needed to remedy the

11   discrimination."  *Dare*, 191 F.3d at 1175 (citations omitted); *see* Docket No. 65 at 8.

12       Defendants asks this Court to rule against a long string of Ninth Circuit precedent expressly

13   establishing Congressional sovereign abrogation in the context of ADA claims under Title II.  Such a

14   ruling is more appropriately within the province of the Ninth Circuit or the Supreme Court not this

15   Court.  Since Caltrans has failed to show that it is entitled to judgment as a matter of law regarding its

16   sovereign immunity to the ADA claim, its motion is denied in this respect.

17                    **2.    The *Ex parte Young* exception**

18       Caltrans further contends that the plaintiffs are prohibited from suing Caltrans director Will

19   Kempton in his official capacity because the *Ex parte Young* doctrine is inapplicable to the

20   circumstances of this case.  *See* Docket No. 52 at 16.  In *Ex parte Young*, 209 U.S. 123 (1908), the

21   Supreme Court held that a federal court has jurisdiction over a suit against a state officer to enjoin

22   official actions that violate federal law.  *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288

23   (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment).

24       In arguing that the *Ex parte Young* doctrine does not apply to this case, Caltrans relies on *Ford*

25

26   _____

27       [4]*See* Docket No. 52 at 15.  The two cases are *Hason*, 294 F.3d at 1168-69 (O'Scannlain, J.,
     dissenting) and *Phiffer*, 384 F.3d at 793 (O'Scannlain, J., dissenting).

28                                              8

*Motor Co. v. Dept. of Treasury of Indiana*, 323 U.S. 459 (1945), for the proposition that "[t]he 11th Amendment bars a suit against state officials when the state is the real, substantial party in interest."[5] Docket No. 52 at 16 (quotation marks omitted) (quoting *Ford*, 323 U.S. at 464). Although Caltrans correctly recites the general rule regarding immunity for state officials, it fails to explain why the *Ex parte Young* doctrine would not apply in this case. As the Supreme Court explains, "[t]he Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102. In this case, the plaintiffs' discrimination claims fit squarely within the *Ex parte Young* doctrine: they are alleging Caltrans director Kempton violated a statute enacted to ensure the constitutional rights of disabled people.

As the plaintiffs further note, Caltrans' argument that the *Ex parte Young* doctrine should not apply when Title II actions name a state as a party in addition to individual state officers has been expressly rejected by the Ninth Circuit. *See* Docket No. 65 at 9-10. In *Miranda B. v. Kitzhaber*, 328 F.3d 1181 (9th Cir. 2003), the court held that

> [w]e are not concerned under *Ex parte Young* whether the state is the real party at interest; instead, the test for when *Ex parte Young* allows suits against officials to proceed is quite simple: In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry in whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.

*Id.* at 1189 (quoting *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (quotation marks omitted)).

In the present case, the plaintiffs' first amended complaint clearly alleges a violation of federal law in its first and second causes of action. *See* Docket No. 4 at 15-18. Similarly, the relief sought in the complaint can be characterized as prospective as it includes "[a]n order and judgment enjoining

---

[5]A stronger source for this principle is *Pennhurst*, 465 U.S. at 101, which states plainly that "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." (quotation marks omitted). The text of *Ford*, quoted by *Pennhurst*, actually explains that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford*, 323 U.S. at 464.

1  Defendants from violating the Americans with Disabilities Act [and] Section 504 of the Rehabilitation

2  Act of 1973." *Id.* at 21. For these reasons, the *Ex parte Young* doctrine applies to the present suit and

3  Caltrans' motion for judgment on the pleadings should be denied in this respect.

**C.  Private Right of Action to Enforce ADA Regulations**

5  Lastly, Caltrans requests final judgment on the pleadings establishing that "[p]laintiffs have no

6  private right of action to enforce either the self-evaluation or transition plan regulations under the

7  regulatory scheme of the ADA." Defendants argue that the specific regulations at issue here create

8  obligations that go beyond what is required by Title II, and therefore are not privately enforceable under

9  Title II's provisions for private causes of action. Docket No. 52 at 23. The first of the two regulations

10  at issue here is 28 C.F.R. 35.105, which in part provides

> [a] public entity shall, within one year of the effective date of this part,
> evaluate its current services, policies, and practices, and the effects thereof,
> that do not or may not meet the requirements of this part and, to the extent
> modification of any such services, policies, and practices is required, the
> public entity shall proceed to make the necessary modifications.

14  28 C.F.R. 35.105(A). Caltrans also requests a judgment on the pleadings regarding 28 C.F.R. 35.150(d),

15  which provides in part

> [i]n the event that structural changes to facilities will be undertaken to
> achieve program accessibility, a public entity that employs 50 or more
> persons shall develop, within six months of January 26, 1992, a transition
> plan setting forth the steps necessary to complete such changes. A public
> entity shall provide an opportunity to interested persons, including individuals
> with disabilities or organizations representing individuals with disabilities,
> to participate in the development of the transition plan by submitting comments.
> A copy of the transition plan shall be made available for public inspection.

21  28 C.F.R. 150(D)(1).

22  There is no Ninth Circuit decision addressing the private right to enforce these regulations.

23  However, both the First and Sixth Circuits, as well as a sister court within this District, have weighed

24  in on this issue. In *Ability Center*, the Sixth Circuit held no private right to enforcement existed under

25  28 C.F.R. 35.150(d), reasoning that "failing to develop a transition plan . . . does not in and of itself .

26  . . hinder the disabled." 385 F.3d at 914. Citing *Ability Center*, a sister court within this District has

27  likewise concluded that no private right of action exists to enforce these two regulations. In *Cherry v.*

28

10

*City College of San Francisco*, 2005 WL 2620560 (N.D. Cal. 2005) (Alsup, J.), the court noted that "there is no indication that a public entity's failure to develop a transition plan harms disabled individuals, let alone in a way that Title II aims to prevent or redress," and therefore no private right of action to enforce the transition plan regulation would lie. *Id.* at *4. More recently, in *Iverson v. City of Boston*, 452 F.3d 94 (1st Cir. 2006), the First Circuit examined the self-evaluation regulation, § 35.105, and found that "it is altogether conceivable that a public entity may be in full compliance with Title II without observing the commands of the self-evaluation regulation," and therefore a private right of action to enforce the self-evaluation regulation does not exist. *Id.* at 101.

In arguing that the Sixth Circuit, the First Circuit, and this Court's sister court in *Cherry* were in error in holding that there is no private right to enforce either the self-evaluation or transition plan regulations, plaintiffs rely heavily on the Tenth Circuit's decision in *Chaffin v. Kansas Sate Fair Bd.*, 348 F.3d 850 (10th Cir. 2003). The *Chaffin* court, in finding the existence of a private right of enforcement of Title II regulations, viewed the regulations collectively, and found that, as a whole, they "simply provide the details necessary to implement the statutory right created by § 12132 of the ADA. They do not prohibit otherwise permissible conduct." 348 F.3d at 858.

Of Course, the *Chaffin* decision contrasts sharply with those of the First and Sixth Circuits, and was in fact explicitly rejected as "simply incorrect" by the First Circuit in *Iverson*. All of these decisions endeavor to interpret the Supreme Court's guidance in *Sandoval*, 532 U.S. 275. In characterizing the Supreme Court's holding in *Sandoval*, the First Circuit stated:

> [The Supreme Court recognized in *Sandoval* that] [a]n implementing regulation may under certain circumstances be enforced through the private right of action available under the organic statute that it implements. Under *Sandoval*, however, a private plaintiff may not, merely by referencing the organic statute, enforce regulations that interdict a broader swath of conduct than the statute itself prohibits. After all, the power to create a private right of action, like the power to create positive federal law itself, lies exclusively with Congress.

452 F.3d at 101 (internal citations omitted). In rejecting the Tenth Circuit's analysis in *Chaffin*, the First Circuit in *Iverson* reasoned:

> In our view, the *Chaffin* court misconstrued *Sandoval* and, thus, the decision is simply incorrect. Although the court appropriately recognized that "regulations may not create

11

> a private cause of action where no such right was intended by Congress in the statute authorizing promulgation of such regulations," *id.* at 857, it inexplicably disregarded *Sandoval*'s corollary rule that regulations which impose an obligation beyond the statutory mandate are not enforceable through the statutory right of action, *see id.* at 857-58. In light of this error, we elect to align ourselves with the Sixth Circuit, *see Ability Ctr.*, 385 F.3d at 913-15, and to reject the position of the Tenth Circuit, *see Chaffin*, 348 F.3d at 856-60.

452 F.3d at 101-102. This analysis is consonant with the reasoning employed by this Court's sister court in *Cherry*. *See* 2005 WL 2620560, *3 ("Unlike the Sixth Circuit, the Tenth Circuit did not engage in a separate analysis for each regulation in dispute. . . This order agrees with the Sixth Circuit that there is a distinction between regulatory violations that, by themselves, would deny the disabled meaningful access to public services and those that would not").

In concurrence with the analysis articulated by the First and Sixth Circuits, as well this Court's sister court in *Cherry*, this Court holds that *Sandoval* directs a regulation-by-regulation analysis, as opposed to the "collective" approach endorsed by the Tenth Circuit, in order to determine if each one exhibits a Congressional intent to create a private right of enforcement. In the present case it is conceivable that, as previously noted by this Court's sister court in *Cherry*, both the transition plan and self-evaluation regulations might both be violated and yet there could still be no violation of Title II, and therefore Congress's intent to create a private right of enforcement for violations of Title to II itself cannot be imputed to the accompanying regulations. 2005 WL 2620560 at *4. While the plaintiffs' excerpts from ADA legislative history provide important insight into the ideas behind the creation of the statute, such as Congress' concern with "curb cuts," *see* Docket No. 65 at 14, these glimpses into the law's history fail to mention either the self-evaluation or transition plan regulations, let alone shed any light on Congress' intent to create a private right of enforcement of these regulations. Since neither regulation contains a clear Congressional intent to create a private right of enforcement, *Sandoval* mandates that none be found in the facts of this case. Accordingly, this Court concurs with its sister court's ruling in *Cherry*, and holds that there is no private right of action to enforce either the self-evaluation or transition plan regulations.

Accordingly, for the reasons stated above, the third, fourth, fifth and sixth causes of action are

12

DISMISSED WITHOUT PREJUDICE. Defendants' motion pursuant to Rule 12(c) is DENIED with respect to plaintiffs' ADA claim, and is GRANTED with respect to any right plaintiffs assert to enforce the self-evaluation and transition regulations of Title II of the ADA.

## II.    Motion for Class Certification

While the Court has granted defendants' motion with respect to any right plaintiffs assert to enforce the self-evaluation and transition regulations of Title II of the ADA, plaintiff's other claims under the ADA, as well § 504 of the Rehabilitation Avt, remain intact. Accordingly, the Court will reach plaintiffs' motion for class certification.

As noted above, Rule 23 of the Federal Rules of Civil Procedure sets forth a two-part test for the maintenance of a class action. First, Plaintiffs must satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, one of the three subsections of Rule 23(b) must also be satisfied. Here, Plaintiffs seek to certify a class under Rule 23(b)(2), whereby class certification is proper if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Plaintiffs have moved for the certification of the following class under Rules 23(a) and 23(b)(2):

> All persons with mobility and/or vision disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973 due to barriers along sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California which are owned and/or maintained by the California Department of Transportation.

> For purposes of class certification, persons with mobility disabilities are those who use wheelchairs, scooters, crutches, walkers, canes or similar devices to assist their navigation along sidewalks. For purposes of class certification, persons with vision disabilities are those who due to a vision impairment use canes or service animals for navigation along sidewalks. For purposes of class certification, Plaintiffs do not seek to certify a class with respect to any portions of Park and Ride, rest stops and/or vista point facilities owned and/or maintained by Caltrans.

Mot. to Certify Class at 1. In characterizing the claims for which they seek certification, plaintiffs are at pains to point out that they do not seek to litigate every alleged violation of the ADA by Caltrans:

Plaintiffs do not propose, and it would make no sense, to litigate individually every curb, ramp, protruding object, uneven sidewalk, or any other particular access barrier experienced by members of the proposed class. Rather Plaintiffs ask only that Caltrans take appropriate system-wide efforts to meet its longstanding obligations to ensure access to a core public service.

Mot. to Certify Class at 2. Plaintiffs continue: "This lawsuit is not about specific access barriers. Rather it is about Caltrans' inactions and actions, including inadequate policies and practices, which have resulted in systematic discrimination against the class." *Id.* at 4. Plaintiffs identify "two basic types of obligations at issue in the case." First:

[F]or its existing sidewalks, federal law has long required that Caltrans identify existing access barriers, make a schedule to remedy these barriers and follow that schedule, as well as maintain access features in proper condition 28 C.F.R. § 35.150(d)(2); 28 C.F.R. § 42.521(d). To do so, Caltrans must develop and implement a transition plan which sets milestones and benchmarks for fixing the existing barriers. Plaintiffs allege that Caltrans has failed to even begin the systematic efforts required to meet this program access obligation.

*Id.* Second:

[F]ederal laws pose a heightened "strict compliance" obligation for those sidewalks which Caltrans has *newly constructed* or *altered* subsequent to the passage of these laws 28 C.F.R. § 35.151(c); 28 C.F.R. § 42.522. Plaintiffs allege that Caltrans has violated these heightened access requirements on a systematic basis for may years through the use of improper design guidelines and the failure to ensure compliance with even those deficient guidelines.

*Id.* at 5 (emphasis in original). As discussed above, the Court has determined that plaintiffs have no private right of action to enforce either the self-evaluation or transition plan regulations under 28 C.F.R. §§ 35.105 and 35.150(d) . Therefore, to the extent plaintiffs' claim that "Caltrans must develop and implement a transition plan which sets milestones and benchmarks for fixing the existing barriers" is based on the self-evaluation or transition plan regulations, those claims are no longer live. However, the second claim identified by plaintiffs, that "Caltrans has violated [the] heightened access requirements on a systematic basis for may years through the use of improper design guidelines and the failure to ensure compliance with even those deficient guidelines," is still in play.

Defendants argue that plaintiffs have failed to meet the requirements of Rule 23(a). Specifically, defendants argue at length that plaintiffs have failed to meet the "commonality" requirement of Rule

23(a), because, according to defendants, trying plaintiffs' case as a class action will require a "mini-trial" on every single alleged violation of the ADA by Caltrans. That is, defendants aver, for each and every plaintiff in the putative class, the Court will be forced to examine every alleged violation of the ADA independently – every crack in the sidewalk, every narrow passageway, every impermissibly steep curb ramp – and determine what, if any, remedial obligations Caltrans has with respect to that particular violation.

Defendants also argue that plaintiffs have failed to prove numerosity because they have come forward with declarations from "only" 22 potential class members. Defendants further argue that plaintiffs have failed to meet the "typicality" and "adequacy of representation" requirements of Rule 23(a). The Court addresses these arguments in turn.

### A.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.,* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3:10 at 271 (4th ed.2002). As the Ninth Circuit recently explained in *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007):

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Id.* at 1177 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998)).

The gravamen of defendants' opposition to the motion for class certification is that commonality does not exist because each and every alleged violation of the ADA by Caltrans must be litigated individually. Defendants warn that certifying the class proposed by plaintiffs would "open the floodgates of countless mini-trials regarding each of the public pedestrian rights-of-way that are under the jurisdiction of the State of California, which amount to thousands of miles of sidewalks, curb ramps and other walkways." Opp'n at 2.

Defendants argue that "[e]ach right-of-way is unique and requires individual evaluation. The

15

almost infinite variations in design, layout, constraints, construction, and modification that distinguish one right-of-way from another, and the different construction and renovation dates at different locations, present individualized factual and legal issues so as to preclude a finding of commonality." *Id.* at 4. This is because, defendants argue "[c]ontrary to Plaintiffs' allegations, Caltrans does not have a centralized policy of 'discrimination' in violation of Title II. Ultimate decisions affecting the design, construction, and modification of a given right-of-way are made on an individualized basis by local offices in the twelve different geographic districts of Caltrans." *Id.* As defendants summarize their argument:

> The alleged "accessibility issues" complained of by Plaintiffs were not caused by some sort of centralized policy. Determining whether Caltrans has acted or failed to act in a manner that violates the ADA and the Rehabilitation Act of 1973 ("Rehabilitation Act") requires a highly individualized assessment of each of the various rights-of-way. (Plaintiffs need to meet their burden of proof that, inter alia, the right-of-way is actually within Caltrans' jurisdiction and the right-of-way violates Title II because it denies access.) Furthermore, each of Caltrans' rights-of-way was constructed at different times. As a result, different standards and regulations apply to determine compliance with the ADA. . . . Plaintiffs should be required to individually examine and litigate every facility they claim to be at issue.

*Id.* at 7.

The bulk of defendants' opposition is devoted to a litany of issues that each individualized assessment would allegedly require. Defendants argue that, for each and every location of an alleged violation: 1) Plaintiffs will need to specify the specific injunctive relief sought for each location; 2) The Court will need to determine if it must order the injunctive relief sought by Plaintiffs for each and every pedestrian right-of-way; 3) The Court must then determine if the right-of-way "violates" the applicable ADA guidelines; 4) If compliance is deemed necessary, the Court must ascertain what to do to provide compliance; 5) The Court will need to determine if it has the necessary parties before it to effectuate the injunctive relief Plaintiffs demand; and finally 6) The Court will need to determine if costs and timeline are feasible. Opp'n at 16-18. In sum, defendants argue, "certifying a statewide class would be difficult for the Court to manage because it would put hundreds of thousands of pedestrian features throughout California before this Court and would require the Court to apply the above process to each of Caltrans' pedestrian rights-of-way to determine if an ADA violation exists." *Id.* at 19. Instead, defendants argue, "[t]he Court should require Plaintiffs to bring individual lawsuits with the burden to prove disability

16

discrimination at a particular pedestrian facility." *Id.* at 15.

This argument misconstrues the nature of plaintiffs' claims and requested relief. As plaintiffs make abundantly clear, they are *not* seeking that this Court directly order and oversee the remediation of every non-ADA compliant pedestrian feature throughout the state. Rather, they are seeking injunctive relief remedying Caltrans "use of improper design guidelines and the failure to ensure compliance with even those deficient guidelines." Mot. at 2. In an attempt to sidestep this fact, defendants argue that their parade of administratively unmanageable horribles will overwhelm this case because "[c]ontrary to Plaintiffs' allegations, Caltrans does not have a centralized policy of 'discrimination' in violation of Title II. Ultimate decisions affecting the design, construction, and modification of a given right-of-way are made on an individualized basis by local offices in the twelve different geographic districts of Caltrans." *Id.* at 4.

However, the question of whether Caltrans has a "centralized policy of 'discrimination' in violation of Title II," is precisely what is at issue in plaintiffs' claims, and defendants cannot defeat certification by begging the question by prematurely assuming that no such centralized policy exists. Defendants' argument is at core simply the question of the merit of plaintiffs' claims, and is therefore not appropriately addressed at the class certification stage. Courts have no authority "to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Indeed, "a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials." *Id.*

Stripped of its merits-based premise, the essence of defendants' argument – that in order to prove the existence of the forest the plaintiffs must individually prove the existence of each tree — is anathema to the very notion of a class action. Taken to its logical conclusion, under defendants' reasoning, no civil rights class action would ever be maintainable, because, in order to prove the existence of a discriminatory pattern or practice, each class member would have to individually prove the highly individualized factors relating to each instance of discrimination they allegedly suffered. This

1    would simply obviate the concept of the class action lawsuit.

2    In fact, courts regularly order the remediation of discriminatory practices in class actions without

3    presiding over the details of the application of such remediation to each and every affected facility or

4    individual. For example, in *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), a sister court in this

5    District (Case No. CV-94-02307-CW) found that the California Board of Prison Terms (the state parole

6    authority) failed to make proper accommodations for the class consisting of numerous disabled

7    prisoners, and entered a system-wide injunction requiring the Board to modify its policies and practices

8    to comply with federal statutory and constitutional standards. *Id.* at 854. The Court did not address the

9    specific details of every parole proceeding involving a person with disabilities, which is the analog of

10   what defendants suggest here. *See* Opp'n at 15 ("The Court should require Plaintiffs to bring individual

11   lawsuits with the burden to prove disability discrimination at a particular pedestrian facility.").

12   Cases challenging an entity's policies and practices regarding access for the disabled represent

13   the mine run of disability rights class actions certified under Rule 23(b)(2). *See e.g., Armstrong*, 275

14   F.3d 849; *Siddiqi v. Regents of University of California*, 2000 WL 33190435, *8 (N.D. Cal. 2000)

15   (Wilken, J.) ("Defendants argue that the predominance of individualized fact questions makes this action

16   inappropriate for adjudication under 23(b)(2). However, as discussed above, the Court finds the

17   allegations that plaintiffs seek to adjudicate on a class-wide basis, the legality of the specified UC

18   policies, are not based on individualized determinations but can be efficiently determined on a

19   class-wide basis."); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004). Indeed, Rule 23(b)(2)

20   was designed specifically for civil rights cases like this, where plaintiffs seek system-wide injunctive

21   relief for a large class. *See* 2 Newberg on Class Actions § 4:11 ("[P]laintiffs' allegations of systemic or

22   District-wide policies or practices which violated the civil rights of a group of persons were precisely

23   the kinds of claims which could be fairly adjudicated as a class action under Rule 23(b)(2),

24   notwithstanding some particular considerations that invariably influenced how such policies or practices

25   could ultimately affect an individual student.") (citing *Thomas County Branch of the N.A.A.C.P. v. City*

26   *of Thomasville School Dist.*, 187 F.R.D. 690 (M.D. Ga. 1999)).

27

28                                                              18

The instant action is a garden variety class action of the type routinely certified under Rule 23(b)(2). There is nothing unique to plaintiffs' claims that will require the Court to adjudicated every alleged violation of the ADA by Caltrans. Rather, the common question addressed by this lawsuit is whether and to what extent Caltrans has violated the ADA on a "systematic basis for many years through the use of improper design guidelines and the failure to ensure compliance with even those deficient guidelines." The question of such system-wide discriminatory practices is an issue common to all plaintiffs.

The existence of even one significant issue common to the class is sufficient to warrant certification. *See Dukes*, 509 F.3d at 1177 ("The commonality test is qualitative rather than quantitative-one significant issue common to the class may be sufficient to warrant certification."); *see also* 1 Newberg on Class Actions § 3:10 at 272-74. Accordingly, the Court finds that the Commonality requirement of Rule 23(a) has been met.

**B.     Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes*, 509 F.3d at 1184 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)). Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality. *Id.*

Typicality and commonality are similar requirements and tend to merge. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). In arguing the typicality is not met in this case, defendants rely primarily on their arguments regarding the alleged lack of commonality, which are not persuasive. *See* Opp'n at 20-21. Here plaintiffs allege that they have suffered the very type of harm alleged on behalf of the class, caused by the same alleged system-wide failures by Caltrans, under the same legal theories. *See* Mot. to Certify Class at 22. at Accordingly, the Court finds that the typicality requirement has been met.

### C. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no bright-line rule as to how many class members are required to be sufficiently numerous, various courts have found that the numerosity factor is satisfied if the class comprises 40 or more members and have found it not satisfied when the class comprises 21 or fewer. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995); *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998).

Defendants argue that numerosity is not satisfied here because plaintiffs are "only able to identify 22 class members who claim to have suffered 'discrimination' even after soliciting for class members through issuing press releases to [Californians for Disability Rights and California Council of the Blind] members and soliciting for class members on [plaintiff's counsel's] website." Opp'n at 22. Defendants continue, "the truth of the matter is that there exists only scant support for Plaintiffs' lawsuit against Caltrans," which defendants contend is affirmed by the declarations filed in support of their opposition. *Id.* The declarations, filed by various members of the mobility-impaired or vision-impaired community who are potential class members, assert that the declarants oppose plaintiffs' lawsuit on various grounds. *See, e.g.*, Howard Decl., ¶¶ 6, 9, Stigile Decl., ¶ 3, Bashin Decl., ¶¶ 3-5, Elliott Decl., ¶¶ 23-24, Willow Decl., ¶ 4, Sheriff Decl., ¶¶ 9, 12-14. Defendants suggest that these declarations somehow demonstrate that numerosity is not met. *See* Opp'n at 22. However, defendants offer nothing to suggest the declarants' opinions or experiences are in any way representative of the class. Morever, it is entirely unclear how a potential class members' view on the propriety of this instant lawsuit is relevant to the determination of the *number* of "persons with mobility and/or vision disabilities who are allegedly being denied access  . . .due to barriers along sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California which are owned and/or maintained by the California Department of Transportation."

Additionally, defendants argue that plaintiffs' statistical data is insufficient to establish

numerosity, citing to various unpublished district court opinions outside of the Ninth Circuit. *See, e.g., Green v. Borg-Warner Protective Servs. Corp.*, No. 95 Civ. 10419, et al. 1998 WL 17719, at *1-4 (S.D.N.Y. Jan. 16, 1998) (rejecting census data on overall population of shelter residents because plaintiffs failed to link the population data to an actual violation of rights); *see also Legrand v. New York City Transit Auth.*, No. 95-CV-0333 1999 WL 342286, at *3-5 (E.D.N.Y. May 26, 1999) (numerosity not satisfied because the statistical data on number of pregnant women in company had no relation to the number of such women who suffered pregnancy discrimination). Here, Plaintiffs provide census data that there are "…[a]pproximately 219,000 people who can't see…329,000 people who use wheelchairs…[and] 1,110,000 people who use canes, crutches or walkers." *See* Fagan Decl., ¶¶ 2-5.

However, contrary to defendants' assertion, courts regularly rely on the type of data presented by plaintiffs in making numerosity determinations. *See e.g., Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating from "evidence indicating that there are over 175,000 wheelchair users and over 700,000 semi-ambulatory persons in California" that "the number of disabled persons affected by the alleged access violations at the more than 70 theaters operated by defendant in California is in the thousands."); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004) (observing that, in light of census statistics demonstrating that there are approximately 151,000 potential class members, and that restaurants covered by the proposed class had more than fifty million transactions the previous year, "as matter of common sense, the class in this case is large."). A court may make common sense assumptions to support a finding that joinder would be impracticable. 1 Newberg on Class Actions, § 3:3 ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."). Defendants do not dispute that there are approximately 1.5 million persons with relevant disabilities in the California, and that many of them use sidewalks owned or maintained by Caltrans. It is simply nonsensical to suggest, as defendants do, that out of these 1.5 million, no more than the 22 class members identified by plaintiffs have experienced "barriers along sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout

21

1  the state of California which are owned and/or maintained by the California Department of

2  Transportation."

3      While precedent suggests that 20-40 class members is the "grey area" for numerosity,

4  *seeWamboldt v. Safety-Kleen Systems, Inc.* 2007 WL 2409200, *1 (N.D. Cal. 2007), plaintiffs do not

5  need to state the exact number of potential class members, nor is a specific number of class members

6  required for numerosity. *Bates v. United Parcel Service*, 204 F.R.D. 440, 444 (N.D.Cal.2001). Here,

7  there is no real question that there are *at least* 22 class members, and, extrapolating from the statistical

8  data presented by plaintiffs, common sense dictates that there are thousands – if not hundreds of

9  thousands – more. Accordingly, the Court finds that the class is so numerous that joinder of all

10  members is impracticable, and therefore the numerosity requirement is met. *See* Fed. R. Civ. P. 23(a)(1).

11

12      **D.      Adequacy of Representation**

13      Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly

14  and adequately protect the interests of the class." Fed.R. Civ. P. 23(a)(4). This factor requires: (1) that

15  the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2)

16  that plaintiffs are represented by qualified and competent counsel. *See Dukes*, 509 F.3d at 1185.

17  Adequacy of representation "depends on the qualifications of counsel for the representatives, an absence

18  of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that

19  the suit is collusive." *Brown v. Ticor Title Ins*., 982 F.2d 386, 390 (9th Cir. 1992) (citations omitted).

20      Defendants argue that there is "irreconcilable" antagonism within the class and therefore

21  plaintiffs are not adequate class representatives. Defendants claim that the declarations they submit in

22  opposition to class certification "highlight the irreparable antagonism between the purported class of

23  all blind Californians, between the class of all mobility impaired Californians, and between the

24  vision-impaired and mobility-impaired class members." Opp'n at 22. Specifically, defendants argue that

25  there are "people in the vision-impaired community who believe that the installation of curb ramps

26  [allegedly favored by the mobility-impaired] on corners are unnecessary for access," and that there are

27

28                                              22

"individuals of the mobility-impaired community who are opposed to the installation of yellow tactile domes [allegedly favored by the vision-impaired] at curb ramps." Opp'n at 23. "Such antagonism," defendants aver, "destroys Plaintiffs' purported class." *Id.*

This argument is inapposite. A difference of opinion about the propriety of the specific relief sought in a class action among potential class members is not sufficient to defeat certification. *See* 1 Newberg on Class Actions § 3:30 ("As a general rule, disapproval of the action by some class members should not be sufficient to preclude a class action on the ground of inadequate representation"); *see also Norwalk Core v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir.1968) (holding that, where a complaint alleged discrimination against particular races by city housing relocation program and questions of fact common to all members, the "fact that some members of the class were personally satisfied with the defendants' relocation efforts is irrelevant."). Moreover, defendants have provided no argument that this purported conflict is so "serious and irreconcilable" as to defeat certification as a matter of law. *See Amchem Products, Inc.,* 521 U.S. 591, 626-627 (1997). More importantly, defendants' self-serving declarations aside, no mobility or vision impaired individual group has sought to intervene in this action. *See Rosado v. Wyman 322 F.Supp.* 1173, 1193 (D.C.N.Y.1970) (noting that the fact that none of the allegedly antagonist class members has intevened in the action supported inference that no such antagonism actually existed).

The balance of defendants' arguments related to adequacy are similarly unpersuasive. Defendants argue that the named plaintiffs must have adequate resources to pay the costs associated with the case so that they may check the "unfettered discretion of counsel." Opp'n at 24. The Ninth Circuit has not weighed in on whether the financial status of the named plaintiff is relevant to class certification. *See Moeller*, 220 F.R.D. at 612. However, this Court's sister court has previously held, persuasively, that "to deny a class whenever plaintiff's counsel advances significant funds to plaintiffs of little or modest means would be to defeat the very purposes which class actions were designed to achieve." *Id.* (quoting *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 675 (E.D.Pa.1980); *see also In re West Coast Department Stores Antitrust Litigation*, 1979 WL 1721 *1-2 (N.D. Cal 1979) (holding

23

1   that courts should not take into account named plaintiffs' financial status in class certification context

2   and noting that weight of authority is to this effect).

3       Defendants also argue that one of the named plaintiffs, Dmitri Belser, is an inadequate

4   representative because he is, *inter alia*, "not aware of ADAAG standards or Title 24 standards regarding

5   detectable warning surfaces." However, such fine-grained knowledge of the regulations at issue is not

6   a necessary prerequisite for adequacy of representation. "The threshold of knowledge required to qualify

7   a class representative is low; a party must be familiar with the basic elements of her claim, and will be

8   deemed inadequate only if she is 'startlingly unfamiliar' with the case." *Id.* at 611-12 (citations omitted).

9   It is not necessary that a representative "be intimately familiar with every factual and legal issue in the

10  case;" rather, "it is enough that the representative understand the gravamen of the claim." *Id.* (citing *In*

11  *re Worlds of Wonder Securities Litigation*, 1990 WL 61951 at *3 (N.D.Cal.1990)).

12      Finally, the Court determines plaintiffs' attorneys are experienced class action attorneys and are

13  adequate class counsel.

14      Adequate representation is usually presumed in the absence of contrary evidence. *Access Now,*

15  *Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000); 2 Newberg § 7.24

16  at 7-80 to 81. Defendants have failed to rebut this presumption. Accordingly, the Court finds that the

17  adequacy of representation requirement is met.

18      **E.      Rule 23(b)**

19      The party seeking certification bears the burden of showing that at least one requirement of Rule

20  23(b), in addition to each of the four requirements of Rule 23(a), has been met. *See Zinser v. Accufix*

21  *Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended*, 273 F.3d 1266 (9th Cir.2001). Plaintiffs move to

22  certify the class under Rule 23(b)(2), which requires that plaintiffs show that "the party opposing the

23  class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

24  final injunctive relief ... with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The Court's

25  analysis of the commonality requirement of Rule 23(a) necessarily touched on the propriety of certifying

26  the class under Rule 23(b)(2). As noted, this case is precisely the sort of civil rights class action

27

28                                                          24

1    contemplated by Rule 23(b)(2). *See* 2 Newberg on Class Actions § 4:11; *Thomasville School Dist.*, 187

2    F.R.D. 690.

3    While defendants argue that "the complexity and expense of a class action is not necessary in

4    this case as the named Plaintiffs may achieve by injunction all relief that would inure to similarly

5    situated persons without the necessity of class certification,"Opp'n at 25,  there is no requirement that

6    class certification must be  "necessary." *See, e.g., Halbach v. Great-West Life & Annuity Ins. Co. 2007*

7    *WL 1018658,* *10 (E.D. Mo. 2007) ("The Court agrees with a number of other courts which have found

8    that there is no "necessity" requirement included in Rule 23(b)(2) certification."). Indeed, such a

9    requirement would effectively eviscerate Rule 23(b)(2), which was specifically designed with the

10    benefits of collective action in mind. *See Gatter v. Cleland*, 87 F.R.D. 66 (E.D. Pa. 1980) (" the adoption

11    of a 'need' requirement would virtually eliminate class certification under Rule 23(b)(2)");  2 Newberg

12    on Class Actions § 4:11. Accordingly, the Court finds that Plaintiffs have met the requirements of Rule

13    23(b).

## F.    Evidentiary Objections and Motions to Strike

15    Defendants have submitted evidentiary objections to 17 of the declarations offered by plaintiffs

16    in support of their motions. Defendants have also moved to strike the declarations of Joseph Abbott

17    [Docket No. 133] and Peter Margen [Docket No. 134], as well as the Declaration of Mary-Lee Kimber

18    filed in support of plaintiff's reply [Docket No. 192], the Reply Appendix 1  [Docket No. 193], and the

19    Reply Declaration of Peter Margen [Docket No. 194]. Finally, defendants filed evidentiary objections

20    to 10 declarations filed by plaintiffs in support of their reply memorandum.

### 1.    Evidentiary Objections

22    Defendants have submitted evidentiary objections to virtually every declaration offered by

23    plaintiffs in support of their motions; in total, defendants have submitted 121 evidentiary objections.

24    However, as plaintiffs correctly note, these objections are simply boilerplate, and include absolutely no

25    explanation as to why the testimony in question is objectionable. The summary, vague nature of these

26    objections is grounds alone for the court to deny them. *See Dukes v. Wal-Mart, Inc,.*  222 F.R.D. 189,

199 (N.D.Cal. 2004)("As Plaintiffs correctly object, Defendant's attempt to assert these objections without providing any individualized discussion is procedurally defective. The objections therefore merit summary denial on the ground that they are unduly vague. Indeed, Defendant's grossly overbroad approach is more suggestive of an intent to harass than a good faith effort to address genuine objections."). Defendants respond, with a certain amount of *chuztpa*, that, despite the fact that they did not bother to provide the Court with any explanation in support of their objections, they nevertheless "respectfully request the Court review and rule on each and every one of Defendants' evidentiary objections." *See* Docket No. 179 at 3. The Court declines the defendants' invitation to analyze objections that defendants did not themselves bother to analyze, and the objections are overruled on those grounds alone.

In any case, a perusal of the objections demonstrate that they are without merit. The vast majority of the testimony objected to by defendants is related to the class members' personal experience with access barriers on various sidewalks. Such statements -- recounting that the declarants have experienced "barriers" on various sidewalks and intersections – does not constitute "lay opinion" (Fed. R. Evid. 701), nor do they constitute "improper expert opinion" (Fed. R. Evid. 702). Moreover, defendants provide absolutely no explanation as to why any of the testimony is "irrelevant, prejudicial, and confusing" (Fed. R. Evid. 402-404).

Accordingly, defendants' evidentiary objections are OVERRULED.

### 2. Motions to Strike

The Court did not rely on any of the testimony submitted by Margen or Abbot in ruling on the motion for class certification, and therefore the motions to strike those declarations are DENIED AS MOOT. Similarly, the Court did not consider any of the testimony or evidence presented in the declarations or appendices submitted by plaintiffs in support of their reply memorandum. Accordingly, defendants' motions to strike the materials submitted in support of the reply are DENIED AS MOOT, as is defendants' motion to set the hearing date on those motions.

CONCLUSION

26

For the reasons stated above, the third, fourth, fifth and sixth causes of action are DISMISSED WITHOUT PREJUDICE. Defendants' motion for judgment on the pleadings [Docket No. 52] is DENIED with respect to plaintiffs' ADA claim, but GRANTED with respect to any right plaintiffs assert to enforce the self-evaluation and transition regulations of Title II of the ADA.

The motion for class Certification [Docket No. 78] is GRANTED . The Court hereby CERTIFIES the following class:

> All persons with mobility and/or vision disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973 due to barriers along sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California which are owned and/or maintained by the California Department of Transportation.
>
> For purposes of class certification, persons with mobility disabilities are those who use wheelchairs, scooters, crutches, walkers, canes or similar devices to assist their navigation along sidewalks. For purposes of class certification, persons with vision disabilities are those who due to a vision impairment use canes or service animals for navigation along sidewalks. For purposes of class certification, Plaintiffs do not seek to certify a class with respect to any portions of Park and Ride, rest stops and/or vista point facilities owned and/or maintained by Caltrans.[6]

The Court further appoints plaintiffs as the class representatives, and Disability Rights Advocates and AARP Foundation Litigation as class counsel.

The motions to strike [Docket Nos. 133, 134, 192, 193, 194 ] are DENIED AS MOOT, as is the motion for a hearing on those motions [Docket No. 195].

IT IS FURTHER ORDERED THAT a case management conference is scheduled for May 21, 2008 at 3:00 p.m. The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than 10 days prior to the Case Management Conference  that complies with the Standing Order For All Judges Of The Northern District Of California and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510)

---

[6]The class certified above will not include claims relating to the stairs located in front of 18133 Sonoma Highway, Sonoma, California; and the missing curb ramp on the sidewalk in front of that location. These areas are being addressed as part of a separate lawsuit. *See* Notice of Mot. to Certify Class at 2.

1  637-3559 at the above indicated date and time.

2        IT IS SO ORDERED.

3  Dated: 3/13/08                          _SAUNDRA B. Armstrong_____

4                                          SAUNDRA BROWN ARMSTRONG
                                           United States District Judge

28