UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIANS FOR DISABILITY RIGHTS, INC. ("CDR"), CALIFORNIA COUNCIL OF THE BLIND ("CCB"), BEN ROCKWELL, AND DMITRI BELSER, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION ("CALTRANS") and WILL KEMPTON, in his official capacity,<br><br>Defendants. | Case No:  C 06-5125 SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION IN LIMINE NO. 8 RE STATUTE OF LIMITATIONS**<br><br>Docket 381 |

I.      **INTRODUCTION**

This is a certified class action brought by persons with mobility and vision impairments who allege that they have been denied access to sidewalks, cross-walks, pedestrian underpasses and other public rights of way in violation of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973.  Plaintiffs allege that Defendants California Department of Transportation (Caltrans) and its Director, Will Kempton, are responsible for a pattern and practice of failing to ensure their access to such facilities.  The issue before the Court is whether any claims based on facilities constructed or altered more than two-years prior to the filing of the complaint are time-barred.

Defendants argue that evidence of any location that was constructed or altered more than two years before the filing of the complaint on August 26, 2006, should be disallowed on the

**1**  ground that any claims based on lack of ADA compliance are barred by the applicable two-year
**2**  statute of limitations.  Plaintiffs' position is that (1) the statute of limitations is three years and
**3**  (2) their claims are timely under the continuing violations doctrine because they are predicated on a
**4**  policy and practice that continues to the present.
**5**        The statute of limitations issue was raised in Defendants' motion in limine no. 8 and
**6**  discussed at the pretrial conference on September 1, 2009.  In response to Plaintiffs' request for
**7**  leave to submit supplemental briefing, the Court granted Plaintiffs leave to file a supplemental
**8**  opposition to Defendants' motion in limine and directed Defendants to file a reply.
**9**  **II.     DISCUSSION**
**10**       As a threshold matter, the parties dispute the length of the statute of limitations applicable
**11** to ADA claims.  The ADA does not contain a statute of limitations.  Pickern v. Holiday Quality
**12** Foods Inc., 293 F.3d 1133, 1137 n.2 (9th Cir. 2002).  As such, the statute of limitations is
**13** determined by reference to the most analogous state law.  Id.   The Ninth Circuit has not yet
**14** decided which state law is most analogous to the ADA.  Id.  Most district courts have ruled that
**15** California's two-year limitations period for personal injury actions applies to federal disability
**16** discrimination claims brought in California.  Id.  Some district courts, however, have ruled that the
**17** ADA is more analogous to California's Unruh Act, which has a three-year statute of limitations.
**18** See K.S. v. Fremont Unified Sch. Dist., 2007 WL 915399 (N.D. Cal. Mar. 23, 2007); Kramer v.
**19** Regents of University of California, 81 F. Supp. 2d 972, 973 (N.D. Cal. 1999); see also Goldman
**20** v. Standard Ins. Co., 341 F.3d 1023, 1029-32 (9th Cir. 2003) (discussing similarities between the
**21** Unruh Act and the ADA).  In this case, the Court need not resolve this dispute because Plaintiffs'
**22** claims are timely under the continuing violations doctrine.
**23**       The continuing violations doctrine extends the accrual of a claim if a continuing system of
**24** discrimination violates a claimant's rights "up to a point in time that falls within the applicable
**25** limitations period." Douglas v. California Dept. of Youth Auth., 271 F.3d 812, 822 (9th Cir.
**26** 2001). The Ninth Circuit has "recognized two methods by which a plaintiff may establish a
**27** continuing violation…. First, the plaintiff may show a serial violation by pointing to a series of
**28** related acts against one individual, of which at least one falls within the relevant period of

**1** limitations. …. Second, a plaintiff may show a "<u>systematic policy or practice of discrimination</u> that

**2** operated, in part, within the limitations period-a systemic violation." <u>Id.</u> (emphasis added). "A

**3** systemic violation claim 'requires no identifiable act of discrimination in the limitations period,

**4** and refers to general practices or policies, such as hiring, promotion, training and

**5** compensation.' … '<u>In other words, if both discrimination and injury are ongoing, the limitations

**6** clock does not begin to tick until the invidious conduct ends</u>.'" <u>Id.</u> (citations omitted, emphasis

**7** added). Here, Plaintiffs' case is based on a systemic policy or practice of discrimination. As such,

**8** there is no merit to Defendants' contention that Plaintiffs are precluded from presenting evidence

**9** of non-compliant new construction or alterations occurring more than two (or three) years prior to

**10** the filing of the complaint. <u>E.g.</u>, <u>K.S.</u>, 2007 WL 915399 at *4 (N.D. Cal. Mar. 23, 2007).

**11**       Defendants argue that the Supreme Court eliminated the continuing violations doctrine

**12** premised on serial violations in <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002)[1], and

**13** that the Ninth Circuit in <u>Cherosky v. Henderson</u>, 330 F.3d 1243 (9th Cir. 2003) relied on <u>Morgan</u>

**14** to hold that the continuing violations doctrine could not be applied to policy and practice claims.

**15** Defs.' Mem. at 9. Defendants are incorrect on both accounts. <u>Morgan</u> held that "discrete

**16** discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in

**17** timely filed charges." 536 U.S. at 122. However, the court recognized that discrete, time-barred

**18** acts could nonetheless remain actionable in hostile work environment claims, which inherently

**19** involve repeated conduct. <u>Id.</u> at 127. The Court expressly did not reach the question of the

**20** applicability of the continuing violations doctrine in pattern and practice claims.

**21**       In <u>Cherosky</u>, a group of postal workers sued the Postal Service for denying their individual

**22** requests to wear respirators. Plaintiffs argued that all of their claims were timely under the

**23** continuing violations doctrine because "the Postal Service denied their requests pursuant to an

**24** ongoing discriminatory policy." <u>Id.</u> at 1246. The Ninth Circuit rejected that approach, and

---

[1] <u>Morgan</u> held that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 122. However, the court recognized that discrete, time-barred acts could nonetheless remain actionable in hostile work environment claims, which inherently involve repeated conduct. <u>Id.</u> at 127. The Court expressly did not reach the question of the applicability of the continuing violation doctrine in pattern and practice claims.

1  concluded that their claims were based on discrete acts, thus rendering the continuings violation
2  doctrine inapplicable. Id. at 1247-48. In reaching its conclusion, the Cherosky court emphasized
3  that the plaintiffs were not asserting that the defendant was prohibiting the use of respirators as a
4  general rule. Rather, plaintiffs were challenging "the Postal Service's individualized decision to
5  deny their accommodation requests…." Id. at 1247 (emphasis added). Given the individualized
6  nature of plaintiffs' claims, the court concluded that those claims could not be characterized as
7  pattern and practice claims. The court explained: "As the district court aptly noted, the 'heart of
8  plaintiffs' complaint does not stem from the policy regarding the use of respirators, but rather from
9  the individualized decisions that resulted from implementation of a policy originating from
10 OSHA.' These individualized decisions are best characterized as discrete acts, rather than as a
11 pattern or practice of discrimination." Id. at 1247.

12     This case is unlike Morgan or Cherosky where the plaintiffs were attempting to challenge
13 discrete acts disguised as "policy and practice" claims. Rather, Plaintiffs expressly allege that
14 Defendants' failure to comply with the federal disability laws is a direct result—not of
15 individualized decisions pertaining to a particular facility—but instead, to Defendants' alleged
16 pattern and practice of relying on inadequate guidelines and procedures that fail to ensure the
17 requisite access to Plaintiffs. Given the express nature of Plaintiffs' claims and the evidence they
18 intend to support them, neither Morgan nor Cherosky is germane. See Torres v. Mineta, 2005 WL
19 1139303 at *5 (D. D.C. May 13, 2005) ("Plaintiffs' Complaint stems from the policy prohibiting
20 ATA advancement to ATCS positions, not the individualized decisions resulting from application
21 of the policy. For these reasons, Morgan does not apply, and this Circuit's pre-existing continuing
22 violations doctrine controls.").

23     Defendants also cite Frame v. City of Arlington, 575 F.3d 432 (5th Cir. 2009) for the
24 proposition that the continuing violations doctrine is inapplicable in ADA cases. In Frame, five
25 wheelchair-bound individuals brought an action for injunctive relief based on the City's alleged
26 failure to make its curbs, sidewalks, and certain parking lots wheelchair-accessible. In a somewhat
27 cursory discussion, the Fifth Circuit agreed with the City that plaintiffs' claims were untimely and
28 that the continuing violations doctrine was inapplicable. Id. at 438. Though acknowledging that

the doctrine had been applied in employment cases, the court nevertheless declined "to extend that doctrine [in a case] where the alleged violations are not related." Id.  Under the court's view, one non-compliant curb "bears no relation to a noncompliant parking lot on the other side of the City." Id.

Frame is distinguishable in many respects.  First, the plaintiffs in Frame did not allege that the non-compliant facilities were the result of a policy or practice employed by the public entity.  That distinction was the premise of the court's view that there was no relationship between the non-compliant facilities.  In contrast, Plaintiffs have alleged that the non-compliant pedestrian facilities are related because they all are the result of Caltrans' allegedly deficient design policies and guidelines.  Second, the facilities in Frame involved different barriers at unrelated facilities, which again served to highlight the lack of relationship between a curb versus a parking lot.  In this case, Plaintiffs' claims allege the existence of barriers that impede access in the same way; to wit, access from the sidewalk or walkway to the street or roadway, and vice versa.  Finally, there were no allegations in Frame that the discriminatory acts were recurring.  In contrast, the recurring nature of Defendants' alleged violations is a central theme in this case.  Given these distinctions, the Court finds Frame inapposite.

Equally misplaced is Defendants' reliance on Garcia v. Brockway, 526 F.3d 456 (9th Cir. 2008.  In Garcia, a tenant asserted that the owner of a housing complex violated the "design and construct" provision of the Fair Housing Act (FHA) by constructing apartments that were not wheelchair compatible.  526 F.3d at 459.  The tenant filed suit within two years of renting his apartment, but more than two years after it was built.  In response to the owner's contention that his claims were barred by the two-year statute of limitations under the FHA, the tenant argued that his claim did not accrue until he discovered the violation.  The Ninth Circuit rejected the tenant's argument.  The court explained that under the FHA, a claimant may file suit "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice," and that the discriminatory practice was "the failure to design and construct" an accessible building.  Id. at 464 (citing 42 U.S.C. § 3613(a)(1)(A) and 42 U.S.C. 3604(f)(3)(c)) (emphasis added).

   The court also held that the tenant could not rely on a continuing violations theory. Though recognizing that the doctrine was available, the court reasoned that under the express terms of the FHA, the violation could continue only until the "termination" of the violation which, in that case, was the act of construction itself. Id. at 462. While the tenant may have continued to experience the "effects" of the violation, such was insufficient to show that the violation—the faulty design and construction—was continuing. In the court's words, "[a]lthough the ill effects of a failure to properly design and construct may continue to be felt decades after construction is complete, failing to design and construct is a single instance of unlawful conduct." Id. at 463.

   Garcia does not govern the instant case, where Plaintiffs' claims are not predicated on the continuing "effects" of a past violation, but rather, the ongoing violations themselves that allegedly are attributable to Defendants' policies and practices. Indeed, this Court previously recognized that the continuing violations doctrine continues to exist in pattern and practice cases, notwithstanding Garcia. In Fair Housing Alliance v. A.G. Spanos Housing Constr., 542 F. Supp. 2d 1054 (N.D. Cal. 2008) (Spanos), fair housing organizations brought action against builders and owners of multifamily apartment complexes, alleging that builders violated the FHA by constructing the complexes in a manner that denied access to disabled persons. In rejecting defendants' statute of limitations argument, the Court found that "Plaintiffs have clearly alleged a 'continuing violation' of the FHA by the Spanos Defendants, alleging that they 'engaged in a continuous pattern and practice of discrimination against people with disabilities' since 1991 by 'designing and/or constructing' apartment complexes that deny full access to and use of the facilities as required under the FHA…." Id. at 1062.

   Subsequent to its ruling, the Ninth Circuit rendered its en banc decision in Garcia, prompting the defendants to move for reconsideration. National Fair Housing Alliance v. A.G. Spanos Const. Inc., 2008 WL 4369325(N.D. Cal. 2008 Sept. 23, 2008). Defendants argued that under Garcia, the continuing violations doctrine no longer could be applied to "design and construct" claims under the FHA. Id. at *3. In rejecting that argument, this Court explained that Garcia did not eliminate the continuing violations doctrine in all cases. Rather, Garcia simply held that there was no continuing violation because the tenant was not claiming that there were any

ongoing unlawful acts, as opposed to effects. Under the facts alleged, this Court noted that the plaintiffs in Spanos had alleged ongoing violations, as demonstrated by their continued construction of non-compliant complexes. Id. Tellingly, the Defendants in this case fail to address Spanos in their brief, notwithstanding the fact that the significance of that case was specifically discussed at the pretrial conference in connection with the statute of limitations issue.

At bottom, Defendants have not persuaded the Court that the continuing violations doctrine is inapplicable under the facts alleged and presented thus far in this case. Unlike the cases cited by Defendants, Plaintiffs' claims are based on alleged ongoing violations of federal disability laws directly attributable to Caltrans' design policies and guidelines. The allegedly non-compliant facilities, even those constructed or altered more than two or three years prior to the filing of this action, simply provide support for Plaintiffs' contention that Caltrans' policies and practices continue to violate federal law.

## III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' motion in limine no. 8 to exclude evidence or testimony relating to claims barred to the statute of limitations is DENIED.

IT IS SO ORDERED.

Dated: September 14, 2009

SAUNDRA BROWN ARMSTRONG
United States District Judge