1  LAURENCE PARADIS (STATE BAR NO. 122336)
   MARY-LEE E. KIMBER SMITH (STATE BAR NO. 239086)
2  DISABILITY RIGHTS ADVOCATES
   2001 Center St., Third Floor
3  Berkeley, CA 94704
   Telephone:    (510) 665-8644
4  Facsimile:    (510) 665-8511
   TTY:          (510) 665-8716
5  Email:        general@dralegal.org
6
   DANIEL B. KOHRMAN (DC BAR NO. 394064)
7  JULIE NEPVEU (DC BAR NO. 458305)
   AARP FOUNDATION LITIGATION
8  601 E Street, NW
   Washington, DC 20049
9  Telephone:    (202) 434-2060
   Facsimile:    (202) 434-6424
10 Cell:         (202) 316-1991
   Email:        dkohrman@aarp.org
11               jnepveu@aarp.org
12 JOSÉ R. ALLEN (STATE BAR NO. 122742)
13 Pro Bono Counsel
   Four Embarcadero Center, Suite 3800
14 San Francisco, CA 94111
   Telephone:    (415) 984-6400
15 Facsimile:    (415) 984-2698
16 Attorneys for Plaintiffs

17              **UNITED STATES DISTRICT COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA**

19 | CALIFORNIANS FOR DISABILITY | Case No. C-06-5125 SBA |
20 RIGHTS, INC. ("CDR"), CALIFORNIA
   COUNCIL OF THE BLIND ("CCB"), BEN      **CLASS ACTION**
21 ROCKWELL and DMITRI BELSER, on
   behalf of themselves, and on behalf of all
22 others similarly situated                **PLAINTIFFS' NOTICE OF MOTION**
                                            **AND MOTION FOR REASONABLE**
23 Plaintiffs,                              **ATTORNEYS' FEES AND COSTS;**
                                            **MEMORANDUM OF POINTS AND**
24 v.                                       **AUTHORITIES**

25 CALIFORNIA DEPARTMENT OF          Date:  April 27, 2010
   TRANSPORTATION ("Caltrans") and WILL   Time:  1:00 p.m.
26 KEMPTON, in his official capacity.      Judge: Hon. Saundra Brown Armstrong

27 Defendants.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**TABLE OF CONTENTS**

I.      PREFACE ...................................................................................................2

II.     INTRODUCTION ......................................................................................2

III.    SUMMARY OF PLAINTIFFS' FEES AND COSTS .................................3

IV.     SUMMARY OF THE SETTLEMENT .......................................................4

V.      PLAINTIFFS ARE ENTITLED TO RECOVER THE FULL CAP OF $8.75 MILLION IN ATTORNEY'S FEES AND $371,332.45 IN COSTS. .................................6

        A.     The Law Authorizes an Award of Attorney's Fees to Plaintiffs. ...........6

        B.     Plaintiffs Are Prevailing Parties for the Purposes of Fee Recovery. ......6

        C.     Plaintiffs' Lodestar Is Reasonable. ........................................................7

               1.     Appropriate Hourly Rates Are Those Charged by Bay Area Attorneys of Comparable Experience Who Handle Complex Litigation. ........................8

               2.     All Hours Included in the Lodestar Were Reasonably Required. ...........10

                      a.     The Federal Action ........................................................10

                      b.     The State Action .............................................................12

                      c.     Discovery ........................................................................14

                      d.     Trial of the Federal Action ............................................15

               3.     Defendants' Repeated Rejection of Plaintiffs' Settlement Efforts Also Resulted in Increases in Plaintiffs' Lodestar Fees and Costs. ...................15

        D.     Plaintiffs Are Entitled to a Multiplier. .................................................18

        E.     Plaintiffs Are Entitled To Their Litigation Costs. ................................22

        F.     Plaintiffs Are Entitled to Fees for Work Negotiating and Litigating the Fees and Costs. .................................................23

VI.     DETAILED SUMMARY OF FEES AND COSTS .....................................23

VII.    CONCLUSION ..........................................................................................25

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF AUTHORITIES

## Cases

*Alvarado v. Federal Exp. Corp.*, No. C 04-0098 SI, 2008 WL 2340211 at *4 (N.D. Cal., June 05, 2008) ..................................................................................................................................19

*Bernardi v. Yeutter*, 951 F.2d 971, 974 (9th Cir. 1991) ........................................................8, 23

*Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) ................................................................9

*Californians for Disability Rights, Inc. v. California Department of Transportation*, 249 F.R.D. 334, 338 (N.D. Cal. 2008) ................................................................................................10, 11

*Chabner v. United of Omaha Life Ins. Co.*, No. C 95-0447 MHP (N.D. Cal. Apr. 5, 1999) ........22

*Chin v. DaimlerChrysler Corp.*, 520 F. Supp. 2d 589, 611-19 (D. N.J. 2007) ...........................18

*Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ................................................23

*Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990)........................................................23

*Crommie v. State of California*, 840 F. Supp. 719, 725 (N.D. Cal. 1994) ...................................19

*Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) .............8, 23

*Downey Cares v. Downey Comm. Development Comm'n*, 196 Cal.App.3d 983, 993, 242 Cal.Rptr. 272 (Cal. App. 1987) ..............................................................................................19

*Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's Ass'n*, 523 F. Supp. 2d 1164, 1170 (S.D. Cal. 2007) ..................................................................................................18

*Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).........................................................8

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)..............................................................6, 7, 8

*Heritage v. Town of Woodside*, Nos. A120749 & A120757, 2008 WL 4868816 (Cal.Ct.App. 2008)........................................................................................................................19, 20

*Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32, 104 Cal. Rptr. 2d 377 (2001)...........................7, 19

*Leuzinger v. County of Lake*, No. C 06-00398 SBA, 2009 WL 839056 at *12 (N.D. Cal., Mar 30, 2009)........................................................................................................................19

*Lieber v. Macy's West, Inc.*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999) ............................................21

*Lieber v. Macys West*, No. C 96-2955 MHP (N.D. Cal. Dec. 18, 2000)......................................21

*Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)......................................................23

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2006 WL 2729260 (D. Colo. July 27, 2006).21, 22

*Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995) ...........18, 19

*Medenhall v. National Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000)...............................9

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989) ......................................................9

*National Federation of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261 at *3 (N.D. Cal. Aug. 03, 2009) .........................................................................................passim

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)......7

*Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1086-88 (9th Cir. 2003) .............6, 7

*Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009).......................................................................................................................6

*Stevens v. Vons Cos.*, 2d Civil Nos. B196755, B201528, 2009 WL 117902, at *10 (Cal. App. 2009).......................................................................................................................21

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) ...............7

*United Steelworkers of America v. Retirement Income Plan*, 512 F.3d 555, 564 (9th Cir. 2008) ..9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)...............................................19

*Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942, 946 (9th Cir. 2007)..............................9

**Statutes**

29 U.S.C.A. § 794a(b) (Section 504 of the Rehabilitation Act).................................................1, 6

Americans with Disabilities Act, 42 U.S.C. § 12205 ...............................................................1, 6

California Gov. Code § 11139........................................................................................................13

California's Disabled Persons Act, and Cal. Civ. Code  § 54.3(a)............................................1, 6

California Gov. Code § 11135(b) ...................................................................................................13

**Rules**

Fed. R. Civ. P. 54(d)(1) ..................................................................................................................22

Local Civil Rule 54-5 .......................................................................................................................1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS

Please take notice that, on April 27, 2010, at 1:00 pm, the Court will hear Plaintiffs' motion pursuant to Local Civil Rule 54-5, for an award of reasonable attorneys' fees and costs. The total amount Plaintiffs request for all work in this litigation is **$8.75 million** in fees and **$371,332.45** in costs. The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations submitted herewith, and all such further evidence and arguments as may be submitted.

Plaintiffs believe that this motion would be appropriate for reference to a Magistrate Judge or Special Master, should the Court wish to order such a reference. If the Court decides to order such a reference, Plaintiffs would request that Defendants be required in the interim to pay the $3.75 million that Defendants agreed would be paid as a floor, and the additional fees upon final determination of this Motion.

The Settlement Agreement submitted for approval provides that Plaintiffs will recover reasonable attorneys fees in an amount between $3.75 million and $8.75 million, and costs not exceeding $391,477. In addition, Plaintiffs are entitled to their reasonable attorneys' fees and costs pursuant to the following statutory provisions: the Americans with Disabilities Act, 42 U.S.C. § 12205; 29 U.S.C.A. § 794a(b) (Section 504 of the Rehabilitation Act); and California's Disabled Persons Act, Cal. Civ. Code § 54.3(a). The information required by Local Civil Rule 54-5 for each Class Counsel firm is set forth in the accompanying Declaration of Laurence Paradis in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs ("Paradis Decl."); Declaration of José Allen in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs ("Allen Decl."); and Declaration of Daniel B. Kohrman in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs ("Kohrman Decl.").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PREFACE

Plaintiffs regret having to burden the Court with deciding a disputed fees motion. Although the parties were able to reach a global settlement of all issues on the merits, they were unable to reach a settlement of the amount of attorneys' fees and costs.  The parties attempted to negotiate an agreed amount at a settlement conference facilitated by Magistrate Judge Laporte, but were able only to agree to a floor and cap on the amount of fees and a cap on the amount of costs.  Subsequently, counsel participated in a mediation session devoted exclusively to the fee issue before Judge Ramirez, Retired – a mediator chosen by Defendants.  Again, no agreement was reached.  In order to avoid burdening this Court with a disputed fee motion, Plaintiffs proposed to Defendants that the parties agree to binding arbitration of the amount of attorneys' fees and costs, with the arbitrator's award being subject to Court approval.  Defendants rejected this proposal.  Accordingly, Plaintiffs have no choice but to submit this motion to this Court for resolution.  Plaintiffs believe that it would be appropriate for this Court, if it so wishes, to refer the issue to a Magistrate Judge or to appoint a Special Master for determination of the reasonable amount of fees and costs.  In addition, because Defendants already have agreed that Plaintiffs are entitled to at least $3.75 million in fees, and Plaintiffs have litigated this matter for more than three years without any compensation whatsoever, this Court might choose upon final approval of the settlement to order Defendants immediately to pay this sum to Class Counsel while the dispute over Plaintiffs' request for the additional payment is being resolved.

## II.    INTRODUCTION

This litigation, comprising separate, complex class actions in both federal and state courts, is unprecedented.[1]  In 2006, Plaintiffs Californians for Disability Rights, Inc., California Council of the Blind, Ben Rockwell, and Dmitri Belser filed their initial class action complaint in this Court against Defendant California Department of Transportation and its Director (collectively "Caltrans" or "Defendants").  Plaintiffs alleged that Caltrans' 2,500 miles of sidewalks throughout the state frequently contain barriers that deny access to persons with

---

[1] All facts stated herein regarding the litigation and settlement are verified in paragraph 3 of the Paradis Decl.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   mobility and/or vision disabilities, often exposing them to serious hazards.  Such barriers include

2   a lack of curb ramps, which forces persons with mobility disabilities to travel in the streets

3   alongside vehicular traffic, noncompliant curb ramps that put wheelchair users at risk of tipping

4   over, and a lack of "detectable warnings" at curb ramps to indicate where the sidewalk ends and

5   street begins so that blind and low vision pedestrians can avoid unknowingly stepping into

6   traffic.

7          After three years of litigation, and the beginning of trial, the parties have now reached an

8   unprecedented settlement.  Among other things, Caltrans has committed to a substantial increase

9   in its spending on barrier removal to make its existing pedestrian facilities and Park and Ride

10  facilities accessible.  Prior to the lawsuit, Caltrans was spending $1million per year on removing

11  the barriers at issue.  Under the settlement, Caltrans has committed to spend $25 million per year

12  to address such barriers, with the annual amount increasing over time.  Caltrans also has

13  accepted its obligation to install curbs ramps where lacking and to upgrade noncompliant curb

14  ramps whenever resurfacing roadways with adjacent sidewalks.

15         Yet this overwhelming victory did not come without great cost.  Both sides litigated this

16  action over a period spanning several years, requiring Class Counsel to devote an enormous

17  amount of time and resources to the litigation, and thus to forgo opportunities to accept other,

18  less risky cases.  Defendants have agreed that Plaintiffs are entitled to an award of attorney's fees

19  and expenses for work by Class Counsel in both the federal and state actions.  The only issue is

20  the precise amount to be paid to Plaintiffs.  The parties have agreed that Defendants will pay

21  Plaintiffs fees between $3.75 million and $8.75 million, as well as costs and expenses not

22  exceeding $391,477.

23         As discussed below, absent the negotiated fee cap Plaintiffs would be entitled to fees well

24  over the amount of the cap.  Accordingly, Plaintiffs should be awarded the full amount of the

25  negotiated cap of $8.75 million in fees plus all of their costs.

26  **III.    SUMMARY OF PLAINTIFFS' FEES AND COSTS**

27         The table set forth below summarizes the fees to which Plaintiffs would be entitled in a

28  contested proceeding if there were no negotiated cap.  Plaintiffs' lodestar, alone, is more than the

cap of $8.75 million. As discussed below, Plaintiffs are also entitled to a multiplier that would enhance their fee recovery substantially but for the cap. Furthermore, Plaintiffs are entitled to recover fees for their work in negotiating and attempting to recover their fees and costs ("fees on fees"), and this sum increases the total amount of fees that Plaintiffs would be entitled to recover but for the cap. Accordingly, even if this Court were to decide that Plaintiffs' lodestar should be reduced somewhat because of possible discrete deductions, inefficiency, or other reasons, such deductions would not decrease the appropriate award of fees below the amount of the cap.

| Description | Hours | Total Fees |
|---|---|---|
| Lodestar for merits work (reflecting voluntary 5% reduction) | 20,706.4 | $9,938,900 |
| Application of a Multiplier of 1.65 | | 6,460,285 |
| Fees on Fees | | 154,373 |
| **TOTAL** | | **$16,553,558** |

In addition, Plaintiffs should be awarded the full amount of their costs, $371,332.45, which is below the negotiated cap of $391,477.

## IV.   SUMMARY OF THE SETTLEMENT

The Settlement Agreement represents a dramatic new commitment by Caltrans to improve access for the class. Prior to this litigation, Caltrans was allocating only $1 million per year for installing new curb ramps, with no dedicated funding for removal of other access barriers. Caltrans also had failed to conduct surveys to identify access barriers along its pedestrian facilities and in its Park and Ride facilities. In addition, prior to the litigation Caltrans routinely was failing to comply with heightened access standards applicable to new construction and alterations projects, had no functional public complaint system, and was failing to ensure that temporary pedestrian routes around and through construction zones were accessible. The importance of the settlement to members of the class is described in the accompanying Declarations of Jeff Thom, President of organizational Plaintiff California Council of the Blind, and Ben Rockwell, a named individual Plaintiff.

Under the Settlement Agreement (Exhibit A to the Declaration of Ronald Elsberry, filed

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   herewith), Caltrans has agreed to an annual commitment of funds dedicated solely to funding

2   access to existing pedestrian facilities and existing Park and Ride facilities.  Specifically,

3   Caltrans has committed to an annual budget for barrier removal along existing pedestrian

4   facilities and in existing Park and Ride facilities, with the commitment of funds starting at $25

5   million per year for the first five years.  This funding will increase to $35 million per year for the

6   next 10 years.  Thereafter, the funding will increase to $40 million per year for the next ten

7   years.  Finally, the funding will increase to $45 million per year for the last 5 years.

8        In addition, Caltrans has agreed to ensure that new construction and alterations relating to

9   pedestrian facilities and Park and Ride facilities comply fully with current access standards.

10   Settlement Agreement, Exh. 3, ¶ 5 & Exh. 3A.  This obligation will require, among other things,

11   that whenever Caltrans resurfaces an existing roadway through an "RRR" project, which occurs

12   as a regular matter, Caltrans will ensure that new curb ramps are installed where lacking and that

13   existing noncompliant curb ramps are upgraded.  This agreement will require a commitment of

14   substantial funding that is separate from, and thus over and above, the dedicated annual funding

15   described above for removal of existing access barriers.

16        Under the Settlement Agreement, Caltrans also will create a new access request and

17   grievance system so that the public, including class members, organizations, and local

18   governmental entities, can report access barriers that they experience and/or have observed.  This

19   system will ensure that Caltrans is alerted to these access barriers and can remedy them on a

20   priority basis.  Settlement Agreement, Exh. 5.  Further, after addressing access barriers that the

21   public or Caltrans has identified, Caltrans will dedicate any funds remaining from its annual

22   commitment to survey its facilities for the purpose of identifying other access barriers within its

23   pedestrian facilities and Park and Ride facilities requiring remediation.  *Id.*, Exh. 1, ¶ 8.

24   Additionally, Caltrans has agreed to ensure compliance with the federal Court's ruling that

25   temporary pedestrian routes around and through construction zones must be accessible.  *Id.*,

26   Exh. 4.  Caltrans also has agreed to extensive reporting and monitoring of its compliance with

27   the Settlement Agreement, including retention of an outside monitoring consultant.  *Id.*, Exh. 2.

28   Finally, the parties have agreed to a minimum and a maximum amount of attorney's fees and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

costs Defendants will pay to Plaintiffs: a floor of $3.75 million and a cap of $8.75 million in fees, and a cap of $391,477 in costs. *Id.*, Exh. 6.

As part of the settlement, the parties have agreed that this Court will have jurisdiction over all of Plaintiffs' claims – both federal and state law claims. Settlement Agreement, §§ 4.7.2, 5.2.1. This jurisdiction over both federal and state law claims will ensure that Plaintiffs can enforce in this Court full compliance with both federal and state law access requirements during the implementation period of the settlement. Defendants also agreed that Plaintiffs are entitled to recover reasonable fees and costs for work in both the federal and the state actions. *Id.*, Exh. 6, ¶ 2. As a result, state law principles governing fee recovery in civil rights cases, including the availability of a multiplier, are applicable to the fee claim.

## V.  PLAINTIFFS ARE ENTITLED TO RECOVER THE FULL CAP OF $8.75 MILLION IN ATTORNEY'S FEES AND $371,332.45 IN COSTS.

### A.  The Law Authorizes an Award of Attorney's Fees to Plaintiffs.

Plaintiffs are entitled to attorney's fees and costs under several statutory provisions. 42 U.S.C. § 12205 (ADA); 29 U.S.C.A. § 794a(b) (Section 504 of the Rehabilitation Act); and Cal. Civ. Code § 54.3(a) (DPA). Courts have held that "a prevailing plaintiff [under statutes with fee-shifting provisions] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations and citations omitted). Here, Defendants agree that Plaintiffs are entitled to fees, and the only question is the amount. Plaintiffs contend that they should be awarded the full cap of $8.75 million.

### B.  Plaintiffs Are Prevailing Parties for the Purposes of Fee Recovery.

Under the fee-shifting provisions of applicable state and federal laws, plaintiffs are prevailing parties when they achieve a change in the legal relationship between the parties through a judgment or a judicially enforceable settlement. *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1086-88 (9th Cir. 2003). A plaintiff is a prevailing party when he or she prevails on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit . . . ." *Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009) (internal quotations and citation omitted).

1   "[P]revailing party status is determined by inquiring whether plaintiffs' actual relief on the

2   merits of [their] claim materially alters the legal relationship between the parties by modifying

3   the defendant's behavior in a way that directly benefits the plaintiff." *Richard S.*, 317 F.3d at

4   1087 (internal quotations and citations omitted). The unprecedented relief obtained by Plaintiffs

5   in this case unquestionably meets this standard.

6       Plaintiffs here not only have clearly achieved a change in the legal relationship, but have

7   accomplished a remarkable set of legally binding and judicially enforceable obligations that will

8   benefit hundreds of thousands of class members for years to come. As a result of the lawsuit,

9   Caltrans will have increased its spending on barrier removal from $1 million per year to many

10   times that amount – ranging from $25 million per year in the beginning years of the settlement to

11   $45 million per year in the final years. Plaintiffs have also obtained a commitment by Caltrans

12   to remedy existing access barriers and to perform other work in conjunction with new

13   construction and alterations to ensure that Caltrans' pedestrian facilities and Park and Ride

14   facilities throughout California are fully accessible to persons with mobility and/or vision

15   disabilities. As discussed below, along the way Plaintiffs also obtained several key legal rulings

16   in support of their claims in both the federal and state court actions.

17       Plaintiffs obtained the relief they sought on virtually every issue raised in the litigation.

18   The settlement addresses all of those issues and more. Even if Plaintiffs were considered to have

19   obtained relief on only part of their claims, they would still be entitled to recover for all of their

20   work. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989).

21       **C.**   **Plaintiffs' Lodestar Is Reasonable.**

22       The starting point for computation of reasonable attorney fees under the California and

23   federal laws at issue in the litigation is the "lodestar," calculated by multiplying the number of

24   hours reasonably expended by the reasonable hourly rates. *See Hensley*, 461 U.S. at 433-34.

25   The "resulting product *is presumed* to be the reasonable fee to which counsel is entitled."

26   *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)

27   (original emphasis, internal quotations omitted); *accord, Ketchum v. Moses*, 24 Cal.4th 1122,

28   1131-32, 104 Cal. Rptr. 2d 377 (2001). Where, as here, the plaintiff obtained substantial results,

1   the "attorney should recover a fully compensatory fee . . . encompass[ing] all hours reasonably

2   expended on the litigation . . . ." *Hensley*, 461 U.S. at 435; *see also Cabrales v. City of Los*

3   *Angeles*, 935 F.2d 1050, 1052-53 (9th Cir. 1991).

        **1.     Appropriate Hourly Rates Are Those Charged by Bay Area Attorneys**
               **of Comparable Experience Who Handle Complex Litigation.**

5          In the Ninth Circuit, "[r]easonable fees are . . . 'to be calculated according to the

6   prevailing market rates in the relevant community.'" *Davis v. City and County of San Francisco*,

7   976 F.2d 1536, 1545-46 (9th Cir. 1992), vacated in part on another point, 984 F.2d 345 (9th Cir.

8   1993). The reasonableness of market rates is determined by reference to the rates of "lawyers of

9   reasonably comparable skill, experience, and reputation" in the relevant community. *Id.* The

10  "relevant community" is the forum district for the action in which fees are sought. *Gates v.*

11  *Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Thus, here the relevant community is the San

12  Francisco Bay Area, and the reasonableness of rates charged should be determined by reference

13  to the rates charged by Bay Area attorneys with commensurate skill, experience, and reputation.

14  In addition, "attorneys' fee awards in civil rights cases are 'governed by the same standards

15  which prevail in other types of *equally complex federal litigation*. . . .' *Hensley,* 461 U.S. at 430

16  n. 4, 103 S.Ct. at 1938 n. 4 [comparing complex civil rights case with complex antitrust litigation

17  for purposes of awarding attorney's fees]." *Bernardi v. Yeutter*, 951 F.2d 971, 974 (9th Cir.

18  1991) (emphasis added). Thus, the relevant inquiry in determining applicable rates is whether

19  attorneys in the San Francisco Bay Area with commensurate skill, experience, and reputation in

20  handling *complex litigation* charge rates comparable to those sought by Class Counsel in this

21  complex litigation.

22          Plaintiffs and the class were represented by three law firms: Disability Rights Advocates

23  ("DRA"); AARP Foundation Litigation ("AFL"); and José R. Allen – a senior partner of

24  Skadden, Arps, Slate, Meagher & Flom LLP. For DRA and Mr. Allen, the rates are

25  straightforward – their firms are in the Bay Area and specialize in complex litigation. DRA has

26  regularly and recently been awarded rates based on the rates charged by the major Bay Area law

27  firms that handle complex litigation. *See, e.g., National Federation of the Blind v. Target Corp.*,

28  No. C 06-01802 MHP, 2009 WL 2390261 at *3 (N.D. Cal. Aug. 03, 2009) (hereafter "*NFB v.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   *Target*") (attached as Exhibit E to Paradis Decl.); *see also* Paradis Decl., ¶ 23.  The rates for Mr.

2   Allen and other personnel in his firm who worked on this litigation are those regularly charged to

3   their fee-paying clients in complex litigation.  Allen Decl., ¶ 16.

4   　　　　Although AFL's main office is in Washington, D.C., Ninth Circuit authority requires the

5   calculation of reasonable market-rate fee awards in the litigation forum.  *United Steelworkers of*

6   *America v. Retirement Income Plan*, 512 F.3d 555, 564 (9th Cir. 2008); *Welch v. Metropolitan*

7   *Life Insurance Co.*, 480 F.3d 942, 946 (9th Cir. 2007); *Medenhall v. National Transp. Safety Bd.*,

8   213 F.3d 464, 471 (9th Cir. 2000).  In *Mendenhall*, 213 F.3d at 471 n.5, although the prevailing

9   plaintiff's attorney practiced in Washington, D.C., the Ninth Circuit rejected a contention that the

10   relevant forum was Washington, D.C. and concluded that a fee award for pursuing an appeal in

11   the Ninth Circuit Court of Appeals should be calculated in light of market rates in California.

12   　　　　Furthermore, a reasonable fee award ordinarily is calculated based on *current* hourly

13   rates for the plaintiffs' attorneys.  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989);

14   *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (use of current hourly rates "take[s] into

15   account lost interest and inflation").  DRA and AFL thus request fees at their 2010 rates.  Mr.

16   Allen, however, is voluntarily requesting fees at his firm's historic actual rates rather than at

17   current rates.  A chart showing all rates requested by Class Counsel is included in Section VI

18   below.[2]

19   　　　　Plaintiffs also submit herewith the declaration of Richard M. Pearl, an expert in fee

20   litigation, confirming that the rates requested by DRA and AFL are well within the range of

21   market rates for attorneys in the San Francisco area who handle complex litigation.  The

22   requested rates are also consistent with the rates recently approved in contested fee motions last

23   year by judges in the Northern District and in Alameda County for the *NFB v. Target* and *Kidd*

24   cases DRA successfully litigated and settled in 2008, as discussed above.  DRA's 2010 requested

25   rates reflect appropriate increases from the 2008 rates, consistent with the upward trend in the

26   community.  *See also* Declarations submitted herewith of William Alderman, Sanford Rosen,

27

28   　[2] Skadden requests fees at rates applicable when the work was performed, and these rates increased as the litigation progressed.  Thus, the total fees sought per timekeeper in the chart in Section VI are less than would be shown if simply multiplying the current Skadden rates by the number of hours per timekeeper.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    and Todd Schneider further confirming that the rates requested by DRA and AFL are consistent

2    with those charged in the relevant market to private fee paying clients.

3                    **2.      All Hours Included in the Lodestar Were Reasonably Required.**

4           Class Counsel put in only as much work as was needed to fully protect the interests of the

5    class in light of a determined opposition by well-resourced Defendants.  Indeed, the breadth and

6    complexity of this litigation have been remarkable.  Much of the work was required because of

7    Defendants' own tactics that made the litigation more complicated and time consuming than

8    would otherwise have been necessary.  As demonstrated by the following summary of the

9    significant aspects of and developments in these actions, Class Counsel put into the litigation a

10   reasonable amount of work necessary to obtain the results achieved.

11                   ***a.      The Federal Action***

12          The original complaint filed in August 2006 included both federal and the related state

13   law claims.  Defendants initially agreed that this Court had supplemental jurisdiction to resolve

14   the related state law claims.  However, in September 2007 – after a full year of litigation –

15   Defendants filed a motion for judgment on the pleadings asserting their sovereign immunity right

16   not to have the state claims heard in federal court.  Defendants requested that the state law claims

17   be dismissed with prejudice.  Thus, they attempted to prevent the state law claims from being

18   heard by any Court.  However, this Court denied Defendants' request, and its ruling dismissing

19   the state law claims allowed Plaintiffs to reassert the them in state court.  *Californians for*

20   *Disability Rights, Inc. v. California Department of Transportation*, 249 F.R.D. 334, 338 (N.D.

21   Cal. 2008).  Plaintiffs accordingly refiled the state law claims in Alameda County Superior

22   Court.  Defendants' strategic maneuver with regard to the state claims greatly magnified the

23   complexity and costs of the litigation by forcing the distinct but related federal and state claims

24   to be pursued in two separate actions before two separate judges.[3]  Both actions entailed

25   extensive and complex motion practice – primarily involving unsuccessful efforts by Defendants

26   to defeat, delay, and/or prevent Plaintiffs' claims from being heard on their merits.

27          To begin with, in the federal action, Defendants moved to dismiss Plaintiffs' claims

28
_____

[3] When Defendants forced the filing of the second, state action, Plaintiffs were compelled to bring in Mr.
José Allen as additional co-counsel to handle the increased workload.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    under the Americans with Disabilities Act ("ADA"), contending that Title II of the ADA was

2    unconstitutional as applied to state agencies such as Caltrans.  This Court denied this motion.

3    *Californians for Disability Rights, Inc.*, 249 F.R.D. at 338-39.  Defendants then declined to

4    stipulate to certification of a class in the federal action and instead vigorously contested

5    Plaintiffs' motion for class certification, filing numerous declarations from various defense

6    witnesses and taking the depositions of many class members who had submitted declarations

7    attesting to the barriers they experienced along Caltrans' pedestrian facilities.  Defendants

8    attempted to depose every class member who submitted a declaration in support of class

9    certification, and were only prevented from doing so when Plaintiffs successfully brought a

10   motion for a protective order.  Notably, Plaintiffs could have deposed many of the nine

11   individuals whose declarations Defendants submitted in opposition to the motion for class

12   certification, but elected not to do so in order to streamline the litigation wherever possible.  In

13   addition, Defendants' opposition to the class certification motion claimed that Plaintiffs had

14   failed to show numerosity based on the number of class member declarations that Plaintiffs had

15   submitted with their motion.  This contention forced Plaintiffs to devote more time collecting

16   additional class member declarations.  Despite Defendants' strong opposition, this Court

17   certified a class.  *Californians for Disability Rights, Inc.*, 249 F.R.D. at 342-49.

18          Defendants did initially prevail on one issue in the federal litigation, namely that there is

19   no private right of action under the ADA to enforce the Self-Evaluation and Transition Plan

20   regulations.  This one ruling in the federal case accomplished little, however, because in the state

21   action Plaintiffs ultimately established their right under California law to enforce the same Self-

22   Evaluation and Transition Plan regulations.  Defendants also moved to dismiss Plaintiffs' federal

23   law claims regarding temporary pedestrian routes.  Defendants asserted that no law required that

24   temporary pedestrian routes around and through construction sites be made accessible to persons

25   with mobility and/or vision disabilities.  In response, Plaintiffs filed a cross-motion for partial

26   summary judgment, seeking a ruling that Caltrans does in fact have a legal duty to make such

27   temporary pedestrian routes accessible.  The Court sustained Plaintiffs' position on this issue,

28   ruling that when Caltrans elects to provide such temporary pedestrian routes, they must be made

---

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

accessible.[4]  Defendants then filed a motion for summary judgment in the federal action, seeking

judgment in their favor on all of Plaintiffs' claims.  Plaintiffs were forced to file an extensive

opposition to that motion.  In that opposition, Plaintiffs were forced to marshal much of the

factual evidence and legal authority supporting each of their federal law claims and present such

in their briefing.  Ultimately, this Court denied Defendants' motion in its entirety.

At the pretrial conference in the federal action, Defendants were given leave to brief

issues that Defendants claimed would dispose of various of Plaintiffs' claims.  Plaintiffs once

again had to devote extensive efforts to opposing Defendants' briefings.  This Court ruled

against Defendants on every one of these issues.  Among other things, the Court ruled:  (1)

Defendants are required when altering roadways to upgrade existing but non-compliant curb

ramps (Defendants had argued that their obligation was limited to installing missing curb ramps)

(Docket No. 417); (2) Plaintiffs adequately alleged a continuing violation and thus could seek

relief for violations beginning on the effective date of the ADA – January 26, 1992 (Defendants

had argued that the statute of limitations prevented any relief for violations that occurred more

than two years before the Complaint was filed) (Docket No. 418); (3) Plaintiffs could seek an

injunction requiring Defendants to identify violations since January 26, 1992 (Defendants had

argued that the court could not issue such relief) (Docket No. 420); and (4) Defendants must

strictly comply with federal access standards when altering their roadways (Defendants had

argued that "minor" deviations were permitted) (Docket No. 417).

As discussed below, the federal action proceeded to trial under these legal rulings

favorable to Plaintiffs.

### b.  *The State Action*

In the state superior court, as in this Court, Defendants undertook extensive efforts to

delay, defeat, and preclude Plaintiffs' claims from being resolved on the merits.  Defendants did

not file an answer in response to Plaintiffs' state complaint but rather moved for a change of

---

[4] Caltrans requested that the Court rule that there is no duty to provide temporary pedestrian routes, even though Caltrans' actual practice is to provide temporary pedestrian routes whenever there is an obstruction to the existing walkway.  Plaintiffs stipulated that there is no duty to provide temporary pedestrian routes, since that was never an issue in the case.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   venue to Sacramento County.[5]  The superior court denied the motion.  In August 2008,

2   Defendants moved for a stay of the state action pending the outcome of the federal action.  The

3   court also denied this motion.  In October 2008, Defendants then filed a demurrer in the state

4   action, arguing that Plaintiffs lacked a private right of action under California law to enforce the

5   ADA Self-Evaluation and Transition Plan requirements.  The superior court overruled the

6   demurrer, concluding that California Gov. Code § 11139 specifically creates a private right of

7   action to enforce Gov. Code § 11135(b) and that § 11135(b) specifically incorporates both the

8   ADA statutory requirements and the regulations issued thereunder.  Order Overruling Demurrer

9   to First Amended Complaint (Alameda Superior Ct., Dec. 19, 2008) (attached as Exh. I to the

10  Paradis Decl.).  In June 2009, Defendants filed a renewed motion to stay the state action, which

11  the court again denied.

12          Plaintiffs urged Defendants to stipulate to class certification in the state case to avoid yet

13  another round of time-consuming and needless litigation over this procedural issue.  As in the

14  federal case, Defendants refused to stipulate.  Plaintiffs were forced to file a new and updated

15  motion for class certification, requiring extensive efforts and resources.  Class counsel had to re-

16  interview numerous class members to update their declarations regarding access barriers they

17  were experiencing along Caltrans' sidewalks.  Defendants insisted upon taking new discovery to

18  oppose this class certification motion, including a new deposition of Plaintiffs' access expert and

19  new depositions of several of the named Plaintiffs and class members.  Plaintiffs' motion for

20  class certification was filed and pending at the time the settlement was reached.

21          Meanwhile, Plaintiffs undertook discovery in the state action to learn the status of

22  Caltrans' compliance with the Self-Evaluation and Transition Plan regulations.  Plaintiffs found

23  that Caltrans, although having embarked on the preparation of a Self-Evaluation and Transition

24  Plan in response to the litigation, was far from completing them.  Plaintiffs therefore filed a

25  motion for summary adjudication in the state action seeking to enforce these regulatory

26  requirements.  That motion was also pending at the time settlement was reached.

27

28
_____
[5] Indeed, because of their many strategic procedural delays, Defendants did not answer the complaint until January 2009 – almost one year after Plaintiffs filed their complaint in state court.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### c.   Discovery

Discovery in both actions was arduous, voluminous, and contentious.  From the beginning, Defendants disputed virtually all discovery sought by Plaintiffs, requiring Plaintiffs to bring multiple motions to compel in both federal and state courts.  Even when the courts ordered Defendants to provide discovery, Defendants failed to comply, and Plaintiffs were forced to bring new motions seeking compliance with prior discovery orders.  Defendants also concealed and failed to produce key documents that undercut Defendants' positions.  For instance, Plaintiffs discovered some highly probative Caltrans' documents only by serving Freedom of Information requests on the Federal Highway Administration and by serving a document subpoena on the Division of the State Architect.  At the same time, Defendants deluged Plaintiffs with extensive discovery requests of their own.  Defendants sought to depose dozens of class members who submitted declarations relating to class certification.  They were limited only by Plaintiffs' successful request for a protective order.  Defendants also served on Plaintiffs over one thousand interrogatories, requests for admissions, and requests for production of documents – an avalanche of written discovery generated by defense counsel for little purpose except to keep Plaintiffs' counsel as busy as possible.

A prime example of Defendants' obstructionist discovery tactics was the battle over discovery in the state court action relating to Caltrans' compliance with the Self-Evaluation and Transition Plan requirements.  Plaintiffs properly noticed the deposition of a designee witness by Caltrans qualified to testify about this subject.  Defendants refused to produce such a designee witness, forcing Plaintiffs to bring a successful motion to compel.  After the Court directed Defendants to comply, Caltrans then produced a designee who lacked knowledge of many aspects of the issue.  Thus, Plaintiffs were forced to bring yet another successful motion to compel production of a witness actually knowledgeable about the subject.  Defendants also failed to produce many of the documents requested in the deposition notice concerning Caltrans' compliance with the Self-Evaluation and Transition Plan regulations.  Plaintiffs then were forced to move, successfully, to compel production of responsive documents.  Ultimately, despite Defendants' vigorous efforts to obstruct discovery in the state court action, Plaintiffs were able

1   to compel production of deposition testimony and document production revealing the actual

2   status of the Self-Evaluation and Transition Plan.  The only thing achieved by Defendants'

3   obstructionist tactics was driving up the time and expense of the litigation.  This is but one

4   example among dozens of discovery battles in the federal and state actions where Defendants

5   sought to obstruct relevant discovery with the result that the overall time and efforts required of

6   Class Counsel to pursue the claims at issue was greatly magnified.

### d.   Trial of the Federal Action

8   Defendants also made trial preparation in the federal action extraordinarily difficult.

9   First, Defendants breached an agreement to produce their witnesses at trial without service of

10  subpoenas.  Plaintiffs thus had to spend substantial time and money tracking down Defendants'

11  employees, some of whom clearly sought to avoid service.  Defendants also failed to comply

12  with this Court's order for pretrial preparation by refusing to stipulate to undisputed facts and

13  unquestionably authentic documents.  And, rather than designating particular documents and

14  discovery excerpts Defendants intended to use at trial, Defendants designated as an exhibit every

15  single document produced by either side in discovery and as deposition testimony to be read into

16  the record every part of every deposition taken, thereby requiring Plaintiffs to prepare to counter

17  all possible evidence that conceivably could be presented at trial.

18  The federal court action proceeded to trial on September 16, 2009.  During the trial, the

19  Court repeatedly urged the parties to settle the case, because it was a case "that should be

20  settled."  In the second week of the trial, the Court briefly suspended the proceedings, and the

21  parties renewed their settlement negotiations.

### 3.   Defendants' Repeated Rejection of Plaintiffs' Settlement Efforts Also Resulted in Increases in Plaintiffs' Lodestar Fees and Costs.

23  Defendants repeatedly rebuffed Plaintiffs' efforts to negotiate settlement of this litigation

24  prior to trial.  Defendants' adamant refusal to seriously consider a negotiated resolution until

25  September 2009 directly caused the number of hours spent litigating both the state and the

26  federal actions to increase year after year.

27  Plaintiffs first tried to settle the issues in this case before even filing suit.  Plaintiffs wrote

28  to and met with Caltrans officials to explain the barriers and violations at issue, and presented

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Caltrans with a proposal for structured negotiations in lieu of litigation. Caltrans, however,

2   rejected this proposal, and refused even to acknowledge that there were substantial access

3   barriers along its pedestrian facilities, much less to commit to remedy the barriers. Plaintiffs

4   were thus forced to file the federal action in August 2006 in order to seek systemic relief. At the

5   time of this first failed settlement effort, Plaintiffs' attorney's fees and costs were de minimis.

6          After the federal action was filed and discovery undertaken, the parties attended a formal

7   mediation in May 2007 before retired California Supreme Court Justice Panelli at JAMS.

8   Plaintiffs made a comprehensive written settlement proposal as part of this mediation.

9   Defendants failed to even respond to Plaintiffs' settlement proposal, forcing the case back onto

10  the litigation track. At the time of this second failed settlement effort, Plaintiffs' total attorney's

11  fees were approximately $445,000.

12         A year later, after Defendants' strategy had resulted in two lawsuits instead of one, the

13  parties engaged in further settlement negotiations starting in May 2008. These negotiations

14  involved a series of face-to-face settlement meetings and exchanges of proposals and

15  counterproposals. In an effort to facilitate the settlement process, Plaintiffs agreed to place

16  active litigation on hold. Then, in the midst of negotiations over a global settlement covering

17  both of the lawsuits, Defendants again simply walked away from the negotiation process without

18  explanation. The two lawsuits thus returned to active litigation. At the time of this third failed

19  settlement effort, Plaintiffs' total fees were approximately $1.8 million.

20         Almost a year later, in April 2009, after fiercely contested litigation in both the federal

21  and state actions, Class Counsel urged that the parties return to a settlement process in order to

22  avoid the substantial additional time and effort of preparing the federal action for trial. Plaintiffs

23  requested that the judge presiding in the state court action – Judge Freedman – refer the parties to

24  a settlement judge. Defense counsel opposed this referral, stating that Defendants were not

25  interested in pursuing further settlement efforts at that time. Judge Freedman nevertheless

26  ordered the parties to attend a settlement conference before Alameda County Superior Court

27  Judge True. Plaintiffs again made a comprehensive written settlement proposal covering both of

28  the actions. Defendants, however, again failed to respond to Plaintiffs' settlement proposal. As

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   a result, this fourth settlement effort also failed and Plaintiffs had to prepare fully for trial.  At

2   that point, Plaintiffs' total lodestar for all work in both cases was approximately $4.4 million in

3   fees and approximately $125,000 in costs.

4          Plaintiffs' preparation for trial in the federal action entailed substantial additional time

5   and effort.  Defendants' summary judgment motion was thoroughly briefed and denied.  Class

6   Counsel retained experts to conduct extensive investigations into the program access issues and

7   new construction/ alteration violations issues.  Defendants designated experts of their own

8   including an expert from Alabama, and Class Counsel flew across the country to take his

9   deposition.  Other expert witnesses were designated by each side including experts on Caltrans'

10  financial resources and statistician experts for each side.  Depositions of percipient and expert

11  witnesses and discovery battles in the federal action continued to the eve of trial.  Class Counsel

12  reviewed, sorted, and entered into a trial management database tens of thousands of documents.

13  Many of these documents were designated for use as trial exhibits.  Class Counsel reviewed all

14  of the written discovery in the case, as well as all of the deposition testimony, and designated

15  relevant portions for use at trial.  Class Counsel interviewed and prepared for trial dozens of

16  witnesses.

17         Each side filed various in limine motions and proposed findings of fact and conclusions

18  of law, as well as trial briefs.  All legal contentions raised in Defendants' briefs filed on the eve

19  of trial were decided against Defendants.  The foregoing was only part of the extensive trial

20  preparation work that Class Counsel were forced to undertake in order to be prepared to try the

21  federal action.  Moreover, at the same time, contentious discovery and motion practice in the

22  state court action proceeded.

23         Shortly before the federal trial began, the parties attended a mandatory federal settlement

24  conference before Magistrate Judge Laporte.  Defendants again asserted they were not interested

25  in a global settlement.  The parties attempted to negotiate a partial settlement, but in the end

26  Defendants once again declined to support even a partial settlement.  As a result, the federal trial

27  proceeded while the state case continued to advance.  Only when this Court stated multiple times

28  during the first days of trial that the parties should settle did Defendants finally participate in

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   negotiations with a team including individuals with authority and interest in a global settlement.

2   This settlement process required a series of intensive negotiation sessions supervised by

3   Magistrate Judge Laporte.  The final drafting of the Settlement Agreement, with negotiation of

4   all of the fine points, took several months of additional work.

5         Ultimately, as discussed above, Caltrans has committed to a comprehensive settlement

6   covering both the state and federal actions and providing relief to the Plaintiff class on virtually

7   every issue in the litigation.

8         As shown in the chart in Section VI, Plaintiffs' total lodestar for all work in both cases is

9   approximately $9,938,900 in fees, representing over 20,700 hours of attorney and legal assistant

10   time.  Class Counsel, in the exercise of billing judgment, have "no charged" over 660 hours of

11   their time in calculating this lodestar.  This billing judgment reflected in the total lodestar

12   includes over $292,017.50 in specific fees that were "no charged" as well as an across-the-board

13   reduction of 5 percent to account for any inefficiencies.[6]  The cap of $8.75 million thus already

14   reflects an *additional* significant reduction (approximately twelve percent) from Plaintiffs'

15   current actual reasonable lodestar fees.[7]  A fee award equal to the cap of $8.75 million is thus

16   fully justified and reasonable.

17       **D.**      **Plaintiffs Are Entitled to a Multiplier.**

18         "When a party prevails under both federal and state law, the district court may apply the

19   more generous provisions of state law in calculating a fee award, such as including a multiplier

20   for contingent fee risk."  *Fair Housing Council of San Diego v. Penasquitos Casablanca*

21   *Owner's Ass'n*, 523 F. Supp. 2d 1164, 1170 (S.D. Cal. 2007) (citing *Mangold v. California*

22   *Public Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995)); *NFB v. Target*, 2009 WL 2390261

23   at *6-*9 (awarding 1.65 multiplier where case encompassed both federal ADA claims and state

24   Unruh and DPA claims); *Chin v. DaimlerChrysler Corp.*, 520 F. Supp. 2d 589, 611-19 (D. N.J.

25   2007) (using multiplier when calculating fees under California law); *see also Downey Cares v.*

26

27     [6] See Paradis Decl., ¶ 30; Allen Decl., ¶¶ 27-28; Korhman Decl., ¶ 34.

28     [7] Plaintiffs will necessarily incur fees in obtaining final approval, including issuing notice to the class and responding to any objections.  Records of additional fees incurred after February 28, 2010 will be included with Plaintiffs' reply in support of this motion.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 *Downey Comm. Development Comm'n*, 196 Cal.App.3d 983, 993, 242 Cal.Rptr. 272 (Cal. App.

2 1987).  A plaintiff prevailing under California civil rights laws may be entitled to a calculation of

3 fees using a multiplier of counsel's lodestar fees.  *Ketchum v. Moses*, 24 Cal.4th at 1136-39.  The

4 Court has discretion to increase the lodestar figure to reflect various factors that cannot be

5 demonstrated by billing records alone:  (1) the novelty, difficulty, and complexity of the

6 questions involved; (2) the lawyers' skill in presenting them; (3) the extent to which the nature of

7 the litigation precluded other employment by the attorneys; (4) the contingent nature of the fee

8 award, considering both success on the merits and eligibility for an award; and (5) the results

9 achieved.  *Crommie v. State of California*, 840 F. Supp. 719, 725 (N.D. Cal. 1994); *Ketchum v.*

10 *Moses*, 24 Cal.4th at 1132.  Indeed, this Court recently awarded a 2.0 multiplier in light of

11 analogous factors in a discrimination case involving California law.  *Leuzinger v. County of*

12 *Lake*, No. C 06-00398 SBA, 2009 WL 839056 at *12 (N.D. Cal., Mar 30, 2009).  The goal in

13 adjusting fees upward is to "entice competent counsel to undertake difficult public interest

14 cases." *Crommie*, 840 F. Supp. at 726.  When litigation includes both federal and California

15 claims, the Court may apply a multiplier to the entire lodestar for the litigation.  *See Mangold v.*

16 *California Public Utilities Com'n*, 67 F.3d at 1478; *NFB v. Target*, 2009 WL 2390261 at *6;

17 *Alvarado v. Federal Exp. Corp.*, No. C 04-0098 SI, 2008 WL 2340211 at *4 (N.D. Cal., June 05,

18 2008) (where relief obtained is based on both federal and state law claims, state law governs the

19 issuance of attorney fees).

20         The lodestar itself is based only on market rates, which are subject to normal

21 performance expectations and "d[o] not already reflect an expectation of excellent results."

22 *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).  Exceptional results in the face

23 of vigorous opposition and in the absence of supporting precedent militate in favor of higher

24 multiplier values.  *See id*. at 1048.  "As in *Heritage v. Town of Woodside*, Nos. A120749 &

25 A120757, 2008 WL 4868816 (Cal.Ct.App. 2008), a case in which the state court awarded a 2.0

26 multiplier, the present action 'added to the jurisprudence of California on legal issues of public

27 interest' by expanding important civil rights to the disabled, with the assistance of little existing

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    case law. *See id.* at 3. Plaintiffs have substantially achieved their goals. . . . Plaintiffs have

2    broken new ground in an important area of law." *NFB v. Target*, 2009 WL 2390261 at *7.

3         In the litigation at hand, there was little or no legal precedent on a number of the disputed

4    issues. For example, no prior case established that law a public entity responsible for curb ramps

5    must upgrade existing noncompliant curb ramps, in addition to installing curb ramps when

6    lacking, in order to meet applicable legal standards. No prior case established that the law

7    requires public entities, when providing temporary pedestrian routes around or through

8    construction sites, to ensure that such temporary pedestrian routes are accessible to disabled

9    pedestrians. No prior case determined that there is a private right of action under California law

10   to enforce the Self-Evaluation and Transition Plan requirements of the ADA. Given that

11   Plaintiffs prevailed on most of the contested, complex legal issues in these cases, Class Counsel

12   presented them with a degree of skill warranting an upward adjustment of the lodestar.

13        Moreover, the tens of thousands of hours of attorney and legal assistant time consumed

14   by the state and federal cases constitute compelling evidence that Class Counsel were required to

15   turn down other cases in order to prosecute this litigation against Caltrans. These actions lasted

16   more than three years and consumed enormous amounts of time and effort by the core group of

17   attorneys who worked on the cases.

18        "Risk of non-payment is also an issue to be considered. A contingent fee must be higher

19   than a fee for the same legal services paid as they are performed. The contingent fee

20   compensates the lawyer not only for the legal services he renders but for the loan of those

21   services. . . . The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to

22   bring the financial incentives for attorneys enforcing important constitutional rights . . . into line

23   with incentives they have to undertake claims for which they are paid on a fee-for-services

24   basis." *NFB v. Target*, 2009 WL 2390261 at *7 (quotation marks and citations omitted). As

25   with *NFB v. Target*, "[i]n terms of the risk that plaintiffs would not prevail, it should be noted

26   that defendant is a large [entity] whose resources dwarfed those available to plaintiffs. The

27   arguments were new, the law uncharted. Defendant's arguments threatened to derail plaintiffs'

28   strategy on more than one occasion. Without much legal precedent to guide their assessment of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  risk, plaintiffs' attorneys can hardly be faulted for seeking a higher than usual return on their

2  investment.  In summary, this was a substantially risky case; it merits a substantial multiplier."

3  *Id.* at *8.

4        Finally, the benefits to the public resulting from this litigation are significant, concrete,

5  and enduring.  Caltrans has committed to a substantial increase in its funding for barrier removal,

6  as described above.  As a result, previously inaccessible pedestrian facilities and Park and Ride

7  facilities throughout the entire state will finally be made accessible to persons with mobility

8  and/or vision disabilities.  Moreover, the result in these cases sends a message to other public

9  agencies and other states throughout the nation that the law requires similar action on their part.

10  Because no precedent compelled this result, the risks of this litigation were enormous, but the

11  benefits were great.  As indicated above, the importance of the results of this litigation to class

12  members is described in the declarations of Jeff Thom and Ben Rockwell, filed herewith.

13        Courts also adjust multipliers upward to reflect delays in expected payment and counsel's

14  effective loan of legal services to the client class.  *NFB v. Target*, 2009 WL 2390261 at *8; *see,*

15  *e.g.*, *Stevens v. Vons Cos.*, 2d Civil Nos. B196755, B201528, 2009 WL 117902, at *10 (Cal.

16  App. 2009) (upholding 1.65 and 1.4 multipliers in light of three-year duration of the lawsuit

17  during which class counsel received no compensation).  As in *Stevens* and *Target*, Plaintiffs'

18  success here followed years of litigation during which Class Counsel received no fees.

19        Ample precedent supports application of multipliers in actions such as this.  For example,

20  Judge Patel of the Northern District awarded a 1.8 multiplier to class counsel in a similar

21  precedent setting case: *Lieber v. Macys West*, No. C 96-2955 MHP (N.D. Cal. Dec. 18, 2000).

22  Like the present case, *Lieber* involved novel issues of law and a determined opposition by a well

23  resourced defendant, combined California and federal statutory claims for denial of access, and

24  resulted in substantial injunctive relief on behalf of a certified class.  *See Lieber v. Macy's West,*

25  *Inc.*, 80 F. Supp. 2d 1065 (N.D. Cal. 1999).  In another similar case, *Lucas v. Kmart Corp.*, No.

26  99-cv-01923-JLK, 2006 WL 2729260 (D. Colo. July 27, 2006), the federal district court,

27  applying California law on attorneys' fees, ordered a 1.87 multiplier in calculating the reasonable

28  fees and costs plaintiffs would be entitled to recover for securing a settlement on behalf of a

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   nationwide class seeking relief under Title III of the ADA and a damages subclass under various

2   state laws. *Id.* at *21-27. The *Lucas* case, as in the case at hand, involved a determined

3   opposition by a large entity; a combination of state and federal access claims; and a final

4   outcome in the form of a class settlement that provided injunctive relief. The Northern District

5   also awarded a multiplier of 2.0 to DRA in an earlier disability access case – *Chabner v. United*

6   *of Omaha Life Ins. Co.*, No. C 95-0447 MHP (N.D. Cal. Apr. 5, 1999). The *Chabner* case,

7   although precedent setting, did not include a certified class. Most recently, in *NFB v. Target*,

8   2009 WL 2390261, Judge Patel, in another case that combined federal and California state law

9   claims, contingent risk, an uncertain area of the law, and a determined and well resourced

10   defendant, awarded a 1.65 multiplier in a fee award issued in 2009. Absent a cap, Plaintiffs'

11   lodestar should thus be increased by application of a multiplier of at least 1.65, if not more.[8]

12         This multiplier should properly be considered in determining the reasonable amount of

13   fees to award, particularly given that the current fee award also must cover future monitoring

14   work for the thirty-year duration of the settlement. In order to facilitate the settlement and obtain

15   finality to benefit the class, Class Counsel were forced to agree that no future fees could be

16   claimed or recovered for ordinary monitoring of Defendants' compliance with the Settlement

17   Agreement. Since a multiplier here is appropriate simply to compensate for the contingent risk

18   of the litigation and the results achieved, the lack of future fee payments for monitoring makes

19   the award of a multiplier in this case even more essential to ensure adequate compensation.

20         Accordingly, even if a large percentage of Plaintiffs' lodestar were for some reason

21   disallowed, the multiplier would increase the remainder of Plaintiffs' lodestar to an amount

22   certainly exceeding the cap of $8.75 million.

23       **E.**      **Plaintiffs Are Entitled To Their Litigation Costs.**

24         Fed. R. Civ. P. 54(d)(1) provides that "costs – other than attorney's fees – should be

25   allowed to the prevailing party" unless otherwise provided by law or court order. Here, Class

26   Counsel have incurred approximately $371,332.45 in reimbursable costs, and Defendants have

27   agreed that Plaintiffs may seek costs and expenses not exceeding $391,477. This amount is

28

---

[8] A list of representative cases applying multipliers to fee awards is included as Exhibit 4 to the
Declaration of Sanford Rosen.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

reasonable for the prosecution of this complicated class action.  The requested costs properly include the expenses of experts.  *See Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002) (ADA authorizes award of expert witness fees to prevailing plaintiffs).  Plaintiffs' litigation costs are itemized in the declarations of Class Counsel,[9] and will be updated in Plaintiffs' reply in support of this motion to reflect any additional costs after February 28, 2010.

### F.   <u>Plaintiffs Are Entitled to Fees for Work Negotiating and Litigating the Fees and Costs.</u>

It is well established that a prevailing plaintiff is entitled to receive fees for time spent in litigating a motion for fees.  *Davis v. City and County of San Francisco*, 976 F.2d at 1544 ("This Court has repeatedly held that time spent by counsel in establishing the right to a fee award is compensable."); *Bernardi v. Yeutter*, 951 F.2d 971, 976 (9th Cir. 1991) (denial of fees incurred in preparing fee request was reversible error); *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (characterizing defendant's objection to fees on fees as "frivolous"); *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990) (preference for treating "a case as an inclusive whole, rather than as atomized line-items" under federal fee-shifting provisions).

Through February 28, 2010, Class Counsel have expended over 258 hours of attorney and paralegal time in negotiating and briefing the fees and costs issue, at a value of $154,373.50.  Paradis Decl., ¶ 27 & Exh. H; Kohrman Decl., ¶ 31 & Exh. D.  Plaintiffs will provide updated information for future fees on fees in their reply briefing.  Adding the fees on fees to the merits work increases the extent to which Plaintiffs' total fee award, if not capped, would exceed the $8.75 million cap.  The fees on fees amount is thus yet another justification for payment of the full amount of the $8.75 million cap to Plaintiffs for reasonable fees.

## VI.   DETAILED SUMMARY OF FEES AND COSTS

The following table provides details of the fees and costs for all Class Counsel.  It does not reflect application of a multiplier to enhance fees for work on the merits.

---

[9] Paradis Decl., ¶ 26 & Exh. G; Allen Decl., ¶ 25 & Exh. C; Kohrman Decl., ¶ 29-30 & Exh. C.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

| | RATE | GRAD DATE | HOURS | FEES & COSTS | |
|---|---|---|---|---|---|
| **Disability Rights Advocates** | | | | | |
| Sid Wolinsky | $835.00 | 1961 | 180.0 | $150,300.00 | |
| Laurence Paradis | $730.00 | 1985 | 3,729.5 | $2,722,535.00 | |
| Melissa Kasnitz | $650.00 | 1992 | 267.2 | $173,680.00 | |
| Ron Elsberry | $640.00 | 1987 | 740.5 | $473,920.00 | |
| Jennifer Bezoza | $570.00 | 2000 | 42.5 | $24,225.00 | |
| Roger Heller | $560.00 | 2001 | 590.2 | $330,512.00 | |
| Kevin Knestrick | $535.00 | 2003 | 234.0 | $125,190.00 | |
| Alexius Markwalder | $535.00 | 2003 | 90.1 | $48,203.50 | |
| Kasey Corbit | $500.00 | 2004 | 201.8 | $100,900.00 | |
| Mary-Lee Kimber | $475.00 | 2005 | 4,276.6 | $2,031,385.00 | |
| Stephanie Biedermann | $350.00 | 2007 | 483.6 | $169,260.00 | |
| Becca Von Behren | $290.00 | 2008 | 1,052.4 | $305,196.00 | |
| Stephanie Enyart | $265.00 | 2009 | 145.8 | $38,637.00 | |
| Senior Paralegal | $265.00 | | 485.0 | $128,525.00 | |
| Summer Associates | $245.00 | | 541.1 | $132,569.50 | |
| Paralegal | $225.00 | | 996.5 | $224,212.50 | |
| Law Clerk | $175.00 | | 2,162.7 | $378,472.50 | |
| Case Clerk | $165.00 | | 181.5 | $29,947.50 | |
| | | | **16,401.0 hours** | **Fees** | **$7,587,670.50** |
| | | | | **Costs** | **$288,543.50** |
| | | | | **Total** | **$7,876,214.00** |
| **Skadden, Arps** | | | | | |
| José Allen | $930.00 | 1976 | 1,879.9 | $1,734,111.00 | |
| Sheryl Wu | $530.00 | 2005 | 132.4 | $70,172.00 | |
| Jason Breeding | $395.00 | 2008 | 324.3 | $132,288.00 | |
| Nathaniel Fisher | $395.00 | 2008 | 179.3 | $72,776.50 | |
| Legal Assistants | $285.00 | | 516.50 | $147,202.50 | |
| Other | $300.00 | | 89.70 | $26,911.00 | |
| | | | **3,122.1 hours** | **Fees** | **$2,183,461.00** |
| | | | | **Costs** | **$76,397.84** |
| | | | | **Total** | **$2,259,858.84** |
| **AARP** | | | | | |
| Dan Kohrman | $740.00 | 1984 | 249.25 | $184,445.00 | |
| Julie Nepveu | $660.00 | 1991 | 684.25 | $451,605.00 | |
| Legal Externs | $245.00 | | 223.75 | $54,818.75 | |
| | | | **1,157.25 hours** | **Fees** | **$690,868.75** |
| | | | | **Costs** | **$6,391.11** |
| | | | | **Total** | **$697,259.86** |
| | | | **Total Merits Time\*** **20,706.4 hours** | **Total Merits Fees\*** **$10,462,000.25** | |
| | | | **Voluntary 5% Reduction:** | **($523,100.01)** | |
| | | | **Lodestar Fees:** | **$9,938,900.24** | |
| | | | **Fees on Fees:** | **$154,373.50** | |
| | | | **Total Fees:** | **$10,093,273.74** | |
| | | | **Total Costs:** | **$371,332.45** | |

\*Total Merits Time and Total Merits Fees reflect 660 hours of specific no-charged time, worth $292,017.50.

## VII.    CONCLUSION

Plaintiffs respectfully request that the Court enter an order requiring Defendants to pay Plaintiffs $8.75 million in fees and $371,332.45 in costs.


Dated: March 23, 2010

Respectfully submitted,
DISABILITY RIGHTS ADVOCATES
AARP FOUNDATION LITIGATION
JOSE ALLEN, ESQ.


_____/s/_____
Laurence Paradis
Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644