1   RONALD W. BEALS (SBN 53131)
    DAVID GOSSAGE (SBN 83522)
2   G. MICHAEL HARRINGTON (SBN 124677)
    ANKUSH AGARWAL (SBN 233150)
3   595 Market Street, Suite 1700, San Francisco, CA 94105
    Mail:        P.O. Box 7444, San Francisco, CA 94120-7444
4   Telephone:    (415) 904-5700, Facsimile: (415) 904-2333

5   GREENBERG TRAURIG, LLP
    GREGORY F. HURLEY (SBN 126791)
6   MICHAEL J. CHILLEEN (SBN 210704)
    ALANA R. CHO (SBN 254730)
7   3161 Michelson Drive, Suite 1000, Irvine, California 92612
    Telephone:    (949) 732-6500, Facsimile: (949) 732-6501
8   E-mails:      hurleyg@gtlaw.com;
                  chilleenm@gtlaw.com; choa@gtlaw.com
9

10  Attorneys for Defendants CALIFORNIA DEPARTMENT
    OF TRANSPORTATION and WILL KEMPTON, in his capacity
11  as Director of the California Department of Transportation

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15  CALIFORNIANS FOR DISABILITY          CASE NO. C 06 5125 SBA
    RIGHTS, INC. ("CDR"), CALIFORNIA
16  COUNCIL OF THE BLIND ("CCB"),        CLASS ACTION
    BEN ROCKWELL and DMITRI
17  BELSER, on behalf of themselves, and DEFENDANTS' OPPOSITION TO
    on behalf of all others similarly situated, PLAINTIFFS' MOTION FOR
18                                       REASONABLE ATTORNEYS' FEES AND
                    Plaintiffs,          COSTS
19
            vs.                          *[Filed concurrently with Dec. of G. Hurley ISO
20                                       Defendants' Opposition to Plaintiffs' Motion for
    CALIFORNIA DEPARTMENT OF             Reasonable Attorneys' Fees and Costs; Objection
21  TRANSPORTATION ("Caltrans") and      to Dec. of L. Paradis; Objection to Dec. of J. Allen;
    WILL KEMPTON, in his official capacity. Objection to Dec. of D. Kohrman; Objection to
22                                       Dec. of S. Rosen; Objection to Dec. of R. Pearl;
                    Defendants.          Objection to Dec. of W. Alderman; Objection to
23                                       Dec. of T. Schneider; Objection to Dec. of B.
                                         Rockwell; Objection to Dec. of J. Thom; and
24                                       [Proposed] Order; Request for Judicial Notice
25
26                                       Date:        May 13, 2010
                                         Time:        10:00 a.m.
27                                       Judge:       Hon. Maria-Elena James
                                         Courtroom:   B, 15th Floor
28

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     ARGUMENT ......................................................................................................1

   A.   Plaintiffs Fail to Satisfy the Burden to Show Their Lodestar is Reasonable. .........................1

   B.   Plaintiffs' Rates Exceed Market Rates. .........................................................1

   C.   Reductions in Hours. ..............................................................................7

       1.   Lack of Billing Judgment.....................................................................8

       2.   Inefficiencies/Overstaffing ...............................................................9

       3.   Documentation ...........................................................................10

       4.   Other reductions .........................................................................11

III.    PLAINTIFFS ARE NOT ENTITLED TO A MULTIPLIER ............................12

   A.   Plaintiffs are not Entitled to a Multiplier under the Settlement Agreement.........................12

   B.   Plaintiffs Fail to Satisfy the Heavy Burden to Show that a Multiplier is Warranted. .........13

       1.   Novelty and Complexity ...............................................................14

       2.   Skill in Presenting Novel or Complex Issues ..................................17

       3.   Exceptional Results.......................................................................18

       4.   Preclusion of other work ..............................................................20

       5.   Whether the case is desirable .......................................................20

       6.   Risk ..............................................................................................21

       7.   Delay in Payment.........................................................................22

       8.   Award Against Public Entity .......................................................24

       9.   Fee recipient ................................................................................24

       10.  Charitable funding for lawsuits of the same character (*e.g.*, *Northwest*, 159 Cal. App. 4th at 881).  DRA and AARP receive charitable contributions for bringing lawsuits of this character (HDec., ¶63 so their livelihoods don't depend on fees from defendants such as Caltrans or fees from this case. ..............................................24

**IV.    FEES ON FEES AND COSTS.**.................................................................................25

**V.    CONCLUSION** .....................................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

*Anderson v. American Airlines, Inc.,*
  No. C 05-04292, 2008 WL 4816620 (N.D. Cal. Nov. 5, 2008)............................................ 17

*Anderson v. Long Beach City,*
  81 Fed. Appx. 703 (9th Cir. 2003)........................................................................................ 21

*Applegate v. U.S.,*
  52 Fed. Cl. 751 (2002) .............................................................................. 18, 20, 21

*Bancroft v. Trizechahn Corp.,*
  No. CV 02-2373 SVW (FMOx), 2006 WL 5878143 (C.D. Cal. Aug. 14, 2006)......................... 20, 22

*Bankston v. Patenaude & Felix,*
  No. C 07-3396 (PVT), 2008 WL 4078451 (N.D. Cal. Aug. 29, 2008) ................................................. 2

*Barden v. City of Sacramento,*
  292 F. 3d 1073 (9th Cir. 2002), cert. denied, 539 U.S. 958 (2003) ................................. 16, 17

*Blanchard v. Bereron,*
  489 U.S. 87, 93 (1989)............................................................................................. 9

*Blum v. Stenson,*
  465 U.S. 886, 895 (1984)........................................................................................ passim

*Burt v. County of Contra Costa,*
  2001 WL 1135433 (N.D. Cal. 2001) ..................................................................... 9

*Camacho v. Bridgeport Financial, Inc.,*
  No. C 04-00478 CRB, 2008 WL 2951290 (N.D. Cal. Jul. 24, 2008),
  *vac. on another ground*, 523 F. 3d 973 (9th Cir. 2008)......................................................... 7

*Campbell v. National Passenger Railroad Corp.,*
  No. C 05-05434 CW, 2010 WL 625362 (N.D. Cal. Feb. 18. 2010) ................................... 4, 6

*Case v. Unif. School Dist.*
  No. 233, 157 F. 3d 1243 (10th Cir. 1998)............................................................... 8, 10

*Chabner v. United of Omaha Life Ins. Co.,*
  1999 WL 33227443 .............................................................................................. 13

*Chalmers v. City of Los Angeles,*
  796 F. 2d 1205 (9th Cir. 1986), *amend. on denial of reh'g*, 808 F. 2d 1373 (9th Cir. 1987)....... 7, 9, 10

*Chanel, Inc. v. Doan ,*
   2007 WL 781976 (N.D. Cal. March 13, 2007) ........................................................... 2

Children,
   143 F.R.D. 61 (D. Del. 1992) ................................................................................. 12

*Coles v. City of Oakland,*
   No. C03-2961 TEH, 2007 WL 39304 (N.D. Cal. 2007)............................................ 2, 23

*Copeland v. Marshall,*
   641 F .2d 880 (D.C. Ct. App. 1980) ......................................................................... 8, 20

*Craigslist, Inc. v. NatureMarket Inc.,*
   N. C 08-5065 (PJH), 2010 WL 807446 (N.D. Cal. Mar. 5, 2010) ........................ 2, 4, 6, 7

*Cruz v. Alhambra School Dist.,*
   601 F. Supp. 2d 1183 (C. D. Cal. 2009) ................................................................. 3, 18

*Curry v. Contract Fabricators Inc. Profit Sharing Plan,*
   744 F. Supp. 1061 ................................................................................................ 5

*Daggitt v. United Food and Commercial Workers Int'l,*
   245 F. 3d 981 (8th Cir. 2001) ................................................................................. 15

*Dang v. Cross,*
   2003 WL 2150137 (C.D. Cal. Jul. 1, 2003) ............................................................ 10

*Davis v. City and Cty. of SF,*
   976 F. 2d 1536 (9th Cir. 1992), vacated on another ground, 984 F. 2d 345 (9th Cir. 1992)...... 1, 11, 13

*Earth Island Inst. Inc. v. Southern Cal. Edison,*
   838 F. Supp. 458 (S.D. Cal. 1993)........................................................................... 19

*Estrada v. FedEx Ground Package Syst., Inc.,*
   154 Cal. App. 4th 1 (2007) .................................................................................... 20

*Farris v. Cox,*
   508 F. Supp. 222 (N.D. Cal. 1981) ......................................................................... 9

*Finkelstein v. Bergna,*
   804 F. Supp. 1235 (N.D. Cal. 1992) ....................................................................... 5

*Flannery v. California Highway Patrol,*
   61 Cal. App. 4th 629, 647 (1998) ........................................................................... 14, 20

*Forshee v. Waterloo Indus., Inc.,*
   178 F. 3d 527 (8th Cir. 1999) ................................................................................. 18

*Freitag v. California Dept. of Corrections*,
  No. C00-2278 TEH, Slip op., 2009 WL 2485552 (N.D. C.A. Aug. 12, 2009) ........................... passim

*Gates v. Gates*,
  39 F. 3d 1439 (1994) ................................................................................................................ 2

*Greater Los Angeles Council on Deafness v. Community Television of Southern California*,
  813 F. 2d 217 (9th Cir. 1987) ................................................................................................ 14

*Greene v. Dillingham Const., N.A., Inc.*,
  101 Cal. App. 4th 418, 427 (2002) .................................................................................... 12, 13

*Guckenberger v. Boston Univ.*,
  8 F. Supp. 2d 91 (D. Mass. 1998) ............................................................................................ 9

*Heritage v. Woodside*,
  Nos. A120749 & A12075, 2008 WL 4868816 (Cal. Super. Ct, San Mateo Cty., Nov. 12, 2008) ....... 13

*Hess v. Ramona School Dist.*,
  No. 07-CV-0049 W(CAB), 2008 WL 5381243 (S.D. Cal. Dec. 19, 2008) ........................... 10, 11, 24

*Heston v. City of Salinas*,
  2009 WL 248362 (N.D. Cal. 2009) ...................................................................................... 21

*In re Donovan*,
  877 F. 2d 982 ........................................................................................................................ 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F. 3d 1291 (9th Cir. 1994) .............................................................................................. 23

*Jacobs v. Calif. State Automobile Assoc.*,
  No. C 07-00362 MHP, 2009 WL 3562871 ............................................................................ 3

*Johnson v. Georgia Highway Exp., Inc.*,
  488 F. 2d 714 ........................................................................................................................ 9

*Keith v. Volpe*,
  644 F. Supp. 1317 (C.D. Cal. 1986), aff'd., 858 F. 2d 467 (9th Cir. 1988) ......................... 10

*Kempf v. Barrett Bus. Serv. Inc.*,
  No. C-06-3161 SC, 2007 WL 4167016, *5 (N.D. Cal. Nov. 20, 2007) ................................. 2

*Ketchum v. Moses*,
  24 Cal. 4th 1122, 1131-32 (2001) .......................................................................... 1, 14, 17, 21

*L.H. v. Schwarzenegger*,
  645 F. Supp. 2d 888 (E.D. Cal. 2009) .................................................................................... 4

*Lira v. Cate,*
No. C 00-0905 SI, 2010 WL 727979 (N.D. Cal. Feb. 6, 2010) ........................................................... 23

*Lopez v. Unif. Sch. District,*
385 F. Supp. 2d 981 (N.D. Cal. 2005) ....................................................................................... passim

*Lucas v. Kmart Corp.,*
No. 99-cv-01923-JLK, 2006 WL 279260 ................................................................................................ 24

*MacDougal v. Catalyst Nightclub,*
58 F. Supp. 2d 1101 (N.D. Cal. 1999) ................................................................................................. 8

*Martin v. FedEx Ground Package Syst., Inc.*
No. C 06-6883 VRW, Slip opn., 2008 WL 547876 (N.D. Cal. Dec. 31, 2008) .................................... 2

*Masimo Corp. v. Tyco Health Care Gp., L.P.,*
No. CV 02-477 MRP (AJWx), 2007 WL 5279897 (C.D. Cal. 2007) .............................................. 8, 9

*Miller v. Kenworth of Dothan, Inc.,*
117 F. Supp. 2d 1247 (M.D. Ala. 2000) .............................................................................................. 5

*Missouri v. Jenkins,*
491 U.S. 274 (1989).......................................................................................................................... 11

*NFB v. Target Corp.,*
No. C 06-01802 MHP, Slip opn., 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ........................ passim

*Navarro v. GNC,*
No. 03-603 SBA, 2005 WL 2333803, *8-10 (N.D. Cal. 2005) ............................................................ 4

*Norman v. Housing Auth. of the City of Montgomery,*
836 F. 2d 1292 (11th Cir. 1988) ....................................................................................................... 20

*Norris v. Sysco,*
191 F. 3d 1043 ................................................................................................................................. 10

*Northwest Energetic Serv., LLC v. California Franchise Tax Bd.,*
159 Cal. App. 4th 841 (2008) ................................................................................................. 17, 20, 24

Olson,
884 F. 2d 1415 (D.C. Cir. 1989)..................................................................................................... 9, 11

*Pacific West Cable Company v. City of Sacramento,*
693 F. Supp. 865 (E.D. Cal. 1988)................................................................................................ 16, 23

*Pande v. ChevronTexaco Corp.,*
No. C-04-05107 JCS, 2008 .................................................................................................................. 4

*Pastre v. Weber,*
  800 F. Supp. 1120 ................................................................................................ 3

*Payne v. Bay Area Rapid Transit Dist.,*
  No. C 08-2098 (WDB), 2009 WL 1626588 (N.D. Cal. Jun. 5, 2008) .................... 23, 25

*Petroleum v. Valero,*
  No. C 05-3526 SBA, 2007 WL 2694207 (N.D. Cal. Sept. 11, 2007) ...................... 10

*Prison News v. Schwarzenneger,*
  561 F. Supp. 2d 1095 ............................................................................................ 4

*Quantum Health Res., Inc.,*
  962 F. Supp. 1254, 1256 (C.D. Cal. 1997) ........................................................... 7

*Ramos v. Lamm,*
  713 F. 2d 546 (9th Cir. 1983) ........................................................................ 8, 10, 14

*Robbins v. Alibrandi,*
  127 Cal. App. 4th 438, (2005) ......................................................................... 9, 20

*Robertson v. Fleetwood Travel Trailers of California, Inc.,*
  144 Cal. App. 4th 785 (2006) ......................................................................... 14, 22

*San Diego Police Officers Asso. v. San Diego P.D.,*
  76 Cal. App. 4th 19 (2000) ................................................................................. 24

*Smith v. Novato Unified Sch. Dist.,*
  No. A122105, 2009 WL 1486727 (Ct. of App. 1st Dist. 2009) .............................. 24

*Stastny v. Southern Bell Tel. & Tel. Co.,*
  458 F. Supp. 314 ................................................................................................ 12

*Stevens v. Vons, 2d Civ.*
  Nos. B196755, B201528, 2009 WL 117902, *11 (Cal. App. 2009) ...................... 23

Vanke,
  No. 98-41111 DDP, 2002 WL 1836305 (C.D. Cal. Aug. 8, 2002) ...................... 9, 11

*Welch v. Metropolitan Life Ins. Co.,*
  480 F. 3d 942 (9th Cir. 2007) ...................................................................... 9, 10, 23

*Young v. Polo Retail, LLC,*
  No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. March 28, 2007) .................... 2

*Zucker v. Occidental Petroleum Corp.,*
  968 F. Supp 1396 ................................................................................................ 9

## I.   __INTRODUCTION__

The reasonable market value of Plaintiffs' services is $3.75 million, which is the amount this Court should award.  Plaintiffs' demand for $8.75 million in fees is overreaching.  Plaintiffs' hourly rates of up to $930 exceed Bay Area market rates, and the number of hours Plaintiffs claim to have spent on this case far exceeds what was necessary.  Caltrans is aware of no class action under the Americans with Disabilities Act in which attorneys have ever been awarded an amount close to $8.75 million, much less, an award paid by taxpayers.  Perhaps recognizing their demand is unreasonable, Plaintiffs now argue that because they needed *extra incentive* to take this case, the Court should award the full $8.75 million *even if* they did not reasonably incur that amount.  By bringing this high-profile case against the State of California on behalf of a sympathetic class, Plaintiffs have amassed immeasurable long-term benefits to their statures in the legal community, thus no extra incentive or multiplier is necessary.

## II.   __ARGUMENT__

### A.   __Plaintiffs Fail to Satisfy the Burden to Show Their Lodestar is Reasonable.__

Under federal and California law, the lodestar is the starting point for calculating attorney fees. *See Lopez v. Unif. Sch. District*, 385 F. Supp. 2d 981, 986 (N.D. Cal. 2005); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001).  The lodestar is calculated by multiplying the number of hours reasonably expended on compensable tasks by the reasonable hourly rates.  *Id.*  Plaintiffs bear the burden to show their lodestar is reasonable.  *See id.*  The Court should exercise particularly careful scrutiny of Plaintiffs' demand because Caltrans is a state entity, and thus, money paid to Plaintiffs is money that could have otherwise been spent on government programs benefiting the public.  *See Lopez*, at 986.

### B.   __Plaintiffs' Rates Exceed Market Rates.__

Reasonable fees are calculated according to prevailing market rates in the relevant community for attorneys with comparable skill and experience.  *Davis v. City and Cty. of SF*, 976 F. 2d 1536, 1545-46 (9th Cir. 1992), vacated on another ground, 984 F. 2d 345 (9th Cir. 1992).  The relevant market is the Northern District.  Plaintiffs fail to satisfy the burden to provide evidence their rates are in with those prevailing in the community for services by lawyers of comparable skill, experience and reputation.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984).

Skadden's 2009 rates and DRA and AARP's 2010 rates exceed market rates in the Northern

District, per the ALM Legal Intelligence Survey of 2009 billing rates ("ALM Survey/rate(s)") attached to the Hurley Declaration ("HDec.") as Exh. A, which narrowly specifies rates for the Bay Area[1]. HDec., ¶4. Plaintiffs' rates also exceed rates in the Laffey Matrix ("*Laffey* rate(s)"), a compilation of attorney and paralegal rates relied on by courts in this district after adjusting for Northern District cost of living[2] (*e.g.*, *Craigslist, Inc. v. NatureMarket Inc.*, N. C 08-5065 (PJH), 2010 WL 807446, *22-23 (N.D. Cal. Mar. 5, 2010) (Hamilton) (adopting Judge James' report relying on Laffey Matrix). As to AARP and DRA's 2010 rates, this difference is not justified by inflation. As to all three firms, courts reduce rates where, as here, Plaintiffs don't show that inflation or market increases justify their rates. *Gates v. Gates*, 39 F. 3d 1439, 1451 (1994); *Coles v. City of Oakland*, No. C03-2961 TEH, 2007 WL 39304, *7 (N.D. Cal. 2007); *Freitag v. California Dept. of Corrections*, No. C00-2278 TEH, Slip op., 2009 WL 2485552, *3 (N.D. C.A. Aug. 12, 2009) ("None of the attorneys comment on … during the past year, there has been a general resistance to the escalation in hourly billing rates" (Citations omitted)). Based on federal statistics on the cost of living in this district, this Court has entirely denied rate increases from 2008 to 2009 and 2009 to 2010. *Craigslist*, at *26 n.6. DRA's current rates have increased up to 10% per year from DRA's 2008 rates; an increase of this magnitude is improper under *Craigslist* and given Plaintiffs' failure to provide evidence their current/2009 rates are reasonable; indeed, Plaintiffs' own evidence shows their rates exceed market increases.[3,4] Instead, the Court should award the following rates:

---

[1] The Court should not rely on nation-wide averages in the National Law Journal's survey [Dk. 466-3] or rates from unidentified areas of California in the Westlaw CourtExpress Legal Billing Reports for 2009 [Dk. 467-2]. *Petroleum v. Valero*, N. C 05-3526 SBA, 2007 WL 2694207, *5 (N.D. Cal. Sept. 11, 2007) (survey of *California* rates *too broad* to rebut survey of San Francisco rates). Plaintiffs waive any argument (*i.e.*, comparison of Plaintiffs' rates to survey rates) that the surveys are relevant. *See also* Objections to Pearl Decl. & to Rosen Decl.

[2] *See also, e.g.*, *Martin v. FedEx Ground Package Syst., Inc.*, No. C 06-6883 VRW, Slip opn., 2008 WL 547876, *7-8 (N.D. Cal. Dec. 31, 2008); *Chanel, Inc. v. Doan* , 2007 WL 781976, *6 (N.D. Cal. March 13, 2007); *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, *7 (N.D. Cal. March 28, 2007); *Kempf v. Barrett Bus. Serv. Inc.*, No. C-06-3161 SC, 2007 WL 4167016, *5 (N.D. Cal. Nov. 20, 2007); *Bankston v. Patenaude & Felix*, No. C 07-3396 (PVT), 2008 WL 4078451, *1 (N.D. Cal. Aug. 29, 2008). Compare with *Freitag*, Slip op., 2009 WL 2485552, *2 n.6 (Laffey Matrix may be *some* evidence of prevailing rate).

[3] In determining reasonableness of Plaintiffs' rates based on rates in previous years, all other factors are constant, the Court should award at most rates increased by $25/year for 2008 and earlier, which is generous given this economy. *See Freitag*, Slip op., 2009 WL 2485552, *3 ($25 increase per year between 2003 and 2008 is in line with market increases).

[4] Per Dk. 466-2 ("RBG Rate List"), RBG attorney Nolan's 2010 rate is $510. In 2008, Knestrick (DRA) and Nolan's respective rates of $450 and $440 were near identical; now, Knestrick's claimed rate of $560 is $50 higher than Nolan's. Knestrick's rate increased 10% per year; Nolan's, 7%. For Knestrick's 2008 rate, see Reply in Support of Mtn. for Atty Fees, *Kidd v. Valenzuela*, No. JCCP 004468 (Cal. Super. Mar. 4, 2009 ), Exh. 1 to the Request for Judicial Notice ("RJN").

As to Allen, <u>Caltrans knows of no case in which an attorney has been awarded a $930 rate</u>[5], much less, in a civil rights/ADA case to a "pro bono" attorney with relevant experience.  *Allen is the only one who provides testimony that Skadden's rates are reasonable*.  In *Lopez*, an ADA class action, the court reduced Allen's rate from $675 to $460 because "[a]side from this case, Allen has litigated one disability case."  *Id.* at 988.  "<u>Allen's customary hourly rate</u> as a partner for a global law firm with <u>nearly 30 years of experience</u> on behalf of corporate clients in complicated environmental and securities litigation <u>is not the reasonable market for this case</u>."  *Id.* at 989 (all emphasis added unless noted otherwise).  His rate "must be based on the needs of this case," "starting with the market rate for highly qualified civil rights attorneys."  *Id.*  Given Allen's "limited" civil rights experience, his rate "must be lower than" the rate of an attorney with 30 years civil rights experience (Lawless).'"  *Id.*  The proper rate for <u>Shiu</u> (20+ years civil rights experience) was <u>$460</u>, which was reasonable for Allen.  *Id.*  In *Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183, 1196 (C. D. Cal. 2009), <u>Shiu</u> was recently awarded $470.  Allen hasn't gained additional experience since *Lopez* [Dk. 463:2:16-24], so a rate of **$510** is generous.[6]  Allen's "private client" rate is not appropriate because he is "pro bono" counsel,[7] and his rate must be less than Wolinksy, Kohrman and Paradis'; each is more experienced in civil rights.

**Wolisky**, **Kohrman** and **Paradis** claim respective rates of $835, $740 and $730.  Wolinsky was admitted 1963, Kohrman and Paradis, 1985; Kohrman and Paradis did not begin work in civil rights until 1995 and 1996, respectively (HDec., ¶¶ 15&16).  The current *Laffey* rate for attorneys with 20+

[5] As Judge Patel recently noted, "an examination of awards" in other cases showed an $800 rate for an attorney with 30 plus years experience was not just unreasonable but "extraordinary."  The court was unable to "locate a single case from any forum in the entire country where a court approved an $800 per hour rate for any attorney" and was able to find "only a single case where a judge awarded an attorney even a rate of $700 per hour."  *Jacobs v. Calif. State Automobile Assoc.*, No. C 07-00362 MHP, 2009 WL 3562871, *3 (N.D. Cal. Oct. 27, 2009).

[6] As further evidence of Allen's lack of experience, Taco Bell recently retained but had to fire lawyers from Skadden's San Francisco ("SF") office who held themselves out as ADA access experts, and whose rates were less than Allen's. Allen was not included in the Skadden team due to his lack of expertise in the ADA. HDec., ¶9.

[7] In *Pastre v. Weber*, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991), the court declined to award Hughes Hubbard's commercial rate, and instead awarded the lower rate necessary to hire a competent civil rights attorney:

> Although we have ... noted the extraordinary competence, ingenuity and devotion plaintiff's attorneys displayed ...., there is force in defendant's argument ... he should not be required to pay for legal services at the rate Hughes Hubbard would charge to ... General Motors or IBM ... but should be required to compensate plaintiff only for what would have been charged by a competent attorney specializing in civil rights litigation. [<u>Firms such as Hughes Hubbard derive value from undertaking litigation such as this which may indeed far exceed anything we can award</u>. Had General Motors or IBM been the client it is fair to assume that neither Weiner nor Reilly would have been given the authority he had in this litigation, nor would they have acquired the experience gained from the exercise of such authority. Moreover, the known fact that Hughes Hubbard <u>provides its young associates with the opportunities that arise from this kind of litigation undoubtedly enables the firm to attract associates of a caliber that might not otherwise be available to it.</u>

years experience is $516.  *Craigslist*, 2010 WL 807446, *21-23, and the per the ALM Survey, the rate

for attorneys with 31+ years experience is $411, with 21-31 years, $398.  Thus, **$530** is reasonable for

lead counsel **Paradis**.  Wolinsky and Kohrman's rates should be less than rates awarded to comparable

*lead attorneys*.  In *Campbell v. National Passenger Railroad Corp.*, No. C 05-05434 CW, 2010 WL

625362, *7 (N.D. Cal. Feb. 18. 2010), the $625 rate sought and awarded to H. Moore was less than his

usual rate because he was not lead counsel in that case.  *Id.*[8]  Moore was admitted 2 two years before

Wolinsky, specializes in civil rights, and has litigated many discrimination cases and class actions.  *Id.*

**Wolinsky's** rate should be **$650**.  A rate of **$530** for Kohrman is generous, given his minor role in this

case.  All the above rates are generous given that Judge Armstrong has expressed doubt as to Plaintiffs'

skills as trial attorneys.[9]  *See Navarro v. GNC*, No. 03-603 SBA, 2005 WL 2333803, *8-10 (N.D. Cal.

2005) (Armstrong, S.) (rate reduction based on performance).  DRA and AARP can't justify their rates

based on rates of attorneys who work in San Francisco ("SF"), who are entitled to higher rates than

DRA and AARP due to higher operating costs.[10]  *See Freitag*, Slip op., 2009 WL 2485552, *3

("[plaintiffs] do not consider whether…hourly rates [of] counsel, each…located in the East Bay, should

be the same as the market rate for counsel in [SF], given that overhead is lower in the East Bay.").[11]

      **Kasnitz** (DRA) was admitted 1992, and has 18 years experience.  Her rate is $660.  *L.H.*, 645 F.

Supp. 2d at 895 indicates that Kasnitz' rate is unreasonable--there, a Bingham McCutchen attorney

(Kennard) with 2 years more experience than Nepveu requested a 2008 rate of $580 but was awarded

$475.  And in *Craigslist*, 2010 WL 807446, *21-23, a 2009 rate of $456 was awarded to the *lead*

*attorney* and commercial litigation partner admitted one year after Kasnitz.  **$425** is a generous rate for

---

[8] *See also Lopez*, at 991 (lower rate of $490 requested for Mary Gillespie, 1970 graduate with extensive civil rights litigation experience because her role involved coordinating co-counsel's role in the case).

[9] Judge Armstrong criticized DRA for failing to provide exhibits to opposing counsel, noting that she had never heard of an electronic exchange of exhibits in her 20 years of practice, and also noted that the attorneys had not prepared for trial as "good trial lawyers" would have (*see* Transcript of Trial on 9/16/2009, at page 14:12-17, 15:1-8, and 30:22-25, attached as Exh. 2 to RJN) and that the attorneys' performance was "shameful" (*see* Transcript of Trial on 9/18/09, at page 250:1-12, attached as Exh. 8 to RJN).

[10] The Court should measure AARP rates against East Bay or Northern District rates, not against more expensive SF rates.  RBG, Orrick and Schneider and Wallace's rates should be higher than DRA and AARP's.

[11] Also, Wolinsky, Paradis and Kohrman's rates exceed the following rates: (1) $700, Rosen (admitted 1963), lead counsel in *Prison News v. Schwarzennegger*, 561 F. Supp. 2d 1095, 1105-6 (N.D. Cal. 2008); (2) $700, P. Price (admitted 1982) "at the high end of the market," lead counsel in *Campbell*, 2010 WL 625362, *5 ($750 denied); (3) $640, M. Bien (RBG) (admitted 1981) in class action against state officials (*L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 894-6 (E.D. Cal. 2009) (analyzing Bay Area market)); and (4) $575, S. Harringman (admitted 1983), lead counsel in *Pande v. ChevronTexaco Corp.*, No. C-04-05107 JCS, 2008 U.S. Dist. LEXIS 87584, *12-13 (N.D. Cal. 2008) (denying $700).  All these attorneys have more civil rights experience than Paradis and Kohrman, and all but Price are SF attorneys who thus should have higher rates.

Kasnitz.  Nepveu of AARP, a 1991 grad., who seeks a $650 rate, should receive **$425** too.  Elsberry (DRA) was admitted 1987, and currently has 23 years experience; his rate is $640.  Under the Laffey Matrix and per the ALM Survey, a rate of **$465** is generous.[12,13]

Because Plaintiffs seek current rates for work dating back to 2005, they should receive fees for remaining Skadden[14] and DRA attorneys at rates reflecting *reasonable*, current market rates *and* the attorney's *lesser experience level when work was performed*.  In *Finkelstein v. Bergna*, 804 F. Supp. 1235, 1248 (N.D. Cal. 1992), the plaintiff sought fees for work performed by an attorney in 1987 when she was a 1st-year associate calculated at just below the attorney's then current 1991 rate.  The court held that the rate sought was excessive for work performed by a 1st-year associate:

> [T]he reason for granting fee awards at present rates for work done years in the past is to compensate for the delay in receiving payment. [A] court may 'refuse to use current hourly rates on the grounds that increased rates reflect the attorney's increased knowledge and experience, not merely inflation.' *Id.* (Citation Omitted.) … [E]ven taking inflation into account, she should be awarded no more than a reasonable 1991 rate for a first year associate.'

*Id.*  The court awarded fees for the associate's work at the rate the plaintiffs sought for current 1st-year attorneys.  *Id.*  Here, by awarding current rates, the Court is already addressing concerns about delay in payment, so to avoid a windfall, the current rates must reflect the attorney's lesser experience level when work was performed.[15]  For example, Plaintiffs seek the 2010 rate for Kimber's work between 2006 and 2010.  $475 is Kimber's 5th-year attorney rate; it reflects inflation *and* increased skill and experience, and is excessive for her work as a 1st-through 4th-year attorney.  The Court should award the current rate of a *1st-year* attorney for Kimber's work in 2006, the current rate of a *2nd-year* attorney for work in 2007, and so on, and should use this approach for all attorneys who had 0-7 years experience when work was performed[16], based on *current reasonable* rates for attorneys with the same experience

---

[12] Alternatively, RBG's claimed rate for attorney Nolan, admitted eight years before Kasnitz, is $510. Given that RBG's claimed rate has not been approved and given the rates in *L.H.* and *Craigslist*, yet recognizing Kasnitz has less experience than Nolan, Kasnitz' rate should be $500 (Nepveu should receive the same).  Also, alternatively, RBG's rate for Grunfeld, who has 2 years more experience than Elsberry, is $575; Elsberry's rate should be less, $565. [Dk.466-2; Exh. G to HDec.]

[13] Plaintiffs did not provide information about experience of attorneys other than Allen, Wolinsky, Paradis and Kohrman and should not be allowed to argue that any such attorney's experience merits a higher rate.

[14] Skadden's 2009 rates are so high they're for practical purposes comparable to 2010 rates. Contrary to fn.2 of Mr. Allen's declaration, Skadden did not request rates applicable when work was performed.  Indeed, certain time entries of Mr. Breeding (a current 2nd-year associate) are charged at a rate of **$440**; Scott Lane's work is charged at $320.

[15] *See also Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala. 1990) ("inexperience should be reflected in ... approved hourly rate"), *aff'd*, 891 F. 2d 842 (11th Cir. 1990); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1258 (M.D. Ala. 2000) (reducing rate for junior attorney for work performed as law clerk/paralegal).

[16] Years experience have less impact on the attorney's rate as the attorney gains more experience, which is why Caltrans limits this analysis to attorneys who had 0-7 years experience when the work was performed.

level the attorney had *when the work was performed*.  Alternatively, the Court should reduce the rate of each attorney who currently has 1-8 years experience to the market rates for attorneys who *currently* have comparable experience.  Either way, the Court should award fees based on these rates:

- *6-9 years experience:*  For services performed by DRA 6th-9th year attorneys, the Court should award 2010 market rates of **$380** (6 yrs.), **$390** (7 yrs.), **$400** (8 yrs.), & **$410** (9 yrs.).  These rates are generous: The *Laffey* rate for 6-7th-year attorneys is $367; for 4-7th-year attorneys, $300 (*Craigslist*, 2010 WL 807446, at *23); per the ALM Survey, the average rate for 8-10th-year attorneys is 308-$320.[17]

- *4-5 years experience*:  The 2009 Skadden and 2010 DRA market rates for services performed by 4th-year attorneys should be **$335**, for 5th year attorneys, **$350**.  These rates are in line with recent awards in cases in which rates were opposed: The 2008-2009 market rate for 5th-year attorneys is $300-$340.  *Freitag*, 2009 WL 2485552, *3 (reducing rate of $350 to $300 for Milburne and Skukla, admitted 2005; *L.H.*, 645 F. Supp. 2d at 895 ($340 rate for Kendrick and Walzcak, admitted 2005).  Per Plaintiffs' evidence, the current unopposed market rate for RBG 4th-year attorneys is $345, for a 5th-year, $360.  Dk. 466-2.  Plaintiffs should receive less than RBG's rates: for Skadden, because Skadden seeks 2009 rates and because Skadden attorneys have less civil rights experience than RBG attorneys; for DRA, because DRA has lower costs of operation.  Moreover, RBG's rates show that Plaintiffs' rates for 5th-year attorneys exceed market rates: The *2009* rate of $530 for Wu (Skadden 5th-year) is higher than the 2010 rate for a RBG attorney with 26 years experience ($520); DRA's rates of $475 and $500 for 5th-year attorneys are about the same as RBG rates of attorneys with 12-16 years experience ($490-$510).  HDec., ¶ .

- *0-3 years experience*:  The respective 2010 market rates for East Bay civil-rights attorneys (*i.e.*, DRA) with 1, 2 and 3 years experience are **$270**, **$290** and **$300**.  *Campbell*, 2010 WL 625362, *1-3 (2009 rates awarded: 1st-year attorney: $245 (denying $250), 2nd-year attorney: $265 (denying $400); 3rd-year attorney: $275 (denying $425); *Freitag*, *3 (2008 rate for 3rd-year attorney: $275 (denying $300) (each adjusted $25 for inflation).  The 2009 rates for SF attorneys (*i.e.*, Skadden) with 1, 2 and 3 years experience should be **$275**, **$305** and **$310**.[18]  Though Plaintiffs seek up to 5th-year rates for work of law school grads, **$250** is reasonable.

The rates proposed above are generous.  All exceed *Laffey* rates and the ALM averages for the Bay Area.  *See Craigslist*, 2010 WL 807446, at *23.  And, unless noted otherwise, all rates from the cases cited above *were opposed and thus scrutinized by courts for reasonableness*.  In contrast, Plaintiffs try to justify their rates based on *unopposed* rates, and often fail to inform the Court when rates were unopposed.  The order from *NFB v. Target Corp.*, No. C 06-01802 MHP, Slip opn., 2009 WL

---

[17]  DRA' claimed rates of $535 for current 6th-year attorneys, and $560 for an 8th-year attorney are equal to or more than RBG's claimed rates of $490 to $560 for SF attorneys with 12 to 26 years experience [Dk. 466-2]. HDec., ¶¶31-32.  The market rates for RBG attorneys with comparable years of experience are *much* less: for 7 years, $415-$430, for 6 years, $390.  The rates for services performed by DRA attorneys should slightly less than RBG's, as DRA is in the East Bay ($10 reduction); the rate for a DRA 8th-year attorney should be slightly more than RBG's 7th-year attorney rate.  Thus, in the alternative, the Court should award respective rates of $420 and $440 for 7th-year and 8th-year attorneys.

[18]  For a 3rd-year attorney, $310 is the average of RBG's 2008 and 2010 rates.  *See L.H.*, 645 F. Supp. 2d at 895 (2008 rate of $295 for 3rd-year attorney); Dk. 466-2 (2010 rate for 3rd-year attorney: $325).  For a 2nd-year attorney, $305 is generous, given the *Laffey* rate of $250 and the ALM rate of $195-213.  RBG's 2010 rate for a 1st-year attorney is $285 [Dk. 466-2]; Plaintiffs should receive slightly less for Skadden's *2009* rates.  In *Craigslist*, 2010 WL 807446, *23, the court reduced 2009 rates between $265 to $310 for 1st-2nd year commercial litigation attorneys to $250.  Skadden's rate for 2nd-year associates is $395.

2390261 (N.D. Cal. Aug. 3, 2009) is unreliable because <u>DRA's attorney rates were unopposed</u>. [19] "Cases involving unopposed fee motions [are] an unreliable gauge of reasonable rates because '[courts] might simply approve a request for fees without adequate inquiry...' [Citation.]" *Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997), accord, *Camacho v. Bridgeport Financial, Inc.*, No. C 04-00478 CRB, 2008 WL 2951290, *3 (N.D. Cal. Jul. 24, 2008), *vac. on another ground*, 523 F. 3d 973 (9th Cir. 2008). "[L]ack of opposition to a ... fee award gives a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment." *Quantum*, at 1256.[20]

DRA didn't provide rates for certain time entries of non-attorneys (HDec., ¶¶ 40-42). For entries that don't identify the person's position, Caltrans doesn't know whether the person is a Paralegal, Case Clerk, or Law Clerk and thus couldn't determine if Plaintiffs seek improper rates for the work performed, e.g., paralegal rates for clerk work. So for all such entries, DRA should receive fees at clerk rates. In any event, Caltrans should have a chance to brief whether each rate is reasonable based on experience and/or nature of work performed.[21]

## C.   <u>Reductions in Hours.</u>

Plaintiffs bear the burden to submit detailed time records justifying the hours claimed to have been expended. *See Chalmers v. City of Los Angeles*, 796 F. 2d 1205, 1210 (9th Cir. 1986), *amend. on denial of reh'g*, 808 F. 2d 1373 (9th Cir. 1987); *Hensley*, 461 U.S. at 433-34. To evaluate whether hours

---

[19] *E.g.* The rates in *Kidd*, No. JCCP 004468, were unopposed. *See* Exh. 2 to RJN. Plaintiffs' Westlaw CourtExpress Reports are also based on unopposed rates in <u>bankruptcy</u> cases. *See* Obj to Pearl Decl. RBG's 2010 rates are unreliable because they haven't been scrutinized by a court for reasonableness. Additional unopposed rates are identified in Caltrans' objections to declarations submitted in support of Plaintiffs' fee motion.

[20] In *Freitag*, slip op., 2009 WL 2485552, *3, in holding the plaintiffs didn't meet the burden to show their rates were reasonable, the court reasoned their declarations were "conclusory" as they *inter alia* "often rel[ied] on orders adopting hourly rates that were uncontested or part of a settlement." In *Camacho*, the court rejected the defendant's reliance "on cases that are distinguishable because, unlike here, <u>the fee requests were largely unopposed.</u>" *Id.* at *3 (emphasis added).

[21] If the Court allows Plaintiffs to seek rates based on each person's previously unidentified position, the maximum rates awarded should be $225 (paralegals), $195 (summer associates) and $155 (all clerks). These rates are generous. Though *NFB* approved these DRA 2008 paralegal & summer associate rates, the defendant did not provide contrary evidence. These rates are high compared with other rates. *See L.H.*, 645 F. Supp. 2d at 895 ($150-$170 for 1-3 yrs. experience); *Pande*, at *18; *Campbell*, *6 ($160 for SF paralegals in 2010); *Craigslist*, 2010 WL 807446, *21 ($145 for SF paralegal in 2009); *Payne v. Bay Area Rapid Transit Dist.*, No. C 08-2098 (WDB), 2009 WL 1626588, *5 (N.D. Cal. Jun. 5, 2008) ($155 for clerk-level work). DRA provides no evidence justifying the increases from their 2008 rates for summer associates and clerks or their rates for Senior Paralegals or Law Clerks. *See Pande*, *18 (rate of $140 for senior paralegal based on exceptional performance). Given that AARP and Skadden don't justify why they should receive higher rates, they should receive the same as DRA. Skadden is aware of no case awarding Skadden's rate of $285 for assistants. *Lopez*, 385 F. Supp. 2d at 989, held Skadden's assistant rates (including Zygareqicz) who performed the same work as in this case (maintaining database) were unreasonable. *See also L.H.*, at *896 (technical assistants' function is similar to paralegal's; RBG's technical assistants awarded paralegal rate of $150).

---

are reasonable, the Court must review detailed time records to determine whether the hours claimed were unnecessary, duplicative or excessive. *See id.* "Compiling raw totals of hours spent … does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended." *Copeland v. Marshall*, 641 F .2d 880, 891-92, 902-03 (D.C. Ct. App. 1980) (affirming denial of fees for nonproductive hours); *Ramos v. Lamm*, 713 F. 2d 546, 554 (9th Cir. 1983) (accord). Plaintiffs fail to justify many hours; their fees should be reduced accordingly. *See* HDec. for entries that correspond to these reductions.[22]

1.    <u>Lack of Billing Judgment</u>: Plaintiffs didn't make a "good faith effort" to exclude "excessive, redundant or otherwise unnecessary" hours, just as a lawyer in private practice must.[23] *See Hensley*, at 433. The Court should thus deny fees for such hours. *Ramos*, 713 F. 2d at 554, *see also Case v. Unif. School Dist. No. 233*, 157 F. 3d 1243, 1250 (10th Cir. 1998). Plaintiffs should not receive fees for hours they wouldn't have charged to a client such as background reading and training (e.g., technical training) (*see MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 11-12 (N.D. Cal. 1999) (attorney didn't use discretion in ADA case)[24] and work addressing "gaps in the attorneys' background knowledge" including research on local rules, where the relationship of work to the case was unclear (*L.H.*, 645 F. Supp. 2d at 900). The court should exclude "excessive, redundant or otherwise unnecessary" hours (*Hensley*, at 433): e.g., fees incurred for the deposition of Caltrans' expert (Plaintiffs <u>purposely</u> increased fees by having their most expensive attorney take the deposition),[25] excessive time spent on briefs or correspondence, filing unnecessary motions, and work related to bad faith tactics (e.g., reneging on promise to dismiss federal program access claims if state court denied Caltrans' motion to stay then filing a motion to coordinate the same clams) (HDec., ¶ 46).

---

[22] As demonstrated by the cases cited in this section, courts are willing to deny/reduce fees when, as here, the party opposing the fee award <u>painstakingly</u> identifies the **specific** entries that are deficient.

[23] Plaintiffs' 5% reduction does not demonstrate billing judgment, as Plaintiffs seek improper fees for more than 5% of their hours. For DRA, most "no charge" entries were clearly not billable anyways, e.g., ordering lunch and routing emails. HDec., ¶ 49. Skadden and AARP did not provide time entries written-off, so the Court has no way of knowing whether write-offs were actual good faith write-offs or were mostly non-compensable anyways (like DRA's "write-offs").

[24] *See also Ramos*, 713 F. 2d at 554 (same) ("Lawyers charging fees to adversaries ... may be less likely to carefully scrutinize the hours ...to determine if ... task performed is justified. [I]t would not be surprising that reported hours would include time spent <u>reading background cases ... and other materials designed to familiarize the attorney with this area of the law</u>-time that would be absorbed in a private firm's general overhead and for which the firm would not bill a client."); *see also Case*, at 1250 (same).

[25] *See In re Donovan*, 877 F. 2d 982, 996 (D. C. Cir. 1989) (while counsel is free to retain duplicative attorneys, it is not free to "exercise its judgment in a fashion that unnecessarily inflates the losing party's fee liability"); accord, *Masimo Corp. v. Tyco Health Care Gp., L.P.*, No. CV 02-477 MRP (AJWx), 2007 WL 5279897, *6 (C.D. Cal. 2007).

---

2.   <u>Inefficiencies/Overstaffing</u>:  The involvement of *at least* 30  Plaintiffs' attorneys, interns and paralegals, clerks and other assistants from 3 firms worked on this case necessarily caused redundant, unnecessary and duplicative work.  Fees must be reduced accordingly.  *See Chalmers*, 796 F. 2d at 1210, *citing Hensley*, at 433-434 (claimed expended hours "may be reduced" when "case was overstaffed and hours are duplicated" or if hours are "otherwise unnecessary"); *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, at 111 (D. Mass. 1998) (denying DRA fees for overstaffing case); *see Vanke*, No. 98-41111 DDP, 2002 WL 1836305, *8 (C.D. Cal. Aug. 8, 2002) (no fees for duplicative work.).[26] Plaintiffs can't receive fees for familiarizing themselves with the case (*see Pande*, 2008 U.S. Dist. LEXIS 87584, *20-21 (no fees for "'review complaint or time spent "'getting up to speed'") or for attendances of more persons than necessary at hearings (including routine discovery hearings) and trial (around 6 attorneys and at least 3 assistants each day) (*see Ramos*, 713 F. 2d at 553, n.2 (presence of 2+ lawyers at trial or more than 1 lawyer at depositions/hearings must be justified); *Farris v. Cox*, 508 F. Supp. 222, 226 (N.D. Cal. 1981) (no fees for multiple attendances at same hearing/deposition)).[27]

Plaintiffs' fees for excessive internal conferencing should be reduced by 20% to eliminate unnecessary hours resulting from having many attorneys work on the case.  *See Burt v. County of Contra Costa*, 2001 WL 1135433 (N.D. Cal. 2001) (conferences amounting to 11% of hours billed "excessive") (20% reduction for conference hours).  Plaintiffs' senior attorneys have extensive experience and need not spend a lot of time consulting with each other.  *See* <u>Exhs. M-O</u> to HDec.; *Welch v. Metropolitan Life Ins. Co.,* 480 F. 3d 942, 948 (9th Cir. 2007) .  The magnitude of Plaintiffs' rates indicates they should have been able to decide on strategy without so many "strategy" conferences. *Olson*, 884 F. 2d 1415, 1429 (D.C. Cir. 1989).  Plaintiffs may argue conferences were necessary to delegate work to junior attorneys, but senior attorneys spent many hours on associate-level work, such as research or discovery, or paralegal-level work, such as factual investigation.[28]

---

[26] *See also Johnson v. Georgia Highway Exp., Inc.*, 488 F. 2d 714, 717 (5th Cir. 1974), overruled on another ground, *Blanchard v. Bereron*, 489 U.S. 87, 93 (1989) (If more than one attorney is involved, the possibility of duplication of effort along with "should be closely scrutinized;" time of two or three lawyers when one would do, may be discounted.)

[27] *See also Masimo*, 2007 WL 5279897, *6 (reducing fees where unclear from records trial attendances were necessary).

[28] Plaintiffs should thus recover associate fees for associate work and paralegal fees for paralegal work.  See, e.g., Zucker v. Occidental Petroleum Corp., 968 F. Supp 1396, 1402 n.8 (1997) (reducing fees for senior lawyer research); see also Robbins v. Alibrandi, 127 Cal. App. 4th 438, (2005) (hours spent on factual investigation billed at senior attorney rates should be billed at paralegal rates) (dictum).

3.   <u>Documentation</u>.  Courts are "justified" in reducing hours if time records are "'sloppy and imprecise' and fail to document ... how [the timekeeper] utilized large blocks of time."  *Case*, 157 F. 3d at 1250 (citation omitted).[29]  Because Plaintiffs' records contain multiple entries that each covered several separate activities (block-billed entries), "the court has no way of knowing how much time was actually spent on each of these individual items."  *See Welch*, 480 F. 3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are [block-billed]"); *Keith v. Volpe*, 644 F. Supp. 1317, 1322 (C.D. Cal. 1986), *aff'd.*, 858 F. 2d 467 (9th Cir. 1988) (reducing fees); *Petroleum*, 2007 WL 2694207, *7 (no fees for problematic block-billing); *Hess v. Ramona School Dist.*, No. 07-CV-0049 W(CAB), 2008 WL 5381243, *6-7 (S.D. Cal. Dec. 19, 2008) (reducing block-billed hours by 33%). Kohrman and almost all Skadden timekeepers block-billed. HDec., ¶47.  Because the Court can't determine whether each task was reasonable,[30] Plaintiffs' block-billed hours should be reduced by at least 33% to eliminate unreasonable hours.  The Court should reduce Kohrman's fees by 20% for billing by ¼ hours increments for phone calls, conferences and other work. [Dk 467 at 7, ¶ 22].  *See Welch*, 480 F. 3d at 948 (affirming 20% reduction for *inter alia* phone calls, drafting letters and intra-office conferences billed in ¼ increments); *see also Lopez*, 385 F. Supp. 2d at 993 (reducing fees of Allen and other Skadden attorneys by 20%) ("Courts recognize that billing 'by the quarter-hour, not by the tenth,' is a 'deficient practice' because it does not reasonably reflect the number of hours actually worked.")

The Court should deny fees for entries for which the subject matter is unidentified or so vaguely described as to be useless (HDec., ¶48).  *Chalmers*, 796 F. 2d 1219 (vague records fall short of legal standards).  Plaintiffs should've <u>at least</u> "identif[ied] the general subject matter of … time expenditures."  *Hensley*, 461 U.S. at 437.  To the extent Plaintiffs did not, this Court has authority to deny fees, as the entries "do not meet the . . . burden of proving entitlement to fees."  *See Case*, 157 F. 3d at 1253 (no fees for phone calls/documents of unidentified subject matter); *Dang v. Cross*, 2003 WL 2150137, *2-3 (C.D. Cal. Jul. 1, 2003) (no fees for written work of unidentified subject matter); *Vanke*, 2002 WL

---

[29] A "deficient presentation" justifies a "court in throwing up its hands and refusing to award any fees whatsoever."  *Norris v. Sysco*, 191 F. 3d 1043, 1052 (9th Cir. 1999) (affirming denial of fees for deficient entries).

[30] *See Welch*, 480 F. 3d at 948 (It was reasonable for the district court to conclude that the attorney seeking fees "failed to carry her burden" to submit evidence supporting hours worked "because block billing makes it more difficult to determine how much time was spent on particular activities"); *see also Ramos*, 713 F. 2d at 553-4 "[L]awyers who remember spending the entire day working on a case are likely to overstate the hours worked by forgetting interruptions and intrusions unrelated to the case.");  *see also id.* at 554, n.2 ("When examining the hours reported for tasks that are properly billable, the district court should evaluate the hours spent on each task to determine their reasonableness.").

1836305, *8 (no fees for phone call(s) for lack of specificity); *Hess*, 2008 WL 5381243, *6-7 (reducing fees by 33% for vague entries, e.g., "work on complaint" or "work on letter brief to Magistrate"); *see also Olson*, 884 F. 2d 1415, 1429 (D.C. Cir. 1989) (reducing fees for poorly-documented conferences, e.g. re: "developments").  Unlike a single plaintiff case, in which a court can decipher vague entries based on the case's straight-forward procedural history, in this class action, multiple motions/disputes were pending at the same time, so the subject matter of Plaintiffs' vague entries cannot be deciphered from the case's history.  Plaintiffs seek fees for "reading emails" and  allocate large blocks of time to vaguely-described single tasks that invariably included separate tasks, e.g., 14 hours for "drafting brief." As Plaintiffs have denied this Court the ability to assess the reasonableness of such fees, and Plaintiffs' fees should be denied accordingly.

4.    <u>Other reductions</u>.  The Court should reduce media fees by 50%[31].  The Court should deny fees for clerical work, such as copying or printing.  Time entries for clerical tasks, which "should not be billed at a paralegal rate, regardless of who performs them" (*Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989)), are prevalent in Plaintiffs' records.  In *Prison Legal*, 561 F. Supp. 2d at 1102, a court in this district rejected Rosen's declaration testimony that clerical tasks, as identified below, are typically billed to clients at his firm and in the Bay Area market.  Courts in this district deny fees for the following clerical work: 1) preparing records folders/case materials, file organization, and scheduling (*L.H.*, 645 F. Supp. 2d at 899 (denying <u>RBG</u> fees); 2) clerical tasks, even when performed to prepare for trial, e.g., organizing exhibits (*Leuzinger v. Lake*, No. C 06-00398 SBA, at *4, 2009 WL 839056 (N.D. Cal. 2009) (Armstrong); 3) "update case calendar," "create index for settlement agreement binder," "gather enclosures, make copies, scan, file, mail, and circulate," "scan and circulate letter re ... transcript," "[s]upervise arranging for messenger for courtesy copies ..." (*Prison Legal*, at 1102); (4) copying exhibit and witness binders (*Pande*, 2008 U.S. Dist. LEXIS 87584, *20-21; and f) "Word processing" (*Lopez*, at

---

[31] This Court "'should disallow ... hours claimed by [Plaintiffs] for public relations work which did not contribute, directly and substantially, to the attainment of [plaintiff's] litigation goals.'"  *NFB*, Slip opn., 2009 WL 2390261, *4, *citing Davis*, 976 F. 2d at 1545 (<u>rejecting DRA' reliance on same</u>).  The *NFB* court did so, holding: "While recognizing the important function of media work in class actions, the court also notes that the class counsel's reputation also stands to gain considerably. . . . [C]ounsel [is] granted half of the hours spent on media work . . ." *See also Hess*, 2008 WL 5381243, *4-5 (<u>no fees</u>) *L.H.*, at 899 (same).  Plaintiffs proffer no explanation for why media work was necessary to keep the class apprised of this case, and the benefits to their reputation are sufficient compensation.

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS
CASE NO. C-06-5125 SBA                                                                                          11
286,557,921.2

1   981 (denying <u>Allen</u> word-processing fees); *Guckenberger*, F. Supp. 2d at 111 (denying <u>DRA</u> word-

2   processing fees).

3        The lodestar award of $3.75 million is consistent with reasonable rates and hours and Caltrans'

4   fees.[32]   Per Caltrans' estimate, *Caltrans expended about 1/3  the amount Plaintiffs claim they spent*.

5   Given that the precedential value of litigation regarding a public entity's obligations is more important

6   to a public entity defendant than to a plaintiff and given that Caltrans had to devote more time to this

7   case than Plaintiffs, as it easier to send discovery requests than to respond, one would think that

8   Caltrans' fees would've been higher than Plaintiffs' *had both sides had exercised billing judgment and*

9   *had Plaintiffs sought only reasonable fees*.  Indeed, even a  *CDR class representative* believes Plaintiffs'

10   fees are excessive and unjustified.  HDec., ¶59.

11   **III.**    <u>**PLAINTIFFS ARE NOT ENTITLED TO A MULTIPLIER**</u>

12        **A.**    <u>**Plaintiffs are not Entitled to a Multiplier under the Settlement Agreement.**</u>

13        The settlement agreement precludes a multiplier because Caltrans agreed to pay only reasonable

14   fees for actual work performed.  Per the agreement, "Defendants agree to pay Fees of no less than $3.75

15   million and no more than $8.75 million for all <u>work related to claims pleaded</u> in the Litigation,

16   settlement, and future monitoring of all claims in the Litigation, including any Fees for time spent

17   preparing a fee motion."  Dk. 454-7 at 1, ¶ 4.  "Fees" are defined in this context: "Defendants shall pay

18   Plaintiffs' Attorneys reasonable attorneys fees and costs for <u>work pursuing the claims pleaded</u> in the

19   Federal Action and the State Action ("Fees" and "Costs")"  Id. at 1, ¶ 2.  Thus, "Fees" are expressly

20   limited to fees expended on <u>work</u> pursuing claims pleaded in this litigation and other work related to the

21   litigation.  Fee enhancements <u>do not reflect actual work performed</u>; they are a legal mechanism or

22   fiction for bringing actual fees that are lower than market value up to market value.  *See Greene v.*

23   *Dillingham Const., N.A., Inc.*, 101 Cal. App. 4th 418, 427 (2002), *quoting Ketchum*, 24 Cal. App 4th at

24   1132.  They aren't earned through actual work pursuing claims and aren't "Fees" which Caltrans agreed

25

---

26        [32] Defense's fees "are a significant factor in deciding whether the hours worked by plaintiffs' attorneys were reasonable

27   and necessary." *Stastny v. Southern Bell Tel. & Tel. Co.*, 458 F. Supp. 314, 318 (D.C. N.C. 1978), *rev'd in part on another ground*, *aff'd in part*, 628 F. 2d 267 (4th Cir. 1980).  This information helps courts analyze reasonableness of fees sought by plaintiffs.  A defendant whose fees are lower could argue that the plaintiffs' fees are excessive, and the plaintiffs could

28   attempt to distinguish.  These proofs and rebuttals "go to ... weight rather than the admissibility."  Newberg, Fee Awards, § 6.07, at 194-95 (summarizing rule); *accord*, *Coalition to Save our Children*, 143 F.R.D. 61, 65 (D. Del. 1992) (rejecting proposition that defendant's fees are irrelevant).

to pay subject to the high-low agreement. Neither side agreed the other could argue for a multiplier.[33] Indeed, the reason Caltrans agreed to pay up to $8.75 million was because, upon learning of Plaintiffs' demand, Caltrans was and remains confident the Court will agree that Plaintiffs' claim that they incurred fees of up to $8.75 million was unreasonable. Caltrans understood that the amount subject to the high-low agreement was Plaintiffs' lodestar, and was surprised by Plaintiffs' new position—that even if Plaintiffs' lodestar is less than $8.75 million, this Court still must award the full amount on the ground that Plaintiffs are entitled to a 1.65 multiplier. Under Plaintiffs' logic, but for Plaintiffs' willingness to accept $8.75 million, they would be entitled to **over $16.5 million** in fees.

## B.   Plaintiffs Fail to Satisfy the Heavy Burden to Show that a Multiplier is Warranted.

There is a strong presumption is that the lodestar is reasonable. *See Blum*, 465 U.S. at 886-87, 97. Upward enhancements are appropriate only in rare, exceptional cases. *Id.* at 897-99. "[T]he trial court is not required to include a fee enhancement." *Ketchum*, 24 Cal. App 4th at at 1138. "The purpose in determining a multiplier is for the Court to determine retrospectively" whether any factors "justify[] augmentation of the unadorned lodestar in order to approximate the fair market rate for such services[.]'" *Greene*, 101 Cal. App. 4th at 427 (2002), *quoting Ketchum*, at 1132. Here, Plaintiffs' unadorned, claimed lodestar already exceeds the fair market rate for Plaintiffs' services. *Compare with Leuzinger v. Lake*, 2009 WL 839056, *10-12 (awarding multiplier to counsel from small firm with below-market rates). Given that the purpose of a multiplier is to bring a fee award that is below the fair market rate up to the fair market rate, and in light of the magnitude of the fees sought here, the Court should determine retrospectively no extra incentive was necessary. All cases cited by Plaintiffs are distinguishable because, *inter alia*, the fees there were modest in comparison with the fees in this case.[34]

The factors on which Plaintiffs rely to justify enhancement[35] are the same factors Plaintiffs rely on to justify their lodestar. The case Plaintiffs cite to support their rates, *Davis*, 976 F. 2d at 1545-46,

---

[33] Plaintiffs are not entitled to a multiplier for work of non-attorneys.

[34] *See Chabner v. United of Omaha Life Ins. Co.*, 1999 WL 33227443, *6 n.3 (N.D. Cal. 1999) ("the fees here represent a modest score on the Richter scale."); *NFB*, 2009 WL 2390261, *10 (award, including multiplier: $3.4M); *Lucas*, 2006 WL 279260 at *10 (stipulated fees, including multiplier: $3.3M); *Vons*, 2009 WL 117902, *11 (award, including multiplier: $644K); *Heritage v. Woodside*, Nos. A120749 & A12075, 2008 WL 4868816, *7 (Cal. Super. Ct, San Mateo Cty., Nov. 12, 2008) (total, with multiplier: $404K); *Lieber v. Macy's West, Inc.*, No. C 96-2955 (N.D. Cal. Dec. 18, 2000) (award, with multiplier: $1.75 million) (also distinguishable because case went to trial and plaintiffs sued well-respected nation-wide company); *Stevens*, 2009 WL 117902, *11 (total, with multiplier, $644K); *Leuzinger*, 2009 WL 839056, *10-12 (highest rate awarded, $515, below the market rates for similar services; claimed merits lodestar, only $279K).

recognized that the same factors courts consider in analyzing enhancements are subsumed in the lodestar rate: "[T]o determine the proper rate, courts must '[refer] to the fees ... attorneys of an <u>ability and reputation</u> comparable to that of prevailing counsel charge ... for ... work of similar <u>complexity</u>.' [and] <u>ability of counsel</u> [and] <u>results obtained</u> (Citation omitted)."  Per U.S. Supreme Court and California law, courts must avoid double-counting factors in both the lodestar and to enhance fees.  The California Supreme Court has "emphasize[d] that when determining the appropriate enhancement, <u>a trial court should not consider these factors to the extent they are already encompassed within the lodestar.</u>"  *Ketchum*, 24 Cal. 4th at 1132, 1138.  "[T]he '"reasonable hourly rate [used to calculate the lodestar] is the product of a multiplicity of factors ... the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case."' (Ibid.)."  *Id.*  "[D]uplication is not permitted because it results in unfair double counting and an unreasonable fee award."  *Robertson v. Fleetwood Travel Trailers of California, Inc*., 144 Cal. App. 4th 785, 822 (2006); *see also Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1998) (double-counting improper "windfall"); *accord*, *Ramos*, 82 Cal. App. 4th 615 (multiplier abuse discretion if dependent on duplicative reweighing of factors).  Numerous courts have found abuse of discretion and reversed and fee multipliers when it appeared that a factor was double-counted in the lodestar and the enhancement.

Plaintiffs don't meet the burden to show any factors warrant enhancement.  And other factors Plaintiffs don't mention mitigate in favor of a *negative* multiplier.  But because the settlement agreement does not permit *any* multiplier, Caltrans doesn't seek a negative multiplier.  Instead, Caltrans discusses these factors, and those identified by Plaintiffs, to show *upward* enhancement is unwarranted.

1.   <u>Novelty and Complexity</u>:  "'A more difficult legal question ... requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate.'"  *Ketchum*, 24 Cal. 4th 1138-39.  Thus, the novelty and complexity factor can be subsumed in the number of hours or the hourly rate.  *E.g.*, *Blum*, 465 U.S. at 898; *Greater Los Angeles Council on Deafness v. Community Television of Southern California*, 813 F. 2d 217, 221 (9th Cir. 1987); *Ketchum*, at 1142 (novelty and difficulty are inappropriate factors for enhancing fees as they're "already accounted for in the rate used to compute the lodestar"); *see also Robbins*, 127 Cal. App. 4th at 453-54 (trial court double-counted

novelty and complexity).  For example, in *Lopez*, 385 F. Supp. 2d 981, 984,[36] the class action plaintiffs alleged they were denied access to the San Francisco Unified School District (SFUSD)'s programs, and sought injunctive relief requiring barrier removal and declaratory relief under the ADA and parallel state law, and an ADA self-evaluation and transition plan.  On the eve of trial, five years after the action was filed, the parties settled and submitted the fees claim to the court.  *Id.* at 985.  The court held a novelty and complexity multiplier was unwarranted: this factor "was already considered in determining the appropriate lodestar amount … Plaintiffs justified their hourly fees by asserting that they were comparable to fees charged by lawyers for 'complex federal litigation.' (Citation Omitted.)"  *Id.* at 999.  "[G]iven that Plaintiffs have already argued that the complexity of the case warrants a higher market rate, [they] may not raise [it] again."  *Id.*  Further, "Plaintiffs relied upon the complexity of the case to justify the tens of thousands of billable hours claimed in the lodestar amount.  *Id.*  The court distinguished a case in which the lodestar was modest, and thus did not reflect novelty and complexity, reasoning that in *Daggitt v. United Food and Commercial Workers Int'l*, 245 F. 3d 981, 990 (8th Cir. 2001), the court "specifically referred to the 'modest nature of the lodestar figure' in justifying an enhancement. [Citation.]  No modest lodestar figure exists [here]."  *Id.*

Here, Plaintiffs can't rely on the novelty and complexity factor because the <u>core</u> of their argument to justify their rates is that they handle <u>complex</u> litigation; internal note 37 lists a few examples of their arguments comparing themselves to Rosen and other attorneys who handle complex cases.  Plaintiffs didn't even attempt to justify their rates based on the general market for non-complex matters.  Novelty and complexity is also subsumed in the *hours* claimed.  Detailing the history of this

---

[36] Though Plaintiffs will likely contend that *Lopez* is distinguishable because the multiplier analysis there was under federal law, *Lopez*'s analysis of the factors common with case is the same under federal and California law.  Under federal law, adjustments to the lodestar calculation may be based on the *Johnson* factors (*City of Riverside v. Rivera*, 477 U.S. 561, 106 (1986)), which include novelty and difficulty, preclusion of other work, desirability of the case, and results obtained.  These federal law factors "mirror" California law factors, except for the risk factor.  *E.g.*, *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2006 WL 279260 (D. Colo. Jul. 27, 2006)  Under federal law, as under California law, courts may not double-count the same factors in the analysis of the lodestar and the adjustment.  *See Ketchum*, at 24 Cal. 4th 1138-39.

[37] "'[A]ttorneys' fee awards in civil rights cases are 'governed by the same standards which prevail in other types of **equally complex** federal litigation.'"  Dk. 460, 8:14-15.  "Thus, the relevant inquiry in determining applicable rates is whether attorneys in the San Francisco Bay Area with commensurate skill, experience, and reputation in handling **complex litigation** charge rates comparable to those sought by Class Counsel in this **complex litigation**."  Id., 8:18-22 (emphasis in original).  "For DRA and Mr. Allen, the rates are straightforward - their firms...specialize in **complex** litigation."  Id., 8:25-26.  "DRA has regularly and recently been awarded rates based on rates charged by ... **law firms that handle complex litigation**."  Id., 8:26-28.  "The rates for Mr. Allen and other personnel in his firm ...are those regularly charged to their fee-paying clients in **complex** litigation."  Id., 9:1-3.  Moreover, Plaintiffs seek to compare their rates to Rosen, Alderman, and Schneider's respective firms; each handles complex litigation [Dk. 466 at 2:26-9:19, ¶¶5-19; Dk. 468 at 3:37-28, ¶10, Exh. A to Dk. 468; Dk. 469 at 1:7-11, ¶3].

---

litigation, Plaintiffs devote *1/3 of their motion* to *justify their hours based on the complexity of this case* [Dk. 460 at 10:3-18:16]. If this case weren't "complex," Plaintiffs would not have spent so many hours on it. For argument's sake, *even if* this factor weren't subsumed in the lodestar, cases or issues aren't novel if existing or pending cases already address the same/similar issues. In *Pacific West Cable Company v. City of Sacramento*, 693 F. Supp. 865, 871 (E.D. Cal. 1988), the legal questions revolved around a novel central issue (whether cable television was a 'natural monopoly'). Denying a multiplier, the court held that although the legal question was novel, the same counsel had brought other cases addressing similar issues, so "much of the legal research performed for those ... cases also benefited th[is] case." *Id.* Similarly, before this case was filed, <u>existing case law already addressed</u> the central issue of the application of the ADA/state statutes to pedestrian facilities.[38] Plaintiffs have even contributed this case law, such as in *Barden v. City of Sacramento*, 292 F. 3d 1073 (9th Cir. 2002), *cert. denied*, 539 U.S. 958 (2003), so their prior research benefited this case, and undercuts the argument the law was novel. The <u>single</u> case relied on by Plaintiffs is distinguishable. In *NFB*, 2009 WL 2390261, *4, the court held the case was novel/complex <u>because</u> the internet was a novel technology:

> [The plaintiffs'] litigation strategy "involved the extension of important areas of disability law into an <u>emerging form of electronic commerce that promises to grow in importance.</u> ...When successful, these efforts must earn a premium to encourage ... a stringent examination of the accessibility [sic] of <u>new technologies</u>. The alternative is a stagnant legal landscape where <u>advances in technology</u> render statutory protections ineffective or obsolete.

*Id.* at *6. Unlike sidewalks, which have existed for centuries, the internet has existed for just a few decades.[39] Unlike this case, in which <u>cases already addressed</u> the <u>application of the ADA to sidewalks</u>, in *NFB*, there was only one published decision addressing application of the ADA to commercial websites; DRA argued that "[p]rior to [that] case, no court had addressed the application of the Unruh Act and DPA to a website business enterprise" [Mot. for Fees at 3:1-2, Case No. C-06-01802 MHP], and the court relied on that argument [*see* Dk. 460:2:26-27, quoting *NFB*, 2009 WL 2390261, *7]. Plaintiffs claim their arguments to enforce the self-evaluation and transition plan regulations under California law and to require Caltrans to make temporary routes accessible under the ADAAG and

---

[38]  *E.g.*, *Lonberg v. Riverside*, 2000 WL 34602547 (C.D. Cal. 2000), *4, *aff'd*, 2006 WL 4811345, *1; *Iverson v. City of Boston*, 452 F. 3d 94, 101 (1st Cir. 2006); *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 858-59 & 861-62 (2003).

[39]  *See* [History of the Internet], attached as Exh. 3 to RJN.

upgrade curb ramps under the Title II regulations were novel.  But Plaintiffs also have <u>repeatedly argued</u> to this Court that the same obligations to provide access exist under the <u>statutory scheme</u> (and many other cases have addressed the same issues raised by Plaintiffs).  *See* <u>Exh. 6</u> to RJN.  Thus, unlike *NFB*, where the <u>case</u> <u>depended on the applicability of access statutes to the internet</u>, this case did not <u>depend on</u> Plaintiffs' "novel" arguments.[40]

   2. <u>Skill in Presenting Novel or Complex Issues</u>:  "'The factor of extraordinary skill, in particular, appears susceptible to improper double counting...'"  *Ketchum*, 24 Cal. 4th at 1138-39 (Citation omitted.).  "Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation <u>far exceeds</u> the <u>quality of representation</u> that would have been provided by an <u>attorney of comparable skill and experience</u> billing at the <u>hourly rate used in the lodestar</u>.  Otherwise, the fee award will result in unfair double counting and be unreasonable.  *Id.* at 1132 (affirming Court of Appeal's reversal of multiplier).  "The question is whether the litigation "required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."  *Id.*[41]  In *Robbins*, 127 Cal. App. 4th at 453, the court rejected a multiplier for counsel's skill and expertise, reasoning, "The firm employed by plaintiffs is a nationally recognized leader and expert in this type of litigation. That plaintiffs' attorneys are known for providing high-quality work, however, is fully reflected by the fees charged, which are at the upper end of the spectrum, and therefore are already the 'market rate' for such services."  *See also Northwest Energetic Serv., LLC v. California Franchise Tax Bd.*, 159 Cal. App. 4th 841, 880 (2008) (reversing and remanding fee award) ("[attorneys'] expertise [and] skill they displayed in presenting the case, is already included in calculating the lodestar and should have no or little significance in determining whether the lodestar should be enhanced"); *Anderson v. American Airlines, Inc.*, No. C 05-04292, 2008 WL 4816620, *9 (N.D. Cal. Nov. 5, 2008) (analyzing fees under California law, rejecting argument that skill in presenting case warranted enhancement; billing rate compensates for representation).

---

[40] To the extent that the Court finds that novel and complex issues were presented, novelty and complexity are already included in the lodestar through the hours spent on researching novel issues.  At the very least, a multiplier is unwarranted for these research hours.

[41] *See also Blum*, at 898-99 (Counsel's skill and experience and quality of representation are ordinarily reflected in hourly rate); *Estrada v. FedEx Ground Package Syst., Inc.*, 154 Cal. App. 4th 1, 16, 18 n.17 (2007) (trial court's reasons justifying an award based on high hourly rates were the same as those used to justify the multiplier, including lawyers' skill); *Flannery*, 61 Cal. App. 4th at 647 (attorneys' skill and experience was double-counted); *Ramos*, 82 Cal. App. 4th 615 (multiplier was abuse discretion if dependent on duplicative reweighing of skill).

1    Plaintiffs fail to meet their burden to show their unadorned lodestar does not adequately

2    compensate for their skill and expertise.  First, Plaintiffs' expertise alone doesn't justify a multiplier.

3    *See Northwest*, at 881, n.2 (rejecting argument that attorneys' "expertise (distinguished from their skill

4    in presenting the case) was a factor favoring upward adjustment ...").  Like the *Robbins* attorneys, DRA

5    and AARP are highly regarded in the legal community—they go to great pains to point out their

6    significant expertise, for no other reason but to justify their rates.[42]  Second, Plaintiffs fail to show that

7    their *skill demonstrated* in this case warrants a multiplier, *i.e.*, their they demonstrated skill superior to

8    attorneys with comparable rates.  Indeed, <u>Judge Armstrong even opined otherwise</u>--that DRA did not do

9    the best it could do.  *See* internal note 9.[43]

10    3.    <u>Exceptional Results</u>:  "'[R]esults obtained' generally will be subsumed within other

11    factors used to calculate a reasonable fee." *Blum*, 465 U.S. at 900; *see also Cruz v. Alhambra School

12    Dist.*, 601 F. Supp. 2d 1183, 1196 (C. D. Cal., 2009).  "[C]ase law suggests that [this factor] is more

13    likely to be described than employed and that, ... proving entitlement under this factor is no easy

14    matter."  *Applegate v. U.S.*, 52 Fed. Cl. 751, 772 (2002) (collecting cases) (rejecting enhancement for

15    results obtained).  Perhaps this is why Plaintiffs cite not one case to support their conclusion that the

16    results obtained warrant enhancement.  Indeed, "not only must the results be excellent to warrant ...

17    enhancement, but ... adjustment is justified "<u>only in the rare case where the fee applicant offers specific</u>

18    <u>evidence to show that the quality of service rendered was superior to that one reasonably should expect</u>

19    <u>in light of the hourly rates charged</u>." *Cruz*, 601 F. Supp. 2d at 1196, *citing Blum*, 465 U.S. at 899.

20    Plaintiffs must "do more than establish outstanding service and results."  *See Forshee v. Waterloo

21    Indus., Inc.*, 178 F. 3d 527, 532 (8th Cir. 1999).  Results must be "'out of the ordinary, unusual, or

22    rare[;]'" enhancement is unwarranted *unless* Plaintiffs can demonstrate that "'it is customary in the area

23    for attorneys to charge an additional fee above their hourly rates for an exceptional result.'" *Applegate*,

24    at 772, *citing Walker*, 99 F. 3d at 772; *see also Forshee*, at 532.

25

26

---

27    [42] *See* Dk. 462, 1:7-3:28, ¶¶2-11, 8:13-28, ¶25; Dk. 464, 1:4-4:27, ¶¶2-13; Dk. 466, 1:7-2:3, ¶2; Dk. 468, 4:15-5:3, ¶¶13-14; Dk. 469, 1:23-2:25, ¶¶6-7.

28    [43] Also, Plaintiffs cannot receive a multiplier for exceptional skill *and* results obtained.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 578 (2004) (results obtained factor "often takes into account the exceptional skill exhibited by the attorney [citations] …")

In *Lopez*, 385 F. Supp. 2d. at 997-99, the court recognized the settlement would provide essential access to education for disabled children and "the importance of providing access to the disabled." *Id.* The results "although highly beneficial to [the] plaintiffs, <u>were not</u> "'rare' or 'exceptional' ..."" *Id.* at 998. The plaintiffs "obtained a settlement ... similar to the result that would be obtained by other highly compensated attorneys in complex federal litigation," and had "already justified their hourly rates" based on the case's demands. *Id.* at 998. The plaintiffs had acknowledged that the SFUSD's violations were "long-term, systematic and well-known," so the settlement, "although important, was not exceptional in comparison to the result that could have been achieved by lawyers of similar experience and ability." *Id.* Though the plaintiffs had to overcome obstacles presented by SFUSD to achieve settlement, they also contributed to the difficulty of the litigation; the "defendant's resistance" didn't "warrant a finding that the result was "'exceptional.'" *Id.*

Here, Plaintiffs obtained a result <u>similar to that which would be obtained by other highly compensated attorneys in complex federal litigation</u>, and have already sought hourly rates based on this case's demands. Thus, the result, while important, is not exceptional in comparison to the result that could have been achieved by lawyers of similar ability. Rather, "when [Plaintiffs] first accept[ed this] case, ... [they] obligate[ themselves] to perform to the best of [their] ability and to produce the <u>best possible results</u> commensurate with [their] skill ..." (*Delaware Valley,* 478 U.S. at 565-66; *see also Earth Island Inst. Inc. v. Southern Cal. Edison*, 838 F. Supp. 458, 464 (S.D. Cal. 1993)). Plaintiffs aren't entitled to a multiplier for fulfilling their professional responsibilities. Nor are they entitled to a multiplier on the ground that they had to overcome obstacles to reach settlement. Plaintiffs too contributed to the difficulty of reaching settlement, for example, by insisting on substantial monitoring fees as a condition and refusing to stipulate to issues to increase their fees. *See* Exh. 2 to RJN at 31:6-21. Caltrans' defense was always in <u>good faith</u> and does not "warrant a finding that the result was "'exceptional'".[44] The benefit to the class does "not provide any basis for ... enhancing ... the lodestar."

---

[44] *Lopez*, at 998, distinguished from *Hyatt v. Apfel*, 195 F. 3d 188 (4th Cir. 1999): There, the court "upheld the district court's finding 'exceptional' circumstances in a class action that involved **four published circuit court opinions**, a finding of **bad faith** against the government for refusing to comply with court decisions and the uncovering of a 'secret, unlawful policy.'" *Id.* (citations omitted). Here, as in *Lopez*, Caltrans has acted in good faith faith. Fee enhancement may not be "imposed for the purpose of punishing the losing party." *Id.* at 1139; *see also Ursic v. Bethlehem Mines*, 719 F. 2d 670, 677 (3d Cir. 1983) (fee shifting statutes should not be used as punitive sanction). Plaintiffs mischaracterize Caltrans' efforts to defend itself. For example, Caltrans moved to dismiss the state law claims to preserve its sovereign immunity not to "delay"

*See Flannery*, 61 Cal. App. 4th at 671; *Applegate*, 52 Fed. Cl. at 772, *citing Norman v. Housing Auth. of the City of Montgomery,* 836 F. 2d 1292, 1302 (11th Cir. 1988) ("'results are not exceptional merely because of the nature of the right vindicated or the amount recovered'"); *Estrada*, 154 Cal. App. 4th 18 n.17 (benefit to class double-counted); *Northwest*, 159 Cal. App. 4th at 880 (trial court double-counted results achieved and the substantial benefits to the class. The dollar amount committed does not support an exceptional results finding. *See*, *e.g.*, *Applegate*, at 773 ("in pure dollar terms, the settlement here is considerable-but the case law suggests that this alone is insufficient"); *Norman*, at 1302; *Copeland*, 641 F. 2d at 894 ("it is important again to emphasize that a huge dollar recovery does not itself justify a huge fee award").[45]

4.   Preclusion of other work:  Plaintiffs' conclusory statements that other work was precluded fall short of the burden to justify enhancement.  Loss of time for other work is subsumed in lodestar hours, and courts require specific examples of work turned down.  *E.g.*, *Lopez*, 385 F. Supp. 2d at 999; *Robbins*, 127 Cal. App. 4th at 453-54 (trial court double-counted preclusion from other work); *Bancroft v. Trizechahn Corp.*ˎ No. CV 02-2373 SVW (FMOx), 2006 WL 5878143, *6-7 (C.D. Cal. Aug. 14, 2006).  Under Plaintiffs' reasoning, a multiplier would always be appropriate, as "it is axiomatic that time spent by individual attorneys on one case prevents them from spending time on another."  *See Robbins*, at 454.  As in *Lopez*, Plaintiffs' "counsel [has] already been compensated for its time based on the hourly rates claimed in the lodestar determination," and has not presented "evidence that they were precluded from more profitable work."  As in *Bancroft*, at *7, Plaintiffs "have not provided specific examples for work they turned away.  In any event, the hours they spent on this case will be compensated."  Caltrans' evidence indicates that Plaintiffs have been prosecuting many other cases at the same time as this case.  HDec., ¶61.[46]  As in *Robbins*, here, there's "no showing [Plaintiffs were] *in fact* was forced to turn away other work because of this case."

5.   Whether the case is desirable:  "This is the type of case that a firm with local roots would

---

Plaintiffs.  Plaintiffs attack Caltrans' designation of many trial exhibits, but Caltrans was forced to be over-inclusive because Plaintiffs were designating exhibits after the Court's deadline for doing so, in violation of Judge Armstrong's pretrial order.

[45] *Even if* the Court finds that results are exceptional, the Court should deny enhancement because other factors don't support a multiplier.  *See Hess*, 2008 WL 5381243, *8 ("[A]lthough counsel obtained excellent results, … this litigation was not unusually complex or risky, nor was it undesirable.  A multiplier is, therefore, not "'necessary to the determination of a reasonable fee.' [Citation.]").

embrace and seek to publicize to its clients and prospective clients as an indication of community involvement." *See Applegate*, 52 Fed. Cl. at 773 (no enhancement; counsel benefits from prosecuting well-publicized, unconstitutional taking case). Plaintiffs are obtaining invaluable reputation benefits by representing disabled persons in this well-publicized case. *See Lopez*, 238 F. Supp. 2d at 999 ("[the plaintiffs [are] disabled children and adults denied access to educational and other civic activities because of defendant's long-standing violations. [The p]laintiffs are among the most worthy clients an attorney could represent. The Court does not find that plaintiffs are 'unsympathetic'..."). This case is distinguishable from cases in which multipliers were awarded to provide incentive for attorneys to take on undesirable cases.[47]

6.      Risk:  The purpose of risk enhancement is to create financial incentives to encourage attorneys to take cases enforcing important rights by providing compensation for the risk of loss. *Ketchum*, 24 Cal. 4th at 1132-33.  Courts must balance the interest in creating financial incentives against "the interest in preventing needless litigation of baseless claims." *Robbins*, 127 Cal. App. 4th at 454-55.  Here, Plaintiffs needed no extra financial incentive.  As discussed above, this case was extremely desirable from a plaintiffs' attorney's perspective, and the lodestar is already substantial. Thus, the court should exercise its discretion to deny a risk multiplier to avoid an unreasonable fee.  *See Heston v. City of Salinas*, 2009 WL 248362, *6 (N.D. Cal. 2009) ("Although Plaintiffs' counsel worked on contingent-fee basis, the Court finds that awarding the full amount of an appropriate lodestar is adequate to compensate Plaintiffs' counsel for the contingent risk they incurred in representing Plaintiffs in this action."); *Anderson v. Long Beach* City, 81 Fed. Appx. 703, 707 (9th Cir. 2003) (affirming district court's denial of risk multiplier under California law on basis that district court found that the lodestar was already reasonable and that a multiplier would make the fee unreasonable).  Plaintiffs fail to explain how they undertook risk "beyond the risk of not prevailing in the action."  In an action under the ADA and parallel state law such as this action "because the prevailing party is ordinarily entitled to attorney fees under federal law unless 'special circumstances would render such an award unjust,' there is little risk that counsel would be uncompensated if [the p]laintiffs prevail. [Citation.]"  *See Bancroft*,

---

[47] Indeed, many cases in Exh. 4 to Rosen's Decl. awarded multipliers *solely* because the case was *undesirable* e.g. representing felons (*see* Caltrans' Obj. to Rosen's Decl.).  In *Leuzinger*, 2009 WL 839056, *10-11, in awarding a multiplier, the court reasoned that FEHA plaintiffs have difficulty finding counsel, especially in smaller counties such as Lake and Mendocino.

2006 WL 5878143, *6.  Plaintiffs did not endure risk of losing at trial, and are not solo practitioners who had to risk devoting their entire practices to this case.  *Compare with Leuzinger*, 2009 WL 839056, *11-12 (case was risky; defendant chose to "'roll the dice'" and lost in the jury trial; "'burden of protracted litigation and trial is especially great on solo and small firms such as each of plaintiff's counsel'").  Also, DRA and AARP's fees already reflect risk: their respective practices are based on cases such as this, in which fees are almost always obtained from an adversary, but in which multipliers are not always awarded, including in class actions such as this case.  Thus, a risk multiplier would be double-counting.  *See Robertson*, 144 Cal. App. 4th at 785.

The single case Plaintiffs rely on to argue for a risk multiplier is distinguishable.  As Plaintiffs point out, the court in *NFB*, 2009 WL 2390261, based its finding of risk on *two* factors: the court relied on the plaintiffs' arguments that "'[t]he arguments were new, the law unchartered'" and that "'in terms of the risk that plaintiffs would not prevail, … the defendant is a large [entity] whose resources dwarfed those available to plaintiffs.'"  Dk. 460:20:25-26, *citing NFB*, at *8.  Unlike *NFB*, in which there existed virtually no precedent on the central issue—the ADA's application to commercial websites, here, the main issue—application of the ADA to pedestrian facilities—has already been addressed by many courts, and was not particularly novel or complex.  Further, especially in this economy, a government entity such as Caltrans can't be compared to a nation-wide commercial entity with unlimited resources to spend in litigation.[48]  If Target were in California's financial condition, it would probably be bankrupt.  Plaintiffs aren't entitled to a risk multiplier based on *NFB*.[49]

7.   Delay in Payment:  Plaintiffs do not meet their burden to show delay enhancement is warranted.  Rather, Plaintiffs cannot receive a delay enhancement because their current rates go beyond what's necessary to compensate for any claimed delay.  Courts "recognize the need to compensate for delay, but disagree regarding the method[] for implementing such an adjustment."  *Chalmers*, 676 F. Supp. at 1526-27.  The two alternatives are basing the award of fees billed in previous years on current billing rates or adjusting the lodestar based on historical rates to reflect the award's present value.  *Id.*;

---

[48]   In *NFB*, DRA argued, "Target, a major national business, had virtually unlimited resources to defend this action." (Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs, Reply Memorandum Points and Authorities, at 3:14, Case No. No. C 06-01802 [Dk. 197], and the Court relied on that argument (*see* 2009 WL 2390261, *8).

[49]   Moreover, even if the Court were to find the risk in this case were significant, contingency is only "a factor that may be considered, and is it is not dispositive." *Northwest*, 159 Cal. App. 4th at 880.

*see also Welch*, 480 F. 3d at 947, *citing in re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F. 3d 1291, 1305 (9th Cir. 1994) (courts have discretion to compensate for delay in payment by applying the attorneys' current rates to all hours billed or using attorneys' historical rates and adding prime rate enhancement).  Current rates "roughly counterbalance[] inflationary loss ... resulting from the long delay in recovery of their fees." *Chalmers*, at 1526; *see also* internal note 50.  <u>Delay enhancements</u> serve the <u>exact same purpose</u>.  Thus, <u>courts awarding current rates deny delay enhancements</u>.  For example, in *Pacific West*, 693 F. Supp. at 873, denying a delay enhancement, the court recognized that "'[a]djustment for inflation is not required in every case....'" *Id.* (Citation omitted.).  The court distinguished from a case (*Chalmers*) in which the lodestar was calculated "based on historical hourly rates, a factor which contributed to the court's finding a delay factor appropriate." *Id.*  The court continued, "<u>By contrast</u>, the hourly rates [here] are flat rates for all four-and-a-half years and can be viewed as <u>current rates</u>" so "even if an adjustment for delay were warranted …, <u>current rates would adequately compensate for inflation</u>." *Id.*  The prevalent practice (*Chalmers*, at 1526) and the practice in this district is use of current rates and denial of delay multipliers.  *E.g.*, *Coles*, 2007 WL 39304, *6 n.2; *Payne*, 2009 WL 16266588, *7 (denying multiplier in <u>ADA</u> case) ("Courts may compensate counsel for delay in payment in a variety of ways, *e.g.*, … reimbursement of ... past work at ... present hourly rate"); *Lira v. Cate*, No. C 00-0905 SI, 2010 WL 727979, *5 (N.D. Cal. Feb. 6, 2010) (awarding current rates in civil rights case to compensate for delay).

Plaintiffs omit crucial facts in relying on *Stevens v. Vons*, 2d Civ. Nos. B196755, B201528, 2009 WL 117902, *11 (Cal. App. 2009) and *NFB*, 2009 WL 2390261, to justify delay enhancement.  In *Stevens*, the Court of Appeal <u>expressly</u> recognized that courts should not double-count delay in payment by awarding current rates <u>and</u> delay enhancement.  But that argument was waived because it was not raised in the appellant's opening brief. *Id.*[51]  Similarly, in *NFB*, at *3, <u>the attorneys rates were</u>

---

[50] *See also Copeland*, 641 F. 2d at 893 n.23 (current rates eliminate "harm resulting from delay in payment"); *Robertson*, 144 Cal. App. 4th at 760 (reversing and remanding trial court's multiplier award because *inter alia* it double-counted delay in payment to set rate and the multiplier); *Graham*, 34 Cal. 4th at p. 584 (delay enhancement "may be reduced or eliminated if the lodestar rate is based on the present hourly rate rather than the lesser rate applicable when the services were rendered.")

[51] The Court of Appeal held, "For the first time in its reply brief, appellant argue[d] that the trial court abused its discretion in enhancing Davis's lodestar amount for delay in payment because the court used the attorney's current hourly rate in calculating that amount.  An enhancement for delay in payment 'may be … eliminated if the lodestar … is based on the present hourly rate rather than the lesser rate applicable when the services were rendered.' [Citation.]" *Id.* at *11.  But the argument was "<u>**waived** because it was not asserted in the appellant's opening brief</u>." *Id.* at *12.

1  underlined; thus, the argument that awarding current rates and a multiplier was double-counting wasn't

2  raised.

3      8.    Award Against Public Entity:  This factor "militate[s] against enhancement" because

4  taxpayers must pay the award.  *Northwest*, 159 Cal. App. 4th at 881, *citing Serrano III*, 20 Cal. 3d at 49.

5  Here, as in *Northwest*, the "award would not be paid out of a common fund or be borne by a private

6  wrongdoer, but would ultimately fall upon the shoulders of California taxpayers."  *See also San Diego*

7  *Police Officers Asso. v. San Diego P.D.*, 76 Cal. App. 4th 19, 24 (2000) (affirming *negative* multiplier);

8  *Hess*, 2008 WL 5381243, *8 (Title IX) ("the Court is not inclined to grant a multiplier, partially because

9  it is aware of the financial constraints [d]efendants are subject to"); *Smith v. Novato Unified Sch. Dist.*,

10  No. A122105, 2009 WL 1486727, *7 (Ct. of App. 1st Dist. 2009) (rejecting argument that law doesn't

11  recognize factor this factor; distinguishing cases holding this factor *alone* does not justify *negative*

12  *multiplier*).

13      9.    Fee recipient:  Another factor is whether "'... monies awarded would inure not to the

14  individual benefit of the attorneys involved but the organizations by which they are employed.'"

15  *Northwest*, 159 Cal. App. 4th at 881 (Citation omitted).  In *Northwest*, the fees would not go the plaintiff

16  organization but to private attorneys, which "militate[d] against an upward adjustment of the lodestar."

17  *Id.*  Here, fees go not to CDR or CCB but to private attorneys.

18      10.   Charitable funding for lawsuits of the same character (*e.g.*, *Northwest*, 159 Cal. App. 4th

19  at 881).  DRA and AARP receive charitable contributions for bringing lawsuits of this character (HDec.,

20  ¶63 so their livelihoods don't depend on fees from defendants such as Caltrans or fees from this case.

21      Finally, the Court should reject Plaintiffs' reliance on cases awarding multipliers when Plaintiffs

22  do not analyze whether the awards were applicable to the facts of this case.[52]  As just one example of

23  how Plaintiffs' arguments are misleading, in *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2006 WL

24  279260 (D. Colo. Jul. 27, 2006) [Dk. 460 at 21:25-22:4], the award *including the multiplier*, was

25  *unopposed*.  Class Counsel's Unopposed Petition for An Award of Attorneys' Fees and Costs, Civ. No.

26  99-cv-01923-JLK (filed Jul 21, 2006).[53]

27

28

[52] Plaintiffs also cite cases in their declarations purporting to support a multiplier here.  These cases are distinguishable, as discussed in Caltrans' objections to the declarations.

[53] *Lucas* is also distinguishable for other reasons.  The court agreed with both sides that the risk was acute because the defendant filed for bankruptcy in the middle of the case (*id.* at *8), that rates sought were below market rates for the services

**IV.    FEES ON FEES AND COSTS.**

Given the amount of "Fees on Fees" and costs at issue in relation to the total amount in dispute, to streamline the issues in dispute, Caltrans requests that the Court order the following.  First, Caltrans requests that the Court deny any Fees on Fees for work not already identified in Plaintiffs' Motion, and that the Court subtract 10% reduction from Plaintiffs' claimed Fees on Fees.  Caltrans believes this is fair and efficient given that Plaintiffs can't recover fees for "boilerplate" fee work "used in other cases for similar purposes."  *See Payne*, 2009 WL 1626588, *5.  Given that DRA and AARP are experienced in fee litigation, that sections of Plaintiffs' fee motion summarizing the law are boilerplate/similar to sections in other fee motions, and that Plaintiffs utilized the same research for mediation and their fee motion.  Plaintiffs' fees should be reduced accordingly.[54]

As to costs, given that the amount in dispute is only $371,332, Caltrans requests that the Court order Caltrans to pay Plaintiffs' costs minus expert Peter Margen's fees of $71,686.73, for total costs of **$299,646**.  The costs Plaintiffs seek for Mr. Margen's services are excessive, given his substandard performance.  As Judge Armstrong noted at trial, Margen sought to change his testimony from what he testified to in his report, had not even inspected physical sites which he had stated in his report were noncompliant, was "trying to distance" himself from his expert opinions and was not answering the Court's or counsel's questions directly.  Transcript of Trial, Sept. 21, 2009, at 35:17-36:14, & 44:13-45:15, Exh. 4 to RJN.  Judge Armstrong had to warn Margen, "[J]ust listen to the question … it's really important you [sic] start paying attention ... and answering precisely what is asked … " Id. at 39:16-21.

**V.     CONCLUSION**

In sum, the Court should order Caltrans to pay $3.75 million in fees and $299,646 in costs.

DATED:  April 22, 2010                      GREENBERG TRAURIG, LLP


                                            By _____
                                               GREGORY F. HURLEY
                                               Attorney for Caltrans

---

provided, and that because there were only two attorneys at the small firm representing plaintiffs, other work was precluded. *Id.* at *5-7.  Also, the court relied on the percentage of the fund approach (*id.* at *6), which isn't applicable in injunctive relief cases.

[54] Plaintiffs shouldn't receive fees for Pearl's work; DRA and AARP are experienced in fee litigation, and have submitted declarations of other attorneys, which makes Pearl's work duplicative. *See Marbled Murrelet v. Pacific Lumber*, 163 F.R.D. 308, 326 (N.D. Cal. 1995) (denying fees for Pearl's work as "overreaction"); *Lopez*, 385 F. Supp. 2d. at 997 (same).