LAURENCE PARADIS (STATE BAR NO. 122336)
MARY-LEE E. KIMBER SMITH (STATE BAR NO. 239086)
DISABILITY RIGHTS ADVOCATES
2001 Center St., Third Floor
Berkeley, CA 94704
Telephone:   (510) 665-8644
Facsimile:    (510) 665-8511
TTY:          (510) 665-8716
Email:        general@dralegal.org

DANIEL B. KOHRMAN (DC BAR NO. 394064)
JULIE NEPVEU (DC BAR NO. 458305)
AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC 20049
Telephone:   (202) 434-2060
Facsimile:    (202) 434-6424
Cell:         (202) 316-1991
Email:        dkohrman@aarp.org
              jnepveu@aarp.org

JOSÉ R. ALLEN (STATE BAR NO. 122742)
Pro Bono Counsel
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Telephone:   (415) 984-6400
Facsimile:    (415) 984-2698

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR DISABILITY RIGHTS, INC. ("CDR"), CALIFORNIA COUNCIL OF THE BLIND ("CCB"), BEN ROCKWELL and DMITRI BELSER, on behalf of themselves, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION ("Caltrans") and WILL KEMPTON, in his official capacity.<br><br>Defendants. | Case No. C-06-5125 SBA (MEJ)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**<br><br>Date:  May 13, 2010<br>Time: 10:00 a.m.<br>Judge: Hon. Maria-Elena James |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFFS' BILLING RATES ARE WELL SUPPORTED. ....................................... 1

 A. Plaintiffs' Evidence Regarding Market Rates Is Compelling. ............................... 1

 B. Current Rates are the Applicable Rates. ................................................................ 6

 C. Defendants' Challenges to Particular Rates are Without Merit. ............................ 7

III. DEFENDANTS ESTABLISH NO BASIS FOR REDUCING COMPENSABLE TIME SOUGHT BY PLAINTIFFS........................................................................................... 9

IV. PLAINTIFFS ARE ENTITLED TO A MULTIPLIER ................................................... 14

 A. The Settlement Agreement Does not Preclude a Multiplier. ............................... 14

 B. The Lodestar Should be Enhanced by a Multiplier. ............................................ 14

V. CONCLUSION............................................................................................................... 15

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF AUTHORITIES

**Cases**

*Berberena v. Coler*,
753 F.2d 629 (7th Cir. 1985) .................................................................................................. 12

*Bernardi v. Yeutter*,
951 F.2d 971 (9th Cir. 1991) .................................................................................................... 7

*B-K Lighting, Inc. v. Vision3 Lighting*,
No. CV 06-02825 MMM, 2009 WL 3838264, (C.D. Cal. Nov. 16, 2009) .................................... 3

*Bouman v. Block*,
940 F.2d 1211 (9th Cir. 1991) .................................................................................................. 6

*Brooks v Georgia State Board of Elections*,
997 F.2d 857 (11th Cir. 1993) ................................................................................................ 13

*Burgess v. Premier Corp.*,
727 F.2d 826 (9th Cir. 1984).................................................................................................... 6

*Camacho v. Bridgeport Financial, Inc.*,
No. C04-00478 CRB, 2008 WL 295129 (N.D. Cal. July 24, 2008)............................................. 5

*Chabner v. United Omaha Life Ins. Co.*,
No. C-95-0447 MHP, 1999 WL 33227443 (N.D. Cal. Oct 12, 1999).......................................... 12

*Christensen v. Stevedoring Services of America*,
557 F.3d 1049 (9th Cir. 2009) .................................................................................................. 3

*City of Riverside v. Rivera*,
477 U.S. 561 (1986).............................................................................................................. 12

*Coles v. City of Oakland*,
No. C03-2961 TEH, 2007 WL 39304 (N.D. Cal. Jan. 04, 2007) ...................................... 4, 12, 13

*Craigslist, Inc. v. Naturemarket, Inc.*,
--- F.Supp.2d ----, 2010 WL 807446 (N.D. Cal. 2010)............................................................... 4

*Cruz ex rel. Cruz v. Alhambra School Dist.*,
601 F.Supp.2d 1183 (C.D. Cal. 2009) ...................................................................................... 3

*Curry v. Contract Fabricators Inc. Profit Sharing Plan*,
744 F. Supp. 1061 (M.D. Ala. 1990) ........................................................................................ 6

*Davis v. City and County of San Francisco*,
976 F.2d 1536, 1548 (9th Cir. 1992),
*vacated in part on other grounds on denial of rehearing*,
984 F.2d 345 (1993)............................................................................................................ 6, 12

*Farbotko v. Clinton County of New York*,
433 F.3d 204 (2d Cir. 2005)...................................................................................................... 7

*Finkelstein v. Bergna*,
804 F. Supp. 1235 (N.D. Cal. 1992) .......................................................................................... 6

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Freitag v. California Dept. of Corrections*,
No. C00-2278 TEH, 2009 WL 2485552 (N.D. Cal. Aug. 12, 2009) .............................................. 3

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir.1992) ............................................................................................. 4, 10

*In re HPL Technologies, Inc. Securities Litigation*,
366 F. Supp. 2d 912 (N.D. Cal. 2005) ........................................................................................ 3

*Interfaith Community Organization v. Honeywell Intern., Inc.*,
426 F.3d 694 (3d Cir. 2005) ........................................................................................................ 4

*Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*,
No. C 07-00362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ........................................ 4

*Kim v. Fujikawa*,
871 F.2d 1427 (9th Cir. 1989) .................................................................................................... 5

*Kittok v. Leslie's Poolmart, Inc.*,
No. EDCV 08-832 (OPx), 2009 WL 2855878 (C.D. Cal. Sept. 4, 2009) .................................... 9

*Kowalski v. Farella, Braun & Martel, LLP*,
No. C-06-3341 MMC, 2009 WL 2761321 (N.D. Cal. Aug. 27, 2009) ........................................ 7

*Lopez v. San Francisco Unified School Dist.*,
385 F. Supp. 2d 981 (N.D. Cal. 2005) ............................................................................ 7, 11, 13

*Maldonado v. Lehman*,
811 F.2d 1341 (9th Cir. 1987) .................................................................................................... 3

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
No. CV 02-4770 MRP, 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) ........................................ 8

*McKenzie v. Kennickell*,
645 F. Supp. 437 (D.D.C. 1986) ............................................................................................... 12

*Miller v. Kenworth of Dothan, Inc.*,
117 F. Supp. 2d 1247 (M.D. Ala. 2000) ..................................................................................... 6

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989) .................................................................................................................... 6

*National Federation of the Blind v. Target Corp.*,
No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) .................................. passim

*Navarro v. GNC*,
No. 03-603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ............................................... 9

*Oberfelder v. City of Petaluma*,
No. C-98-1470 MHP, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002) .......................................... 10

*Perkins v. Mobile Housing Board*,
847 F.2d 735 (11th Cir. 1988) .................................................................................................. 10

*Quantum Health Res., Inc.*,
962 F. Supp. 1254 (C.D. Cal. 1997) ........................................................................................... 5

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Californians for Disability Rights, Inc. v. California Department of Transportation*
**Plaintiffs' Reply Memorandum ISO Motion for Reasonable Attorneys' Fees and Costs**                iii

*Santa Fe Pointe, L.P. v. Greystone Servicing Corp.*,
No. C-07-5454 MMC, 2009 WL 3353449 (N.D. Cal. Oct. 16, 2009) ........................................... 3

*Stewart v. Sonoma County*,
634 F. Supp. 773 (N.D. Cal. 1986) ........................................................................................... 12

*Trevino v. Gates*,
99 F.3d 911 (9th Cir. 1996) ...................................................................................................... 13

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*,
460 F.3d 1253 (9th Cir. 2006) .................................................................................................. 12

*Welch v. Metropolitan Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) .................................................................................................... 13

*Williamsburg Fair Housing Comm. v. Ross-Rodney Housing Corp.*,
599 F. Supp. 509 (S.D.N.Y. 1984) ............................................................................................ 12

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Californians for Disability Rights, Inc. v. California Department of Transportation*
**Plaintiffs' Reply Memorandum ISO Motion for Reasonable Attorneys' Fees and Costs**               iv

## I. INTRODUCTION

Defendants' opposition is notable for what it does not dispute, including the following:

- Plaintiffs sought to resolve the dispute without a lawsuit, but Defendants refused to even acknowledge that there were access barriers along their pedestrian facilities.
- Plaintiffs sought at multiple points throughout the litigation to settle the litigation, but Defendants repeatedly walked away from the settlement process.
- Defendants forced the one case to split into two. Defendants repeatedly sought to dismiss Plaintiffs' claims in both the federal and state court, resisted discovery, and resisted every one of Plaintiffs' efforts to streamline and coordinate the litigation.
- Defendants defended the two actions tenaciously, fighting every step of the way and made the litigation as complicated, difficult, and time consuming as possible.
- Plaintiffs ultimately obtained relief on virtually every aspect of their claims in the overall litigation, including ground-breaking decisions on a host of undecided legal issues.
- Plaintiffs achieved the largest architectural access settlement ever, including well over $1 billion in barrier removal and broad modifications in policies and procedures.

Defendants instead challenge the lodestar by attacking Plaintiffs' rates and hours and arguing against a multiplier. Such rates and hours are fully justified, however, as is Plaintiffs' right to a multiplier. Plaintiffs submit updated fees and costs through the final approval hearing, and an estimate of further fees related to finalizing and arguing this fee motion.[1] Plaintiffs are entitled to the cap of $8.75 million in attorneys' fees and the full amount they request as costs.

## II. PLAINTIFFS' BILLING RATES ARE WELL SUPPORTED.

Defendants challenge *all* the billing rates of the attorneys and legal assistants who worked on this litigation. Defendants' legal analysis is deficient and misguided, however, and their scant evidentiary support is irrelevant.

### A. Plaintiffs' Evidence Regarding Market Rates Is Compelling.

Plaintiffs' moving papers include extensive direct evidence of the market rates in the Bay

---

[1] A chart summarizing all fees and costs sought by Plaintiffs is included as Exhibit A to the Reply Declaration of Laurence Paradis ("Paradis Reply Decl."); *see also id.*, ¶¶ 4-6, 11-12 & Exhs. A-D (updated fees and costs for DRA); Reply Declaration of Dan Kohrman ("Kohrman Reply Decl."), ¶¶ 5-10 & Exhs. A-B (same, for AFL).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Area (the forum district) for attorneys who practice complex litigation.  This evidence includes a
2  survey of such rates by an expert in the area of attorneys fees (Richard Pearl) as well as direct
3  testimony by several prominent Bay Area attorneys as to the rates their firms charge private, fee-
4  paying clients for complex litigation.  The evidence shows that Plaintiffs' requested rates are
5  well within the range of market rates in the Bay Area for this type of litigation.  Defendants fail
6  to rebut any of this evidence.

7  Instead, Defendants present two surveys of rates charged by law firms as evidence that
8  Plaintiffs' rates are too high.  Neither survey should be accorded weight in this case, however.
9  The first is the ALM Legal Intelligence 2010 Billing Rates and Practices Survey Report for
10 2010, which according to Defendants is "a survey of 2009 rates of law firms in the San Francisco
11 Bay Area . . . ."  Declaration of Gregory H. Hurley ("Hurley Decl."), ¶ 4 & Exh. A.  Neither
12 Defendants nor the excerpts they provide identify the types of firms represented in the survey,
13 the type of matters such firms handle, or the purposes for which the survey is used.  The excerpt
14 indicates that it is published by "ALM Legal Intelligence" and "A Study of the Billing Rates and
15 Billing Practices of Attorneys in Small and Midsize Firms."  *Id.*, Exh. A at pp. 22-23.  According
16 to the website of ALM Legal Intelligence,[2] its survey compiles responses from 193 law firms
17 nationwide, but it does not specify how many law firms it surveys in the Bay Area or identify the
18 firms surveyed.  The website's summary states that results are segmented by practice area, but no
19 information about practice area is included in Defendants' excerpt.  It simply lists across-the-
20 board average billing rates by large metropolitan area.  Plaintiffs can find no federal or state
21 court in the nation that has ever cited this survey for any purpose.  In any event, without
22 information about the type of litigation practiced by the limited number of law firms included in
23 this survey, as well as the qualifications of the attorneys surveyed, it should be accorded no
24 weight to the issue before this Court, which is a determination of the prevailing rates in the San
25 Francisco Bay Area for attorneys with experience and qualifications comparable to those of
26 Class Counsel who practice complex federal litigation.[3]

27
28
---
[2] <http://www.almlegalintelligence.com/r5/home.asp>, visited on April 26, 2010.

[3] Unlike the excerpt from this ALM survey presented by Defendants, the surveys submitted by Plaintiffs identify law firms by name, allowing an assessment of their location and the type of law they practice.  *E.g.*, Declaration of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Californians for Disability Rights, Inc. v. California Department of Transportation*
**Plaintiffs' Reply Memorandum ISO Motion for Reasonable Attorneys' Fees and Costs**     2

The other survey Defendants use is the *Laffey* matrix, a collection of prevailing rates for Washington, D.C., derived from a district court case decided in 1983. *See Christensen v. Stevedoring Services of America*, 557 F.3d 1049, 1051 & n.1 (9th Cir. 2009) (citing *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984)). The Ninth Circuit, however, has expressly concluded that it "does not follow the legal standard set forth in *Laffey*" and instead looks to prevailing community rates. *Maldonado v. Lehman*, 811 F.2d 1341, 1342 (9th Cir. 1987).

Caltrans relies in part upon *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) ("*HPL*"), apparently the first decision in this district to use the *Laffey* matrix. In order to account for the higher rates in the Northern District of California, *HPL* applied the "locality pay differentials within the federal courts – which, like law firms, employ lawyers and legal support staff . . . ." 366 F. Supp. 2d at 921-22. Locality pay adjustments for federal employees, however, do not necessarily correspond to differences in prevailing market rates charged by private attorneys engaged in complex federal litigation, and the *HPL* court cited no evidence or authority suggesting that they do. Resort to such a statistical measure also does not reflect a determination by the court of prevailing rates in light of all of the evidence, which, as the Ninth Circuit Court of Appeals emphasized long ago, is the proper standard governing the determination. Indeed, another decision cited by Defendants states: "While the *Laffey* Matrix may be some evidence of the prevailing rate, I do not recommend that the Court rely exclusively on the *Laffey* Matrix, as defendants request. The *Laffey* Matrix has not been adopted by the Ninth Circuit and its somewhat mechanical approach does not appear to consider all the factors which the Ninth Circuit has deemed important." *Freitag v. California Dept. of Corrections*, No. C00-2278 TEH, 2009 WL 2485552, at *2 n.6 (N.D. Cal. Aug. 12, 2009); *see also, e.g.*, *Cruz ex rel. Cruz v. Alhambra School Dist.*, 601 F.Supp.2d 1183, 1200 n.15 (C.D. Cal. 2009) ("The

---

Sanford Jay Rosen, Exh. 3 (*National Law Journal* survey); Declaration of Richard M. Pearl, Exh. B (*Westlaw CourtExpress Legal Billing Report*); *id*., ¶ 9 (compilation of rates by Mr. Pearl). Also unlike Defendants' ALM survey, these surveys all have been credited by courts in the Ninth Circuit as relevant evidence of prevailing rates. *E.g.*, *B-K Lighting, Inc. v. Vision3 Lighting*, No. CV 06-02825 MMM, 2009 WL 3838264, at *7 & n.46 (C.D. Cal. Nov. 16, 2009) (National Law Journal survey); *Santa Fe Pointe, L.P. v. Greystone Servicing Corp.*, No. C-07-5454 MMC, 2009 WL 3353449, at *2-3 (N.D. Cal. Oct. 16, 2009) (Westlaw CourtExpress report); *National Federation of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009), at *3 (hereafter "*NFB v. Target*") (accepting Mr. Pearl's survey as evidence of prevailing rates in the Northern District of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 Court will not apply the *Laffey* matrix because *inter alia* it is inconsistent with the standards
2 applicable here requiring that the Court consider the skill and expertise of these particular
3 attorneys in setting their rate."); *see also Interfaith Community Organization v. Honeywell*
4 *Intern., Inc.*, 426 F.3d 694, 710 n.14 (3d Cir. 2005) ("any index that is updated based on a
5 statistical measure of inflation – rather than regular recalibration in light of prevailing rates – will
6 tend to diminish in accuracy over time.")[4]

7 Caltrans also claims that Plaintiffs have failed to demonstrate that inflation or market
8 increases justify the requested current rates. Caltrans cites a few decisions that have limited
9 increases in rates over a period of years based on lack of evidence justifying the increase. As
10 one of these decisions explains, however: "[I]nflation may be considered as one factor when
11 determining the reasonableness of requested rates. However, the focus of the rate analysis is to
12 ensure that fees are awarded at 'prevailing market rates in the relevant community,' and such
13 rates may be affected by factors other than inflation, such as attorneys' additional years of
14 experience or changes in the legal market." *Coles v. City of Oakland*, No. C03-2961 TEH, 2007
15 WL 39304, at *7 (N.D. Cal. Jan. 04, 2007) (citations omitted). Caltrans presents no probative
16 evidence that the rates sought by Class Counsel exceed relevant prevailing market rates in the
17 area. Instead, Caltrans cites former decisions in which courts limited increases in light of the
18 particular evidence regarding current prevailing rates. As explained at length in Plaintiffs'
19 motion and herein, Class Counsel have presented extensive evidence of *current* rates, as recently
20 increased and charged by major firms in the forum district that litigate complex actions in federal
21 courts. The rates claimed are in line with those charged by such firms.[5]

---

California).
[4] *Craigslist, Inc. v. Naturemarket, Inc.*, --- F.Supp.2d ----, 2010 WL 807446, at *21-23 (N.D. Cal. 2010), also used the Attorney General's adjusted *Laffey* matrix as altered by federal salary differentials to determine applicable rates in this forum, relying on *HPL* as authority for using that method. But the plaintiff in that case submitted only statements of its own counsel in support of the rates it sought. Therefore, the court had little choice but to find some other evidence of prevailing rates. Finally, nothing in *Craigslist* suggests that the plaintiff objected to reliance on the *Laffey* matrix. Thus, even if *Craigslist* supports the notion that the *Laffey* matrix might be properly considered as *some* evidence of prevailing rates, *Craigslist* does not establish that this Court could not find other, more relevant evidence of prevailing rates submitted by Plaintiffs to be a more convincing and appropriate measure.
[5] Defendants' contention that DRA's rates should be reduced because overhead costs are less in the East Bay than in San Francisco ignores controlling authority that the relevant community for determining rates is the forum district, which includes both San Francisco and the East Bay. "As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992)." *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *3 (N.D. Cal. Oct. 27, 2009). Also, the evidence presented by Plaintiffs includes rates charged by East Bay firms, which are consistent with DRA's rates.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Caltrans further asserts that recent decisions on disputed fee claims that approved Class Counsel's rates should be disregarded because the rates were not opposed. Even when aspects of a fee request are unopposed, however, the court still must indicate how it arrived at its decision. "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees. . . . What remains important is that the district court articulate with sufficient clarity the manner in which it makes its determination of a reasonable hourly rate and the number of hours which should reasonably be compensated." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 (9th Cir. 1989). Courts recently approving Class Counsel's rates still concluded that the plaintiffs had presented evidence supporting their attorneys' rates, and the courts found such rates to be reasonable. *E.g.*, *NFB v. Target*, 2009 WL 2390261, at *3 ("The court is satisfied that the plaintiffs' requested rates are in line with those billed by attorneys in this district experienced in complex litigation, as analyzed and thoroughly discussed by plaintiffs' attorneys' fees expert [Richard Pearl].").

Moreover, where a fee claim is submitted to the Court as a disputed matter, such as in the *NFB* case, the defendant has every incentive to challenge both the hours and the rates. If the rates of the attorneys are not challenged, as was the situation in *NFB*, it is presumably because the requested rates were at or below those charged by the defendant's own counsel. In *NFB*, the defendant was represented by Morrison and Foerster – one of the prominent firms in the Bay Area that handles complex litigation. Defense counsel in that case made a tactical decision not to challenge Class Counsel's rates, although it did unsuccessfully challenge the rates of support staff. *Id.*; *see also* Paradis Reply Decl., ¶ 20. Thus, such rates approved in disputed fee motions are probative even when the defendants chose not to challenge the requested rates.[6]

Defendant also makes a peculiar argument that rates actually charged by firms in the Bay Area to their private, fee-paying clients for complex litigation are not probative because they are somehow "unopposed." This argument makes no sense. The very essence of a market for

---

[6] The authority Defendants cite in support of their contention about unopposed rates is distinguishable. In *Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997), the court expressed concern about an "inherently collusive" class action settlement in which a "cooperative defendant" raised no opposition whatsoever to a fee request. In *Camacho v. Bridgeport Financial, Inc.*, No. C04-00478 CRB, 2008 WL 295129, at *3 (N.D. Cal. July 24, 2008), the court also expressed concern about fee motions that were entirely unopposed. The prior fee awards obtained by Class Counsel, in contrast, all were opposed on any tenable ground the defendants could identify.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  attorneys fees is that clients pay only those rates that they believe to be necessary to obtain the
2  services of the attorneys qualified to handle the types of cases at issue.[7]

### B. Current Rates are the Applicable Rates.

As established in Plaintiffs' motion, a reasonable fee award ordinarily is calculated based on *current* hourly rates for the plaintiffs' attorneys. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (use of current hourly rates "take[s] into account lost interest and inflation"). Defendants contend, however, that a court may refuse to use currently hourly rates on the ground that increased rates reflect the attorney's increased knowledge and experience. In support of this contention, Defendants rely solely upon *Finkelstein v. Bergna*, 804 F. Supp. 1235 (N.D. Cal. 1992) and two district court decisions from Alabama. These decisions are anomalous.[8]

*Finkelstein*, relying on dictum in *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir. 1984), reduced a first-year associate's rate to match her level of experience when she performed the work. *Finkelstein*, 804 F. Supp at 1248. In *Burgess*, however, the court recited, and followed, the general rule that courts use current rates to compensate for lost interest and inflation. *Id.* at 841 (collecting cases from multiple jurisdictions following this rule and holding that the trial court did not abuse its discretion applying current rates). *Id.* Thus, *Finkelstein* is scant support for the principle that rates of attorneys should be reduced to match their level of experience when they performed the work. To the extent that the dictum in *Burgess*, decided in 1984, could have raised any doubt about the proper method for determining applicable rates in fee-shifting cases, the Ninth Circuit subsequently clarified that current, not historical, rates must be used. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1548 (9th Cir. 1992), *vacated in part on other grounds on denial of rehearing*, 984 F.2d 345 (1993).[9] Furthermore, although Defendants

---

[7] Moreover, many attorneys receive fees only from paying clients, and defendants often choose not to challenge rates in fee litigation, so it would be unreasonable to expect every rate to be subjected to judicial scrutiny.

[8] The Alabama decisions cited by Defendants are distinguishable. In *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala. 1990), the court simply found that the plaintiffs' attorneys were "completely inexperienced in ERISA law when they took the case," and that this factor should be reflected in their hourly rates. This decision has nothing to do with using historical rates to adjust for lack of experience in litigation spanning several years; nor does *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1258 (M.D. Ala. 2000), which simply considered the proper rate for attorneys and a law clerk based upon their experience.

[9] Recent decisions from this district routinely uphold and use current rates in calculating fee awards. *E.g.*, *Kowalski v. Farella, Braun & Martel, LLP*, No. C-06-3341 MMC, 2009 WL 2761321, at *6-7 & n.8 (N.D. Cal. Aug. 27,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

contest use of current rates on grounds of historical experience, they do not dispute that current rates are appropriate to compensate counsel for delay in payment in lengthy litigation, such as the present matter.  Accordingly, current hourly rates should be applied to all work done in this litigation if only to compensate for the delay in payment.  Otherwise, this Court would be put to the burdensome task of having to calculate the market rates of each attorney for each of the past years during which he or she worked on the case and then determine the amount to apply as interest for the delayed payment.

### C. Defendants' Challenges to Particular Rates are Without Merit.

Defendants argue that the hourly rate for Mr. Allen, a senior partner with Skadden Arps, should be reduced from the requested rate of up to $930.[10]  Defendants do not dispute that Mr. Allen regularly charges and receives this rate from his private, fee-paying clients for complex litigation.  Instead, Defendants point to one decision issued five years ago that reduced Mr. Allen's rate for his work on a civil rights case that, unlike the present litigation, was not considered "legally complex."  *Lopez v. San Francisco Unified School Dist.*, 385 F. Supp. 2d 981, 987-89 (N.D. Cal. 2005).

In any event, the analysis utilized in *Lopez* is inconsistent with controlling authority.  The Ninth Circuit, following U.S. Supreme Court decisions, has made it clear that:  "[A]ttorneys' fee awards in civil rights cases are 'governed by the same standards which prevail in other types of *equally complex federal litigation. . . .*'  *Hensley,* 461 U.S. at 430 n. 4, 103 S.Ct. at 1938 n. 4."  *Bernardi v. Yeutter*, 951 F.2d 971, 974 (9th Cir. 1991) (emphasis added).  Under this controlling principle, an attorney who is regularly paid a high hourly rate for handling complex business litigation should not see his or her rate cut in half when taking on a complex civil rights case.  The purpose of the fee-shifting statutes is to encourage attorneys – including experienced business litigators – to take on challenging complex civil rights cases.  The skills that make Mr. Allen a highly qualified business litigator are just as effective in complex civil rights litigation.[11]

---

2009); *NFB v. Target*, 2009 WL 2390261, at *3 (upholding DRA's 2008 rates for all work in multi-year litigation).
[10] Defendants' related argument that Mr. Allen should not be compensated for taking the deposition of Defendants' expert is addressed in the Paradis Reply Decl., ¶ 17.
[11] Moreover, courts avoid simply "recycling rates awarded in prior cases" as Defendants attempt with Mr. Allen. *See Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005) ("[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available

Furthermore, it is undisputed that many private attorneys regularly bill their private, fee-paying clients in the range of $800 to $950 per hour for complex litigation in the Bay Area. Declaration of William Alderman, ¶ 11 (billing rate at Orrick to private, fee-paying clients is $895); Declaration of Sanford Rosen, ¶ 16 & Exh. 2 (billing rate to private, fee-paying clients is $800). The Declaration of Richard M. Pearl, ¶ 9, lists rates of attorneys in the San Francisco Bay Area who practice complex litigation, and some of those rates exceed $900. Some federal district courts in California have approved rates even higher than that of Mr. Allen. *See*, *e.g.*, *Masimo Corp. v. Tyco Health Care Group, L.P.*, No. CV 02-4770 MRP, 2007 WL 5279897, at *7 (C.D. Cal. Nov. 5, 2007) (hourly rate ranging from $900 to $1100 per hour in complex litigation spanning several years until 2007 was reasonable).[12]

Defendants also challenge the rates requested for specific attorneys at Plaintiffs' counsel Disability Rights Advocates ("DRA") by pointing to a few past cases involving different attorneys where relatively low rates were awarded. Defendants ignore the most relevant cases on this issue, however – specifically the decisions in the most recent contested fee motions filed by DRA (the *NFB* and *Kidd* cases) in which judges in the Northern District and in Alameda County Superior Court both awarded DRA's 2008 rates that are only slightly below the rates requested here. The rates requested for attorneys at Plaintiffs' counsel AARP Foundation Litigation ("AFL") are also closely in line with the rates approved in the *NFB* and *Kidd* cases.

Defendants further challenge the rates of legal assistants, using similar arguments. Such rates are consistent with those surveyed in Mr. Pearl's declaration, have previously been approved by courts in the Northern District, and are not called into question by any evidence submitted by Defendants. In *NFB v. Target*, the defendant challenged the 2008 rates of DRA's paralegals and law clerks. The district court found the evidence supporting these rates – including a declaration by Mr. Pearl – "convincing." 2009 WL 2390261, at *3.

Finally, Defendants attack Class Counsel's "skills as trial attorneys," Opposition at 4 &

---

under [fee-shifting statutes] and compensation available in the marketplace. This undermines [a fee-shifting statute's] central purpose of attracting competent counsel to public interest litigation." This concern is particularly true when the rates considered in other cases were for attorneys litigating different types of cases during different time periods.

[12] Defendants themselves rely on *Masimo*, Opposition at 8-9, n.25, n.27, so their claim that no court has awarded a rate as high as $930, *id*. at 3, is disingenuous, at best. In addition, partners with defense counsel's own law firm

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  n.9, and go so far as to suggest that Class Counsel's rates be reduced by citing *Navarro v. GNC*,
2  No. 03-603 SBA, 2005 WL 2333803, at *8-10 (N.D. Cal. Sept. 22, 2005), a case in which Judge
3  Armstrong reduced an attorney's rates because of affirmative *misconduct*, some of which
4  resulted in sanctions.  Defendants' suggestion of misconduct on the part of Class Counsel is
5  entirely without basis and premised solely on a few statements taken out of context, which are
6  not "proof" but amount to ad hominem attacks by Defendants.[13]  In any event, three days ago at
7  the Fairness Hearing (wherein the Court granted final approval of the Settlement), Judge
8  Armstrong specifically commended counsel for both sides on their professionalism in the
9  litigation:  "You both [Plaintiffs' counsel and Defendants' counsel] have conducted yourselves
10  extremely professionally and I want you to know that you are really to be commended."  Paradis
11  Reply Decl., Exh. G at 22:14-16.
12  Accordingly, Plaintiffs' counsel's requested hourly rates are fully supported.

### III. DEFENDANTS ESTABLISH NO BASIS FOR REDUCING COMPENSABLE TIME SOUGHT BY PLAINTIFFS.

Defendants make numerous sweeping, largely unsupported contentions that Plaintiffs have not billed properly or have billed for tasks that should not be compensated.  In support of these contentions, Defendants rely extensively on case law outside the Ninth Circuit, as well as selective orders from district courts that do not reflect the analysis supporting the vast majority of fee awards in this jurisdiction.  Pertinent case law and the record establish that Defendants' challenge to the fees claimed by Plaintiffs is without merit.[14]

Once Plaintiffs have documented the hours for which they seeks attorney's fees, the party opposing the fee application has the burden of submitting *evidence* challenging the accuracy and reasonableness of the hours charged.  *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir.

---

charged as much as $850 per hour during 2009.  Rosen Decl., Exh. 3, p. 4 (showing rates for Greenberg Traurig).

[13] If this Court wishes to probe into the relative professionalism of counsel in this case, it might consider that Defendants' counsel Mr. Hurley affirmatively misrepresented certain facts to the trial court.  *See* Reply Declaration of Jose Allen, Exh. A.  Mr. Hurley has a record of such misrepresentations to various courts.  *Id.  See also Kittok v. Leslie's Poolmart, Inc.*, No. EDCV 08-832 (OPx), 2009 WL 2855878, at *4 (C.D. Cal. Sept. 4, 2009) ("[Mr. Hurley] – not plaintiff's [counsel] – has acted unprofessionally and generated needless expenses for both parties in the case.").

[14] Defendants do not challenge the costs sought by Plaintiffs, except for those associated with Plaintiffs' expert, Peter Margen.  Defendants request that the Court deduct such costs in full because the Court purportedly criticized his testimony on cross-examination.  Mr. Margen's services as an expert witness were essential to the litigation and settlement, however.  Paradis Reply Decl., ¶ 7.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1992); *see also Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988) (To justify a reduction in the lodestar based upon excessive time, Defendants must show that "the time claimed is obviously and convincingly excessive.").

Defendants claim that they have prepared charts identifying particular, non-compensable time entries for all three firms acting as Class Counsel.  Opposition at 10-11; Hurley Decl. at ¶¶ 50-53.  These charts are identified as Exhibits N, P, and Q to the Hurley Decl.  *Id*., ¶ 53.  The documents filed by Defendants, however, did not include Exhibits P and Q – the charts for allegedly deficient time entries for DRA and Skadden, respectively.  Plaintiffs requested information from defense counsel on April 26 about these missing exhibits but received no response.  Reply Declaration of Ronald Elsberry, ¶¶ 7-8 & Exh. C.  Instead, one day before Plaintiffs' reply papers were due, Defendants filed these two Exhibits, containing over 500 pages, as part of purported "Errata."  *Id*., ¶ 9.  Defendants have not even attempted to explain their failure to file these exhibits on a timely basis.  Clearly, Plaintiffs have been prejudiced in their ability to respond to these late-filed exhibits.  *Id*., ¶ 11.  This Court would thus be well within its authority to exclude this material.  *See* Plaintiffs' Objections to Hurley Decl., No. 1.

In any event, even a cursory review of Exhibits N, P, and Q reveals that Defendants' challenges to particular entries generally are devoid of any meaningful explanations and hardly probative.  Defendants claim certain time entries are excessive, vague, or indicate unnecessary conferences, but Defendants fail to explain why.  Defendants also offer no explanation of their arbitrary percentage reductions.  *See* Plaintiffs' Objections to Hurley Decl. at 3:17-4:13.  Defendants claim that certain entries are "block-billed," yet the challenged entries often consist of only two items that are closely related and are in essence two parts of a single piece of work.[15]  Defendants' analysis also includes blatant errors.  Elsberry Decl., ¶ 11.

Moreover, Defendants fail to take into account that Plaintiffs' three firms each already "no-charged" various specific time entries totaling over $290,000.  *See* Plaintiffs' Motion at 18.

---

[15] In *Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 WL 472308, at *3 (N.D. Cal. Jan. 29, 2002), the court stated:  "The charge of blocked billing does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures."  Plaintiffs' records meet this basic requirement.  Defense counsel's own routine practice has been to block bill extensively in this case (Paradis Reply Decl., ¶ 21 & Exh. F), and Caltrans has paid them for such activities.  *Id*.

Defendants claim that some of these no charged items are not normally billed to clients but do not contest that many other of the no-charged items are customarily billed to clients. *See* Hurley Decl., Exh. L. Defendants also fail to take into account that Plaintiffs' three firms have, in addition no-charging many items, also made additional across-the-board voluntary deductions of five percent. When faced with an argument that Class Counsel's time entries were insufficiently documented, the Northern District in a recent case concluded that a five-percent voluntary deduction by Plaintiffs was sufficient to offset any "flawed entries identified." *NFB v. Target*, 2009 WL 2390261, at *5.[16] Furthermore, the cap of $8.75 million represents a voluntary deduction of more than eight percent from Plaintiffs' actual lodestar. Such a reduction is more than adequate to adjust for insufficiently detailed or otherwise flawed time entries.[17]

Defendants further challenge the fees claimed by Plaintiffs on the ground that multiple attorneys and/or legal assistants attended and participated in certain conferences, depositions, court hearings, and trial. Similar assertions were recently rejected in another case upon which Defendants rely – *Lopez v. San Francisco Unified School Dist.*, 385 F. Supp. 2d 981. In that matter, Judge Illston stated:

> The Court… does not find it unreasonable to have multiple attorneys present at a case management conference, mediation, or deposition. . . . Given the size and complexity of the case, it was not unreasonable to have a number of attorneys at these important proceedings.

*Id*. at 993-94.

Defendants also assert that Class Counsel spent too much time on conferences among themselves and with one another. Many courts have recognized in awarding fees for conferences and meetings that they are an essential part of complex litigation. "It is sufficient to state that conferences between attorneys to discuss strategy and prepare for oral argument are an essential

---

[16] Defendants suggest that the same five-percent voluntary deduction by Plaintiffs in the present case consists solely of no-charged items, and that because these items were non-compensable in any event, the voluntary deduction does not demonstrate good faith billing judgment. Opposition at 8, n.23. Defendants mischaracterize Plaintiffs' voluntary deduction, however. The five-percent reduction was applied to *charged* items only. This reduction is *in addition to* the no-charged items.

[17] Among a litany of asserted reasons why Plaintiffs allegedly have not exercised billing judgment, Defendants misrepresent that Plaintiffs engaged in "bad faith tactics" by failing to dismiss the federal program access claims so they could be tried solely in the state action. Opposition at 8. Defendants ignore the fact that Plaintiffs' counsel made every effort to achieve this result. Paradis Reply Decl., ¶¶ 18-19. Defendants refused to cooperate in coordinating the two lawsuits. In fact, Defendants insisted, in opposing Plaintiffs' motion for coordination, that "all

part of effective litigation. . . .  Most important, meetings between junior and senior lawyers to discuss the progress of research and review completed assignments are reasonable and appropriate means to secure proper supervision and efficient staffing . . . ." *McKenzie v. Kennickell*, 645 F. Supp. 437, 450 (D.D.C. 1986); *see also Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985) (awarding attorney time spent in strategy conferences); *Williamsburg Fair Housing Comm. v. Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) ("Multiple attorneys may be essential for planning strategy, eliciting testimony, or evaluating facts or law.").  Internal meetings are not only necessary for modern complex litigation, but they can be the most efficient way to convey information and handle the progress of the suit.  *See also Davis v. City and County of San Francisco*, 976 F.2d at 1545; *Chabner v. United Omaha Life Ins. Co.*, No. C-95-0447 MHP, 1999 WL 33227443 (N.D. Cal. Oct 12, 1999) ("It is certainly valid that the members of plaintiff's legal team met regularly to fashion strategy, update one another on developments, and give and receive instructions regarding work assignments.").

In this case, given the complexity of the two lawsuits and the avalanche of work generated by defense counsel's aggressive litigation tactics, it was not unreasonable to have multiple attorneys and assistants present during various conferences, discovery, hearings, and at trial as well as conferences to coordinate their strategy in prosecuting these cases.  "[A defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986); *Coles v. City of Oakland*, 2007 WL 39304, at *11.[18]

Relying on decisions from other jurisdictions, Defendants claim that senior attorneys should not bill for tasks that could be performed by less experienced lawyers.  Judge Patel thoroughly answered such an argument in *NFB v. Target*, just last year:

---

of Plaintiffs claims" had to be tried in the federal action.  *Id*.

[18] Defendants also claim that certain clerical tasks are not compensable.  The Ninth Circuit instructs that clerical tasks are reasonably compensated if such is the custom in the relevant legal market.  *NFB v. Target*, 2009 WL 2390261, at *5; *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1256 (9th Cir. 2006).  For example, charges for word processing are recoverable in this area.  *Stewart v. Sonoma County*, 634 F. Supp. 773, 781 (N.D. Cal. 1986) ("Inasmuch as word processing is customarily billed to clients, this is an appropriate charge"); *Finkelstein*, 804 F. Supp. at 1260-61 (word processing services held compensable in light of evidence that "it has become the prevailing practice in firms in the San Francisco area to bill clients separately for word processing support work").  Plaintiffs have included such charges as costs.

> [A]s this court has consistently held, the court may not condition fees on plaintiffs' counsel's conformance to the typical commercial law firm's pyramidal staffing structure. The legal profession is diverse enough to embrace a variety of ways of conducting effective litigation, some of which may involve partners with relevant expertise conducting research or preparing a witness. As this court noted in the past, the benefits of the pyramidal structure itself have been a subject of debate within the profession for some time.

2009 WL 2390261, at *3 (citations omitted). In this case there was also extensive delegation of tasks to the more junior attorneys and support staff. See moving declaration of Paradis, ¶ 25.

Defendants next claim that all fees for attorney Dan Kohrman of AARP should be reduced by twenty percent because he bills in one-quarter hour increments. They rely upon decisions holding that a reduction is appropriate if such a billing practice results in "actual over-billing." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948-49 (9th Cir. 2007); *see also Lopez*, 385 F. Supp. 2d at 993 (reduction is appropriate "to account for the unearned increment based on quarter-hour billing"). As Mr. Kohrman explains, however, his practice is to round downward or not to charge time at all if a task entails less than the full quarter hour. Kohrman Reply Decl., ¶ 16. Therefore, the fact that he bills in one-quarter hour increments does not result in actual over-billing, and no reduction is warranted.

Finally, Defendants assert that the fees requested by Plaintiffs are excessive when compared with the fees incurred by defense counsel. In the circumstances of this case, however, defense fees are not relevant to a determination of Plaintiffs' fees. "[P]rivate attorneys often charge lower rates to the government because of counterbalancing benefits such as repeat business, and '[w]here the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer.'" *Brooks v Georgia State Board of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (citations omitted). The Ninth Circuit and Northern District have explicitly adopted this analysis. *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *Coles*, 2007 WL 39304, at *5. Indeed, while Mr. Hurley represents that his own "hourly rate for Caltrans in this matter is $530," Hurley Decl., ¶ 20, he does not state what he ordinarily charges private clients.[19]

---

[19] Moreover, Defendants have presented no competent evidence to establish what amount of fees would be attributable to the extensive work conducted by Caltrans' in-house counsel. Mr. Hurley purports to provide

*Californians for Disability Rights, Inc. v. California Department of Transportation*
**Plaintiffs' Reply Memorandum ISO Motion for Reasonable Attorneys' Fees and Costs      13**

## IV. PLAINTIFFS ARE ENTITLED TO A MULTIPLIER

### A. The Settlement Agreement Does not Preclude a Multiplier.

Defendants' contention that the settlement agreement precludes a multiplier is without basis. First, nothing in the settlement agreement expressly refers to a multiplier. Given the routine practice of requesting fee enhancements in litigation such as this, where California state law claims are involved, Defendants certainly would have insisted on such language if they intended to preclude use of a multiplier. Second, the actual language of the agreement does not, as Defendants attempt to establish, eliminate Plaintiffs' right to seek a multiplier.[20]

Defendants argue that they agreed to pay only fees "for work," and that fees enhanced by a multiplier are not all for actual work performed. This argument ignores the ordinary meaning of "a motion for Fees" for work related to claims pleaded in litigation. Such motions often include requests for enhancements through the use of a multiplier when California state law claims are involved. This complex, novel litigation would be no exception. Moreover, Class Counsel made it abundantly clear to defense counsel that they intended to seek a multiplier in any contested fee motion pursuant to the settlement. Paradis Reply Decl., ¶ 28.

### B. The Lodestar Should be Enhanced by a Multiplier.

Plaintiffs' initial motion discussed at length why this extraordinary litigation warrants application of a multiplier. Defendants do not dispute that Plaintiffs (1) prevailed on virtually every important, contested legal issue in the litigation, and (2) achieved "important" results, comparable to the best possible results that could have been obtained by other highly compensated attorneys in complex federal litigation. Given the many disputed legal motions in this case, many of which required the Court to issue rulings of first impression, Defendants'

---

information about the number of hours worked on this matter by attorneys employed in Caltrans' internal legal department and his own opinion about the current market rate for their services. *Id*. at ¶ 57. Such statements by Mr. Hurley are, at the very least, inadmissible hearsay, without documentation or explanation. *See* Plaintiffs' evidentiary objections to Hurley Decl., Objection No. 3. Thus, even if defense fees were relevant, Defendants provide no basis on which this Court may meaningfully compare the defense fees with those sought by Plaintiffs. *See also* Paradis Reply Decl., ¶¶ 22-25 (describing active role of Caltrans' in-house counsel in this litigation).

[20] The Settlement Agreement states: "If the Parties are unable to reach an agreement as to the amount of Fees, Plaintiffs' Attorneys will file a motion for Fees in the Federal Action requesting that the Federal Court determine the amount of Fees to be awarded, subject to the following agreement: Defendants agree to pay Fees of no less than $3.75 million and no more than $8.75 million for all work related to claims pleaded in the Litigation, settlement, and future monitoring of all claims in the Litigation, including any Fees for time spent preparing a fee motion." Docket No. 454-7, ¶ 4.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

characterization of this case as ordinary is simply inaccurate. More importantly, however, their contention that all factors that justify a multiplier are subsumed in the lodestar would preclude the award of a multiplier in virtually any case. Plaintiffs will not reargue here their entitlement to a multiplier under those factors, which are thoroughly analyzed in their initial motion. Plaintiffs do emphasize, however, that this case was extremely risky given the length of time from when work on this case first began (approximately five years ago) to resolution, and the uncertainty of the law in both the federal and state cases. The possibility that Plaintiffs would not prevail at all was a reality until the settlement was finalized.[21] Class Counsel easily could have accepted other, less risky cases, such as ordinary ADA accessibility cases like those defense counsel routinely litigates, with relative certainty of prevailing fairly quickly and then recovering their fees. Paradis Reply Decl., ¶ 29. Counsel deserves an enhancement for, instead, taking on the difficult, lengthy litigation that resulted in an unprecedented settlement that will benefit class members throughout the state for decades to come. Such an enhancement is particularly appropriate because Defendants insisted that the fee award for the merits work on the case cover all future monitoring for the next thirty years of the implementation period.

## V.  CONCLUSION

Plaintiffs contend that their requested rates and fees are fully supported by the evidence they have provided, and that for these reasons and those set forth in their mediation brief, they are entitled to the full cap of $8.75 million. In addition, Plaintiffs should be awarded the full amount of their costs, $374,429, which is below the negotiated cap of $391,477.

Dated: April 29, 2010

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES
AARP FOUNDATION LITIGATION
JOSE ALLEN, ESQ.

_____/s/_____
Laurence Paradis
Attorneys for Plaintiffs

\\Server\Cases\CDR.Caltrans\Fees_Costs\Motion\Reply\Reply_Final.doc

---

[21] As Judge Armstrong noted at the Final Approval Hearing: "It is clear from the history of this case, the papers that have been filed in this action and the Court's observations during the several days of trial that have taken place in September 2009 that the Defendants have vigorously disputed Plaintiffs' claims and that Plaintiffs face significant risk in continuing the litigation." Paradis Reply Decl., Exh. G at 19:20-25.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644