LAURENCE PARADIS (State Bar No. 122336)
MARY-LEE E. KIMBER (STATE BAR NO. 239086)
DISABILITY RIGHTS ADVOCATES
2001 Center St., Third Floor
Berkeley, CA 94704
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:         (510) 665-8716
Email:       general@dralegal.org

DANIEL B. KOHRMAN (DC BAR NO. 394064)
JULIE NEPVEU (DC BAR NO. 458305)
AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC 20049
Telephone:   (202) 434-2060
Facsimile:   (202) 434-6424
Cell:        (202) 316-1991
Email:       dkohrman@aarp.org; jnepveu@aarp.org

JOSÉ R. ALLEN (STATE BAR NO. 122742)
Pro Bono Counsel
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Telephone:   (415) 984-6400
Facsimile:   (415) 984-2698

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR DISABILITY RIGHTS, INC. ("CDR"), CALIFORNIA COUNCIL OF THE BLIND ("CCB"), BEN ROCKWELL and DMITRI BELSER, on behalf of themselves, and on behalf of all others similarly situated, <br> Plaintiffs, <br> v. <br> CALIFORNIA DEPARTMENT OF TRANSPORTATION ("Caltrans") and WILL KEMPTON, in his official capacity, <br> Defendants. | **CASE NO. C 06 5125 SBA** <br><br> CLASS ACTION <br><br> **REPLY DECLARATION OF DANIEL B. KOHRMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS** <br><br> **Date:** May 13, 2010 <br> **Time:** 10:00a.m. <br> **Judge:** Hon. Maria-Elena James <br> **Courtroom:** B, 15th Floor |

1

I, Daniel B. Kohrman, declare:

I have personal knowledge of the facts contained in this declaration and, if called as a witness, I am competent to testify as to those facts.

1. I am an attorney at law, duly licensed to practice law in all courts of the District of Columbia and the State of New York, and in a number of other federal and state courts. I have been admitted *pro hac vice* to practice before this Court in this case, as well as to practice before the Superior Court of the State of California, County of Alameda, in the related state action, *CDR, et al. v. California Department of Transportation, et al.*, No. RG08376549. I have served as co-counsel for plaintiffs in this case since February 14, 2007, and in the related state action since its inception.

2. I have previously submitted a Declaration in Support of Plaintiffs' Motion for Reasonable Attorney's Fees and Costs ("Plaintiffs' Fee Motion") describing my efforts and those of my colleague Julie Nepveu on behalf of plaintiffs in this litigation up through and including February 28, 2010, and also explaining claims for fees and expenses by myself and Ms. Nepveu as a result of such efforts. As I have previously explained, Ms. Nepveu and I are Senior Attorneys with AARP Foundation Litigation (AFL). AFL is a legal advocacy unit housed within the AARP Foundation, which itself is a not-for-profit entity organized under section 501(c)(3) of the IRS Code that serves the interests and needs of persons age 50 and above. The Foundation is independent of but affiliated with AARP, a national organization with nearly 40 million members age 50 and above.

3. This Reply Declaration identifies fees incurred by myself and Ms. Nepveu since February 28, 2010 in assisting co-counsel prepare Plaintiffs' Fee Motion and Reply supporting the Fee Motion, and in preparing for the April 27, 2010 Fairness Hearing. Descriptions of time entries associated with these additional efforts are attached hereto as **Exhibit A**. I also respond herein to certain statements and assertions contained in Defendants' Opposition to Plaintiffs' Fee Motion,

2

Exhibit N to the Declaration of Gregory Hurley in support of such Opposition, and the Objection to Declaration of Daniel B. Kohrman in Support of Defendants' Opposition.

4. I have reviewed Plaintiffs' Reply in support of Plaintiffs' Fee Motion. The statements therein are true and accurate to the best of my knowledge and belief.

**EFFORTS UNDERTAKEN BY AFL ATTORNEYS SINCE FEBRUARY 28, 2010**

5. Since February 28, 2010, my colleague Julie Nepveu and I have worked on Plaintiffs' Fee Motion and Reply in support thereof. In addition, we have performed work preparing for and participating in the Fairness Hearing convened by this Court on April 27, 2010. A summary of AFL's lodestar hours and requested rates incurred in connection with these activities is set forth below. True and correct copies of AFL's billing records indicating the hours worked and the tasks completed by myself and Ms. Nepveu since February 28, 2010 are submitted herewith as **Exhibit A** to this declaration. The records attached as Exhibit A provide contemporaneous detailed descriptions of the work conducted. As detailed in these records, AFL's billable fees for work on the merits subsequent to February 28, 2010 total $8,350, and its billable fees for "fees on fees" work total $7,042.

6. The method of recording hours Ms. Nepveu and I incurred in this case since February 28, 2010 is the same we applied in regard to hours incurred up to and including February 28, 2010: we recorded time contemporaneously with the actual expenditure of time, except in a very few instances in which we reconstructed time incurred previously as soon as possible thereafter based on related records documenting our work. I have recorded my time in increments of one-quarter of an hour; Ms. Nepveu has recorded her time in increments of one-tenth of an hour. For all time incurred by myself and Ms. Nepveu subsequent to February 28, 2010, AFL requests the same current hourly rates AFL requested for time we time incurred prior to February 28, 2010.

7. A summary follows of AFL's total fee request for work on the merits after February 28, 2010:

| Timekeeper | Year of Graduation | Current Hourly Rate | Billable Hours | Billable Fees by Timekeeper |
|---|---|---|---|---|
| Daniel Kohrman | 1984 | $740 | 9.5 | $7,030 |
| Julie Nepveu | 1991 | $660 | 2.0 | $1,320 |
|  |  |  |  |  |
| TOTAL |  |  | 11.5 | $8,350 |

The foregoing work on the merits by AFL, regarding the fairness hearing, consists of the following: reviewing and commenting on the filings of objectors and the draft responses thereto prepared by DRA; preparation of comments (if any) to be made at the hearing by AFL counsel Daniel B. Kohrman; and research regarding the Court's continuing jurisdiction to enforce the settlement in this case.

8. A summary follows of AFL's total fee request for work on the "fees on fees" after February 28, 2010:

| Timekeeper | Year of Graduation | Current Hourly Rate | Billable Hours | Billable Fees by Timekeeper |
|---|---|---|---|---|
| Daniel Kohrman | 1984 | $740 | 8.0 | $5,920.00 |
| Julie Nepveu | 1991 | $660 | 1.7 | $1,122.00 |
|  |  |  |  |  |
| TOTAL |  |  |  | $7,042.00 |

The foregoing time consists of the following work in regard to Plaintiffs' Fee Motion: reviewing and commenting on Plaintiffs' draft motion, prepared by Disability Rights Advocates (DRA); drafting and editing of an original and a reply declaration of Daniel B. Kohrman in support of Plaintiffs' Fee Motion; reviewing and commenting on Defendants' Opposition to Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs (Defendants' Opposition); and reviewing and commenting on Plaintiffs' draft Reply in support of their Fee Motion.

**COSTS**

10. AFL has claimed limited additional costs related to the period subsequent to February 28, 2010: $1,217.21. These expenses are related to attendance at and participation in the fairness hearing, as co-counsel for plaintiffs, by myself and my colleague Ms. Nepveu and further detailed in **Exhibit B** to this declaration. As was the case in regard to costs incurred prior to February 28, 2010, AFL has not claimed reimbursement for – as it does not routinely keep track of – case-related postage, copying costs, phone charges, or fax charges. Thus, although AFL incurred costs in each of these categories in connection with efforts undertaken subsequent to February 28, 2010, none of these costs are requested.

**BILLING JUDGMENT**

11. In connection with Plaintiffs' Fee Motion, in the exercise of billing judgment, and to account for any duplication or inefficiencies, I have made deductions from the total hours incurred by myself and Ms. Nepveu. In total, I have not charged one hour of my time as well as three hours incurred by AFL litigation director Stuart R. Cohen. The latter consist of one hour of consultations with me regarding this matter, one hour incurred by Mr. Cohen in consultations with Ms. Nepveu, and another hour he spent reviewing Plaintiffs' Fee Motion as well as my initial and reply declarations. In addition, I have no-charged 1.9 hours of Ms. Nepveu's time, including the time

5

related to her attendance at the Fairness Hearing. The time not billed by me is valued at $740; the time not billed by Ms. Nepveu is valued at $1,254. The time not billed for Mr. Cohen represents an additional sum of at least $2,500.

12.   In connection with the fairness hearing, in the exercise of billing judgment, and to assure avoidance of any duplication or inefficiencies, Ms. Nepveu and I divided our responsibilities, and this division resulted in reductions in the total hours we incurred. I took principal responsibility for preparing to address the court on behalf of AFL (if called upon) and coordinating hearing strategy with DRA co-counsel; Ms. Nepveu took principal responsibility for working with co-counsel on factual and legal issues raised by the objectors. I did not charge for small increments of time incurred by myself and Ms. Nepveu on issues for which the other took principal responsibility.

13.   As a result, the fees sought by AFL in connection with Plaintiffs' Fee Motion and in connection with the fairness hearing represent the reasonable number of hours required to litigate this case effectively and efficiently.

14.   The total requested lodestar for AFL's merits time incurred since February 28, 2010 amounts to $8,350. Plaintiffs seek a 1.65 multiplier for all merits time. Thus, AFL's total fee request for merits time incurred since February 28, 2010 is $13,777.50. The total additional "fees on fees" since Febraury 28, 2010 requested herein is $7,042. The total additional costs requested by AFL is $1,217.21.

**REPLY TO DEFENDANTS' RESPONSE**

15.   Defendants challenge my requested hourly rate, at least in part, based on a mischaracterization of my record. They argue that a rate of $740 per hour is excessive because I "did not begin work in civil rights until 1995 . . . ." Defendants' Opposition at 3; *see id.* at 4 n.11. In the first place, I spent 1985-95 working on complex civil litigation, mostly class action cases, for the firm of Hogan & Hartson in Washington, DC. Moreover, the bulk of my work during this

6

1  period consisted of directly relevant civil rights work: affirmative civil rights litigation against state
2  governments. I represented urban school systems (*e.g.,* those in Kansas City, Missouri, Milwaukee,
3  Wisconsin, and Yonkers, New York) seeking additional school desegregation remedies from state
4  authorities to assist minority schoolchildren. Further, during the same time I also handled various
5  other civil rights cases on a *pro bono* basis, representing a Merchant Marine Academy student who
6  endured disability-based discrimination, employees in the printing and construction trades as well as
7  schoolchildren in Prince George's County, Maryland who battled racial discrimination, a prisoner
8  on death row in Florida, and a young immigrant from El Salvador seeking political asylum in the
9  United States. These efforts all involved constitute complex civil rights litigation.

16. Defendants complain that I recorded my hours in this case in quarter-hour increments and hence, the hours I have claimed do not reasonably reflect the actual number hours I incurred. Defendants' Opposition at 10. My practice, which I have followed for twenty-five years of recording billable hours, is to round downward to the closest quarter hour. In instances where I engage in billable activities lasting less than a single quarter hour, I do not record the time at all, unless by combining multiple similar activities (e.g., multiple phone calls or e-mail communications or internal conferences related to the same client) the amount of billable time exceeds a quarter hour. Using this method, I have submitted time not only to clients but also to courts, seeking reimbursement of the fees I have incurred. Not once, in more than two decades, to my knowledge, have my time records been questioned or reduced based on my recording time in quarter-hour increments.

17. Defendants object to virtually all of my initial Declaration in support of Plaintiffs' Fee Motion. In many instances, I am unable to provide specific responses because Defendants do not explain the nature of their objections other than to cite one or more Federal Rules of Evidence and/or general grounds of objection based on such rules. *See* Objection to Declaration of Daniel B.

7

Kohrman in Support of Defendants' Opposition to Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs (Objection to Kohrman Declaration) at 1-4 (Objection Nos. 1-4, 18, 21-25).

18.  Defendants also object that my Declaration fails to "establish foundation or . . . personal knowledge of the practices or funding of DRA," apparently in instances in which I referred to practices of AFL similar to those identified as DRA practices in the Declaration of Larry Paradis. *See* Objection to Kohrman Declaration at 5-6 (Objection No. 5 to Kohrman Declaration, 4:11-16; Objection No. 6 to Kohrman Declaration, 4:17-21; Objection No. 7 to Kohrman Declaration, 4: 22-27). My references to DRA practices identified by Mr. Paradis were just that and nothing more: efforts to explain that AFL practices are the same as those Mr. Paradis asserted to be those of DRA.

19.  Defendants object that AFL has not provided specific examples of work turned away due to its involvement in this case. Objection to Kohrman Declaration at 6-7 (Objection No.8). Access to pedestrian walkways for people with disabilities – i.e., creating "livable communities" that people can stay in as they age and confront difficulties with mobility – has become a major priority for AARP during the time that the *CDR v. Caltrans* cases have been pending. AARP has developed a tool for members to survey access barriers in their communities and has enlisted volunteers around the country to undertake such surveys and post the results online. On April 19, 2010, AARP volunteers surveyed pedestrian facilities throughout New York City and New York State as part of a campaign to secure "Complete Streets." If this case had settled years ago, instead of dragging on at such length, AARP surely would have been able to turn its legal advocacy resources to similar litigation in other states and localities. Because only myself and Julie Nepveu are available to litigate these cases, and because we have multiple other responsibilities (e.g., I also handle age and disability employment discrimination cases; Ms. Nepveu also handles housing discrimination cases), during the pendency of this litigation we have had to turn away all persons, including

members, lawyers, and potential claimants, who have talked to us about AARP involvement in other disability access litigation.

20. Defendants object that I lack "personal knowledge of whether having three firms involved minimized duplication of effort" in this case. Objection to Kohrman Declaration at 7 (Objection No. 10 to Kohrman Declaration, 5: 11-14). For a large portion of my career, I have worked on large affirmative litigation projects involving coordination of multiple firms. Most of the school and housing desegregation cases I worked on between 1985 and 2001 involved collaborations between law firms and public interest groups, and sometimes close cooperation with governmental entities. All the class action employment cases I have worked on for the past decade have involved co-counseling arrangements between at least two and sometimes as many as six or more plaintiffs' law firms. During my years at the Lawyers Committee for Civil Rights Under Law, from 1995 to 1998, all the major cases I worked on involved co-counseling arrangements between public interest groups and large private law firms. So I am very familiar with the challenges, advantages and potential difficulties of such arrangements. Thus, I have a very good perspective from which to judge the efficiency of multi-firm collaborations. I have seen dysfunctional arrangements and highly effective ones. The prosecution of the two *CDR v. Caltrans* cases in my opinion was among the best-organized I have experienced. The three firms did not try to do the same things; as I explained in my initial declaration, each firm handled different tasks and brought a different set of skills to the table: Skadden provided complex civil litigation expertise, DRA provided deep disability litigation expertise, and AARP provided disability policy knowledge and broad-based civil rights class action background.

21. Defendants object that I lack "personal knowledge as to how other AFL attorneys and staff entered their time, *i.e.,* whether they did so contemporaneously." Objection to Kohrman Declaration at 11 (Objection No. 15 to Kohrman Declaration, 7:4-11); *see id.* at 12-13 (Objection

No. 16 to Kohrman Declaration, 7:13-27), *id.* at 15-16 (Objection No. 19 to Kohrman Declaration, 8:20-9:11). Throughout the time Julie Nepveu worked on this case, I communicated regularly with her about the case, coordinated closely with her in determining what role AFL would play in the case, reviewed the major written products she produced, and often joined with her in offering comments on or edits to written work by co-counsel. Thus, I have an excellent basis for evaluating the accuracy of the records she submitted in this case on behalf of AFL. I also played a significant role in overseeing the work of AFL law clerks and summer interns. On occasion I supervised these students directly, and in most other instances I consulted regularly with Ms. Nepveu regarding their work. Thus, I also have a strong basis for asserting that the time records submitted by AFL representing the work of non-lawyer law students on this case are accurate.

22. Finally, Defendants object to full recovery for specific time entries for which I have billed. Hurley Decl., Exhibit N.

23. The first of three kinds of objections lodged by Defendants relates to "block billing." In each instance, usually without giving any further explanation or grounds for their objection, Defendants urge a one-third reduction. The time at issue includes:

(a) the hours I incurred on the actual days of two depositions: *i.e.*, time I spent preparing for and defending the depositions of individual plaintiff Dmitri Belser and affiant and class member Roger Petersen. Defendants object to the 8 hours I claimed for the actual day of the Belser deposition (October 9, 2007) and the 7 hours I claimed for the actual day of the Petersen deposition (October 10, 2007). In both instances I claimed reimbursement for time I spent preparing for the deposition, time I spent defending the deposition, as well as time I spent (prior to, during and after the deposition) meeting with my clients and consulting with and reporting back to co-counsel.

(b) the hours I spent on two days prior to the Belser and Petersen depositions preparing for the same. Specifically Defendants object to my description that I spent 4.5 hours on October 5,

2007 to "Prepare for Belser and Petersen depositions," and to conduct a telephone call with ("tcw") Dmitri Belser, and 4.0 hours I spent on October 7, 2007 to "Prepare for Belser and Petersen depositions." One of the reasons for significant time spent preparing for the Belser deposition was that as an individual plaintiff, he had submitted a great many pages of detailed interrogatory responses. I also had to review declarations submitted by both men, which referred in detail to specific access barriers on specific streets in specific cities – Berkeley, Mountain View and Palo Alto California – with which I was not personally familiar. Thus, I had to do internet research to become familiar with the street plans of these communities. In addition, I reviewed numerous basic documents in the case – the complaint, substantive briefs, and deposition transcripts for other plaintiffs – to prepare myself for and to prepare myself to ready my clients for the questioning I expected they would receive from defense counsel.

(c) the hours I spent on May 30, 2008 (4), to "participate (via phone) in settlement talks; [and to] take and distribute notes [to co-counsel] re same." It is unclear what further specificity Defendants demand as members of the defense legal team can verify my participation in this settlement meeting. Apparently, Defendants do not contest the value of my participation as they lodge no such challenge. And ironically, this objection seems related, at least in part, to my participation by phone, which clearly represents a significant cost savings over traveling to California to participate in person.

(d) the hours I spent on September 15, 2009, the day before the first day of trial (4.5), preparing to assist co-counsel with various tasks by "Review[ing] pre-trial conference transcript, in limine motion orders, settlement conference statement to MJ Laporte; pretrial statements; declarations of L Williams and D Bateman (on plane to CA and later in hotel room)." A review of the trial transcript will reveal that this preparation was well-advised as considerable disputation occurred regarding the substance of these documents, and my review allowed me to assist co-

1  counsel address defense counsel assertions and the Court's inquiries. Moreover, Laura Williams
2  and Dwight Bateman were plaintiff fact witnesses whose direct examination I was assigned to
3  conduct. Because the trial was suspended, they never took the stand; but surely preparing for this
4  work was reasonable and a proper use of time.

5  (e) the hours I spent on September 16 and 18, 2009 (4.5 each day) to "Attend trial
6  proceedings and assist co-counsel during same." Defendants claim this description is "vague" and
7  also charge that my participation at trial was "excessive; redundant." Defendants' assertion ignores
8  the fact that the trial was suspended before most of plaintiffs' witnesses took the stand. As I noted
9  above, I was assigned to examine several plaintiff fact witnesses, including Laura Williams, the
10 head of the lead organizational plaintiff CDR. I considered my attendance at trial critical to
11 performing these assignments in an effective manner. As an experienced trial attorney who had
12 been co-counsel in the CDR cases longer than any other non-DRA attorney, including Mr. Jose
13 Allen, I also felt a responsibility to assist co-counsel at trial, and to be available for conferences
14 with the Court. Finally, it is not clear what further detail Defendants would require.

15 Similarly, Defendants ask to cut reimbursement for hours I spent on April 26, 2007 (2.5) to
16 "Prepare for and participate in Meet & Confer." Presumably their own records verify that I
17 participated in the meet & confer and that the length of time claimed is commensurate with the
18 length of time the Meet & Confer took and the complexity of the issues addressed therein:
19 otherwise such objections surely would have been made. Absent some other specific ground for
20 objection, the charge of "block billing" is unwarranted. It is not clear what Defendants demand.

21 (f) the hours I spent on January 31, 2008 (4) to "Complete draft response to motion to
22 strike." Plainly, I had a lead role in completing this task for the litigation team. Once again, it is
23 unclear what more detail Defendants would require.

(g) the hours I spent on October 17, 2007 (3.5) to conduct a careful review of a critical submission by Plaintiffs, and to draft a key piece of that submission: *i.e.,* to "Review and suggest revisions to draft class certification motion; [as well as to] draft, review and revise declaration in support of class certification." The description provided is sufficient and this is not "block billing."

(h) the hours I spent on September 24, 2007 (2.5) to conduct a careful review of a critical submission by Defendants, and to prepare for discussions with co-counsel of this and other major matters: *i.e.,* to "Review defense motion for judgment on the pleadings; prepare for and participate in [telephone conference with] L Paradis, et al. (DRA) re: statue of case, assignments, discovery, motion to consolidate hearings." Although time incurred is not cited for each and every specific subject matter, the number of serious topics cited adequately verifies the time claimed is reasonable.

(i) the hours I spent on July 2, 2007 (2.0) to conduct a careful review of an "order from J[udge] Zimmerman as well as to "prepare for and participate in [telephone conference with] L Paradis, et al (DRA) re discovery, class cert[ification]" issues. Again, while, the time I incurred is not cited for each and every specific subject matter, the number of serious topics cited adequately verifies the time claimed is reasonable.

(j) the time I spent on March 2, 2007 (.75) and July 11, 2007 (1.0) – in each instance less than two hours – on a variety of activities, described in detail. Yet Defendants demand a one-third reduction. The low number of hours claimed on these days, given the level of detail provided, demonstrates that the hours claimed are reasonable and the charge of block billing is unjustified. Significantly, Defendants claim explanations for other days are "vague," but do not do so here.

(k) the time I spent – in all but one instance between 30 and 75 minutes – preparing for and participating in phone conferences with co-counsel concerning the status of these complex civil rights cases. Yet Defendants charge not only "block billing," but also "vague" descriptions, and further, demand an additional 20% for "conference hours." *See* references to February 26, 2007

13

(1.25), March 27, 2007 (1.25), April 9, 2007 (1.25), April 12, 2007 (1.25), April 25, 2007 (1.75), April 27, 2007 (0.75), September 6, 2007 (1.25), March 27, 2008 (1.25), April 29, 2008 (0.75), September 26. 2008 (0.5), October 9, 2008 (0.75), October 15, 2008 (0.5), October 23, 2008 (0.5), January 8, 2009 (0.5), January 23, 2009 (0.5) and February 11, 2009 (0.5).  These entries, spread over two full years, reflect the reasonable efforts of Plaintiffs' counsel to closely monitor the progress of these cases.  This meeting time is not excessive and omits countless communications, none of them appearing in hours billed by class counsel – consisting of a short call between just two attorneys, or an e-mail or several short e-mails between two or more co-counsel – that also played a significant role in allowing class counsel to monitor these cases.

24.     A second category of objections by Defendants is to "conference hours," for which they demand an across-the board 20% reduction.  From nearly four years of my billing records, Defendants have culled a mere handful of supposedly unjustified conference hours.

(a)  Three of these involve the days before and during the trial and thus, represent hours very well-spent at a time when clear understanding between co-counsel and careful trial preparation is especially critical.  And in each instance, the descriptions amply demonstrate the reasonableness of these hours incurred:  September 14, 2009 ("Telephone conferences with co-counsel re: trial strategy for trial beginning 9-16") (2.5 hours); September 15, 2009 ("Meeting with M[elissa] [K]asnitz and L[aura] Williams re deposition and trial testimony, including reviewing LW federal and state declarations with her, discussing deposition questions asked in state case of other class member witnesses") (1.2 hours); September 17, 2009 (conferences with co-counsel re trial strategy) (1.5 hours).

(b) The other six conferences criticized by Defendants are further example of entries related to telephone conferences among co-counsel.  Presumably the descriptions are unobjectionable as Defendants do not complain either of "block billing" or "vague[ness]."  Yet in fact, these entries are

little different from the others Defendants criticized further.  *See* references to May 14, 2007 (1.25), July 5, 2007 (1.25), October 30, 2007 (1.25), December 5, 2007 (0.75), September 8, 2008 (0.75), September 11, 2008 (0.75). Rather, these entries confirm that during various periods in this case, Plaintiffs' counsel made consistent efforts to closely coordinate efforts to manage workload, maintain clear responsibilities and implement coherent litigation strategies.  The goal and result of this effort was efficiency, not waste, and more, not less cost-effective representation of the named plaintiffs and the plaintiff class.

25.      One final objection by Defendants deserves a response:  the characterization of two hours I spent on September 14, 2009 to "prepare materials for trip to CA for trial" as "clerical" work that presumably I should have delegated to a secretary.  I did not bring office supplies to California with me from Washington, DC for trial, but instead, relied on DRA and Skadden to supply those.  Rather, I spent two hours immediately before my trip locating and organizing my substantive papers – marked-up transcripts, court orders, important pleadings, witness folders, research files – to make sure, before leaving, I had all I needed and no more.  Surely that was a reasonable expenditure of time for a trial lawyer preparing to appear in court in a jurisdiction far away from his or her home office.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on April 29, 2010, in Washington, DC.

_____/s/*_____

DANIEL B. KOHRMAN

\* I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.