UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CALIFORNIANS FOR DISABILITY RIGHTS, INC. ("CDR"), CALIFORNIA COUNCIL OF THE BLIND ("CCB"), BEN ROCKWELL, AND DMITRI BELSER, on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION ("CALTRANS") and WILL KEMPTON, in his official capacity,<br><br>        Defendants. | Case No:  C 06-5125 SBA<br><br>**ORDER GRANTING PLAINTIFFS' APPLICATION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AGREEMENT AND OVERRULING OBJECTIONS TO SETTLEMENT AGREEMENT** |

This is a class action brought by Plaintiffs, Californians for Disability Rights ("CDR"), California Council for the Blind ("Council for the Blind"), Ben Rockwell ("Rockwell") and Dmitri Belser ("Belser"), on behalf of a class of mobility and vision impaired individuals against the California Department of Transportation and its director (collectively "Caltrans" or "Defendants").  Plaintiffs allege that Caltrans has failed to remove barriers and ensure accessibility at existing pedestrian facilities and Park and Ride facilities throughout California in violation of Title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act of 1973.

Pursuant to Federal Rule of Civil Procedure 23(e)(2), this matter came before the Court on April 27, 2010, for the fairness hearing for final approval of the parties' settlement in the above-captioned class action.  Having reviewed the papers submitted and considered the statements made at the hearing, the Court GRANTS Plaintiffs' application for final approval of the settlement and overrules all objections thereto.

I.      **BACKGROUND**

On August 23, 2006, Plaintiffs filed the instant class action on behalf of persons with mobility and/or vision impairments.  The Complaint alleges that as a result of Caltrans' failure to comply with federal disability laws, Plaintiffs and Class members have been denied access to sidewalks, cross-walks, pedestrian underpasses and other public rights of way.  Plaintiffs seek injunctive relief only; no damages are sought.

On March 13, 2008, the Court certified the Class, pursuant to Federal Rule of Civil Procedure 23(b)(2), as follows:  "All persons with mobility and/or vision disabilities who are allegedly being denied access under Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973 due to barriers along sidewalks, cross-walks, pedestrian underpasses, pedestrian overpasses and any other outdoor designated pedestrian walkways throughout the state of California which are owned and/or maintained by the California Department of Transportation."  Californians for Disability Rights, Inc. v. California Dept. of Transp., 249 F.R.D. 334, 351 (N.D. Cal. 2008).

A court trial in this action commenced on September 16, 2009.  Within a few days of the start of trial, Plaintiffs completed the direct testimony of their expert, Peter Margen, and Defendants commenced their cross-examination.  During the proceedings, however, the parties proposed temporarily suspending the trial to enable them to engage in settlement discussions before Magistrate Judge Elizabeth LaPorte.  The Court agreed and recessed the proceedings. Over the course of the next several months, the parties engaged in several settlement conferences with Magistrate Judge LaPorte and ultimately reached a global settlement that resolves all claims in this case, as well as those being litigated in a parallel state court action.[1] The parties then filed a Joint Motion for Preliminary Approval of Settlement, which the Court

---

[1] The state court action is pending in Alameda County Superior Court, and is styled as Californians for Disability Rights v. California Dept. of Transp., Case No. RG08376549 ("State Action").  The State Action is being held in abeyance pending final approval of the settlement, after which it will be dismissed.  The instant case is denoted in this Order as the "Federal Action."

granted on January 25, 2010.  (Docket 457.)  The Preliminary Approval Order set the fairness hearing for April 27, 2010, and ordered the parties to disseminate notice to the Class.

The salient features of the Settlement Agreement include, among other things:  (1) a funding commitment of $1.1 billion over the next thirty years to eliminate barriers and improve access for Class members; (2) a monitoring procedure, which will include the hiring of an access consultant to oversee compliance for the first seven years, and mandatory annual reporting by Caltrans for the next thirty years; (3) a grievance procedure for public complaints relating to access issues and Caltrans responses thereto; and (4) payment of attorneys' fees (a minimum of $3.75 million to a maximum of $8.75 million) for past work and future compliance services.  (Docket 454).

Several objections to the proposed settlement have been filed.  On March 31, 2010, after the expiration of the objection period, attorney Patricia Barbosa of Barbosa Group filed an objection on behalf of thirty-four CDR and Class members ("Barbosa Objectors"), alleging that the settlement was not approved consistent with CDR's by-laws; that the thirty-year compliance period is too long; that Caltrans should increase the amount of the settlement fund; and that the monitoring provisions are insufficient.  (Docket 473.)  In addition, the Court received three individually-submitted objections.  Specifically, Marilynn Pike and Arnie T. Pike filed separate letter objections on February 1, 2010, and Branlett Kimmons filed a letter objection on April 16, 2010.[2]

## II.   **LEGAL STANDARD**

The Court may finally approve of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed.R.Civ.P. 23(e)(2); <u>Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982).  The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."

---

[2] Plaintiffs' brief in response to the objections filed also makes reference to a letter, dated January 27, 2010, from California Walks, a public advocacy group.  This letter was not filed and therefore is not properly before the Court.  However, the Court has obtained a copy of the letter from Class counsel and reviewed its contents.

1 Officers for Justice, 688 F.2d at 624.  Factors that the Court may in deciding whether or not to

2 approve the settlement include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

7 Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); accord Molski v. Gleich, 318

8 F.3d 937, 953 (9th Cir. 2003).

9 The district court's role at a fairness hearing is limited.  The Court may approve or

10 reject the settlement.  Hanlon, 150 F.3d at 1026.  The district court does not have the authority

11 to "delete, modify or substitute certain provisions."  Id.  (internal quotations omitted).  "The

12 proposed settlement is not to be judged against a hypothetical or speculative measure of what

13 might have been achieved by the negotiators."  Officers for Justice, 688 F.2d at 625.  Rather,

14 "the court's intrusion upon what is otherwise a private consensual agreement negotiated

15 between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

16 judgment that the agreement is not the product of fraud or overreaching by, or collusion

17 between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

18 and adequate to all concerned."  Id.  To that end, the Court should consider whether there are

19 any objections to the proposed settlement and, if so, the nature of those objections.  In re

20 General Motors Corp., 594 F.2d 1106.   If objections are filed, the district court is to evaluate

21 whether they suggest serious reasons why the settlement proposal might be unfair.  Bennett v.

22 Behring Corp., 737 F.2d 982 (11th Cir. 1984).

23 **III.    DISCUSSION**

24       **A.    APPROVAL OF THE SETTLEMENT**

25 The record supports the conclusion that that the proposed settlement is fair, reasonable

26 and adequate.  First, the burdens, expenses and risks associated with further litigation in this

27 action are tremendous.  This case involves numerous, complex and novel issues of law, and

28 seeks statewide relief on an unprecedented scale.  The complexity of the case is exemplified by

1   the extensive motion practice, which, in many instances delved into uncharted legal territory.

2   Though Plaintiffs prevailed on *some* of those rulings, Caltrans undoubtedly would have

3   appealed them in the event of an adverse judgment.  The risk of proceeding further also is

4   underscored by questions regarding the strength of Plaintiffs' case.  Though Plaintiffs certainly

5   were able to present evidence to support their claim that Caltrans' facilities are not entirely

6   compliant with disability laws, Caltrans had viable grounds for mounting an undue burden

7   defense.  Thus, by resolving this *and* the state court action, Plaintiffs are able to avoid

8   protracted litigation and appeals and ensure the provision of immediate and tangible benefits to

9   the Class that might never have been realized absent a settlement.

10      The Court further finds that the settlement is the product of good faith negotiations at

11  arm's length, and is not the product of fraud or collusion.  See Officers for Justice, 688 F.2d at

12  625.  By the time of the settlement, the parties were well informed regarding the available

13  evidence both in support of and in opposition to their respective positions.  Not only had the

14  parties, who were represented by well-qualified counsel,[3] conducted extensive fact and expert

15  discovery, the parties had the benefit of having participated in several days of trial

16  proceedings—thus affording them a unique and fully informed opportunity to objectively

17  assess the case.  In addition, the settlement was the direct result of multiple arms-length court-

18  supervised settlement conferences before Magistrate Judge LaPorte, whose persistence no

19  doubt was instrumental in facilitating the resolution.

20      In sum, the relevant considerations militate in favor of approving the settlement.

21  Plaintiffs balanced concerns such as the risks inherent in further litigation and the State's fiscal

22  constraints against maximizing the benefit to the Class.  The settlement affords significant and

23  immediate relief that may never have materialized had the trial concluded.  Moreover, the

24

25

26

27

28

---

[3] The experience of counsel representing Plaintiffs and Defendants also favors final approval of the proposed settlement.  See Hanlon, 150 F.3d at 1026.  The Class has been represented by Disability Rights Advocates ("DRA"), which has extensive experience litigation ADA class action claims.  Likewise, Defendants were represented by Green Taurig, a reputable private firm.  The experience of the parties' counsel further supports the conclusion that the negotiated settlement is fair, adequate and reasonable.

settlement guarantees increased funding for removal of access barriers and avoids years of delay attributable to the ensuing appeals in the absence of a settlement.

### B.   CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiffs seek final certification of the Plaintiff Settlement Class, which is defined as: "all persons with Mobility and/or Vision Disabilities who currently or in the future will use or attempt to use any Pedestrian Facility or Park and Ride Facility under Caltrans' Jurisdiction." (Settlement § 1.38.)  The certification of a class is governed by Federal Rule of Civil Procedure 23.  In order to be certified, (1) the class must be sufficiently numerous that joinder of all the members is impracticable, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative must be typical of those of the class, and (4) the representative must be able to fairly and adequately protect the class' interests.  Fed. R. Civ. P. 23(a).

Because this Court has already certified the class as to the federal claims, the inquiry at this juncture is limited to the question of whether the addition of the state law claims provides any basis for changing the Court's prior determinations regarding the propriety of class certification.  It does not.[4]  The claims in the state case allege that the Caltrans is obligated to "develop and implement a transition plan which sets milestones and benchmarks for fixing the existing barriers."  Californians for Disability Rights, Inc. v. California Dept. of Transp., 249 F.R.D. 334, 343 (N.D. Cal. 2008).  The "program access" claim concerns pre-1993 facilities and whether there is any obligation to render them accessible under the ADA.  The other two state claims are premised upon California Civil Code § 54 (Unruh Civil Rights Act), Government Code § 4450 (ensuring accessibility of sidewalks, etc., to the disabled), and Government Code § 11135 (prohibiting disability discrimination).  These state claims seek the same relief as the federal claims, though in some instances are based on more stringent California regulations.  (Mot. for Prelim. Approval ("Mot.") at 10.)

---

[4] No party or objector has raised any concern regarding certification of the Settlement Class.

The inclusion of the state law claims does not alter the Court's analysis of the numerosity, commonality, typicality, and adequacy of representation components of class certification under Rule 23.  The state statutes essentially are the state counterparts to the ADA and Rehabilitation Act.  As they did in seeking federal class certification, Plaintiffs proffered the declarations of thirty-one class members in support of their motion for class certification of the state law claims.  (Mot. at 11.)  As in the instant case, the fundamental premise of the motion for class certification is that Defendants have acted or refused to act on grounds that affect class members similarly, i.e., they are denied access.  In short, the same rationale for certifying the federal claims exists for certifying the state claims.  Therefore, the Court certifies the Plaintiff Settlement Class as set forth in Section 1.38 of the Settlement Agreement.

### C. OBJECTIONS

#### 1. Barbosa Objectors

##### a) *Authority to Enter Into Settlement*

Three of the Barbosa Objectors, Susan Barnhill ("Barnhill"), Terrelle Terry ("Terry") and Linda Hinchey ("Hinchey"), are affiliated with CDR.  They allege that CDR President Laura Williams negotiated and agreed to the settlement without obtaining the approval of the Executive Committee, ostensibly in violation of CDR's by laws.  They further claim that "they were never provided with any information regarding the negotiations of the settlement class" and were not allowed to participate in any settlement negotiations before Williams agreed to the proposed settlement.  (Barbosa Objections at 3.)  Barbosa Objectors request that the Court reject the settlement and require the parties to return to the bargaining table.  (Id.)

Despite Barbosa Objectors suggestions to the contrary, CDR's by-laws are silent with regard to the organization's management and disposition of litigation.  (Williams Decl. ¶ 11; Terry Decl. ¶ 10, Ex. 1.)  In practice, authority over litigation and related decisions is vested in CDR's Litigation Committee of which Williams is the chair.  (Williams Decl. ¶ 12.)[5]  Though the Litigation Committee generally obtains approval from the Executive Committee before

---

[5] During the course of the litigation, Williams invited two objectors, Richard Skaff ("Skaff") and Hollyn D'Lil ("D'Lil") to join the committee, but they declined to do so.  (Id.)

commencing litigation, it does not obtain their approval to settle matters.  (Id.)   In this instance, Williams first learned on March 23, 2010, that a few CDR members were objecting to the settlement, even though the settlement had been public since December 2009.  (Id.)  Out of an abundance of caution, Williams submitted the settlement to the Executive Committee, which approved the settlement and Williams' actions on behalf of CDR, by a majority vote. (Id. ¶ 37.)  Notably, only 8 of 544 CDR members have objected to the settlement.  (Id.)  Thus, the Court rejects the Barbosa Objectors' assertions that Williams was not authorized to approve the settlement.

The above notwithstanding, whether Williams acted beyond her authority is inapposite to the question before the Court; to wit, whether the settlement is fair, reasonable and adequate. As set forth above, the settlement was reached through Court-supervised, arms-length negotiations which ultimately yielded a beneficial outcome for the Class that they might not have otherwise received had the case proceeded to verdict.  Moreover, Barbosa Objectors ignore that there are other Plaintiffs (Ben Rockwell, Dmitri Belser and California Council for the Blind), who independently approved the settlement.  Thus, irrespective of CDR, the Court may properly consider the fairness of the settlement based on Rockwell and Belser's request that the Court do so.

### b)      "Censorship" of Dissenting Members

Next, Barbosa Objectors D'Lil and Skaff claim that Williams prevented them from posting comments regarding the settlement on the CDR list-serv (i.e., an electronic bulletin board) regarding their objections to the settlement.  (Barbosa Objections at 6.)  Without citation to any legal authority, these objectors assert that William's censorship should invalidate the Executive Board's after-the-fact ratification of the settlement.

Williams acknowledges that she prevented the postings at issue as a matter of internal CDR policy, as she believed that they would be inconsistent with CDR's good faith acceptance of the settlement.  (Williams Decl. ¶ 32.)  Nonetheless, as CDR correctly points out, whether or not these two CDR members' postings were allowed is a matter of internal CDR policy and is irrelevant to the issue of whether the settlement should be approved by the Court.  In addition,

1   as set forth above, the Court has the authority to approve the settlement, even without CDR's

2   approval.

3              c)   ***Fairness to the Class***

4                   i.       **Thirty-Year Compliance Period**

5              Barbosa Objectors complain that the thirty-year compliance period is too long, and that

6   some of the Class Members may not live to see the improvements.  (Barbosa Objections at 7.)[6]

7   Such concerns, while perhaps understandable, ignore the real world financial constraints that

8   undeniably exist.  More importantly, this objection must be placed in context with the overall

9   agreement and immediate benefits that will be conferred.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1026 ("It is

10  the settlement taken as a whole, rather than the individual component parts, that must be

11  examined for overall fairness.").  First, the settlement *guarantees* an immediate, annual $25

12  million level of funding for barrier removal, which is a significant increase from the existing $1

13  million allocation.  (Rockwell Decl. ¶ 13.)  Second, the settlement will result in access

14  upgrades beginning almost immediately in July 2010.  Finally, a shorter compliance period will

15  not result in the elimination of access barriers more quickly unless there is a corresponding

16  increase in funding, which is not available.

17             While purporting to recognize Caltrans' financial constraints, Barbosa Objectors argue

18  that "[t]he Agreement should allow for modifications due to the changing economy."  (Barbosa

19  Objections at 7.)  However, it is not within the purview of the Court to second guess the details

20  of the settlement.  <u>See</u> <u>Officers for Justice</u>, 688 F.2d at 625.  Moreover, Barbosa Objectors

21  ignore that if the settlement is not approved, there will be no obligation imposed on Caltrans to

22  increase its funding for barrier removal, curb ramp upgrades or any other access improvements.

23  Perhaps more fundamentally, such a modification cuts both ways.  If Caltrans' budget

24  continues to decline, a provision that allows funding to be adjusted due to economic changes

25  would actually result in *less* funds for access improvements.  While perhaps a shorter

26  _____

27         [6] At the same time, they offer varying views as to how long the compliance period
    should be; some want 15 years, while others want 10 years.  (D'Lil Decl. ¶ 7; Skaff Decl. ¶ 7;
28  Chandler Decl. ¶ 9; Hinchey Decl. ¶ 6.)

1  compliance period would be preferable in a vacuum, the length of the compliance period as set

2  forth in the settlement does not detract from its overall fairness, adequacy and reasonableness.

3                    **ii.       Seven-Year Monitoring Period**

4         Next, Barbosa Objectors contend that the Agreement only provides funding for

5  compliance monitoring for the first seven years of the compliance period, and that there is no

6  assurance that proper monitoring will continue for the subsequent twenty-three years.  (Barbosa

7  Objections at 8.)  This argument, however, glosses over the monitoring provisions of the

8  Agreement.  (Settlement Agt. ¶ 2.)  For the first seven years of the compliance period, the

9  settlement calls for funding to hire an access consultant with specialized knowledge and

10 training to ensure Caltrans' compliance with state and federal accessibility requirements.  The

11 access consultant will ensure that Caltrans establishes an institutional framework (including

12 staffing, prioritization planning, etc.) in order to comply with the agreement.  The seven-year

13 period was selected based on Class counsel's experiences in other class settlements; namely,

14 that the first several years following a settlement is the most critical time period because that is

15 when the majority of implementation issues are likely to arise.  (Paradis Decl. ¶ 27.)  In

16 counsel's opinion, which is based on their extensive experience in such matters, a seven-year

17 period for the access consultant is sufficient in this case.  (Id.)

18        Compliance with the settlement agreement will also be monitored through detailed,

19 annual reports which Caltrans must submit to Class counsel for each of the next thirty years.

20 (Settlement Agt. Ex. 2.)  Among other things, the report will include:

21              •   a summary of barrier removal projects completed the preceding
22                  year, including projects requested by the public;

23              •   a detailed summary of the funding allocation for that year;

                •   a summary of pedestrian facilities and/or Park and Ride facilities
24                  newly constructed that year;

25              •   a summary of training and monitoring efforts;

26              •   any revisions made to Design Information Bulletin (DIB) 82,
27                  which sets forth accessibility guidelines for California pedestrian
                    facilities;

28

- the identification of barrier removal projects and requisite funding for the following year; and

- a summary of grievance and a status report on the Caltrans' resolution of those grievances.

In short, there will be ample oversight of Caltrans' compliance with the Agreement both during and after the time period that the access consultant is retained.

Barbosa Objectors question DRA's ability to monitor compliance without the access consultant, and propose that the Court (1) specify the amount of funds DRA must spend on monitoring and (2) establish a procedure through which class members can be assured of DRA's compliance with its monitoring obligations. (Barbosa Objections at 8.) Tellingly, Barbosa Objectors fail to provide any authority or evidentiary support for the proposition that the Court can and/or should require that the compliance monitor itself be monitored.  Indeed, such a system would be duplicative and unwieldy, and would inevitably lead to infighting over how this second level of monitoring should be implemented.

Equally unpersuasive is the Barbosa Objectors' claim that $75,000 per year for an access consultant is "inadequate" to ensure compliance. (Barbosa Objections at 8.)  No proof is offered in support of this speculative assertion.  In addition, as discussed above, the Court is persuaded that seven years is sufficient time for the access consultant to identify any serious violations of the Agreement.  In that event, Plaintiffs may order the appointment of a special master to increase or extend the monitoring of Caltrans' compliance. (Paradis Decl. ¶¶ 29, 32.)

### iii.     Opt-Out

Next, Barbosa Objectors complain that there is no opt-out provision for Class members who disagree with the terms of the agreement.   (Barbosa Objections at 9.)  However, the Class was certified under Rule 23(b)(2), which is applicable where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).  Opting out generally is not permitted in Rule 23(b)(2) class actions. Molski, 318 F.3d at 947 ("members of a Rule 23(b)(2) class do not have the right to opt-out."). Opt-out provisions usually are applicable where damages are sought. Id. at 948.  Here,

1   Plaintiffs seek injunctive relief only; no damages are being sought.  As such, the lack of an opt-

2   out provision is of no consequence.[7]

3         **d)     Adequacy of Funding**

4         Finally, Barbosa Objectors criticize the $1.1 billion settlement as amounting to less than

5   1% of Caltrans overall budget and argue that there is no assurance that $1.1 billion is sufficient

6   to rectify all of the access barriers.  (Barbosa Objections at 10.)  This argument erroneously

7   assumes that the entirety of Caltrans budget is available to fund access improvements.  The

8   vast majority of the Caltrans budget is allocated to operations, maintenance and local assistance

9   projects that cannot be applied to barrier removal.  (Paradis Decl. ¶ 9.)  According to

10  Defendants' expert, the only budget specifically available to fund access projects is the SHOPP

11  (State Highway Operation and Protection Program), which amounts to only $1.5 billion of the

12  total Caltrans budget of $13 billion.  (Id.)  In addition, SHOPP funds are not dedicated to

13  barrier removal, but are used to rehabilitate and maintain 50,000 miles of highway and 12,559

14  bridges.  (Id. ¶ 11.)  SHOPP is already underfunded and its budget is shrinking.  (Id. ¶ 13.)

15  Thus, Barbosa Objectors' claim that the settlement fund should be a greater percentage of

16  Caltrans' overall budget is inaccurate and ignores the evidence, the reality of the state's

17  financial constraints and the myriad of issues that the parties were required to balance in

18  reaching this agreement.

19        As an ancillary matter, Barbosa Objectors assert that the settlement does not take into

20  account that future Caltrans budgets may increase, as shown by the budget increase in the

21  2008/2009 fiscal year.  Again, this contention ignores the converse; namely, that future budgets

22  could dwindle.  Indeed, given the State's budget crisis, Caltrans budget for the 2009/2010 year

23  is $1.3 billion less than the prior year.  (Id.)  The settlement takes into account the risk of

24  shrinking financial resources and guarantees a minimum level of funding will be allocated to

25  access improvements.  No such guarantees presently exist.  The Court finds that the Barbosa

26

27      [7] Some of the objectors complain that Plaintiffs should have sought damages.  The settlement does not bar individual damage claims.  In addition, it has been public knowledge since 2006 that Plaintiffs were seeking only injunctive relief.  Thus, any complaints that

28  Plaintiffs should have sought damages are untimely.

1  Objectors' concerns regarding the adequacy of the amount allocated to barrier removal to be

2  unpersuasive.

3          **2.      California Walks**

4          This letter is, ostensibly, from an advocacy group that promotes walking.  The letter,

5  dated January 27, 2010, is addressed to the Court, but was never filed.  California Walks does

6  not object to the settlement.  Rather, they request that the settlement include a provision to

7  allocate some of the barrier removal funds to construct "sidewalk gap closures," i.e., to

8  construct new sidewalks to fill in the gap where there are two existing walkways that do not

9  connect.

10         California Walks' letter was not filed and is not properly before the Court.  But even if

11  it were, the Court finds that the concerns expressed therein do not undermine the fairness,

12  adequacy and reasonableness of the settlement.  As an initial matter, California Walks does not

13  profess to represent any class members and thus lacks standing to object.  See Tarlecki v. bebe

14  Stores, Inc., 2009 WL 3720872 at *1 n.1 (N.D. Cal. Nov. 3, 2009) (Patel, J.).  In addition, they

15  fail to cite to any federal or state provision imposing a legal obligation to close sidewalk gaps.

16  (Paradis Decl. ¶ 40.)  To the extent that any gaps pose accessibility issues for Class members,

17  they will be rectified under the terms of the settlement.  (Settlement Agreement, Ex. 3 ¶ 2.)

18         **3.      Arnie & Marilynn Pike**

19         The Pikes submitted separate letters to the Court on February 1, 2010, wherein they

20  complain that the thirty-year compliance period is too long.  These objections are identical to

21  those presented by the Barbosa Objectors, and thus, for the same reasons, are overruled.

22         **4.      Walter Park**

23         The Court's preliminary approval order expressly alerted the public that to be

24  considered, objections were to be submitted to the Court and Class counsel by no later than

25  March 30, 2010.  (Docket 457 ¶ 8.)  Park's objection, filed on March 31, 2001, is untimely and

26  need not be considered.

27         Even if considered on the merits, Park's objections are without merit.  First, he argues

28  that a 30-year compliance period is too long.  This argument fails for the reasons stated above.

1    Second, Park contends that Caltrans' information regarding its expenditures are

2 "murky."  Again, as set forth above, Plaintiffs and their counsel considered the actual amount

3 of monies available to fund access improvements.  Park has presented no evidence to the

4 contrary.

5    Third, Park claims that future budget projections are "biased" because they are based on

6 the current fiscal crisis.  Aside from being unsupported, this assertion fails to take into account

7 the inherent instability of the budget, and the fact that the settlement is intended to account for

8 that uncertainty.

9    Fourth, Park alleges that the settlement does not require a written transition plan.

10 However, both the Ninth Circuit and this Court have concluded that there is no private right of

11 action to compel a public entity to adopt a transition plan.  See Lonberg v. City of Riverside,

12 571 F.3d 846, 852 (9th Cir. 2009) ("a public entity may be fully compliant with [Section II of

13 the ADA] without ever having drafted a transition plan, in which case, a lawsuit forcing the

14 public entity to draft such a plan would afford the plaintiff no meaningful remedy."); Docket

15 207 at 12.

16    Finally, Park claims that the grievance procedure "is not well formed."  However,

17 Park's quibbling with navigation features and links on the State's website does not undermine

18 the overall fairness, adequacy and reasonableness of the settlement.

19         **5.     Branlett Kimmons**

20    Kimmons' objection was filed on April 16, 2010, and therefore, is untimely.  That aside,

21 his objection merely states that he "objects" to all aspects of the settlement without any

22 explanation.  He also does not appear to be a Class member, and therefore, has no standing to

23 object.  For these reasons, Kimmons' objections, whatever they may be, are overruled.

24 //

25 //

26 //

27 //

28

1

## IV.    __CONCLUSION__

2

For the reasons stated above,

3

IT IS HEREBY ORDERED THAT:

4

1.    The Court, for purposes of this Judgment of Dismissal, Final Order and Decree

5

incorporates by reference the Court's order approving the Settlement Agreement (Docket No.

6

457).

7

2.    The Court, for purposes of this Order, adopts the terms and definitions set forth

8

in the Settlement Agreement re: Class Action Settlement ("Settlement Agreement").

9

3.    This Court has jurisdiction over the subject matter of this Litigation and over all

10

parties to the litigation and the Plaintiff Settlement Class Members.

11

4.    Defendants consent to the federal court exercising supplemental jurisdiction over

12

Plaintiffs' state law claims for purposes of the Settlement Agreement.

13

5.    The Court hereby dismisses this action, with prejudice and without costs, subject

14

to Paragraphs 6 and 7 below.  The terms of the Settlement Agreement are hereby incorporated

15

into this Order.

16

6.    Without affecting the finality of this Order in any way, the Court hereby retains

17

jurisdiction to resolve any dispute regarding compliance with the Settlement Agreement that

18

cannot be resolved through the meet and confer process set forth therein.  Any disputes

19

regarding the Settlement Agreement shall be referred to Magistrate Judge Elizabeth LaPorte for

20

Report and Recommendation.

21

7.    Per the parties' agreement, the attorney fee award for past work and future

22

compliance services will be no less than $3.75 million and no more than $8.75 million, and

23

costs are not to exceed $391,477.  Plaintiffs' application for an award of attorneys' fees and

24

expenses has been submitted to the Court and referred to Magistrate Judge Maria Elena James

25

for determination, subject to review by this Court upon timely request by either party.

26

27

28

1      8.      The Clerk shall terminate any pending docket matters and close the file.

2      IT IS SO ORDERED.

3   Dated:  June 2, 2010

4                                                    SAUNDRA BROWN ARMSTRONG
                                                     United States District Judge