1 | LAURENCE PARADIS (STATE BAR NO. 122336)
MARY-LEE E. KIMBER SMITH (STATE BAR NO. 239086)
2 | RONALD ELSBERRY (STATE BAR NO. 130880)
DISABILITY RIGHTS ADVOCATES
3 | 2001 Center St., Third Floor
Berkeley, CA 94704
4 | Telephone:   (510) 665-8644
5 | Facsimile:   (510) 665-8511
TTY:         (510) 665-8716
6 | Email:       general@dralegal.org

7 | DANIEL B. KOHRMAN (DC BAR NO. 394064)
JULIE NEPVEU (DC BAR NO. 458305)
8 | AARP FOUNDATION LITIGATION
601 E Street, NW
9 | Washington, DC 20049
Telephone:   (202) 434-2060
10 | Facsimile:   (202) 434-6424
Cell:        (202) 316-1991
11 | Email:       dkohrman@aarp.org, jnepveu@aarp.org

12 | JOSÉ R. ALLEN (STATE BAR NO. 122742)
Pro Bono Counsel
13 | Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
14 | Telephone:   (415) 984-6400
Facsimile:   (415) 984-2698

15 | Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR DISABILITY RIGHTS, INC. ("CDR"), CALIFORNIA COUNCIL OF THE BLIND ("CCB"), BEN ROCKWELL and DMITRI BELSER, on behalf of themselves, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION ("Caltrans") and WILL KEMPTON, in his official capacity.<br><br>Defendants. | Case No. C-06-5125 SBA (MEJ)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL CLARIFICATION OF DEDUCTIONS IN HOURS SOUGHT IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Maria-Elena James |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  PLAINTIFFS' REQUESTED RATES ARE WELL SUPPORTED. ............................... 2

III. DEFENDANTS' LATEST OBJECTIONS TO PLAINTIFFS' TIME RECORDS ARE UNJUSTIFIED. ................................................................................................................ 4

    A.  Defendants' Objections Are Often Based On Their Own Mistakes. ...................... 4

    B.  Plaintiffs' Purported Mistakes Are Often Defendants' Own Mistakes. ................. 4

    C.  Defendants' Challenges to Plaintiffs' Entries As Vague Are Without Merit. ........ 5

    D.  Block-Billing Warrants No Reduction If All Tasks Are Compensable. ................. 7

    E.  Tasks Challenged as "Clerk-level" or "Clerical" Are Generally Compensable at the Rate of the Particular Timekeeper. ................................................................. 8

    F.  Class Counsel Did Not Engage in Excessive Conferencing. ................................ 10

    G.  Challenges Described as Overstaffing, Redundant, Training, and Background Reading Are Without Merit. ................................................................................. 12

    H.  Defendants Justify No Further Reduction for Media Work ................................. 13

    I.  Plaintiffs' Overall Work In This Litigation Was Not Excessive. ......................... 14

    J.  Defendants' "Bad-Faith" Objections Are Meritless. ............................................ 14

IV.  CONCLUSION ................................................................................................................ 15

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF AUTHORITIES

**Cases**

*Coles v. City of Oakland*,
No. C03-2961 TEH, 2007 WL 39304 (N.D. Cal. Jan. 04, 2007) .................................................. 2

*Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*,
No. CV 04-9396 CBMJTLX, 2006 WL 4081215 (C.D. Cal. 2006) .............................................. 7

*Davis v. City of San Francisco,* 976 F.2d 1536 (9th Cir.1992),
*reh'g denied and opn. vacated in non-relevant part,* 984 F.2d 345 (1993) ................................ 13

*Hensley v. Eckerhart*,
461 U.S. 424 n.12 (1983) .............................................................................................................. 5

*Hess v. Ramona Unified School Dist.*,
No. 07-CV-0049 (CAB), 2008 WL 5381243 (S.D. Cal. Dec. 19, 2008) ...................................... 6

*In re Smith*,
586 F.3d 1169 (9th Cir. 2009) ...................................................................................................... 2

*Kearney v. Foley and Lardner*,
553 F.Supp.2d 1178 (S.D. Cal. 2008) .......................................................................................... 6

*L.H. v. Schwarzenegger*,
645 F.Supp.2d 888 (E.D. Cal. 2009) .......................................................................................... 12

*Lucas v. White*,
63 F. Supp. 2d 1046 (N.D. Cal. 1999) ......................................................................................... 2

*Lytle v. Carl*,
382 F.3d 978 (9th Cir.2004) ......................................................................................................... 7

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
2007 WL 5279897 (C.D. Cal. 2007) ............................................................................................ 7

*Moore v. Bank of America, N.A. (USA)*,
No. 03cv00520, 2008 WL 68851 (S.D. Cal. Jan. 7, 2008) ........................................................ 12

*National Federation of the Blind v. Target Corp.*,
No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug 3, 2009) ......................................... 10

*Navarro v. General Nutrition Corp.*,
No. C 03-0603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) .......................................... 7

*Pande v. Texaco*,
No. C-04-05107 JCS, 2008 U.S. Dist. LEXIS 87584 (N.D. Cal. April 1, 2008) ..................... 7, 9

*Prison Legal News v. Schwarzenegger*,
--- F.3d ----, No. 09-15006, 2010 WL 2293289 (9th Cir. June 9, 2010) ...................................... 3

*Prison Legal News v. Schwarzenegger*,
561 F. Supp. 2d 1095 (N.D. Cal. 2008) .......................................................................... 6, 12, 13

*Steinke v. Washington County*,
903 F.Supp 1403 (D. Or. 1995) .................................................................................................. 14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Trs. of Dirs. Guild of Am. Producer Pension Benefits Plans v. Tise*,
234 F.3d 415 (9th Cir. 2003) ............................................................................................... 5

*Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Redland*,
460 F.3d 1253 (9th Cir. 2006) ............................................................................................ 10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## I.     INTRODUCTION

At the hearing on Plaintiffs' fee motion on May 27, 2010, the Court stated that Defendants' objections to Plaintiffs' time entries "seem to be a little insufficient, and they're a little confusing to the Court." Transcript of Proceedings at 15:23-16:1. Therefore, the Court ordered Defendants to file supplemental briefing and to clarify their objections. However, Defendants' supplemental filings only add further confusion. Their supplemental brief presents arguments organized by categories of both objections and substantive areas of work, while Mr. Hurley's 138-page supplemental declaration includes some subset of time entries organized by certain objections. Finally, Exhibit A to Mr. Hurley's declaration is approximately 850 pages of charts detailing Defendants' objections. The relationship of these materials to Defendants' original opposition is unclear. The last column in these charts, entitled "Further Clarification," presumably is Defendants' response to the Court's order to clarify their objections.

However, **over half the entries in Exhibit A have no "Further Clarification." These entries thus remain unexplained and may be disregarded.**[1] For the remaining entries, the "Further Clarification" column includes Defendants' conclusory statements and unsubstantiated opinions with an occasional citation of an inapplicable case. Defendants still do not explain why particular conferences are too long, or particular entries are vague, or why certain work was excessive, or why particular work is deemed "clerk-level" or "clerical."

Furthermore, though Exhibit A lists a deduction in hours for each time entry to which Defendants object, it includes no calculations or totals. The only summary of these thousands of deductions – an enigmatic table at the end of the supplemental brief – indicates that **Defendants are now willing to pay $5.1 million in fees** rather than $3.75 million as stated in their opposition brief. Defendants offer no explanation why, by clarifying their previous objections, they have now arrived at a substantially higher dollar amount they assert is "warranted."

Fortunately, the Court may choose to sidestep this chaos. The Ninth Circuit has held that a district court need not conduct a detailed examination of thousands of time entries to decide a

---

[1] In support of their motion for fees, Plaintiffs presented detailed time records with more than 20,000 separate entries. Defendants object to approximately 37% (7,480) of those entries. Of those 7,480 entries, Defendants provide "further clarification" for only approximately 3,600.

*Californians for Disability Rights, Inc. v. California Department of Transportation*
**Plaintiffs' Reply to Defendants' Supplemental Clarification of Deductions in Hours Sought          1**

1  fee motion.  Instead, should the court determine that some fees sought are inappropriate, it may
2  exercise its discretion to reduce the lodestar by a certain percentage, such as five percent or as
3  much as ten percent, with only "cursory explanation," and without having to specify particular
4  deductions.  *In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009).  Plaintiffs submit that such an
5  approach is amply justified given the manner in which Defendants have litigated this fee motion
6  and their unsupported and confusing objections.  In addition to discrete no-charges amounting to
7  more than $290,000, Plaintiffs have already made a 5 percent across-the-board reduction to their
8  lodestar, eliminating over half a million dollars in fees.  If the Court deems necessary, it could
9  reduce the lodestar by 10 percent, or more than a million dollars.  Such a reduction would more
10 than account for any truly flawed time entries and thereby eliminate the need for an item-by-item
11 analysis.  Defendants have not established grounds for a greater reduction.

12         "The party opposing the fee application 'has a burden of rebuttal that requires submission
13 of evidence to the district court challenging the accuracy and reasonableness of the hours
14 charged or the facts asserted by the prevailing party in its submitted affidavits.'  **Conclusory and**
15 **unsubstantiated objections are not sufficient to warrant a reduction in fees**."  *Lucas v.*
16 *White*, 63 F. Supp. 2d 1046 (N.D. Cal. 1999) (citations omitted, emphasis added).  "[V]erified
17 time statements of an attorney seeking fees are "entitled to credence in the absence of a **clear**
18 **indication the records are erroneous**."  *Coles v. City of Oakland*, No. C03-2961 TEH, 2007
19 WL 39304, at *8 (N.D. Cal. Jan. 04, 2007) (emphasis added).  As discussed below, Defendants
20 have not met their burden and have failed to provide any clear indication of error.

21 **II.    PLAINTIFFS' REQUESTED RATES ARE WELL SUPPORTED.**

22         As a preliminary matter,  Defendants continue to assert in their Supplemental Brief and
23 supporting exhibits that the hourly rates sought by Plaintiffs should be reduced.  *See* Defendants'
24 Supplemental Brief at 15-16 (referencing deductions in rates sought by Defendants and citing
25 Exhibit I to previously submitted Hurley Declaration (Docket No. ("Doc.") 493), which set forth
26 purported "reasonable" rates for various personnel).  However, a very recent decision of the
27 Ninth Circuit expressly rejects several of Defendants' principal challenges to Plaintiffs' rates.
28         In *Prison Legal News v. Schwarzenegger*, --- F.3d ----, No. 09-15006, 2010 WL 2293289

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

(9th Cir. June 9, 2010), the Court of Appeals rejected the defendants' contention that the district court erred in approving 2008 rates for work performed before 2008.  First, the court reiterated the rule that awarding current rates is appropriate to compensate for delay in payment for work performed, instead of calculating rates of interest.  *Id*. at *6 (citations omitted, original brackets).  Second, *Prison Legal News* held that the *Laffey* matrix does not apply in this Circuit, stating:

> [J]ust because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.  It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital.

*Id.* at *6 (citations omitted).  Next, *Prison Legal News* declined the defendants' invitation to determine the rates for the plaintiffs' attorneys by examining rates billed by attorneys working in the specific context of prison litigation.  The Ninth Circuit held:  "Although the [defendants] urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter."  2010 WL 2293289, at *7 (citing *Blum v. Stenson*, 465 U.S. 886, 893).  Finally, *Prison Legal News* held that the plaintiffs' requested 2008 rates, which ranged from $340 to $740 for their attorneys, were supported by the evidence.  That evidence consisted of the declaration of one of the plaintiffs' own attorneys "as well as that of an attorneys' fee expert compiling the hourly rates charged by various San Francisco-area law firms."  2010 WL 2293289, at *7.  This evidence is exactly the same type of evidence Plaintiffs have submitted in support of their requested rates.

In their Supplemental Briefing, Defendants also continue to assert that all of the time of certain timekeepers should deducted or their rate reduced because Defendants do not know what particular job classification such individuals held at DRA.  However, in the Reply Declaration of Laurence W. Paradis ISO Plaintiffs' Motion for Attorney's Fees and Costs, Plaintiffs provided this very information for the particular individuals Defendants had identified, two of whom they again inexplicably identify as lacking rate information.  (Doc. 496, ¶¶ 13-14.)[2]

---

[2] Defendants now claim to be ignorant of the job classifications of more individuals than they did in their initial opposition.  Supplemental Brief at 14.  This new contention is untimely, beyond the scope of the supplemental briefing ordered by the Court, and in any event would not warrant a $0 rate for such

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### III. DEFENDANTS' LATEST OBJECTIONS TO PLAINTIFFS' TIME RECORDS ARE UNJUSTIFIED.

In the subsections that follow, Plaintiffs address by category the general types of objections made by Defendants. As discussed below, these objections are often inaccurate or inconsistent, contrary to controlling law, and factually unsupported.

#### A. **Defendants' Objections Are Often Based On Their Own Mistakes.**

Many objections in Exhibit A suggest an unfamiliarity with the facts of the case. For example, Defendants object to Ms. Kimber's entry billing 0.4 hours to prepare for a deposition regarding access to temporary pedestrian routes. Entry 665 (Doc. 561-2, p. 281). The basis of Defendants' challenge is that this is excessive staffing as Ms. Kimber "did not take temporary routes depo." However, Ms. Kimber took the deposition of Mr. Gregory Edwards on December 13, 2007, and he was designated by Caltrans as a 30(b)(6) witness regarding temporary routes. Paradis Supplemental Reply Declaration ("Paradis Supp. Decl."), ¶ 9 & Exh. A.

Other mistakes by Defendants are apparent simply by comparing the reason for the deduction and the description of the time entry. For instance, Defendants object to the following entry as block-billed: "Work with trial team on preparation of direct examinations." Wolinksy Entry 46 (Doc. 516-3, p. 331). Defendants also object to the following entry as conferencing and block-billed: "Receive and review direct exam for L. Williams circulated by D. Kohrman." Kimber Entry 1618 (Doc. 516-3, p. 21). These objections obviously do not apply.

Many objections appear to be the result of word searches gone awry. For example, Defendants object to Ms. Von Behren's billing 0.6 hours to draft portions of a "Settlement Conference Statement," claiming that the task was a "conference." Entry 70 (Doc. 513-2, p. 288). Clearly Defendants searched for the word "conference" and automatically included all resulting entries in that category. *See* Paradis Supp. Decl., ¶¶ 4-8 for further examples.

#### B. **Plaintiffs' Purported Mistakes Are Often Defendants' Own Mistakes.**

Defendants assert that Plaintiffs' time records are riddled with mistakes. Ironically, many of the mistakes that Defendants identify are, again, actually Defendants' own mistakes. For

---

individuals as set forth in Defendants' summary table at pages 15-16. Indeed, in Exhibit A, Defendants assign "reasonable" rates to these timekeepers. Also, Plaintiffs no-charged all time for two of them.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 instance, in their supplemental brief, Defendants point to the "many duplicate entries" in
2 Plaintiffs' time records as an example of Plaintiffs' "mistakes." However, the only example that
3 Defendants provide of such duplication is actually Defendants' own error: contrary to
4 Defendants' assertion, only one entry in either action for 11/3/2009 states "Calendar new date for
5 hearing set by Court." Doc. 462-4, p. 139; Doc. 462-3, p. 403. *See* Paradis Supp. Decl., ¶ 9 for
6 further examples. Defendants also make errors in the amounts deducted. In multiple entries, for
7 example, Defendants claim that the work is "clerk-level" and should be billed at $155 per hour.
8 However, Defendants then deduct 100% of the time billed and thus apparently propose that the
9 entire entry be uncompensated. *See* Paradis Supp. Decl., ¶ 6. Defendants further point to the
10 inclusion of fees work in the merits time records as a mistake made by Plaintiffs. However, the
11 entries they identify in Exhibit A as examples of such mistakes are actually merits work that
12 relate to settlement negotiations. *See* Paradis Supp. Decl., ¶ 12 for examples.[3]

13 Plaintiffs recognize that their time records are not without error. Indeed, in any case of
14 this magnitude and complexity, there will always be some inadvertent errors in the fee records.
15 However, such errors here are de minimus.

16 **C.    Defendants' Challenges to Plaintiffs' Entries As Vague Are Without Merit.**

17 Plaintiff's counsel "is not required to record in great detail how each minute of his time
18 was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). "But at least counsel
19 should identify the general subject matter of his time expenditures." *Id*.; *see also Trs. of Dirs.*
20 *Guild of Am. Producer Pension Benefits Plans v. Tise,* 234 F.3d 415, 427 (9th Cir. 2003)
21 Contrary to Defendants' objections, Plaintiffs' time entries generally meet this standard.

22 Defendants routinely object to Mr. Paradis' time entries for communications with named
23 Plaintiffs and class members, which are generally described as teleconferences or emails
24 concerning case status and/or strategy. Defendants seek a full deduction for virtually every such
25 communication on grounds of "vagueness." However, such entries meet the standard discussed
26 above, particularly since these are privileged attorney-client communications and fee records

---

28 [3] Defendants also suggest that equal splits in time between the federal and state actions for certain tasks are "mistakes." However, the equal splits were necessary where the federal and state work could not be separated. *See* Paradis Supp. Decl., ¶ 11 for examples.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  often become public.  There is no requirement that such time entries detail the substance of each
2  such status report or identify particular class members involved in the communication.
3  Attorneys have a professional responsibility to keep their clients well-informed.  The
4  communications to which Defendants object generally ranged in length from 12 to 24 minutes
5  and were reasonably necessary to the litigation.  Defendants further object to many of these
6  entries to "eliminate duplicates."  However, there are no duplicate communications with clients
7  or class members in the entries identified in Defendants' Supplemental Brief.
8       In support of the overwhelming number of vagueness objections in Exhibit A,
9  Defendants occasionally cite two cases: *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178
10 (S.D. Cal. 2008) and *Hess v. Ramona Unified School Dist.*, No. 07-CV-0049 (CAB), 2008 WL
11 5381243 (S.D. Cal. Dec. 19, 2008).  Both are distinguishable.  In *Kearney*, the issue was whether
12 the time entries were sufficiently detailed so as to determine whether the time was spent on
13 federal or state claims, as fees were only available for work on state claims.  553 F.Supp.2d at
14 1186.  Here there is no such need to provide detailed information regarding every specific task
15 since Plaintiffs obtained substantive relief on virtually every one of their claims and are thus
16 entitled to fees for all work reasonably spent in the two cases.  In *Hess*, the court made a 33
17 percent deduction for an attorney whose hours were vaguely defined (i.e., "Plaintiff
18 communication" appeared nearly 100 times, with no elaboration) and a 25 percent deduction for
19 a paralegal with an entry billing eight hours for "Review and organize documents."  2008 WL
20 5381243, at *7.  Plaintiffs' time entries generally are not this vague and in any event the *Hess*
21 court deducted, at most, 33 percent for vague entries, while Defendants are seeking a 100 percent
22 deduction for all entries they characterize as vague.
23      In addition, for many of the specific entries in Exhibit A that are deemed vague by
24 Defendants, such entries are not vague when considered in the context of the adjoining time
25 entries.  *See Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103 (N.D. Cal.
26 2008) (noting a court can consider context).  To give one example, Defendants object as vague
27 the entry by Mr. Wolinsky which states:  "Prepare ideas for reply" because "the reply is not
28 identified."  Entry 9 (Doc. 516-3, p. 325).  However, the entry directly before this one refers to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Defendants' response to Plaintiffs' motion for class certification. Furthermore, in the complete
2  version of Plaintiffs' time records, literally every entry from 1/9/2008 until 1/29/2008 addresses
3  the reply for Plaintiffs' class certification motion. Mr. Wolinsky's entry on 1/10/2008 thus
4  unquestionably focused on the reply for Plaintiffs' class certification motion and is not vague in
5  context. *See* Paradis Supp. Decl., ¶ 13-15 for further examples.[4]

### D. Block-Billing Warrants No Reduction If All Tasks Are Compensable.

Defendants object to thousands of time entries on the basis that they are "block-billed" and assert that every such entry should be reduced by 33 percent. Defendants rely upon *Navarro v. General Nutrition Corp.*, 2005 WL 2333803, which found that when non-compensable tasks (e.g., work related to a document filed in violation of standing orders) were combined with compensable tasks, the Court could not ascertain the amount to deduct. As a result, the Court deducted 10 percent of the time for those entries. The *Navarro* case did not deduct all block-billed tasks, but rather deducted a portion of the time and **only** when there were non-compensable tasks intermixed. Further, in those instances the deductions were only 10 percent, not 33 percent. Moreover, in *Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, No. CV 04-9396 CBMJTLX, 2006 WL 4081215, at *7 (C.D. Cal. 2006), a case cited by Defendants, the Court held that block-billing did not warrant any deduction. Citing *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir.2004), the Court held that "Plaintiffs' counsel's use of 'block billing,' in which the subject matter of the work performed is identified, is permissible because it successfully identifies the general subject of the time expenditure." 2006 WL 4081215, at *5.

When Defendants object to entries as block-billed, ordinarily every part of the time entry reflects compensable work. The entries that are combined are usually interrelated parts of the same task and sufficiently identify the subject matter of the work performed. Accordingly, few of the entries challenged as block-billed actually warrant any deduction. To give just one

---

[4] Defendants cite *Masimo Corp. v. Tyco Health Care Group, L.P.*, 2007 WL 5279897, at *6 (C.D. Cal. 2007) for the proposition that entries such as "Attendance at trial" lack the specificity typically required. Defendants thus seek a full 100 percent deduction for such entries. *E.g.*, Entries JA151, 153 (Doc. 516-3, p. 370). Courts in this district apply a different standard, however. *See Pande v. Texaco*, No. C-04-05107 JCS, 2008 U.S. Dist. LEXIS 87584, *22-23 (N.D. Cal. April 1, 2008) (no deduction for "trial preparation" as allegedly vague); *Navarro v. General Nutrition Corp.*, No. C 03-0603 SBA, 2005 WL 2333803, at *15-16 (N.D. Cal. Sept. 22, 2005) (deducting only 10 percent for vague entries.)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

example, Mr. Knestrick billed 2.1 hours for "Review motion in limine and response re undue burden; review cited cases; draft outline and argument." Entry 132 (Doc. 516-3, p. 46). Because each task is sufficiently identified and all were related to the motion regarding undue burden, there should be no deduction. *See* Paradis Supp. Decl., ¶ 16 for further examples.

### E. Tasks Challenged as "Clerk-level" or "Clerical" Are Generally Compensable at the Rate of the Particular Timekeeper.

Defendants challenge thousands of entries on the ground that they are either "clerical work," for which Defendants propose a 100% deduction, or "clerk-level work," for which Defendants propose the work be billed at the low rate of $155 per hour. As a preliminary matter, is it unclear what the difference is between the two categories. Defendants define clerical work as requiring no legal skill and simply fail to explain what they mean by "clerk-level." *See* Supp. Brief at 3:12. In any event, Defendants use the two categories inconsistently. For instance, Defendants object to Mr. Paradis' time entry of 1.0 hours for "Further factual investigation re: access barriers on Caltrans sidewalks" as "clerk-level work." Entry 2 (Doc. 516-3, p. 64). However, when Ms. Kimber billed 0.2 hours for "Factual research into park and ride under Caltrans jurisdiction" Defendants object to it as "clerical." Entry 22 (Doc. 516-2, p. 218).

Apparently Defendants contend that attorneys should not bill for, among other things, undertaking factual investigation, communicating with class members and even clients, instructing paralegals and law clerks, and drafting certain legal documents. *See* Paradis Supp. Decl., ¶¶ 17-20. Such objections are without merit. Attorneys can and should engage in factual investigation as a part of the duty under Rule 11 (which requires that an attorney certify that any factual contentions have been formed after "an inquiry reasonable under the circumstances" and that such factual contentions must have "evidentiary support."). Attorneys can and should communicate with class members as a part of a factual investigation (e.g., to learn about the types of access barriers faced) and, in some cases, to explain the legal obligations of being a declarant in a class action.[5] Attorneys can and should provide instructions to subordinates in

---

[5] Defendants' objections also suggest that paralegals and law clerks also should not communicate with clients. This contention raises the question of who, if neither the attorneys nor the paralegals/law clerks can bill for communications with class members, is supposed to communicate with class members.

order to themselves avoid billing for clerical work. Defendants try to have it both ways: deducting 100% for an attorney billing for a purportedly clerical task and deducting 100% (or sometimes 20% for "conferencing,") for an attorney instructing a law clerk or paralegal to do a purportedly clerical task. Finally, Defendants object to the time entries of Plaintiffs' counsel for drafting certain legal documents. For instance, Defendants argue that the Notice of Motion for Plaintiffs' class certification motion should have been drafted by clerical staff "as it involves merely pulling up a template" and as such requires no legal skill. Kimber Entry 169 (Doc. 516-2, p. 230); see also Paradis Entry 807 (Doc. 516-3, p. 229). The Notice of Motion at issue set forth the class definition for this particular case, requiring both legal skill and full understanding of the facts of the case. It was not a template but rather a substantive legal document. *See* Paradis Supp. Decl., ¶ 20 for further examples.

Furthermore, tasks such as "retrieving, organizing, filing, or copying documents" – routinely objected to by Defendants – are not purely clerical when they require familiarity with the documents and issues in the case. *Pande v. Texaco*, 2008 U.S. Dist. LEXIS 87584, *20. Indeed, most of the tasks to which Defendants object as clerical, including the "routing" entries specifically identified in their Supplemental Brief, required familiarity with the documents and the legal and factual issues in this litigation, and for that reason they were performed by attorneys, summer associates, paralegals, or law clerks, as appropriate. For instance, all routing of documents including emails was done by one attorney and required categorizing the document in a number of ways: related to the federal action, the state action or both, the type of document (e.g., correspondence) and the subject matter of the document (e.g. discovery). Given the enormous amount of correspondence, discovery requests and responses, and filings, the routing had to be accurate so that documents could be efficiently located at a later time. Another example is "creating binders," which required not only knowledge of all the relevant documents but often the procedural history of the case. Here the paralegal would have to know what the relevant documents were (e.g. for witness binders: any declarations, deposition transcripts, as well as any photographs produced by the witness), then retrieve these items and organize them (e.g., chronologically, by subject matter).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1	That familiarity with the documents and issues in the case was necessary for tasks such as
2	calendaring, organizing, and filing is confirmed by the fee records of Defendants' own counsel.
3	For instance, attorneys at Greenberg Traurig (outside defense counsel) billed at attorney rates to
4	"organize exhibits," "review local rules," "cite-check," and "calendar dates and action items,"
5	while paralegals at Greenberg Traurig billed at paralegal rates to "prepare files for database,"
6	"organize case files for war room," and "prepare documentation for filing."  *See* Paradis Supp.
7	Decl., ¶ 19, Exh. B for further examples.[6]

8	Defendants appear to propose a pyramidal model in which every task that conceivably
9	could be delegated to a clerical employee is so delegated, even if doing so would require the
10	attorney or paralegal to spend an equal or greater amount of time delegating than doing the task
11	directly.  For instance, Ms. Kimber billed 0.6 hours to "Draft CM Order; circulate to team."
12	Defendants object to this task as clerical because "circulating a CM Order requires no legal
13	skill."  Entry 757 (Doc. 516-2, p. 290).  Ms. Kimber was able to circulate this document to the
14	team with a few keystrokes of her computer.  Defendants apparently would have Ms. Kimber
15	instead email the draft CM Order to a secretary with instructions to circulate the document to the
16	litigation team, at which point the secretary would draft another email to the team, attaching the
17	CM Order.  Courts have recognized that such a pyramidal model is not necessarily the most
18	efficient, and that DRA's approach (which allows for attorneys to engage in a variety of tasks at
19	different levels) is acceptable.  *See National Federation of the Blind v. Target Corp.*, No. C 06-
20	01802 MHP, 2009 WL 2390261, at *3 (N.D. Cal. Aug 3, 2009).  Plaintiffs' counsel did in fact
21	delegate much of the work to junior level staff and to clerical staff, but not to the point of
22	diminishing returns.  Paradis Supp. Decl., ¶ 18.

23	**F.**	**<u>Class Counsel Did Not Engage in Excessive Conferencing.</u>**

24	Defendants have objected to virtually every time entry in which any person billed time

---

[6] Also, the Ninth Circuit has held that "even purely clerical or secretarial work is compensable if it is customary to bill such work separately, though such tasks should not be billed at the paralegal rate, regardless of who performs them." *Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Redland*, 460 F.3d 1253, 1257 (9th Cir. 2006) (internal quotation marks and citations omitted).  Law clerks and case clerks at DRA billed approximately twice as many hours, at lower rates, than did other support staff such as paralegals.  *See* Exhibit A to Paradis Reply Declaration (Doc. 496-1).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 for speaking with any other individual in person or by telephone (and sometimes by email) who
2 was part of Plaintiffs' counsel team.  Thus, contrary to Defendants' Supplemental Brief, which
3 implies that Defendants challenge only "vaguely-described, multiple conferences regarding
4 status and/or strategy," Defendants seek a blanket 20 percent deduction for every such
5 communication.  However, Defendants do not indicate what portion of Plaintiffs' total time was
6 spent on such conferences and provide no basis for their assertion that the conferencing that
7 occurred was excessive.  To give just one example, the entry identified in Exhibit A as H9 (Doc.
8 517-1, p. 28), for 0.1 hours billed by a paralegal, states:  "Directions from L. Paradis re:
9 preparation of deposition summary of Cordova."  Defendants identify the sole reason for the 20
10 percent deduction they seek as "conference."  This entry is quite specific and has nothing to do
11 with "status and/or strategy."  It explains that Mr. Paradis, a lead attorney on the case, gave
12 directions to a paralegal about summarizing a particular deposition.  *See also* Kimber Entry 553
13 (Doc. 516-2, p. 270) (instructions to paralegal to gather documents for meeting with Governor).
14      Defendants also take the "excess conferencing" objection to such an extreme level as to
15 object to Plaintiffs' counsel conferring with their own clients or expert witnesses.  For example,
16 Entry 34 for attorney Kevin Knestrick (Doc. 516-3, p. 39) bills 0.2 hours for "Teleconference
17 with Bishop re deposition preparation."  Ms. Bishop was Plaintiffs' expert witness regarding
18 Defendants' undue burden defense.  Mr. Knestrick had responsibility for handling that defense,
19 including defending Ms. Bishop's deposition.  Paradis Supp. Decl., ¶ 21; *see also* Kimber Entry
20 320 (Doc. 516-2, p.245) (prepare witness J. Curry for deposition).  In neither of the foregoing
21 situations do Defendants provide any explanation why such time should not be fully
22 compensable.  Nor do they explain how any attorney could litigate any case without engaging in
23 these types of routine, appropriate, and necessary communications.
24      Decisions in Ninth Circuit, including those cited by Defendants, have rejected
25 Defendants' view that time records reflecting "a great deal of time" billed for communications
26 among multiple attorneys reflect inefficiency or excess billing.  For example, when a case "was
27 complicated and implicated areas of law in which various of plaintiffs' counsel brought varying
28 levels of expertise[,] [c]ommunication among them was undoubtedly essential to their effective

1 representation of their clients. [Citation.]" *L.H. v. Schwarzenegger*, 645 F.Supp.2d 888, 898

2 (E.D. Cal. 2009); *see also Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1104

3 (N.D. Cal. 2008) (rejecting contention that conferencing by plaintiffs' attorneys was excessive or

4 duplicative). Plaintiffs previously briefed this issue in the reply in support of their fee motion,

5 and cited abundant authority holding that such conferences are proper and even essential in this

6 type of litigation. *See* Reply Brief, Doc. 495, at 11-12.

### G. Challenges Described as Overstaffing, Redundant, Training, and Background Reading Are Without Merit.

Although Defendants' Supplemental Briefing includes no complete discussion of their objections variously described as overstaffing, redundant, training, and background reading, these objections are generally interchangeable and sometimes overlap with others. Defendants apparently believe that Plaintiffs had too many personnel working on this litigation and seek to deduct, usually in full, fees they attribute to these categories. In a decision on which Defendants rely, however, the court concluded that multiple attorneys working on the same case raises no presumption of inefficiency. *Moore v. Bank of America, N.A. (USA)*, No. 03cv00520, 2008 WL 68851, at *4 (S.D. Cal. Jan. 7, 2008). Given the size and complexity of this litigation, it was not unreasonable to have multiple attorneys present at particular hearings or conferences, or working on and discussing the cases in order to accomplish necessary tasks and to develop and coordinate their strategy and approach. *See* Reply Brief, Doc. 495, at 16-17. Furthermore, the litigation spanned a lengthy period meaning that some staff turnover and reassignment of tasks were bound to occur. Paradis Supp. Decl., ¶ 22. By the time the federal case approached trial, the parallel state action was being litigated and vigorously defended, requiring that extra resources and personnel be brought in to assist with the heavy demands of both cases. *Id*.

Defendants simply do not explain why the particular time entries to which they object under this category were excessive or unnecessary. For instance, Defendants objection as "overstaffing; training" to Mr. Knestrick's Entry 62 (Doc. 516-3, p. 42) "Moot court for motion for summary judgment hearing." Mr. Knestrick worked on Plaintiffs' opposition to this motion and nothing suggests that this moot court session was conducted for the purpose of training or
DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  that the moot court was unnecessary. *See also* Paradis Supp. Decl., ¶ 24 (other examples of
2  unjustified objections based on "overstaffing" and "redundant").

3        Defendants generally object to every time entry in which Plaintiffs' counsel consulted
4  rules of procedure, claiming such work is not compensable. However, attorneys engaged in
5  litigation regularly check rules of procedure to ensure that they are complying with current
6  requirements, and the courts have recognized that such work is compensable. *See, e.g.*, *Prison*
7  *Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1104 (N.D. Cal. 2008), where the court
8  rejected the defendants' challenge to such time entries, noting that local rules "are subject to
9  change and failure to comply with them can result in prejudice to an attorney's clients."

10        Defendants also generally object to all work in which attorneys instructed summer
11  associates or reviewed their work as "redundant" or "training" and propose 100 percent
12  deductions. *See,.e.g.*, Knestrick entries 52, 55 (objecting to meetings involving assignments to
13  summer associates). Defendants cannot have it both ways: first they challenge Plaintiffs'
14  counsel for not sufficiently delegating work to more junior staff, and then they object to time
15  entries involving that very process of delegating.

16  **H.** **<u>Defendants Justify No Further Reduction for Media Work.</u>**

17        Defendants ask the Court to deduct 50 percent of fees for media work. They state that
18  Plaintiffs' records reflect a total of 106.4 hours billed for such work. Defendants acknowledge
19  that Plaintiffs already have no-charged a substantial portion of this time – 44.7 hours, or 42
20  percent, amounting to $18,131. Supplemental Brief at 13. Nevertheless, of the remaining 61.7
21  hours of media work, Defendants seek an additional 50 percent deduction – $14,572.

22        "Where the giving of press conferences and performance of other lobbying and public
23  relations work is directly and intimately related to the successful representation of a client,
24  private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the
25  same." *Davis v. City of San Francisco,* 976 F.2d 1536, 1545 (9th Cir.1992), *reh'g denied and*
26  *opn. vacated in non-relevant part,* 984 F.2d 345 (1993); *see also Prison Legal News v.*
27  *Schwarzenegger*, 561 F. Supp. 2d 1095, 1101 (awarding compensation for all time spent on
28  media). Here, media strategy, press conferences, and press releases frequently were a key part of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Plaintiffs' outreach to identify and obtain declarations from numerous class members who participated in the litigation. Such declarations were important for both class certification motions and for defeating Defendants' motion for summary judgment in the federal action. Paradis Supp. Decl., ¶ 25. These classes included members residing throughout the state, and Plaintiffs had to be prepared to present testimony of the various barriers encountered by class members all over California. Media work was also instrumental in keeping the class apprised of significant developments in the litigation and of the benefits of the settlement. *Id*.

### I.   Plaintiffs' Overall Work In This Litigation Was Not Excessive.

As explained in Plaintiffs' previous briefing, Defendants vigorously litigated the state and federal actions simultaneously. They refused to cooperate even when the result needlessly increased the time and expense of the process, and repeatedly asserted virtually every possible defense. This approach to litigation required substantial time and staffing. Indeed Defendants' approach to this fee motion exemplifies the way in which they have litigated the entire case.

In addition to the objections discussed above, Defendants object to fourteen categories of substantive work, claiming that the work was unnecessary or Plaintiffs allegedly spent too much time on such components. However, the courts have rejected such post hoc analysis. Rather, the standard is "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Steinke v. Washington County*, 903 F.Supp 1403, 1407 (D. Or. 1995) (quoting *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (8th Cir. 1990). Mr. Paradis' accompanying supplemental declaration details the facts surrounding each of the fourteen categories of substantive work challenged. *See* Paradis Supp. Decl., ¶¶ 26-58. These facts undeniably demonstrate that the time Plaintiffs billed for this substantive work was in no way excessive but well justified.

### J.   Defendants' "Bad-Faith" Objections Are Meritless.

Defendants seek a 100 percent deduction for work they argue was undertaken in bad faith. For example, Defendants object to time Plaintiffs spent on their Motion for Case Coordination ( "no billing judgment (misreps re program access)") and work relating to the deposition of Mr. Hecker ( "bad faith (Hecker)"). Plaintiffs have previously addressed

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Defendants' unfounded assertions on these topics.  Paradis Reply Decl. (Doc. 496, ¶¶ 16-19).

2  　　　　Defendants also challenge as bad faith Plaintiffs' time spent on their Cross-Motion for
3  Summary Judgment regarding temporary pedestrian routes.  In their "Further Clarification" for
4  these entries, Defendants state:  "After Defendants filed their Motion for Judgment on Pleadings
5  (Docket #251) regarding temporary routes, Plaintiffs filed a cross-motion for summary judgment
6  on the same issues (Docket #259), thereby incurring duplicative fees on motions addressing the
7  same topic."  Corbit Entry #1 (Doc. 516-2, p. 77).  Defendants offer no further justification.  Yet,
8  for the time billed by any attorney working on this issue, Defendants seek a full 100% deduction,
9  usually noting only "poor billing judgment – duplicative work on temp routes."  This deduction
10 is improper.  As a preliminary matter, there was little to no duplication in work.  Plaintiffs' cross-
11 motion for summary judgment was four pages long and, for the legal arguments, it referred the
12 Court to Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings.  More
13 importantly, Plaintiffs' cross-motion for summary judgment was granted.  The motion yielded a
14 precedential holding in which the Court recognized that there was a legal obligation for
15 Defendants to ensure that, when provided, temporary pedestrian routes around construction were
16 accessible.  Doc. 292 at 2:4-5.  Work on a successful summary judgment motion is compensable.

## IV.   CONCLUSION

18 　　　　In approving the settlement, Judge Armstrong stated:  "This case involves numerous,
19 complex and novel issues of law, and seeks statewide relief on an unprecedented scale.  The
20 complexity of the case is exemplified by the extensive motion practice, which, in many instances
21 delved into uncharted legal territory."  Doc. 515 at 4:27-5:1.  Defendants have not clearly
22 established that Plaintiffs' reasonable fees for work in such litigation should be reduced below
23 the negotiated cap of $8.75 million.

24 Dated: July 2, 2010                              Respectfully submitted,
                                                    DISABILITY RIGHTS ADVOCATES
25                                                  AARP FOUNDATION LITIGATION
                                                    JOSE ALLEN, ESQ.
26
27                                                  _____/s/_____
                                                    Laurence Paradis
28                                                  Attorneys for Plaintiffs

\\Server\Cases\CDR.Caltrans\Fees_Costs\Motion\Reply_To_D's_Supp_Clarification\Reply_D's_Supp_Clarification_FINAL.doc

*Californians for Disability Rights, Inc. v. California Department of Transportation*
**Plaintiffs' Reply to Defendants' Supplemental Clarification of Deductions in Hours Sought         15**