LAURENCE PARADIS (STATE BAR NO. 122336)
MARY-LEE E. KIMBER (STATE BAR NO. 239086)
RONALD ELSBERRY (STATE BAR NO. 130880)
DISABILITY RIGHTS ADVOCATES
2001 Center St., Third Floor
Berkeley, CA 94704
Telephone:      (510) 665-8644
Facsimile:      (510) 665-8511
TTY:            (510) 665-8716
Email:          general@dralegal.org

DANIEL B. KOHRMAN (DC BAR NO. 394064)
JULIE NEPVEU (DC BAR NO. 458305)
AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC 20049
Telephone:      (202) 434-2060
Facsimile:      (202) 434-6424
Cell:           (202) 316-19910
Email:          dkohrman@aarp.org
                jnepveu@aarp.org

JOSÉ R. ALLEN (STATE BAR NO. 122742)
Pro Bono Counsel
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Telephone:      (415) 984-6400
Facsimile:      (415) 984-2698

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR DISABILITY RIGHTS, INC. ("CDR"), CALIFORNIA COUNCIL OF THE BLIND ("CCB"), BEN ROCKWELL and DMITRI BELSER, on behalf of themselves, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF TRANSPORTATION ("Caltrans") and WILL KEMPTON, in his official capacity, <br><br> Defendants. | Case No. C-06-5125 SBA <br> **CLASS ACTION** <br><br> **SUPPLEMENTAL DECLARATION OF LAURENCE W. PARADIS IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL CLARIFICATION OF DEDUCTIONS IN HOURS SOUGHT** <br><br><br> Judge: Hon. Maria-Elena James |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

I, Laurence W. Paradis, declare:

1.      I have personal knowledge of the facts contained in this declaration and, if called as a witness, am competent to testify as to those facts.

2.      I am an attorney at law, duly licensed to practice law in all state and federal courts of the state of California and in a number of other federal and state courts.  I have been the lead attorney in the instant federal action and the related state court action (hereafter this "litigation"), and have been continually involved in this litigation throughout.

3.      In Plaintiffs' reply brief in support of their motion for fees, Plaintiffs estimated that, in addition to fees documented in their time records, they would incur an additional $15,000 in fees related to completing preparation of the reply papers in support of the motion and the hearing on the motion.  *See* Docket No. (hereafter "Doc.") 496, ¶ 12.  At the time, Plaintiffs did not anticipate that Defendants would file their Supplemental Brief and voluminous supporting papers, to which Plaintiffs would have to reply.  I estimate Plaintiffs' counsel have spent over 50 additional attorney hours in the preparation of this supplemental filing, thus further increasing substantially the amount of "fees on fees" work by at least another $25,000.

## DEFENDANTS' MISTAKES

4.      Plaintiffs have identified an abundance of mistakes throughout the charts comprising Exhibit A to Mr. Hurley's Supplemental Declaration (Doc. 516-2, 516-3, and 517-1). The mistakes are too numerous to detail every one.  The following are just a few examples of such mistakes, broken down by various categories.

### *Incorrect or Unjustified Reason for Deduction*

5.      In many instances, the reason cited by Defendants for the deduction is nonsensical.  To give just a few examples:

**Heller #72** (F) (Doc. 516-2, p. 174)
**Description:**  Review defendants' responses to interrogatories; prepare meet and confer letter re: same
**Time Billed:** 2.5
**Reason for Deduction:**  block-billed; conference
**Percentage Deduction:**  33%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  This time entry does not include any description of a conference, but rather the preparation of a "meet and confer letter" about Defendants' responses to interrogatories that this attorney reviewed immediately before preparing the letter.  Apparently

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Defendants searched for the word "confer" and then labeled this entry as an excessive conference. This entry also is not improperly block-billed; the tasks are closely related and specifically identified, and the total time spent on these tasks is reasonable.

**Heller #123** (F) (Doc. 516-2, p. 180)
**Description:** Meet and confer with opposing counsel re: defendants' responses to discovery and the number of depositions
**Time Billed:** 2.5
**Reason for Deduction:** overstaffing
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** How can an attorney's meet and confer with opposing counsel about discovery disputes constitute overstaffing? Defendants seem to have done a word search for "confer" and objected automatically even when it makes no sense.

**Kimber #617** (S) (Doc. 516-2, p. 276)
**Description:** prepare for venue oral argument
**Time Billed:** 0.6
**Reason for Deduction:** Redundant.
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** Ms. Kimber's attendance is not justified given the attendances of other attorneys.
**Plaintiffs' Response:** Ms. Kimber handled the oral argument of the venue motion. It makes no sense to assert that the time spent by an attorney who actually argued a hearing preparing for that hearing is "redundant."

**Kimber #115** (F) (Doc. 516-2, p. 225)
**Description:** Teleconference with Sandler re: meeting times.
**Time Billed:** 0.2
**Reason for Deduction:** media
**Percentage Deduction:** 50%
**Further Clarification by Defendants:** See entry #14. Moreover, scheduling a meeting is not compensable.
**Plaintiffs' Response:** Mr. Sandler is not associated with the media. He is an attorney at Caltrans Legal who worked on this litigation. It is an error by Defendants to characterize interactions with an attorney from Caltrans as media-related. Errors such as this put into question whether the personnel who prepared Defendants' supplemental submission are fully aware of the history of the case.

**Von Behren #107** (F) (Doc. 516-3, p. 292)
**Description:** Call/email E. Chang RE: location of Benton depo and status of access to document
**Time Billed:** 0.3
**Reason for Deduction:** conference
**Percentage Deduction:** 20%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** E. Chang is one of Defendants' attorneys who worked on this litigation. Once again, this error puts into question whether the personnel who prepared Defendants' supplemental submission are fully aware of the history of the case.

**Markwalder #42** (F) (Doc. 516-3, p. 56)
**Description:** Rule 26(g) teleconference with defendants
**Time Billed:** 0.8

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Reason for Deduction:**  conference
**Percentage Deduction:**  20%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  Once again, it appears Defendants have done a word search for conference and objected to every such entry on the grounds of "excessive conferencing," leading to the absurd result that Defendants are objecting here to communications with opposing counsel.

### *Incorrect Percentage Deductions*

6.      In a great many instances, Defendants claim to be deducting only a certain portion of the amount of time entered, or just reducing the rate for the time entered, yet their charts indicate deduction of the full 100% of the amount billed.  The following are just a few examples:

**Enyart #40** (F) (Doc. 516-2, p. 159)
**Description:**  Met with B. Saccoccia re: exhibits for Williams
**Time Billed:**  0.10
**Reason for Deduction:**  conference
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  Given Ms. Enyart's minor role in this case (see further clarification for entry no. 1), a mere 20% reduction for her attendance at this conference is generous.
**Plaintiffs' Response:**  Defendants claim to be deducting only 20% but deduct 100% instead.

**Paradis #8** (F) (Doc. 516-3, p. 66); *see also* Entries #11, 12, 14.
**Description:**  Prepare for meeting with multiple complainants re: CalTrans access barriers; review email complaints received re: same
**Time Billed:**  0.80
**Reason for Deduction:**  clerk-level work
**Percentage Deduction:**  100% (0.800 hours)
**Further Clarification by Defendants:**  Factual investigation is work that could be performed by a clerk, and Plaintiffs' attempts to seek fees for such work at the rate of a senior attorney shows lack of billing judgment.  The work should be charged at a rate of $155.  See also clarification for entry #2.
**Plaintiffs' Response:**  Defendants claim that various tasks performed by attorneys more appropriately should have been performed by a case clerk and request that the court impose a rate of $155 for such tasks.  In many instances such as this, however, Defendants appear to deduct a full 100% of the hours billed to such tasks, such that no fees at all would be awarded for these tasks.

**Markwalder #16** (F) (Doc. 516-3, p. 52)
**Description:**  Factual investigation re: experiences of CCB members; conference with Larry Paradis re: same
**Time Billed:**  0.4
**Reason for Deduction:**  clerk-level work; block-billed
**Percentage Deduction:**  100% (0.4 hours)
**Further Clarification by Defendants:**  Factual investigation is clerk-level work. By definition, such investigation does not require legal skill; this entry does not indicate otherwise. Thus, this time should be billed at DRA's case clerk rate ($155). See In re Washington Public Power

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Supply System Securities Litigation, 19 F. 3d 1291, 1298 (9th Cir. 1994) (affirming district court's reduction of attorney's rate to a reasonable paralegal rate for paralegal level tasks performed by the attorney); see Davis v. City & County of San Francisco, 976 F. 2d 1536, 1543 (9th Cir. 1992) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."); MacDougal v. Catalyst Nightclub, 58 F. Supp. 2d 1101, 1105 (N.D. Cal. 1999) (finding lawyer's request for fees for clerical and routine tasks was "an exercise of poor 'billing judgment'.") Moreover, because the entry is block billed, the Court cannot determine whether time spent on each task is reasonable, so a 33% reduction for block-billing is warranted.

**Plaintiffs' Response:**  Again, although Defendants request that the court impose a rate of $155 for this allegedly "clerk-level" work, Defendants deduct a full 100% of the hours billed, such that no fees at all would be awarded for these tasks.

### *Clarification Is Erroneous or Nonsensical*

7.      In many instances, the "Further Clarifiication" provided in the Exhibit A charts are either erroneous or nonsensical.  Below are just a few examples:

**#DK52** (F) (Doc. 516-2, p. 21)
**Description:**  discussions with co-counsel re settlement terms following meeting with MJ Laporte
**Time Billed:** 1.0
**Reason for Deduction:**  conference
**Percentage Deduction:**  20%
**Further Clarification by Defendants:** This "block-billed" time entry "frustrat[es] the Court's efforts to determine whether the fees were, in fact, reasonable." . . . [S]uch billing practices are legitimate grounds for reducing or eliminating certain claimed hours . . ." Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th. Cir. 2008). Moreover, this time entry includes excessive conference hours that cannot be separated from other hours (see SB, sec. C).
**Plaintiffs' Response:**  This time entry describes one conference among co-counsel and was clearly not block-billed.

**Biedermann #32** (F) (Doc. 516-2, p. 54)
**Description:**  Phone call with A. Karp re: potential problems with Caltrans for potential declaration
**Time Billed:**  0.5
**Reason for Deduction:**  clerical
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  Formatting and pulling pages is clerical work. See SB, sec. B.
**Plaintiffs' Response:**  This task had nothing to do with formatting and pulling pages.  Rather, it involved communication with a class member, which required legal skill and familiarity with the legal and factual issues in the case.

**Corbit #51** (F) (Doc. 516-2, p. 87)
**Description:**  Meet and confer with Defendants, M. Kimber; follow-up with M. Kimber re: meet and confer
**Time Billed:**  1.2
**Reason for Deduction:**  conference
**Percentage Deduction:**  20%
**Further Clarification by Defendants:**  It is unclear why a 1.2 hour conference regarding a meet and confer is reasonable. Defendants request a 20% deduction.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Plaintiffs' Response:**  Contrary to Defendants' further clarification, this was not a single conference *regarding* a meet and confer.  It *included* a meet and confer *with Defendants* at which both Ms. Corbit and Ms. Kimber attended.  After the meet and confer, there was a follow-up conference between Ms. Corbit and Ms. Kimber regarding the meet and confer.

**Kasnitz #23** (S) (Doc. 516-2, p. 197)
**Description:**  Review and edit McElroy declaration.
**Time Billed:**  0.30
**Reason for Deduction:**  vague; block-billed.
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  See SB, sec. I [regarding class certification motion in the state action].  The declaration is unidentified.
**Plaintiffs' Response:**  The task entry clearly identifies the declaration as that of Mr. McElroy, and Defendants' own clarification establishes that they know it was prepared for the state class certification motion.  The Further Clarification makes no sense.

**Kasnitz #99** (F) (Doc. 516-2, p. 206)
**Description:**  Conference with M. Kimber re trial strategy and preparation for testimony of class member witnesses.
**Time Billed:**  0.80
**Reason for Deduction:**  conference
**Percentage Deduction:**  20%
**Further Clarification by Defendants:**  There is no indication that this conference required any legal skill, as it involved preparation of binders.  Ms. Kasnitz also has an identical entry on 8/25/09 (see below).  Also, see further clarification for deduction for entry No. 1.
**Plaintiffs' Response:**  The description of this task has nothing to do with binders.

**Kimber #1618** (F) (Doc. 516-3, p. 21)
**Description:**  Receive and review direct exam for L. Williams circulated by D. Kohrman.
**Time Billed:** 0.3
**Reason for Deduction:**  block-billed; conference
**Percentage Deduction:**  33%
**Further Clarification by Defendants:**  See entry #241.
**Plaintiffs' Response:**  This task is neither block-billed nor a conference.

**Paradis #590** (S) (Doc. 516-3, p. 181)
**Description:** Receive and review meet and confer letter from opposing counsel regarding plaintiffs responses to defendants' written discovery request form interrogatories and request for admissions; prepare strategy re response to same
**Time Billed:**  0.80
**Reason for Deduction:**  excessive
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  7.5 hours appears to be excessive for reviewing a mere letter regarding discovery and strategy regarding same.
**Plaintiffs' Response:**  The actual time billed was only 0.8 hours – as shown in the Time Billed column of Defendants' own Exh. A chart as well as in Plaintiffs' actual time records submitted.

8.   In addition, many of the original objections that Defendants submitted, for which no "further clarification" was provided, are equally nonsensical.  The following is just one of many such entries.

**Heller #94** (F) (Doc. 516-2, p. 176)
**Description:**  Teleconference with V. Spear re: defendants exceeding agreed limit for depositions; correspondence with co-counsel re: same.

**Time Billed:** 0.50
**Reason for Deduction**: overstaffing
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** This entry involved one attorney for Plaintiffs having a teleconference with *defense counsel* and then reporting the substance of the teleconference to co-counsel. Yet Defendants propose a 100% deduction for the entire entry – essentially claiming that a teleconference with opposing counsel is "overstaffing."

## PLAINTIFFS' PURPORTED "MISTAKES"

### *General "Mistakes"*

9.      The majority of the purported "mistakes" that Defendants identify in Plaintiffs' time records are actually Defendants' own mistakes. For instance, attached hereto as **Exhibit A** are the first several pages of the deposition of Gregory Edwards, which indicate that Ms. Kimber took the deposition of Mr. Edwards. Defendants claim that Ms. Kimber did *not* take this deposition, and that her corresponding time entry preparing for this deposition is thus in error. Defendants are simply mistaken.

10.      The following are some other examples of entries that Defendants erroneously characterize as mistakes by Plaintiffs, followed by Plaintiffs' explanation of why Defendants' objections are based on their own mistakes.

**Kimber #107** (F) (Doc. 516-2, p. 225)
**Description:** Teleconference with Mark Potter re: Stuhr stipulation
**Time Billed:** 0.2.
**Percentage Deduction:** 100%
**Reason for Deduction:** mistake (relation to this case unclear)
**Further Clarification by Defendants:** It is unclear how this conference relates to this case.
**Plaintiffs' Response:** Mark Potter is an attorney representing a litigant, Jeff Stuhr, who filed suit prior to this lawsuit against Caltrans regarding one specific access barrier. Mr. Stuhr requested that he be excluded from this action. Caltrans and Plaintiffs signed a stipulation in this action "carving out" the access barrier at issue. *See* Docket No. 013. Thus, the record in this litigation includes the stipulation associated with this time entry, and if Defendants were familiar with the record, the relationship of this task to this case would be clear.

**Elsberry #256** (F) (Doc. 516-2, p. 142)
**Description:** Conference with R. Williford re: status of settlement and next steps.
**Time Billed:** 0.20
**Reason for Deduction:** conference
**Percentage Deduction:** 20%
**Further Clarification by Defendants:** Moreover, this work relates to fees, and the fact that it was included in the merits timesheets demonstrates lack of billing judgment (i.e., mistakes in DRA's records).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Plaintiffs' Response:** There is no mention of fees in this time entry, the task was unrelated to fees, and thus it reflects no mistake in DRA's records.

**Kimber #645** (S) (Doc. 516-2, p. 279) (see also Entry # 647-649)
**Description:** Moot court for venue oral argument
**Time Billed:** 1.5
**Reason for Deduction:** Billing Mistake (venue hearing was on 7/31/2008; Ms. Kimber billed time for hearing on 7/31/2008)
**Percentage Deduction:** 100%
**Further Clarification:** See entry #465.
**Plaintiffs' Response**: In Plaintiffs' original reply papers in support of their fee motion, Plaintiffs noted that Defendants had erroneously deducted time for preparation for a hearing regarding venue in August 2008. Defendants claimed that the venue hearing was in July 2008. Plaintiffs submitted exhibits, however, demonstrating that there was in fact a venue hearing in August 2008. Docket No. 498, p. 3 & Exh. D. Nonetheless Defendants continue to seek a deduction in fees, maintaining that there was no hearing in August 2008. Essentially, Defendants refuse to even check the pleadings to correct their own mistake after it has been pointed out by Plaintiffs.

### *Federal versus State "Mistakes"*

11.     Defendants also repeatedly claim that the distribution between federal and state time entries demonstrates mistakes because there are exact splits in time between federal and state actions for substantially similar tasks. As a preliminary matter, it makes no difference for the purposes of this fee award whether the time billed is in the federal or state action. (Fees incurred in both actions, for instance, are potentially subject to a multiplier.) What Defendants fail to understand is that there were occasions when the tasks of both federal and state were so interrelated that they could only be billed by taking the total time for the task and dividing it equally between the federal and state actions. For example, Defendants observe in their Supplemental Brief that I billed 0.2 hours in both the federal and state actions for a "Conference w/ S. Wolinsky re: status and strategy of settlement negotiations; preparation of plan for next steps re: same." This conference with Mr. Wolinsky lasted 0.4 hours, and it concerned the settlement including both federal and state claims. The only accurate way to bill for this conference was to split the time billed 50-50. Nothing about these entries reflects mistakes by Plaintiffs. Below are just a few further examples of 50-50 time splits to which Defendants object, none of which are the result of Plaintiffs' mistakes or other improper billing practices.

**Paradis #339** (F) (Doc. 516-3, p. 132)
**Description:** Email to/from client Belser re: case status

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Time Billed:**  0.20
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  "Status" is so vague as to be useless.  Moreover, it is odd that exactly 0.2 was spent on a email regarding the state action and 0.2 regarding the federal action, which calls into question how DRA split its time between the state action and the federal action.

  AND

**Paradis # 340** (S) (Doc. 516-3, p. 132)
**Description:**  Email to/from client Belser re: case status
**Time Billed:**  0.20
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  "Status" is so vague as to be useless.  Moreover, it is odd that exactly 0.2 was spent on a email regarding the state action and 0.2 regarding the federal action, which calls into question how DRA split its time between the state action and the federal action.
**Plaintiffs' Response:**  Entries 339 and 340 relate to the same email.  However, the email discussed both federal and state cases together.  Accordingly, the total time spent on the email was split 50-50.


**Paradis #359** (F) (Doc. 516-3, p. 136)
**Description:**  Teleconference with S. Wolinsky re: case and settlement status
**Time Billed:**  0.10
**Reason for Deduction:**  vague; conference
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  This entry is identical to the entry for the federal action on the same date, which calls into question how time was split between the federal and the state action.

  AND

**Paradis #361** (S) (Doc. 516-3, p. 137)
**Description:**  Teleconference with S. Wolinsky re: case and settlement status
**Time Billed:**  0.10
**Reason for Deduction:**  vague; conference
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  This entry is identical to the entry for the federal action on the same date, which calls into question how time was split between the federal and the state action.
**Plaintiffs' Response:**  Entries 359 and 361 relate to the same teleconference.  The teleconference concerned settlement of both federal and state claims and thus addressed both simultaneously.  Accordingly, the time spent on the teleconference was split 50-50.


### *Fees Work in Merits Work "Mistakes"*

  12. Defendants also claim that there is fee work recorded in the merits timesheets.

However, all the entries that they point to in Exhibit A are merits work that relate to settlement

negotiations.  They are not work on the current fee motion.  The following are examples of what

*Californians for Disability Rights, Inc. v. California Department of Transportation,* **Case No.: C 06 5125 SBA**
**DECLARATION OF LAURENCE W. PARADIS IN SUPPORT OF PLAINTIFFS' REPLY TO**
**DEFENDANTS' SUPPLEMENTAL CLARIFICATION OF DEDUCTIONS IN HOURS SOUGHT**  8

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Defendants erroneously characterize as "fee work" that should not be included in merits time,

but in fact constitute merits work properly included in the merits time records.

**Elsberry #252** (F) (Doc. 516-2, p. 141) (see also Entry #253 and #254)
**Description:**  Legal research re: resolution of disputes arising under settlement agreement and award of attorney's fees.
**Time Billed:**  4.30
**Reason for Deduction:**  N/A
**Further Clarification by Defendants:**  This work relates to fees, and the fact that it was included in the merits timesheets demonstrates lack of billing judgment (i.e., mistakes in DRA's records).
**Plaintiffs' Response:**  This research concerned fee awards in the context of future dispute resolution under settlement agreements.  The date of the entry (i.e., during settlement negotiations in this litigation) and surrounding entries further indicate that the task concerned settlement negotiations and drafting the settlement agreement, not work on the current fee motion.  It was not a mistake to include this entry in Class Counsel's merits time.

**Knestrick #158** (F) (Doc. 516-3, p. 48)
**Description:**  Analyze Christianberg Standard and various scenarios for fee shifting provisions for monitoring efforts
**Time Billed:**  0.40
**Reason for Deduction:**  [none]
**Further Clarification by Defendants:**  See SB, sec. M [section of Supplemental Brief concerning "Fee Work Recorded in Merits Timesheets"]
**Plaintiffs' Response:**  Again, the entry reflects work on how the law and settlement provisions might allow recovery of future fees in connection with monitoring of a settlement.  The task does not involve work on the current fee motion.

## ALLEGEDLY VAGUE ENTRIES

### *Not Vague If Put in Context*

13.    Many of the entries that Defendants characterize as "vague" are not actually

vague if considered in the context of the other time entries.  The following are just a few

examples of these unjustified objections.

**Knestrick #11** (F) (Doc. 516-3, p. 37)
**Description:**  Further work on budget issues
**Time Billed:**  3.20
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  "Budget issues" is vague, so the Court cannot determine whether the work was reasonable.
**Plaintiffs' Response:**  All surrounding entries for Mr. Knestrick detail his work on Caltrans' undue burden defense, which was based on claims that there was not funding in the state or Caltrans' budget.  Indeed, the entry above this states:  Teleconference with L. Paradis re: state financial resources and Caltrans expert re: undue burden."  Thus, considered in context, Mr. Knestrick's work on "budget issues" is not vague.

**Paradis #46** (F) (Doc. 516-3, p. 75)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Description:**  Prepare for meeting with CDR
**Time Billed:**  0.20
**Reason for Deduction:**  Vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  Mr. Paradis does not identify what he did to prepare for the meeting.  He also does not identify the subject matter of the meeting.  Therefore, the Court cannot determine whether the time spent was reasonable.
**Plaintiffs' Response:**  Surrounding entries (e.g., #49) explain the subject and purpose of the meeting.  Other nearby entries explain what was done to prepare.  To the extent this entry could be considered vague in isolation, it clearly is not vague in context.

**Markwalder #34** (F) (Doc. 516-3, page 55)
**Description:**  Meeting with defense counsel
**Time Billed:**  2.70
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  The subject matter is unidentified, so the Court cannot determine whether this time was reasonable.  Thus, a full reduction is justified.  Docket No. 492, at page 10, line 18 to page 11, line 10.
**Plaintiffs' Response:**  Because this meeting is with defense counsel, presumably they are aware what it was about.  In any event, surrounding entries by other timekeepers (e.g., Mr. Paradis, Doc. 462-3, p. 26) show that the meeting with defendants on this date was a settlement meeting.

### *Incorrectly Characterized as Vague*

14.     A great many entries that Defendants object to as "vague" are simply not so.  The following are just a few examples.

**Allen #48** (S) (Doc. 516-3, p. 360) (see also entries #49-52)
**Description:**  Research regarding opposition to demurrer and motion to strike.
**Time Billed:**  8.1
**Reason for Deduction:**  excessive; vague description for several hours
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  Mr. Allen's entry contains all information necessary to ascertain whether this work is compensable:  what he was doing and for what purpose.

**Allen #165** (F) (Doc. 516-3, p. 371)
**Description:**  Outline next steps for settlement process.
**Time Billed:**  0.6
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  Again, Mr. Allen's entry contains all information necessary to determine what he did and for what purpose.  It is unclear what further information should or could have been included in this entry.

**Kimber #410** (F) (Doc. 516-2, p. 254)
**Description:**  Meeting with R. Heller and L. Paradis re: tape from Zimmerman
**Time Billed:**  0.4
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  [none]

**Plaintiffs' Response:**  Here, Ms. Kimber discussed with two other attorneys from our office the audio tape of a meet and confer with Judge Zimmerman, which both parties received from Judge Zimmerman's clerk.  The entry is sufficiently clear to indicate the general subject matter of the work done.

### *Entries Referencing "Case Status"*

15.   Defendants frequently object to tasks described in terms of communications between counsel or communications with plaintiffs and class members concerning "case status." Yet this term is regularly used in billing records to describe communications between counsel or with clients relating to developments in a case.  These communications generally addressed the latest developments in the litigation and overall progress of the litigation.  In any complex class action litigation, the Plaintiffs' counsel have to regularly communicate with each other about such matters in order to plan and coordinate work.  Similarly, in all litigation attorneys have the duty to keep their clients well informed about the status of the case, including recent developments.  Describing such communications as relating to "case status" is sufficient to indicate the general nature of the general subject matter of the work, which is all that is required under *Hensley v Eckerhart*, 461 U.S. 424, 437 (1983).  Moreover, since Plaintiffs' fee records are often turned over to opposing counsel at certain points in civil rights cases, providing detailed descriptions of the substance of these communications in the fee records would threaten to intrude into privileged attorney-client communications and/or protected work product.  The following are just a few examples of invalid objections to the term "case status" in the context of client communications.

**Biedermann #165** (F) (Doc. 516-2, p. 73)
**Description:**  Respond to calls from class member re: case status
**Time Billed:**  0.3
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  "Case status" is vague.  See Dk. 492 at 11:3-4.
**Plaintiffs' Response:**  The description of this task indicates that class members had called to inquire about the status of the litigation.  Ms. Biedermann, a junior attorney assigned to the case, responded to these calls to keep the class members informed.  The description is not vague.

**Kimber #116** (F) (Doc. 516-2, p. 226)
**Description:**  Teleconference with Richard Skaff re: case status
**Time Billed:**  0.2

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  Plaintiffs submitted a declaration by Mr. Skaff in the federal action, and he was one of the class members scheduled to testify at trial.  A telephone call between Ms. Kimber and Mr. Skaff about the status of the case was routine and appropriate, and the task description is not vague.

**Kimber #469** (F) (Doc. 516-2, p. 261)
**Description:**  Teleconference with Williams re: case status
**Time Billed:**  0.4
**Reason for Deduction:**  vague
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  Ms. Williams is the head of the named organization Plaintiff CDR.  As a class representative and because of her organizational responsibilities, Ms. Williams had a duty to stay informed about developments in the litigation and how she could best participate.  Describing the subject of such a communication as "case status" is appropriate and sufficiently specific to describe this task.

## ENTRIES OBJECTED TO ON THE BASIS OF "BLOCK-BILLING"

16.     Defendants also object to a great many of Plaintiffs' entries as "block-billed." However, for almost all of these entries, each of the tasks listed in the supposed "block-bill" are independently compensable in that they are described with sufficient specificity and reflect work that was reasonably necessary to the successful prosecution of Plaintiffs' claims.  In addition, in many cases, Defendants identify an entry as "block-billed," but it is not really so because the entry simply lists interrelated aspects of a single task.  The following are just a few examples of the type of allegedly "block-billed" entries Defendants claim warrant a deduction, but instead describe fully compensable interrelated tasks.

**Heller #233** (F) (Doc. 516-2, p. 190)
**Description:**  Revise opposition to motion to strike Margen declaration; legal research for same.
**Time Billed:**  4.50
**Reason for Deduction:**  block-billed
**Percentage Deduction:**  33%
**Further Clarification by Defendants:**  [none]
**Plaintiffs' Response:**  Revising an opposition to a motion and conducting legal research for the same opposition are interrelated tasks that are specifically described and both compensable.

**Kasnitz #48** (F) (Doc. 516-2, p. 198)
**Description:**  Finalize D. Belser declaration re motion for summary judgment email exchange with D. Belser re same.
**Time Billed:**  1.30
**Reason for Deduction:**  block-billed

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Percentage Deduction:** 33%
**Further Clarification by Defendants:** Because this entry is block-billed, the Court cannot determine whether the time spent on each task is reasonable.
**Plaintiffs' Response:** Finalizing Mr. Belser's declaration and exchanging emails with Mr. Belser about that declaration are interrelated tasks that are both compensable.

**Heller #233** (F) (Doc. 516-2, p. 190)
**Description:** Revise opposition to motion to strike Margen declaration; legal research for same.
**Time Billed:** 4.50
**Reason for Deduction:** block-billed
**Percentage Deduction:** 33%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** Revising an opposition to a motion and conducting legal research for the same opposition are interrelated tasks that are specifically described and both compensable.

**Paradis #49** (F) (Doc. 516-3, p. 76)
**Description:** Prepare for and attend meeting with CDR to discuss scope of barriers issue, case strategy, and next steps
**Time Billed:** 3.8
**Reason for Deduction:** block-billed
**Percentage Deduction:** 33%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** The tasks of preparing for and attending a meeting with a plaintiff to discuss specified issues in the litigation are interrelated tasks which are sufficiently described, and both compensable.

**Knestrick #75** (F) (Doc. 516-3, p. 44)
**Description:** Revise existing facilities findings of fact; provide comments to B. Von Behren re same
**Time Billed:** 0.3
**Reason for Deduction:** block-billed
**Percentage Deduction:** 33%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** Mr. Knestrick indicates in this entry that he revised the proposed findings of fact for existing facilities and provided brief comments to a more junior attorney, Ms. Von Behren, regarding those same revisions. These tasks are interrelated, sufficiently described, and both compensable.

## <u>ATTORNEY WORK OBJECTED TO AS ALLEGED "CLERK-LEVEL WORK"</u>

17.     Defendants frequently object to the work of Plaintiffs' attorneys on the ground that they performed "clerk-level" work that should instead have been performed by law clerks. Defendants seem to assert that attorneys handling complex litigation never need to spend any time engaged in factual investigation. In my experience, however, the attorneys in every case – and particularly in large complex class actions – need to spend some amount of their time investigating the facts of the case simply in order to determine the nature and scope of the issues, and in order to marshal the evidence needed to successfully prosecute Plaintiffs' claims. First, it

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

is necessary for attorneys in charge of a case to conduct preliminary factual investigation to satisfy the requirements of Fed.R.Civ.P. 11 – that the case has merit – and thereafter to determine the scope and substance of the case.  Here,  a limited amount of time was spent by attorneys on such preliminary investigation.  Later factual investigation in this litigation was to a large degree delegated to junior staff including paralegals and law clerks, but such delegation still required familiarity with the factual issues, as well as supervision, oversight, and review by more senior staff including attorneys.  By and large, where Plaintiffs' attorneys here recorded time as factual investigation it was because the work required the legal skills of an attorney.  Given the complex nature of the interrelated cases, the vast amount of information that had to be reviewed, analyzed, and organized in order to overcome the vigorous defenses mounted by Caltrans, it would not have been possible to successfully prosecute this matter without the attorneys spending part of their time on factual investigation work.  Moreover, Defendants even object to certain time entries of Plaintiffs' attorneys involving legal research on the basis that this was supposedly "clerk-level" investigational work.  In my experience, attorneys regularly engage in legal research as a basic part of litigation.  Finally, Defendants also object to various other tasks that are clearly lawyer-level work, again on the grounds that it could supposedly have been done by a law clerk.  The following are just a few examples of such invalid objections:

**Paradis #2** (F) (Doc. 516-3, p. 64)
**Description:**  Further factual investigation re: access barriers on CalTrans sidewalks
**Time Billed:**  1.0
**Reason for Deduction:**  clerk-level work
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  Factual investigation is work that could be performed by a clerk, and Plaintiffs' attempts to seek fees for such work at the rate of a senior attorney shows lack of billing judgment. The work should be charged at a rate of $155. See In re Washington Public Power Supply System Securities Litigation, 19 F.3d 1291, 1298 (9th Cir. 1994) (affirming district court's reduction of attorney's rate to a reasonable paralegal rate for paralegal level tasks performed by the attorney); see Davis v. City & County of San Francisco, 976 F. 2d 1536, 1543 (9th Cir.1992) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."); MacDougal v. Catalyst Nightclub, 58 F. Supp. 2d 1101, 1105 (N.D. Cal. 1999) (finding lawyer's request for fees for clerical and routine tasks was an exercise of poor 'billing judgment'.")
**Plaintiffs' Explanation:**  This work was part of Class Counsel's very first steps in determining the nature and scope of the case.  It was an essential step in Counsel determining that the case had merit.

**Paradis #7** (F) (Doc. 516-3, p. 66)
**Description:**  Review Best Practices Design Guide re: sidewalk access standards; review regulations and technical systems guidelines re: same

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Time Billed:** 0.90
**Reason for Deduction:** Clerk-level work
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** Factual investigation is work that could be performed by a clerk, and Plaintiffs' attempts to seek fees for such work at the rate of a senior attorney shows lack of billing judgment. The work should be charged at a rate of $155. See also clarification for entry #2.
**Plaintiffs' Response:** This task clearly consisted of legal analysis regarding legal requirements that required an attorney's legal skills.

**Kasnitz #36** (S) (Doc. 516-2, p. 197)
**Description:** Prepare Hoefling declaration
**Time Billed:** 0.10
**Reason for Deduction:** clerk-level work (rate $155)
**Percentage Deduction:** 0%
**Further Clarification by Defendants:** See SB, sec. I. Moreover, there is no indication that this work required legal skil[l].
**Plaintiffs' Response:** Preparing the declaration of a class member in support of a motion generally requires legal skill and is properly performed by lawyers.

**Kimber #95** (F) (Doc. 516-2, p. 224)
**Description:** Teleconference with class member re: barriers in San Rafael
**Time Billed:** 0.2
**Reason for Deduction:** clerk-level work
**Percentage Deduction:** 0%
**Further Clarification by Defendants:** As this work is typically performed by DRA's clerks, a clerk rate of $155 is appropriate.
**Plaintiffs' Response:** Communicating with class members to ascertain the barriers they have encountered along Defendants' pedestrian facilities, as well as to determine their suitability and availability as declarants and witnesses, is a task appropriately performed by attorneys, even if law clerks occasionally assist in this process.

### ATTORNEY, PARALEGAL, OR LAW CLERK WORK OBJECTED TO AS ALLEGEDLY "CLERICAL"

18.     Defendants also repeatedly object to certain tasks performed by attorneys, paralegals, and law clerks as "clerical," claiming that such tasks require no legal skill and therefore are not compensable at all. Defendants seem to presume that the only efficient method of litigation is a perfectly pyramidal model in which every task that conceivably could be delegated to a clerical employee is so delegated, even if doing so would require the lawyer or paralegal or law clerk to spend an equal or greater amount of time delegating than doing the task directly. In my experience, no firm adopts such a purely pyramidal structure. In many instances, it is just as efficient if not more so for a lawyer or paralegal to directly schedule a meeting, route a document to the correct file, or call a court clerk than it would be to delegate such a task to a clerical employee. Moreover, in class litigation involving hundreds of thousands of documents,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   massive amounts of discovery and motions, multiple lawyers and firms on each side, substantial

2   numbers of class member witnesses and defense witnesses, and complex procedural stages

3   leading up to trial, I know of no plaintiffs or defense firm that would not rely heavily upon

4   attorneys, paralegals, and law clerks to handle complex document management and control,

5   complex scheduling matters, and complex coordination issues.  In this case, Class Counsel did in

6   fact delegate as much work as possible to junior level staff and to clerical staff, but not to the

7   point of diminishing returns.

8       19.    Not even Defendants' outside counsel, Greenberg Traurig, follows the purely

9   pyramidal model their objections would seem to require.  Attached hereto as **Exhibit B** are true

10  and correct copies of redacted time records for time billed in this litigation, obtained from

11  Defendants pursuant to a Public Records Act request.  As these records reveal, Defendants paid

12  Greenberg Traurig for tasks performed by attorneys and paralegals in this case that are precisely

13  the types of tasks Defendants now claim are "clerical" and warrant 100% deductions.

14      20.    Following are just a few examples of entries in Plaintiffs' time records to which

15  Defendants improperly object as "clerical."

16  **Biedermann #19** (F) (Doc. 516-2, p. 53)
    **Description:**  Underline Goetz deposition for submission filing, check citations for form, content
17  **Time Billed:** 0.4
    **Reason for Deduction:** clerical
18  **Percentage Deduction:** 100%
    **Further Clarification by Defendants:**  Underlining and citation checking is clerical work. See
19  SB, sec. B.
    **Plaintiffs' Response:**  Ms. Biedermann was marking pertinent portions of the deposition
20  testimony of a class member to submit in support of a motion and checking citations to that
    testimony to ensure that they were accurate in content and form.  Such tasks require a degree of
21  legal skill as well as familiarity with the factual and legal issues in the litigation.

22  **Biedermann #44** (F) (Doc. 516-2, p. 55)
    **Description:**  Calls to potential declarants in Modesto
23  **Time Billed:** 1.2
    **Reason for Deduction:**  clerical
24  **Percentage Deduction:** 100%
    **Further Clarification by Defendants:**  Calling potential declarations is clerical or at the very
25  most clerk-level work. See SB, sec. B.
    **Plaintiffs' Response:**  This task involved communications with class members, which required
26  legal skill and familiarity with the legal and factual issues in the case.

27  **Corbit #78** (S) (Doc. 516-2, p. 92)
    **Description:**  Directions to K. Anderson and H. Fagan re: class member declarations
28  **Time Billed:** 0.3

---

*Californians for Disability Rights, Inc. v. California Department of Transportation,* **Case No.: C 06 5125 SBA**
**DECLARATION OF LAURENCE W. PARADIS IN SUPPORT OF PLAINTIFFS' REPLY TO**
**DEFENDANTS' SUPPLEMENTAL CLARIFICATION OF DEDUCTIONS IN HOURS SOUGHT**          16

**Reason for Deduction:** clerical; conference
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** Defendants assert that attorneys should not be preparing class member declarations (because it is clerk-level work), yet here also seek a full deduction for an attorney giving instructions to paralegals/law clerks about preparation of such declarations. Defendants cannot have it both ways; if they want Plaintiffs' attorneys to assign such tasks to law clerks, they cannot object that the delegation was clerical and a conference.

**Paradis #309** (S) (Doc. 516-3, p. 128)
**Description:** Finalize response to notice of related case
**Time Billed:** 0.8
**Reason for Deduction:** clerical
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** This document filed in the state action consists of just 25 lines of substantive text. Yet, Plaintiffs seek fees for 4.1 hours of attorney work on this notice. SB, sec. E. Three attorneys (Mary-Lee Kimber, Larry Paradis and Roger Heller) worked on this notice. To the extent that attorneys billed for preparing the template, such work is clerical. The total fees for work on this notice should be reduced to 1.0 hours. At the very least, even if the .80 hours of Mr. Paradis' time is deducted, Plaintiffs will still have spent 3.3 attorney hours on 25 lines of text.
**Plaintiffs' Response:** A response to a notice of related case is not a "template" that can be prepared by a clerk, but rather is a substantive pleading with important ramifications for the course of the litigation. This was particularly true in this litigation, where the case to which Defendants claimed the state action was related was this federal action in which they asserted their sovereign immunity to have the state claims tried in state court. See below for further discussion of the time spent on the notice of related case.

**Paradis #787** (S) (Doc. 516-3, p. 225)
**Description:** Finalize proposed order for submission to Court
**Time Billed:** 0.20
**Reason for Deduction:** clerical; excessive
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** Finalizing a proposed order does not require legal skill.
**Plaintiffs' Response:** How can work on a proposed order not involve legal skill?

**Paradis #882** (F) (Doc. 516-3, p. 243)
**Description:** Preparation of trial binders 1 to 14; draft memo outlining contents of each of same; collect documents to organize for each of same
**Time Billed:** 2.50
**Reason for Deduction:** clerical; vague
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** Preparation of a trial binder requires no legal skill. The "memo" outlining contents of same appears to be nothing more than a table of contents or index, preparation of which is clerical. Collecting and organizing documents is also clerical. Prison Legal News v. Scwarzenegger, 561 F.Supp.2d 1095, 1102 (N.D. Cal. 2008) (denying fees for time spent on "gather does for KMW re filing deadlines and ADR")
**Plaintiffs' Response:** Preparation of these binders consisted of identifying all claims and issues and supporting law and evidence, and directing support staff to organize such materials into binders for use at trial. This work required a comprehensive understanding of the issues and documents and legal arguments, as well as knowledge of supporting cases, statutes, regulations and agency interpretive materials, as well as all of the key factual evidence in the case. It required the legal skills of an attorney.

**Paradis #959** (F) (Doc. 516-3, p. 261)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Description:** Conference with DRA trial team and teleconference with co-counsel re near final preparations for trial; planning for witness presentation; planning renewed settlement effort; planning various trial briefs; preparing for order directing appearance of Cordova and Benton at trial or allowing for reading of deposition testimony (witnesses evading service); planning outlines of direct and cross examination; planning logistics for moving exhibit binders to Court and setting up equipment for courtroom presentation; directions to staff re same

**Time Billed:** 1.90

**Reason for Deduction:** clerical; conference; block-billed

**Percentage Deduction:** 100%

**Further Clarification by Defendants:** Planning logistics for cleaning up the court room is clerical work. Such work cannot be separated from other work. Thus, a full deduction is warranted.

**Plaintiffs' Response:** This time entry did not include "cleaning up the courtroom." All the work described was lawyer work needed for final trial preparations.

**Paradis #969** (S) (Doc. 516-3, p. 263)

**Description:** Attend deposition of Margen; post-deposition email court reporter to get rough copy of transcript; review rough transcript

**Time Billed:** 4.90

**Reason for Deduction:** clerical; block-billed

**Percentage Deduction:** 100%

**Further Clarification by Defendants:** Requesting a copy of a transcript requires no legal skill. This work cannot be separated from other work described in this entry because the time entry is block billed. As such, the Court should deny fees for this work. Navarro v. GNC, 2005 WL 2333803, **13, 14 & 16 (N.D. Cal. 2005) (Armstrong) (reversing magistrate judge's award of fees for block-billed entry including clerical work).

**Plaintiffs' Response:** This is an example of Defendants seeking to impose a perfectly pyramidal structure where every task that conceivably could be delegated to a clerical level person is so delegated, even where it would take an attorney as long or longer to delegate it as to do it himself or herself. Here, it would have taken me as long or longer to delegate the task of obtaining the rough transcript by directing clerical staff to contact the court reporter as it took for me to directly email the court reporter. Yet Defendants seek to deduct all time spent on attending this deposition and reviewing the deposition transcript simply because there was at most a two-minute email communication involved.

**Paradis #974** (F) (Doc. 516-3, p. 264)

**Description:** Prepare revised outline of direct examination for Margen day 2; directions to B. Saccoccia re selection and organizing of exhibits for same and inputting same into Sanction software program

**Time Billed:** 3.20

**Reason for Deduction:** clerical; block-billed

**Percentage Deduction:** 100%

**Further Clarification by Defendants:** Conferencing regarding a software program is clerical work. This work cannot be separated from other work described in this entry because the time entry is block billed. As such, the Court should deny fees for this work. Navarro v. GNC, 2005 WL 2333803, **13, 14 & 16 (N.D. Cal. 2005) (Armstrong) (reversing magistrate judge's award of fees for block-billed entry including clerical work).

**Plaintiffs' Response:** This entry involved my preparation of a revised trial exam outline for Plaintiffs' expert witness who testified during the first three days of the trial. This work required knowledge of the overall legal and factual issues and evidence in the case. Part of the exam outline included introduction and authentication of exhibits through the witness examination. Plaintiffs utilized a document presentation program (Sanction) for demonstrative purposes during the trial. This entry thus also included directing the law clerk who was operating the Sanction program as to which documents I wished to use in the witness exam, and in what order. This was not clerical work but rather attorney work that only I as the attorney examining the witness could determine.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**#B30** (Doc. 517-1, p. 5)
**Description:**  Prep documents for meeting with Margen.
**Time Billed:**  0.2
**Reason for Deduction:**  clerical
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  See SB, sec. B.
**Plaintiffs' Response:**  Preparing documents for a meeting with Plaintiffs' expert witness requires knowledge of what the documents are and the issues the expert would be testifying about.  Accordingly, it is appropriate for a law clerk (whose rate is lower than that of a paralegal) to bill for this task.

**#LC167** (Doc. 517-1, p. 58)
**Description:**  Gather appropriate exhibits for motion for M. Kimber declaration in support of motion for reconsideration
**Time Billed:**  0.3
**Reason for Deduction:**  clerical
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  See SB, sec. B.
**Plaintiffs' Response:**  Identifying and collecting the "appropriate" exhibits for an attorney's declaration in support of a motion requires familiarity with the documents and the issues in the case, and is appropriate work for a law clerk to bill.

**#CM61** (Doc. 517-1, p. 19)
**Description:**  Called class members re photographs
**Time Billed:**  3.0
**Reason for Deduction:**  clerical
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  See SB, sec. B.
**Plaintiffs' Response:**  Under Defendants' objections, apparently not even law clerks are permitted to communicate with class members.  As Plaintiffs' have explained, however, such communications involve a degree of knowledge regarding the legal and factual issues in the case, and these tasks are not properly classified as clerical.  For similar improper objections, see entries #CM70 and #CM74.

## ENTRIES OBJECTED TO ON GROUND OF EXCESS CONFERENCING

21.    Defendants propose a 20 percent deduction for every entry that includes a communication between personnel at the Class Counsel law firms involved in the litigation.  Yet Defendants present no explanation for how they arrived at the determination that there was excess conferencing or how they determined that a blanket 20 percent deduction was appropriate.  Defendants do not identify which specific conferences they claim were excessive as opposed to which they acknowledge were reasonable.  Nor do Defendants state what amount of time for conferencing would be appropriate in a case of this magnitude and complexity.  Nor do Defendants state what amount of time Plaintiffs actually spent on conferencing as a percentage of the whole.  Instead,  Defendants seem to simply assert ipse dixit that whatever the amount of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   time was that Plaintiffs spent on conferencing, it was excessive and every entry that includes a

2   conference of any length should be reduced by 20 percent.  Based on my experience with

3   complex class actions such as this litigation, however, I do not believe that the total time spent

4   on conferences here was excessive given Plaintiffs' across-the-board 5 percent deduction.

5   Plaintiffs' counsel went to great efforts to divide up responsibilities to maximize efficient

6   staffing.  To give just one example, Mr. Knestrick took full responsibility for handling all aspects

7   of the case concerning the undue burden defense.  He handled the preparation of the expert

8   witness report of Plaintiffs' expert on this issue.  He handled the defense of that expert's

9   deposition.  He handled the taking of the deposition of Defendants' expert on this issue.  He

10  handled the preparation of the proposed findings of fact and conclusions of law on this issue.

11  Thus, it was appropriate for him to have a conference with Plaintiffs' expert relating to the undue

12  burden defense.  Yet Defendants object to that entry on the ground of "excess conferencing."

13  This is just one example of the arbitrary nature of Defendants' excess conferencing objection.

14  Following are just a few additional examples of time entries where Defendants' arbitrarily object

15  on this ground:

16  **Biedermann #103** (F) (Doc. 516-2, p. 65)
    **Description:**  Discuss strategy re: meet and confer with M. Kimber and L. Paradis.
17  **Time Billed:**  0.4
    **Reason for Deduction:**  conference
18  **Percentage Deduction:**  20%
    **Further Clarification by Defendants:**  [none]
19  **Plaintiffs' Response:**  This task involved a routine communication between attorneys at DRA
    regarding strategy for resolving a discovery dispute.  These types of communications are
20  necessary and appropriate for attorneys within a law firm to effectively carry out their
    responsibilities.

21

22  **Elsberry #19** (S) (Doc. 516-2, p. 99)
    **Description:**  Directions to H. Fagan re: declarations for class cert motion
23  **Time Billed:**  0.4
    **Reason for Deduction:**  conference
    **Percentage Deduction:**  20%
24  **Further Clarification by Defendants:**  See SB, sec. I.
    **Plaintiffs' Response:**  This time entry reflects that an attorney gave directions to a paralegal
25  regarding declarations for the motion for class certification in the state action.  When attorneys
    work on such declarations, Defendants seek a 100% deduction on the ground that it is "clerk-
26  level" work.  Yet, when an attorney directs and supervises a paralegal for work on such
    declarations, Defendants claim it is excessive "conferencing" warranting a 20% deduction.
27  Defendants cannot have it both ways.

28

**OVERSTAFFING/REDUNDANT/TRAINING/BACKGROUND READING**

22.     Defendants object to many time entries on the ground of "overstaffing," claiming that Plaintiffs had too many attorneys working on the litigation.  This litigation, however, was both complex and lengthy.  Work on the case began in mid-2005, and final approval of a settlement was ordered just this year.  Obviously, work on this contested fee motion continues.  In such broad-ranging, lengthy litigation involving two separate actions in two different courts, which was quite vigorously defended (in much the same manner as this fee motion has been opposed), it is reasonable to expect that Class Counsel would devote substantial resources in terms of personnel and time in order to adequately represent the interests of the class.  Furthermore, given the length of the litigation, some staff turnover was bound to occur.  For example, the following attorneys who billed time in these actions left, at various times, for other employment before work on the litigation was completed:  Jennifer Bezoza, Roger Heller, Alexius Markwalder, Kasey Corbit, and Stephanie Biedermann.  Other attorneys thus had to be assigned to the litigation to perform the necessary tasks.  Accordingly, all the attorneys who worked on the case did not do so simultaneously, as Defendants suggest.

23.     Closely related to Defendants' overstaffing objection are their objections designated as "redundant," "training," and "background reading."  For instance, when a new attorney had to be assigned to the case, he or she typically reviewed background materials for the purpose of understanding the tasks to be performed.  There are relatively few entries, however, where such background reading was billed.  Most time spent bringing attorneys and other staff up to speed when staffing changed has been no-charged.

24.     Also, when Class Counsel had law students working as summer associates, certain tasks such as legal research, document review, or factual research were delegated to them.  Defendants often object to time spent supervising them and reviewing their work, as well as the work they did, as "training," and thus claim a 100 percent deduction.  However, such delegation generally resulted in more efficient staffing of the case, because these individuals often, with appropriate direction and supervision, could accomplish work at lower rates than attorneys.  Finally, even when attorneys conducted legal research clearly necessary to the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   litigation, Defendants sometimes object to such work as "background reading" or "presumed

2   familiar," claiming that the attorneys should have already known the information.  However, the

3   basis for this assertion is generally not explained.  Following are just a few representative

4   examples of arbitrary objections asserted by Defendants in this category.

5   **Biedermann #100** (F) (Doc. 516-2, p. 65)
    **Description:**  Prepare for meet and confer w/ Judge Zimmerman next week
6   **Time Billed:**  0.2
    **Reason for Deduction:**  overstaffing; redundant
7   **Percentage Deduction:**  100%
    **Further Clarification by Defendants:**  [none]
8   **Plaintiffs' Response:**  Defendants offer no clarification of their objections.  Ms. Biedermann
    was involved in discovery efforts at issue in the meet and confer referenced in this time entry.
9   Her preparation for it was appropriate.

10  **Kasnitz #58** (F) (Doc. 516-2, p. 200)
    **Description:**  Review DIB re shoulders draft settlement language
11  **Time Billed:**  0.5

12  **Reason for Deduction:**  redundant
    **Percentage Deduction:**  100%
13  **Further Clarification by Defendants:**  Moreover, the necessity of this review is unclear.
    Though Ms. Kasnitz billed time for conferencing related to the settlement agreement (including
14  the stipulation regarding shoulders) in the months of July and August 2009, she did not perform
    any independent revisions to the settlement agreement documents until August 2, 2009 (see
15  Docket 462-3, page 310 of 420).

16  **Plaintiffs' Response:**  Even with Defendants' further clarification, Plaintiffs do not understand
    this objection.  Defendants acknowledge that Ms. Kasnitz participated in conferences regarding
17  this provision of the settlement agreement following her review of the draft settlement language.
    The fact that she made no "independent revisions" to the settlement agreement until sometime
18  after her review referenced in this entry is not relevant to whether her performance of this
    particular task was "redundant."
19
    **Paradis #259** (F) (Doc. 516-3, p. 119)
20  **Description:**  Review regulatory history re: detectible warning requirement, including
    documents from Access Board, Dept. of Justice ("DOJ") and Dept. of Transportation ("DOT");
21  further legal research and analysis of same; review additional documents re: same
    **Time Billed:**  2.1
22  **Reason for Deduction:**  no billing judgment; background reading (presumed familiar for
    attorney with Mr. Paradis' experience)
23  **Percentage Deduction:**  100%
    **Further Clarification by Defendants:**  For an attorney with Mr. Paradis' level of experience in
24  the ADA, one would expect that he is already familiar with the Title II regulations on this issue.

25  **Plaintiffs' Response:**  Mr. Paradis' review of the detectible warning requirement was not limited
    to "Title II regulations on this issue," as Defendants claim in their further clarification.  He
26  researched and reviewed the entire regulatory *history* including, but not limited to, documents
    from three different agencies.  No matter how much experience with the ADA an attorney may
27  have, he or she cannot presume familiarity with the entire history of each regulatory element.  In
    any event, given the large role the issue of detectible warnings had in this litigation, it was
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

important that Mr. Paradis research and analyze the entire history and purpose of the requirement.

**Paradis #736** (F) (Doc. 516-3, p. 215)
**Description:** Directions to Summer associate re: follow up on Margen Demo
**Time Billed:** 0.5
**Reason for Deduction:** training
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** [none]
**Plaintiffs' Response:** Delegating a task regarding a demonstrative exhibit for an expert witness to a summer associate does not constitute "training" of that associate. It certainly does not warrant a 100% deduction of the time spent on this task.

## MEDIA

25.     In the exercise of billing judgment, Plaintiffs already have no-charged more than 40 percent of fees spent on media work, or more than $18,000. Defendants seek an additional 50 percent reduction in the remainder. Such an additional reduction would preclude compensation for media work directly related to Class Counsel's successful representation of the class in this litigation, however. The time devoted to tasks such as press conferences and press releases was important in Plaintiffs' outreach efforts to identify class members and potential witnesses, many of whom provided declarations in support of or in opposition to the numerous motions filed in the litigation. The classes in both the federal action and the state action included members throughout California. Class Counsel had a professional obligation to keep the class apprised of developments in and the progress of the litigation, as well as the benefits of the settlement. Media work was an important means for communicating with the entire class. Following is just one example of an entry for media work essential to the litigation, but for which Defendants improperly seek a 50 percent reduction.

**Kimber #54** (F) (Doc. 516-2, p. 220)
**Description:** Draft/revise press release
**Time Billed:** 2.1
**Reason for Deduction:** media
**Percentage Deduction:** 50%
**Further Clarification by Defendants:** See entry #14.
**Plaintiffs' Response:** The press release that coincided with the filing of the complaint was the first and most important public announcement about the litigation. It was important that the press release accurately and thoroughly describe the case and the putative class, and dissemination of this news to class members via public media outlets was relevant to inform and identify class members.

---

## OBJECTIONS TO 14 SUBSTANTIVE COMPONENTS OF THE LITIGATION BASED ON "EXCESSIVE WORK"

26.     Defendants have objected to 14 of the substantive components of the litigation on the ground that Plaintiffs' time spent on such components was excessive.  Defendants fail to present the full facts relevant to these 14 components.  Below I provide the underlying facts which explain for each of the 14 components why the work done was reasonably necessary given the nature and status of the litigation at the time the work was undertaken.

### *Motions In Limine*

27.     The final motions in limine consisted of a 15-page motion, a 15-page opposition, and a 5-page reply.  Unfortunately, the Court set these limits regarding in limine motions shortly before trial and after Plaintiffs had already prepared approximately 150 pages of briefing and additional pages of declarations on 10 separate motions in limine based on the parties joint understanding that separate motions in limine would be permitted.

28.     The Court's pretrial order in this matter (Doc. 243) set a deadline for filing in limine motions but did not specify any limits on either the number or length of such motions.  My prior experience with trial practice in the Northern District was that separate in limine motions were generally permitted, with each such motion subject only to the page limits for motions in general.  Trial in the federal action was set for September 2009.  Plaintiffs knew most of the evidence upon which Defendants would probably rely during trial well before pretrial submissions scheduled for August.  As such, Plaintiffs began work on their motions in limine in June 2009.  From June until August 4, 2009, Plaintiffs worked diligently on approximately 10 different motions in limine, each approximately 15 pages in length.

29.     However, on August 4, 2009, the Court issued an order indicating that all the motions in limine filed by each side should be filed in one document no longer than 15 pages in length.  *See* Doc. 358.  This changed Plaintiffs' strategy dramatically, forcing Plaintiffs to eliminate certain of their motions in limine and condense the briefing on the remainder, so that their filing would not exceed 15 pages.  Plaintiffs were not the only ones who anticipated that

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

separate motions in limine would be permitted.  Indeed, Defendants initially asserted that the newly issued order did not in fact require all in limine motions to be contained in a single 15-page brief.  When Plaintiffs noted to Defendants that this was the plain meaning of the new order, Defendants then filed a motion requesting clarification and/or leave to exceed 15 pages.  *See* Doc. 372.

30.     Thus, Plaintiffs did <u>not</u> expend 300 plus hours to draft 35 pages (i.e. 15-page motion, 15-page opposition and 5-page reply).  Rather, Plaintiffs had drafted approximately 150 pages in moving papers (i.e. an average 15 pages for each of their 10 planned motions in limine) plus substantial additional pages for supporting declarations for many of the motions.  I believe the work billed for the motions in limine at the time and in the context that they were drafted was reasonable.

31.     Further, Defendants overestimate the amount of time that Plaintiffs actually spent drafting the motions in limine papers.  For instance, 37.2 hours of the time Defendants group together under the motion in limine category were not billed solely, if at all, for work on motions in limine.  In addition, 22 hours were billed because Defendants' reply in support of Defendants' own motions in limine raised new arguments and cited new case law that Plaintiffs knew they must be prepared to address at the Pretrial Conference.  Plaintiffs thus researched the case law and drafted a bench memo on these issues.

### Unauthorized Filings

32.     Defendants point to a total of five examples of "unauthorized filings":  one in their supplemental brief and four in Exhibit A.  *See* Paradis Entry #s 894, 895, 919, and 952 (Doc. 516-3, pp. 246, 252, 259).  The example included in the brief concerns a discussion between Mr. Paradis and Ms. Kimber about supplemental disclosures billed on July 20, 2009.  Defendants characterize this as "unauthorized" because "the exhibit list exchange was due on August 11, 2010."  Defendants' objection, however, makes no sense:  how can a disclosure be unauthorized if it happened before the deadline for exchanging exhibits?

33.     The four examples in Exhibit A are addressed below:

**Paradis # 894** (F) (Doc. 516-3, p. 246)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**Description:** Review current draft of trial exhibit list re Custodian of Record documents; identify areas needing correction; identify exhibits to withdrawal; identify exhibits to include in Custodian of Record subpoena; identify proposed joint exhibits; identify exhibits to request judicial notice for; identify exhibits to withdrawal (nighttime)
**Date:** 8/27/2009
**Time Billed:** 2.80
**Reason for Deduction:** lack of billing judgment; block-billed
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** The deadline for discovery was April 30, 2009 per the Court's pretrial preparation order (Docket 243), and the Court granted Defendants' motion in limine to exclude evidence related to testimony of witnesses identified after the deadline in violation of the Court's order (Sept. 1, 2009 pretrial hearing transcript at page 56, line 1 to 12). Thus, expenditure of time on a submission that is improper (Plaintiffs added exhibits to the revised exhibit list) shows lack of billing judgment. Defendants request a full deduction.
**Plaintiffs' Response:** This entry did not include identifying new exhibits to add to the existing exhibit list. Rather it focused on: narrowing the list by determining what exhibits to withdraw; further identifying some of the currently listed exhibits (to assist Defendants); and identifying those exhibits for which judicial notice would be requested and those exhibits for which a custodian of records subpoena would be needed (since Defendants refused to stipulate to the authenticity of the documents that they produced).

**Paradis # 895** (F) (Doc. 516-3, p. 246)
**Description:** Review documents produced by Caltrans on exhibit list to identify key documents for use in opening statement, to identify documents to attach to custodian of records trial subpoena; to identify documents that can be withdrawn from exhibit list; and to correct description of documents on exhibit list; to identify potential joint exhibit documents
**Date:** 8/28/2009
**Time Billed:** 4.10
**Reason for Deduction:** block-billed
**Percentage Deduction:** 33% [but Defendants request full deduction]
**Further Clarification by Defendants:** The deadline for discovery was April 30, 2009 per the Court's pretrial preparation order (Docket 243), and the Court granted Defendants' motion in limine to exclude evidence related to testimony of witnesses identified after the deadline in violation of the Court's order (Sept. 1, 2009 pretrial hearing transcript at page 56, line 1 to 12). Thus, expenditure of time on a submission that is improper (Plaintiffs added exhibits to the revised exhibit list) shows lack of billing judgment. Time spent reviewing Defendant's list cannot be separated from time spent on the unauthorized revision of Plaintiffs' list. Defendants request a full deduction.
**Plaintiffs' Response:** This entry also did not include identifying new exhibits to add to the existing exhibit list. Rather, like the entry above, it focused on: narrowing the list by determining what exhibits to withdraw; further identifying some of the currently listed exhibits (to assist Defendants); and identifying those exhibits for which judicial notice would be requested and those exhibits for which a custodian of records subpoena would be needed (since Defendants refused to stipulate to the authenticity of the documents that they produced).

**Paradis # 919** (F) (Doc. 516-3, p. 252)
**Description:** Revise trial exhibit list; directions to law clerk re same and re forwarding revised list with additional documents to opposing counsel
**Time Billed:** 1.90
**Reason for Deduction:** excessive
**Percentage Deduction:** 100%
**Further Clarification by Defendants:** The exhibit list was due on Aug. 11, 2009 per the Court's pretrial order (Dk. 243). This revised exhibit list was not authorized by the court, and the Court granted Defendants' motion in limine to exclude late evidence (Sept. 1, 2009 pretrial

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

hearing transcript at page 56, line 1 to 12). Thus, seeking fees for such an unauthorized late submission is excessive and unreasonable.

**Plaintiffs' Response:** At the pretrial conference held on  Sept. 1, 2009, the Court directed the parties to exchange new exhibit lists based in part on the fact that the scope of the trial had been narrowed and in part on the fact that Defendants had never identified the specific exhibits they intended to use at trial.  See excerpts from pretrial conference attached hereto as **Exhibit C** at 157:12-158:5 and 159:13-160:3.  This entry #919 was for work spent preparing the revised exhibit list per the Court's direction.

**Paradis # 952** (F) (Doc. 516-3, p. 259)
**Description:** Preparation of letter to opposing counsel responding to letter from yesterday re plaintiffs' updated exhibit list; review and incorporate edits to same from M. Kimber.
**Time Billed:**  0.8
**Reason for Deduction:**  excessive; redundant
**Percentage Deduction:**  100%
**Further Clarification by Defendants:**  The exhibit list was due on Aug. 11, 2009 per the Court's pretrial order (Dk. 243). This revised exhibit list was not authorized by the court, and the Court granted Defendants' motion in limine to exclude late evidence (Sept. 1, 2009 pretrial hearing transcript at page 56, line 1 to 12). Thus, seeking fees for such an unauthorized late submission is excessive and unreasonable.

**Plaintiffs Response:** At the pretrial conference held on  Sept. 1, 2009, the Court directed the parties to exchange new exhibit lists based in part on the fact that the scope of the trial had been narrowed and in part on the fact that Defendants had never identified the specific exhibits they intended to use at trial.  See excerpts from pretrial conference attached hereto as **Exhibit C** at 157:12-158:5 and 159:13-160:3.  The letter referenced in this time entry for 9/11/2009 explained Plaintiffs' position with regard to Plaintiffs' withdrawn exhibits, the parties' joint exhibits and Defendants' own "revised" exhibit list.

### *Notice of Related Cases*

34.     Defendants claim that the attorney time spent on preparing Plaintiffs' response to Defendants' filing of a Notice of Related Cases in the state court action was excessive. However, Plaintiffs could not respond to Defendants' filing with a "template" as Defendants suggest.  It was not clear what Defendants intended by filing a Notice of Related Case, but Plaintiffs suspected it was the beginning of an effort by Defendants to further delay the prosecution of Plaintiffs' state law claims.  (Defendants had already delayed such prosecution for well over a year by waiting to assert their sovereign immunity defense and then refusing to simply stipulate to a dismissal without prejudice to the refiling of the state law claims in state court.)  Accordingly, much of the time spent drafting this response reflected formulation of Plaintiffs' strategy with regard to opposing any stay of the state proceedings.  Ultimately, Defendants attempted (unsuccessfully) on two separate occasions to stay the state proceedings based on the "relatedness" of the two cases.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### *Form Interrogatories*

35.     Defendants initially claimed that Plaintiffs billed 12 hours to prepare form interrogatories though they later conceded that these 12 hours included preparation of Requests for Admission so that in actuality Plaintiffs spent only 4.1 hours preparing the form interrogatories.  Plaintiffs spent these 4.1 hours preparing the form interrogatories because the preparation of the form interrogatories did not involve only checking boxes.  It included precisely defining the term "incident" to be used in answering the form interrogatories.  Defining the term incident was not a simple task as there was drafting and revising to ensure that it included all the alleged violations but would not be objectionable to Defendants.  As it turned out, the definition of the term "incident" became the center of a dispute between the parties which required multiple meet and confers, revision of the definition, and supplemental responses.  In addition, the form interrogatories were initially prepared to be served in May 2008, and in doing so Plaintiffs billed 2.5 hours.  However, there was a hold on discovery from the end of May until the end of July due to settlement negotiations.  When Defendants walked away from the negotiations, Plaintiffs had to review the form interrogatories to make sure they were still appropriate given further developments in the case, particularly the definition of incident, before serving them.

### *Work of Stephanie Enyart After Sept 17, 2009*

36.     While Ms. Enyart's work after September 17, 2009 was not substantive and involved mostly keeping informed of the status of the case, it was necessary in order for Ms. Enyart to remain informed as to the developments in the case.  If the parties could not reach a settlement and the case went back to trial, Ms. Enyart would have had to perform discrete assignments (e.g. legal research, drafting direct examinations) for trial.  Indeed that is why Ms. Enyart was involved in meetings on 9/21/2009 and 9/29/2009 which addressed whether and how Plaintiffs would continue preparation for possible trial.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Work of Melissa Kasnitz*

37.     Ms. Kasnitz provided a substantive contribution to the litigation.  There are six entries for Ms. Kasnitz prior to 2009 – all conferences.  During these conferences, Ms. Kasnitz provided her knowledge on certain issues (e.g. carving out a pending case, stipulating to class certification, settlement of certain issues, and potential experts) that she had acquired in the *Barden v. Sacramento* case, which was also a sidewalk case.  Ms. Kasnitz began substantial work on this case in January 2009 and worked on several clearly defined tasks.  While junior attorneys and paralegals drafted declarations, Ms. Kasnitz took responsibility for reviewing and revising all declarations (1) for Plaintiffs' Motion for Partial Summary Judgment regarding temporary pedestrian routes, (2) for Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, and (3) for Plaintiffs' Motion for Summary Adjudication (in the state action).  She also coordinated efforts to identify additional declarants for all of these motions.  Ms. Kasnitz also reviewed and revised direct examination scripts for the witnesses that Plaintiffs intended to use at trial.  Accordingly, Ms. Kasnitz was involved in discussions regarding witness and trial strategy, such as the order in which these witnesses should appear.  In addition, Ms. Kasnitz researched, drafted, and reviewed sections of the trial brief, particularly relating to the "*Kinney* analysis" for new construction and alterations.  The *Kinney* analysis research was essential to Plaintiffs' successful pretrial motion which argued that the Third Circuit *Kinney* case required upgrading non-compliant curb ramps during roadway alterations.

38.     Ms. Kasnitz also played a specific role in settlement negotiations.  Two weeks prior to trial, the parties attempted to reach a partial settlement as to certain of their policies.  Ms. Kasnitz's knowledge of access standards, particularly relating to temporary pedestrian facilities, was essential in helping Plaintiffs propose revisions to Defendants' policies.  Ms. Kasnitz is one of the few attorneys in the country who has experience with the provision of accessible temporary pedestrian routes.  She successfully negotiated an agreement with PG&E which requires PG&E to provide accessible temporary pedestrian routes around any construction and/or repair work it does that blocks a sidewalk.  The standards which PG&E adopted were the standards that Plaintiffs proposed Defendants adopt as well, with slight modifications.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

39.     During the parties' settlement negotiations following trial, Ms. Kasnitz reviewed and provided input on the settlement drafts.  Ms. Kasnitz was one of the lead attorneys on the *Barden v. City of Sacramento* lawsuit (on which much of this case against Caltrans was based) and is currently the attorney in charge of monitoring the settlement agreement with the City of Sacramento.  Accordingly, Ms. Kasnitz offered an important perspective on settlement, in particular, being able to identify issues to resolve in the settlement agreement that if not resolved might otherwise lead to areas for future dispute in the implementation of the agreement.

### *Motion for State Class Certification*

40.     Plaintiffs repeatedly requested that Defendants stipulate to class certification in the state action, particularly in light of the federal court's certifying a class in that action.  Attached hereto as **Exhibit D** is a true and correct copy of a letter to Defendants requesting that Defendants stipulate to class certification in the state action.  However, Defendants refused to stipulate to class certification.  Thus, Plaintiffs were forced to file an entirely new motion for class certification in the state action.  Plaintiffs spent approximately half of the time billed on actual drafting and revising the class certification motion and accompanying counsel declarations.  The motion was not "substantially duplicative of the work in the federal action." There had been extensive additional discovery in the state court action, particularly with regard to the lack of a self-evaluation and transition plan, which had to be included in the motion as it served as the foundation for Plaintiffs' commonality argument.

41.     The remaining 384.5 hours of time were generally spent on identifying class member witnesses and drafting and revising declarations of these witnesses in support of the certification motion.  This was not merely a repetition of the work done in the federal action. There were 31 class members who submitted declarations in support of the state class certification motion.  Of these 31 declarants, only 10 had previously submitted declarations in support of the federal class certification.  As such, Plaintiffs had to draft 21 new declarations. Eight of these were for class members who had been deposed in the federal action but for whom Plaintiffs had only submitted excerpts from the deposition testimony in lieu of a declaration.  In addition, Plaintiffs had to draft 13 declarations for class members who had been identified after

the federal action had been certified and who had not been deposed. Plaintiffs could not,

however, simply take the 8 class members' deposition testimony and put it in the form of a

declaration; nor could Plaintiffs simply "recycle" the 10 declarations previously submitted in

support of the federal class certification motion. It had been nearly two years since the

depositions and the filing of the declarations (since Plaintiffs filed their federal class certification

motion in October 2007 and filed their state class certification motion in July 2009). Much had

changed for many of the declarants and deponents in the federal action: there were new access

barriers which the declarants had experienced or the access barriers previously described had

worsened or changed in some way. Further, even if it turned out that the declaration did not need

much revision, it was essential that Plaintiffs' counsel confirm that the testimony of the

declarants was still accurate. And for the remaining newly identified class members, Plaintiffs'

counsel had to start their declaration testimony from scratch. In addition, finding the new class

member declarants required an extensive new outreach effort, including posting notices to

websites, interviewing potential witnesses to determine if their testimony would be relevant, and

confirming that the facilities they reported to have barriers were actually under Caltrans'

jurisdiction. This last task was not a simple matter, as Caltrans throughout the litigation

maintained that it could not provide Plaintiffs with a comprehensive list of the sidewalks under

its jurisdiction.

42. Defendants challenge three particular declarations as being "only slightly

modified"; however, these declaration all contained new information which was not previously

included in their federal class certification declarations, as is discussed below.

Boehm Declaration: Mr. Boehm's state class certification declaration differs from his

federal class certification declaration in a number of ways. It provides further

explanation for why Mr. Boehm must use the pedestrian facility at issue (e.g., to visit his

parents, taking the bus is not a viable option because they run infrequently and have

limited space for people with disabilities). This context is important because during

depositions Defendants often asked questions about why a class member needed to use

the pedestrian facility at issue as well as whether there were ways to avoid the pedestrian

**DISABILITY RIGHTS ADVOCATES**
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  facility at issue.  The state declaration recounts a new experience Mr. Boehm had while

2  attempting to use the inaccessible pedestrian facility, namely one of his wheelchair's

3  wheels became stuck between the edge of a sidewalk and a fence due to the narrowness

4  of the sidewalk.

5  <u>Garcia Declaration</u>:  Ms. Garcia's state class certification declaration differs from her

6  federal class certification declaration primarily because Ms. Garcia moved since

7  submitting her declaration in the federal action.  Thus, the pedestrian facilities she uses

8  and the frequency with which she uses them had changed.  In addition, Ms. Garcia

9  provided greater detail as to the damage that was being caused to her wheelchair because

10 of the inaccessibility of Caltrans' pedestrian facilities.  This was important since it

11 demonstrated tangible harm which she was suffering as a direct result of Caltrans'

12 inactions.

13 <u>Hoefling Declaration</u>:  Ms. Hoefling's state class certification declaration differs from her

14 federal class certification declaration in that the state declaration includes an account of a

15 new access barrier Ms. Hoefling now encounters which she had not encountered until

16 after she submitted her declaration in the federal action.  Specifically, the declaration

17 details the missing curb cuts along State Highway 41 and how they impact Ms. Hoefling.

18

19                      ***Trial Examination for Dmitri Belser***

20        43.       As demonstrated by the entries in Mr. Hurley's declaration, Stephanie Enyart

21 (under the supervision of Ms. Kasnitz) was Plaintiffs' sole staff person working on Mr. Belser's

22 direct trial exam outline until shortly before he was going to actually testify.  Ms. Enyart was a

23 graduate of U.C.L.A. law school who had not yet taken the bar exam at the time she performed

24 this work, and was thus billed at a rate below that of admitted attorneys.  The work involved in

25 preparing Mr. Belser's trial exam script was considerable.  Mr. Belser had been deposed twice,

26 submitted three declarations, and experienced new access barriers since his most recent

27 declaration.  Accordingly, there was a large amount of information to cover in the direct

28 examination.  In addition, Mr. Belser was a class representative, which made his testimony

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   particularly important at trial.  Just before Ms. Belser was to testify at trial, Ms. Kimber and Mr.

2   Allen spent a total of 7.6 hours on finalizing Mr. Belser's examination outline and preparing Mr.

3   Belser to testify.  Mr. Belser was in court waiting to testify when the Court suspended the trial

4   and the parties resumed settlement negotiations.

5                            *State Summary Adjudication Motion*

6          44.     Plaintiffs' motion for summary adjudication in the state action was a dispositive

7   motion that would likely have been successful if the parties had not settled prior to its hearing.

8   The state court, in previously denying Defendants' demurrer, had held that there was a private

9   right of action under state law to enforce the requirements for a self-evaluation and a transition

10  plan.  *See* Exhibit I to Declaration of Laurence Paradis in support of initial fee motion (Doc. 462-

11  9).  The evidence Defendants were compelled by the state court to produce (including documents

12  Defendants initially claimed were privileged) revealed that Defendants had only two years after

13  the start of the litigation hired an outside consultant to conduct a self-evaluation and prepare a

14  transition plan.  The evidence further indicated that, at the time of filing the motion for summary

15  adjudication, both the self-evaluation and transition plan were still far from complete.  Given the

16  possibility that this motion might bring a resolution to the entire litigation, Plaintiffs believed it

17  was appropriate to spend the substantial time that was needed to prepare this dispositive motion.

18         45.     Moreover, preparing the motion involved not only drafting and revision of the

19  motion and supporting documents but also review of evidence recently collected.  Plaintiffs had

20  to, for the first time, review numerous documents recently produced and transcripts for

21  depositions recently taken.  This document and deposition review alone accounts for almost 30

22  percent of the time spent on the motion (52.9 hours out of the 180).  Because of the timing of

23  Defendants' production of documents and witnesses, the evidence review happened in

24  conjunction with preparation of the motion.  Such work would have also been useful for the later

25  stages of the state court litigation, and it was useful in the settlement negotiations since it enabled

26  Plaintiffs to finally determine what Caltrans in fact was doing to identify access barriers.

27         46.     Plaintiffs actually obtained a precedent setting ruling and substantial relief based

28  on their self-evaluation and transition plan claims in the litigation.  First, Defendants lost their

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    demurrer in which they unsuccessfully argued there was no private right of action under state

2    law to enforce the self-evaluation and transition plan requirements.  The state superior court held,

3    in a precedent setting decision, that individuals with disabilities can enforce the federal self-

4    evaluation and transition plan regulations based on their incorporation into California state law.

5    Ultimately, Plaintiffs' summary adjudication motion was placed on hold because of the

6    settlement negotiations that resulted in the Settlement Agreement, so no determination as to

7    whether Defendants had failed to develop a self-evaluation and a transition plan was ever made.

8    However, based on the evidence obtained through hard fought discovery, there was every reason

9    to believe the motion for summary adjudication would be granted.  Based on this, Plaintiffs

10   insisted in the settlement negotiations that the Settlement Agreement contain a provision

11   requiring further surveys of Defendants' facilities for access barriers to the extent there are any

12   excess funds during the implementation period.  Such surveys are the most critical part of the

13   self-evaluation and transition plan requirements, as they form the basis for identifying the actual

14   barriers that need to be removed.

15                               ***Preliminary Approval Motion***

16            47.      Plaintiffs agreed to draft the motion for preliminary approval of the class

17   settlement agreement (when Defendants could have as easily done so but deferred to Plaintiffs).

18   In so doing, Plaintiffs spent considerable time drafting a motion that explained the detailed

19   factual and procedural history as well as the substantive terms of the settlement agreement.

20   Many parts of the motion were unique to the case, including:

21                      A.  Explaining the procedural history of the two cases and how the settlement

22   would encompass claims in both cases;

23                      B.  Explaining how a revised settlement class would be defined so as to

24   encompass all claims;

25                      C.  Explaining why the settlement class should be certified;

26                      D.  Explaining why the terms and conditions of the settlement were fair and

27   reasonable;

28                      E.  Describing the negotiation process by which the settlement was reached;

1        F.  Explaining the procedure agreed upon for resolution of the attorneys fees and

2   costs issue;

3        G.  Explaining the provisions agreed upon for notice to the class of the settlement

4   and why such notice met due process requirements;

5        H.  Explaining the agreement reached regarding conditional dismissal of the state

6   action as part of the settlement approval process;

7        I.  Explaining the terms agreed upon for dispute resolution under the settlement,

8   including court retention of jurisdiction for that purpose; and

9        J.  Explaining the scope of the release agreed to in the settlement.

10       48.    Plaintiffs' initial draft of the preliminary approval motion also included a lengthy

11  summary of the substantive provisions of the settlement as regards the access commitments

12  Defendants had agreed to, including:

13       A.  Discussion of the annual commitment for barrier removal

14       B.  Discussion of reporting and monitoring provisions;

15       C.  Agreements reached concerning new construction and alterations;

16       D.  Agreements reached concerning access to temporary pedestrian routes;  and

17       E.  Discussion of the Accessibility Grievance procedure.

18  In their redlined version of the preliminary approval motion, however, Defendants struck all of

19  the content in A-E above.  As a compromise, the parties agreed that substantive terms of the

20  Settlement Agreement should not be described but rather referenced by exhibit.

21       49.    The legal standards section of motions for preliminary approval from one case to

22  the next will look similar in that they cite the same case law and legal standards.  Indeed the six

23  lines of text that Defendants point to as "boilerplate" language simply set forth the legal

24  standards for approval.  This legal standard section of the brief took only a nominal amount of

25  time.  Most of the time spent drafting the motion was spent on describing the history of the

26  litigation, discussing the claims and defenses, and explaining why the settlement was fair and

27  reasonable in the context of this procedurally and factually complex combined state and federal

28  litigation – material that could not be cut and pasted from prior motions.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### *Demurrer Hearing*

50.     The hearing for Defendants' demurrer in the state action was originally scheduled for November 14, 2008.  Plaintiffs' preparation for this hearing included the creation of "argument binders" and demonstrative exhibits.  Argument binders are what attorneys at Disability Rights Advocates use to prepare for oral argument.  Preparation thereof includes identifying all relevant case law, marking it as needed, and formulating an outline of the case law and key arguments all to include in a one binder to be used for preparation for and during oral argument.  Argument binders are prepared by attorneys as they require in-depth knowledge and understanding of the legal and factual issues that may be addressed in the upcoming hearing.  Plaintiffs also prepared a "blow up" for use in the oral argument.  When DRA's attorneys recorded time as preparation of "blow ups" (aka demonstrative exhibits), this was not for the work of actually enlarging the demonstrative exhibit but referred to selecting the information to be included in the demonstrative exhibit (in this particular instance, a timeline to illustrate the legislative history of California Government Code § 11135 et seq.).

51.     The demurrer hearing was continued by the Court until December 19, 2008.  On December 8, 2008, Defendants filed an unauthorized "Supplemental Brief In Support of Demurrer."  This brief detailed new federal case law which Defendants believed further supported their demurrer.  Accordingly, Plaintiffs had to prepare another demonstrative exhibit as well as do further preparation for the hearing on December 19, 2008, including holding a moot court preparation session.

52.     A moot court by definition involves more than one attorney.  However, Defendants seek deductions for the attendance of Ms. Von Behren, Mr. Allen, and Ms. Kimber at the moot court, leaving only myself (who was to argue the motion) allowed to attend the moot court.  Ms. Von Behren, Mr. Allen, and Ms. Kimber all helped research and prepare Plaintiffs' opposition to the demurrer.  It was thus appropriate for these attorneys to attend the moot court.

53.     In addition, Mr. Allen's and Ms. Kimber's presence at the demurrer hearing was reasonably necessary to the case, and for the case management conference which was held

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   concurrently.  The case management conference addressed issues of coordination and discovery

2   disputes which Mr. Allen and Ms. Kimber had been, and were, personally working on.

3                          ***Moot Court and Attendance for Summary Judgment Motion***

4          54.    Defendants sought by their motion for summary judgment to dispose of the entire

5   action, and thus it was a key motion that required significant time and effort to defeat.  A number

6   of Plaintiffs' attorneys contributed work to the opposition of this motion, with parts delegated to

7   each.  In preparation for the hearing on this motion, Plaintiffs held a moot court that the attorneys

8   who worked on the opposition papers attended.  This moot court was an important step in fully

9   preparing me for arguing the motion.  In addition, a number of Plaintiffs' attorneys attended the

10  hearing on this motion.  Several attended the hearing in order to provide substantive input on the

11  arguments as needed.  The others attended because they were working on pretrial preparations in

12  the federal action and needed to observe developments in the case that might affect such trial

13  preparations.

14                              ***Declaration of Richard Skaff in State Action***

15         55.    As with all the declarants in the state action, Mr. Skaff's declaration was not

16  substantially similar to the declaration he submitted in the federal action because he had

17  experienced many more access barriers, including those associated with temporary pedestrian

18  routes, since his declaration in federal court.  In addition, Mr. Skaff had been deposed

19  immediately after submitting his federal deposition so it was necessary to review the deposition

20  transcript in preparing his state class certification declaration.

21         56.    Plaintiffs were unable to submit Mr. Skaff's declaration in support of their state

22  class certification motion only because Mr. Skaff was unable to sign the declaration in time to

23  submit it to the Court.  However, preparing Mr. Skaff's declaration helped prepare both Plaintiffs

24  and Mr. Skaff for his testifying at trial.  The majority of his testimony was gathered and it was

25  only necessary to put it into a script format.  Mr. Skaff was at the courthouse waiting to testify on

26  the day the Court suspended the trial and the parties renewed their settlement efforts.

27

28

*Deposition of Michael Mankin*

57.     The deposition of Mr. Michael Mankin lasted for three days:  June 25, July 11, and August 2, 2007.  These three days of deposition (including limited preparation the day of deposition) alone account for approximately 35 hours.  In addition, Defendants include in the preparation time for these depositions a summer associate's and law clerk's time for summarizing the deposition transcripts.  Such summaries are created after a deposition so that key admissions from the depositions are easily identified for motions and ultimately trial.  Mr. Mankin was a key witness on the program access issue.  As an employee of the Division of the State Architect, Mr. Mankin had worked with Caltrans for many years on access issues relating to all of its facilities.  Mr. Mankin's testimony was relevant to Caltrans' alleged violation of the program access requirements.  In fact, Mr. Mankin acknowledged during his three days of deposition (one day of which was primarily used by Defendants as "cross examination") that Caltrans had been violating the program access requirements at issue for decades.  Overall, Plaintiffs billed 13.6 hours in preparation for the first day of deposition, 6.0 hours for the second day of deposition, and 12.2 hours for the third day of deposition.  Each day of deposition involved numerous exhibits, which had to be identified and prepared for each of these separate days.  Many of these exhibits had not previously been authenticated by any witness, and Mr. Mankin was the first witness able to identify and discuss key developments in the history of Caltrans' access compliance efforts (and lack of efforts) leading up to the litigation.

*Confusion Regarding Deductions Sought By Defendants for Substantive Categories*

58.     The tables in Mr. Hurley's supplemental declaration apparently are intended to include <u>all</u> the time Plaintiffs' spent on a specific category of substantive work (e.g. motion for state class certification).  Defendants do not indicate the deduction they seek for this work, however.  Rather, without explanation, they choose <u>some</u> of the time entries for these substantive categories to include in Exhibit A, object to them as excessive, and seek a full 100% deduction for those entries.  Defendants do not explain why some of the time entries for these substantive categories are compensable, but others should be deducted in full.  Moreover, there is no way to ascertain precisely how much Defendants seek to deduct for these certain categories of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  substantive work.  This lack of clarity precludes Plaintiffs from formulating a meaningful

2  response to Defendants' objections.

3  ### *Other Time Objected to as "Excessive" In Exhibit A*

4          59.     Other time entries to which Defendants object as "excessive" have nothing to do

5  with the substantive work described above.  Defendants seek a full 100 percent deduction for

6  these entries.  Most of the entries lack any "Further Clarification," and the objections are

7  anything but clear.  The following is one example of a time entry characterized as "excessive"

8  which on its face is clearly not excessive and for which Defendants provided no "Further

9  Clarification."

10  **Elsberry #1** (S) (Doc. 516-2, p. 96)
    **Description:**  Draft amended cause of action in complaint
11  **Time Billed:**  0.2
    **Reason for Deduction:**  excessive
12  **Percentage Deduction:**  100%
    **Further Clarification by Defendants:**  [none]
13  **Plaintiffs' Response:**  Without any clarification, it is impossible for Plaintiffs to ascertain why
    Defendants believe 12 minutes devoted to amending a cause of action in a complaint is
14  "excessive."

15          60.     Moreover, the majority of Mr. Allen's time entries are characterized as, among

16  other things, "excessive" but also lack further clarification as to why.  The only explanation

17  Defendants give is that the entry is "excessive at his rate for a large block of time."  *See, e.g.*,

18  Allen #43 (Doc. 516-3, p. 359).  Defendants do not explain why the time he spent was actually

19  excessive.

20          61.     To the extent that Defendants provide a few limited explanations for certain time

21  entries they characterize as excessive, the explanations are generally simply assertions without

22  further support.  For example, Ms. Kimber's billing 3.5 hours to "draft case management

23  conference statement:  factual background; review relevant statutes and codes" is purportedly

24  excessive because "Drafting a CMC statement should not take 3.5 hours (along with other

25  excessive hours billed)."  *See* Entry #594 (Doc. 516-2, p. 273).  It is unclear what Defendants

26  mean by the "other excessive hours billed," but the case management statement drafted was the

27  initial case management statement in the state action.  Per Judge Freedman's order of April 25,

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   2008, it required, among other things, a "factual summary to assist the Court in understanding

2   the background of the case" as well as a statement of the issues presented, including each theory

3   of liability and defense and summary of the facts supporting each position taken."  Billing 3.5

4   hours on an important task such as this is more than reasonable, and Defendants provide no

5   evidence as to why it should not be.

6

7

8   I declare under penalty of perjury under the laws of the United States that the foregoing is true

9   and correct.

10

11   Executed on July 2, 2010, in Berkeley, California.

12

13                              _____/s/_____

14                              LAURENCE W. PARADIS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644