1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

**United States District Court**
**For the Northern District of California**

| | |
|---|---|
| 11 CALIFORNIANS FOR DISABILITY RIGHTS, *et al.*, | No. C 06-05125 SBA (MEJ) |
| 12 | **REPORT AND RECOMMENDATION** |
| 13 Plaintiffs, | **RE: PLAINTIFFS' MOTION FOR** |
| 14 v. | **ATTORNEY'S FEES (DKT. #460)** |
| 15 CALIFORNIA DEPT OF TRANSPORTATION, *et al.*, | |
| 16 Defendants. | |
| 17 _____/ | |

18                          **I.  INTRODUCTION**

19        Before the Court is Class Action Plaintiffs Californians for Disability Rights, Inc. ("CDR"),

20 California Council of the Blind ("CCB"), Ben Rockwell, and Dimitri Belser's (collectively

21 "Plaintiffs") motion for attorney fees and costs.  (Dkt. #460.)  After consideration of the parties'

22 papers and oral arguments, relevant legal authority, and good cause appearing, the undersigned

23 RECOMMENDS as follows.

24                          **II.  BACKGROUND**

25        In 2006, Plaintiffs filed their class action complaint against Defendant California Department

26 of Transportation and its Director, Will Kempton (collectively "Caltrans" or "Defendants"), alleging

27 violations of Title II of the Americans with Disabilities Act ("ADA") and section 504 of the

28 Rehabilitation Act of 1973.  (Pls.' Mot.[1] 2:23-26, Dkt. #460.)  Plaintiffs alleged that Caltrans' 2,500

_____

[1]Caltrans does not object to Plaintiffs' recitation of facts.

miles of sidewalks throughout California contain barriers that deny access to persons with vision or mobility disabilities, including a lack of curb ramps or a lack of detectable warnings at curb ramps to indicate that the sidewalk is ending.  *Id.* at 2:26-3:6.  Following three years of litigation, the parties reached a settlement.  *Id.* at 3:7-8.  On June 2, 2010, the Honorable Saundra Brown Armstrong, the presiding judge in the matter, granted Plaintiffs' application for final approval of the proposed settlement agreement.  (*Order Granting Plaintiffs' Application for Final Approval of Proposed Settlement Agreement and Overruling Objections to Settlement Agreement* ("Order"), Dkt. #515.)

As noted by Judge Armstrong,

> The salient features of the Settlement Agreement include, among other things: (1) a funding commitment of $1.1 billion over the next thirty years to eliminate barriers and improve access for Class members; (2) a monitoring procedure, which will include the hiring of an access consultant to oversee compliance for the first seven years, and mandatory annual reporting by Caltrans for the next thirty years; (3) a grievance procedure for public complaints relating to access issues and Caltrans responses thereto; and (4) payment of attorneys' fees (a minimum of $3.75 million to a maximum of $8.75 million) for past work and future compliance services.

(Order 3:3-10, Dkt. #515.)  In the settlement agreement, the parties agreed that this Court would have jurisdiction over both Plaintiffs' federal and state law claims, and Defendants agreed that Plaintiffs were entitled to recover reasonable costs and fees for work in both actions.  (Pls.' Mot. 6:3-9, Dkt. #460; Elsberry Decl., Ex. A[2] § 5.2.1, Ex. 6 ¶2, Dkt. #465.)

On March 23, 2010, Plaintiffs filed the instant motion for attorney's fees and costs.  (Dkt. #460.)  On March 25, 2010, Judge Armstrong referred Plaintiffs' motion for attorney's fees to the undersigned for preparation of a Report and Recommendation.  (Dkt. #472.)  On April 22, 2010, Defendants filed their opposition (Dkt. #492), and on April 29, 2010, Plaintiffs filed their reply (Dkt. #495).  On May 27, 2010, the undersigned held a hearing in the matter.

### III.  DISCUSSION

Plaintiffs contend that they should be awarded the full cap of $8.75 million in attorney's fees and costs, and in their motion and accompanying declarations they detail the exact amount of hours billed and fees sought by each attorney or staff member who worked on the litigation.  (Pls.' Mot.

---

[2]Exhibit A to the Elsberry Declaration is the Settlement Agreement in this action.  Hereinafter, the undersigned will cite to it as such.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

6:19-20, Dkt. #460.)  In fact, Plaintiffs contend that they would be entitled to an award in excess of the fee cap, as Plaintiffs seek a 1.65 multiplier.[3]  Plaintiffs maintain that they are entitled to this sum as they have "accomplished a remarkable set of legally binding and judicially enforceable obligations that will benefit hundreds of thousands of class members for years to come." *Id.* at 6:21-7:8.  Plaintiffs argue that the number of hours expended throughout this litigation are reasonable, that their fees are also reasonable, and thus they are entitled to the maximum award of $8.75 million. *Id.* at 7:18-8:2.  The total award for fees and costs sought by Plaintiffs, absent the fee cap and good faith deductions and subject to their requested multiplier, is $16,700,269.16.[4]  (Paradis Decl. ¶ 27, Dkt. #496; Kohrman Decl. ¶ 35, Dkt. #464; Kohrman Decl. ¶ 14, Dkt. #499; Allen Decl., Ex. C, Dkt. #463; Allen Decl., Ex. A, Dkt. #527.)

In response, Defendants contend that the reasonable market value of Plaintiff's services is $3.75 million, the minimum number agreed upon by the parties.  (Defs.' Opp'n 1:2-3, Dkt. #492.) Defendants argue that Plaintiffs' demand for $8.75 million is overreaching, that their rates are excessive, and that the number of hours Plaintiffs spent on the case exceeded what was necessary. *Id.* at 1:3-5.  Defendants maintain that the Court should exercise careful scrutiny regarding Plaintiffs' fee request because "Caltrans is a state entity, and thus, money paid to Plaintiffs is money that could have otherwise been spent on government programs benefitting the public."  (Defs.' Mot. 1:18-20, Dkt. #492.)

## A.    Legal Standard

The starting point in determining what equates to a reasonable fee award is always to calculate the "lodestar," which is the number of hours reasonably expended multiplied by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party seeking an award of fees and costs has the burden of submitting evidence which supports their request for the hours worked and the rates claimed. *Id.*  "[C]ounsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general

---

[3]Plaintiffs determined that a 1.65 multiplier would be appropriate based on a previous case where the fee award was increased by that amount.  (Pls.' Mot. 22:7-11, Dkt. #460.)

[4]This number is based on the undersigned's calculations from the numbers listed by Plaintiffs' counsel in their declarations.

subject matter of his [or her] time expenditures." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 437 n.12).  If the documentation of hours and rates is inadequate, the district court may reduce the fee award, and may also exclude from the calculation hours not reasonably expended.  *Hensley*, 461 U.S. at 433-34.  Counsel must make a good faith effort to use billing judgment, meaning to exclude from the fee request "hours that are excessive, redundant, or otherwise unnecessary . . . ."  *Id.*

**B.      Application to the Case at Bar**

       1.      Reasonable Hourly Rates

       Plaintiffs contend that the hourly rates sought are reasonable when compared to Bay Area attorneys with comparable experience who handle complex litigation.  (Pls.' Mot. 8:4-5, Dkt. #460.) Plaintiffs were represented by Disability Rights Advocates ("DRA"), AARP Foundation Litigation ("AFL") and José R. Allen, a senior partner with Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden Arps").  *Id.* at 8:22-24.  Plaintiffs contend that calculating reasonable rates for DRA and Mr. Allen is straightforward, as their firms are in the Bay Area and specialize in complex litigation. *Id.* at 8:24-25.  Regarding AFL, Plaintiffs argue that even though they are located in Washington D.C., the Ninth Circuit requires that the fee award be calculated using the reasonable market rate in the litigation forum.  *Id.*

       In response, Defendants contend that Plaintiffs have failed to provide evidence that their rates are in line with the prevailing rates in the Northern District for services performed by lawyers of comparable skill, experience, and reputation.  (Defs.' Opp'n 1:25-27, Dkt. #492.)  Defendants argue that the rates requested exceed market rates according to the ALM Legal Intelligence Survey of 2009 as well as the *Laffey* Matrix, a commonly used fee rate calculation.  *Id.* at 1:28-2:5. Defendants further argue that the rates claimed should be reduced because Plaintiffs have failed to show that inflation or market increases justify them.  *Id.* at 2:6-17.

       In their reply, Plaintiffs challenge the use of both the ALM Survey as well as the *Laffey* Matrix for calculating reasonable rates.  (Pls.' Reply 2:7-8, Dkt. #495.)  Regarding the ALM Survey, Plaintiffs contend that the survey fails to identify the types of firms represented in the survey, the types of matters the firms handle, or the purposes for which the survey is used.  *Id.* at 2:11-13.

1   Plaintiffs state that they can find no case, federal or state, where the court has ever cited this survey

2   for any purpose. *Id.* at 2:20-21. Similarly, Plaintiffs contend that the Ninth Circuit has not expressly

3   adopted the *Laffey* Matrix and the scale itself does not take into consideration all factors deemed

4   important by the Ninth Circuit in the past. *Id.* at 3:5-4:6.

5          In the Ninth Circuit, the *Laffey* Matrix is not the starting point for determining reasonable

6   attorney's fees. *Freitag v. California Dept. of Corrections*, C 00-2278 TEH, 2009 WL 2485552, at

7   *2 (N.D. Cal. 2009). Rather, reasonable rates are "to be calculated according to the prevailing

8   market rates in the relevant community, with close attention paid to the fees charged by lawyers of

9   reasonably comparable skill, experience, and reputation." *Davis*, 976 F.2d at 1546 (internal citations

10  and quotations omitted). When considering the rates of other lawyers of comparable skill,

11  experience, and reputation, courts should look to the fees awarded in "other types of equally

12  complex federal litigation . . . ." *Bernardi v. Yeutter,* 951 F.2d 971, 974 (9th Cir. 1991) (citing

13  *Hensley*, 461 U.S. at 430 n.4). This includes civil rights cases. *Id.* "The fee applicant has the

14  burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the

15  requested rates are in line with those prevailing in the community for similar services of lawyers of

16  reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263

17  (9th Cir. 1987). The "relevant community" is the district in which the lawsuit proceeds; here, the

18  Northern District of California. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

19  "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the

20  community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's

21  attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v.

22  Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The amount billed by other law firms in the

23  community, including the yearly increase in other firms' fees, is an appropriate barometer of

24  reasonable rates. *Gates v. Rowland*, 39 F.3d 1439, 1451 (9th Cir. 1994). It is appropriate to

25  determine reasonableness using an attorney's current hourly rate, rather than the rate at the time the

26  work was done; this accounts for the delay in receiving payment, as well as lost interest and

27  inflation. *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (*citing Pennsylvania v. Delaware

28

United States District Court
For the Northern District of California

1   *Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987)); *Coles v. City of Oakland*, C 03-

2   2961 TEH, 2007 WL39304, at *7 (N.D. Cal. January 4, 2007).

3       Courts also may rely on decisions of other courts awarding similar rates for work in the same

4   geographical area by attorneys with comparable levels of experience.  *See, e.g., Nadarajah v.*

5   *Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (affirming award of attorneys' fees at rate of $500 per

6   hour where party had submitted a declaration describing her experience and attached copies of fee

7   awards in the same geographical area where counsel had comparable experience).  Once calculated,

8   the lodestar rate may be adjusted to account for other factors, including the novelty and complexity

9   of issues presented, special skill and experience of counsel, quality of representation, the results

10  obtained, and the awards allowed in similar cases.  *Morales v. City of San Rafael*, 96 F.3d 359, 363-

11  64 (9th Cir. 1996).

12      Accordingly, the undersigned shall look to prevailing market rates in the Northern District,

13  the fees awarded in other complex civil rights litigation, and the declarations of other attorneys with

14  comparable levels of experience in determining whether the rates sought are reasonable.

15              a.      *Whether DRA's Fees Are Reasonable*

16                      i.      *Fees Sought Litigating the Merits of the Cases*

17      Regarding DRA's rates, Plaintiffs submitted a detailed itemization of their attorneys' fees

18  and costs, as summarized in the Declaration of Laurence W. Paradis and attached exhibits.  (Paradis

19  Decl., Dkt. #462.)  DRA is a 501(c)(3) non-profit organization which is dedicated to advancing the

20  civil rights of persons with disabilities.  (Paradis Decl. ¶ 8, Dkt. #462.)  DRA's focus is class action

21  impact litigation on behalf of disabled persons who face discrimination or other civil rights

22  violations.  *Id.*  Because DRA generally handles matters in which the client cannot afford to retain a

23  lawyer, it is largely dependent upon court awarded fees.  *Id.* at ¶ 9.  DRA handles cases on what is

24  essentially a contingent fee basis, seeking fees at the end of a case under various statutes which

25  award fees to the prevailing party.  *Id.* at ¶ 13.  Thus, DRA does not recover fees in cases where they

26  are not the prevailing party.  *Id.*  DRA's involvement in the instant matter included drafting and

27  responding to motions and discovery, handling law and motion at multiple stages of the litigation,

28  preparing for and handling trial proceedings, and negotiating the settlement agreement.  *Id.* at ¶ 17.

*United States District Court*
For the Northern District of California

6

1  Paradis attests that thirteen attorneys, one senior paralegal, various summer associates, paralegals,

2  law clerks, and one case clerk from DRA worked on this matter.  *Id.* at ¶ 21.

3      Sid Wolinsky founded DRA and serves as its director of litigation.  *Id.* at Ex. F.  He has been

4  a practicing attorney since graduating from Yale Law School in 1961, has twice been a Fulbright

5  Senior Scholar, and was an adjunct professor at Hastings and Boalt law schools.  *Id.*  His practice

6  has focused on disability rights since 1971.  *Id.*  His current hourly rate is $835 per hour.  *Id.* at ¶ 24.

7  His 2008 requested rate of $745 per hour was awarded to him in a contested fee motion in this court

8  in 2008, in *National Federation of the Blind v. Target Corp.*, No. C 06-1802 MHP, 2009 WL

9  2390261 (N.D. Cal. 2009).  *Id.* at ¶ 23.  Wolinsky billed 182.9 hours for work done on the matters

10  since 2007, and seeks $152,721.50 in fees.  (*Id.* at ¶ 21; Paradis Decl. ¶ 5, Dkt. #496.)

11      Laurence Paradis has been practicing law since graduating from Harvard Law School in

12  1985.  (Paradis Decl. ¶ 24, Dkt. #462.)  He began working at DRA in 1996 and has been involved in

13  litigation affecting the rights of people with disabilities since that time.  *Id.* at ¶ 6.  Paradis' current

14  hourly rate is $730 per hour.  *Id.* at ¶ 24.  Paradis billed 3,814.6 hours and seeks $2,784,658 in fees.

15  (*Id.* at ¶ 21; Paradis Decl. ¶ 5, Dkt. #496.)

16      Melissa Kasnitz has been practicing law since her 1992 graduation from Boalt Hall; her

17  current hourly rate is $650 per hour.  (Paradis Decl. ¶ 24, Dkt. #462.)  Kasnitz billed 269.3 hours

18  and seeks $175,045 in fees.  (*Id.* at ¶ 21; Paradis Decl. ¶ 5, Dkt. #496.)

19      Ron Elsberry has been practicing law since 1987 when he graduated from Hastings College

20  of the Law; his current hourly rate is $640 per hour.  (Paradis Decl. ¶ 24, Dkt. #462.)  Elsberry billed

21  743.3 hours and seeks $475,712 in fees.  (*Id.* at ¶ 21; Paradis Decl. ¶ 5, Dkt. #496.)

22      Jennifer Bezoza has been practicing law since her 2000 graduation from New York

23  University School of Law; her current hourly rate is $570 per hour.  (Paradis Decl. ¶ 24, Dkt. #462.)

24  Bezoza billed 42.5 hours and seeks $24,225 in fees.  *Id.* at ¶ 21.

25      Roger Heller has been practicing law since 2001, when he graduated from Columbia

26  University School of Law; his current hourly rate is $560 per hour.  *Id.* at ¶ 24.  Heller billed 590.2

27  hours and seeks $330,512 in fees.  *Id.* at ¶ 21.

28

Kevin Knestrick graduated from Hastings College of the Law in 2003 and has been practicing law since that time; his current hourly rate is $535 per hour. *Id.* at ¶ 24. Knestrick billed 234 hours and seeks $125,190 in fees. *Id.* at ¶ 21.

Alexius Markwalder has been practicing law since 2003 when he graduated from Hastings College of the Law; his current hourly rate is $535 per hour. *Id.* at ¶ 24. Markwalder billed 90.1 hours and seeks $48,203.50 in fees. *Id.* at ¶ 21.

Kasey Corbit graduated from Hastings College of the Law in 2004 and has been practicing law since that time; her current hourly rate is $500 per hour. *Id.* at ¶ 24. Corbit billed 201.8 hours and seeks $100,900 in fees. *Id.* at ¶ 21.

Mary-Lee Kimber has been practicing law since her 2005 graduation from Boalt Hall; her current hourly rate is $475 per hour. *Id.* at ¶ 24. Kimber billed 4,395.8 hours and seeks $2,088,005 in fees. (*Id.* at ¶ 21; Paradis Decl. ¶ 5, Dkt. #496.)

Stephanie Biedermann has been practicing law since 2007 when she graduated from Yale Law School; her current hourly rate is $350 per hour. (Paradis Decl. ¶ 24, Dkt. #462.) Biedermann billed 483.6 hours and seeks $169,260 in fees. *Id.* at ¶ 21.

Becca von Behren graduated from Columbia University School of Law in 2008 and has since been practicing law; her current hourly rate is $290 per hour. *Id.* at ¶ 24. Von Behren billed 1,052.4 hours and seeks $305,196 in fees. *Id.* at ¶ 21.

Stephanie Enyart graduated from UCLA School of Law in 2009. *Id.* at ¶ 24. At the time this fee motion was submitted, she was not yet admitted to practice; however, she has since been admitted and her current hourly rate is $265 per hour. *Id.* Enyart billed 145.8 hours and seeks $38,637 in fees. *Id.* at ¶ 21.

Additionally, DRA makes extensive use of summer associates, law clerks, and paralegals to assist in all tasks. *Id.* at ¶ 25. DRA's summer associates have generally completed two full years of law school before joining DRA; the law clerks are all college graduates working under direct attorney supervision; the case clerks are entry-level support staff working under attorney supervision; and the paralegals are law clerks who have worked under attorney supervision for over a year. *Id.* Katherine Weed is a senior paralegal who worked on the federal action beginning in

**United States District Court**
For the Northern District of California

1   January 2009; she graduated from law school in 2002, was admitted to practice law in another state,

2   and has litigation experience.  *Id.*  DRA's other summer associates, law clerks, case clerks, and

3   paralegals work on case-related tasks including factual investigation, client communication, and

4   discovery tasks.  *Id.*  Senior paralegals are billed out at the hourly rate of $265 per hour; together,

5   they billed 485 hours and seek $128,525 in fees.  *Id.* at ¶¶ 21, 25.  Summer associates are billed out

6   at the hourly rate of $245 per hour; together, they billed 541.1 hours and seek $132,569.50 in fees.

7   *Id.* at ¶¶ 21, 25.  Paralegals are billed out at the hourly rate of $225 per hour; as a group they billed

8   996.5 hours, and they seek $224,212.50 in fees.  *Id.*  Law clerks are billed out at the hourly rate of

9   $175 per hour; the law clerks who worked on the matters billed 2,226.9 hours, and they seek

10  $389,707.50 in fees.  (*Id.*; Paradis Decl. ¶ 5, Dkt. #496.)  Finally, case clerks are billed out at the

11  hourly rate of $165 per hour; they billed 181.5 hours as a group and seek $29,947.50 in fees.

12  (Paradis Decl. ¶¶ 21, 25, Dkt. #462.)  Plaintiffs contend that the rates for DRA support staff are

13  within the range of rates charged in the Bay Area legal market for such staff.  *Id.* at ¶ 25.

14          In sum, DRA seeks $7,723,227 in fees for 16,677.3 hours billed in litigating the merits of the

15  state and federal cases.  (*Id.* at ¶ 19; Paradis Decl. ¶ 5, Dkt. #496.)  Paradis attests that in his exercise

16  of billing judgment and to account for any duplication or inefficiencies, DRA has "no charged"

17  412.1 billing hours and has further reduced the remaining fees for merits work across the board by

18  five percent, for a total of $379,383.50.  (Paradis Decl. ¶ 30, Dkt. #462.)  Additionally, Plaintiffs

19  argue that they are entitled to a 1.65 multiplier for this time, resulting in a total fee request of

20  $11,893,674 for litigation on the merits of the cases, absent the fee cap.  *Id.* at ¶ 31.  DRA also seeks

21  $290,422.86 for "costs reasonably accrued" during litigation of the matters.  (*Id.* at ¶¶ 26, 31;

22  Paradis Decl. ¶ 27, Dkt. #496.)  Thus, DRA seeks a total of $13,332,930 in fees and costs, absent the

23  fee cap.  (Paradis Decl. ¶ 27, Dkt. #496.)

24                          *ii.  Fees Sought Litigating the Fee Issue*

25          DRA also seeks the following fees for time spent litigating the fees issue, including time

26  spent on mediation and negotiation with Defendants regarding fees and costs and for preparation of

27  the fee motion.  (Paradis Decl. ¶ 27, #462.)  Wolinsky billed 38.3 hours and seeks $31,980.50 in

28  fees, Paradis billed 106.2 hours and seeks $77,526 in fees, Elsberry billed 202.5 hours and seeks

**United States District Court**
For the Northern District of California

1    $129,600 in fees, Kimber billed 72.8 hours and seeks $34,580 in fees, and law clerks billed 58.5 and

2    seek $10,237.50 in fees. *Id.* In sum, DRA seeks $284,184 for 478.7 hours spent litigating the fees

3    on fees issue and they do not seek a multiplier on this amount. (*Id.* at ¶¶ 27, 31; Paradis Decl. ¶ 11,

4    Dkt. #496.)

5                          *iii. Defendants' Opposition*

6             In response, Defendants contend that Plaintiffs have failed to justify the up to ten percent

7    increase in DRA's hourly rates since 2008. (Defs.' Opp'n 2:14-16, Dkt. #492.) Specifically,

8    Defendants maintain DRA's current rates have increased up to ten percent from the previous year

9    and that an increase of this magnitude is improper given this Court's denial of rate increases from

10   2008 through 2010. *Id.* at 2:7-16. Defendants, arguing in favor of application of the *Laffey* Matrix

11   but apparently conceding that it produces rates far lower than those sought by Plaintiffs, maintain

12   that the Court should award no more than $530 per hour for lead counsel Paradis, $650 per hour for

13   Wolinsky, a lead attorney with considerable experience litigating civil rights cases, between $425

14   per hour and $500 per hour for Kasnitz, depending on the calculation method employed, and

15   between $465 per hour and $565 per hour for Elsberry. *Id.* at 3:16-5:3. Defendants further argue

16   that in determining reasonable rates for the remaining DRA attorneys, the Court's award should

17   reflect reasonable, current market rates, and the attorney's lesser experience level when the work

18   was performed. *Id.* at 5:4-6. Regarding the non-attorneys who worked on the matters, Defendants

19   contend that the maximum rates awarded should be $225 per hour for paralegals, $195 per hour for

20   summer associates, and $155 an hour for all clerks. *Id.* at 7:9-14, n.21.

21                   *b.      Whether AFL's Fees Are Reasonable*

22                          *i.      Fees Sought Litigating the Merits of the Cases*

23            Regarding AFL's rates, Plaintiffs submitted a detailed itemization of their attorneys' fees and

24   costs, as summarized in the Declaration of Daniel B. Kohrman and attached exhibits. (Kohrman

25   Decl. Dkt. #464.) AFL is a non-profit public interest law organization dedicated to advancing the

26   rights of older persons. (Kohrman Decl. ¶ 8, Dkt. #464.) One of AFL's primary areas of legal

27   advocacy includes discrimination on grounds of disability in affording access to public facilities or

28   public accommodations. *Id.* at ¶ 9. In all areas of legal advocacy, AFL focuses on class action

impact litigation. *Id.* at ¶ 10. Though funded in part by AARP, AFL, like DRA, is largely dependent on court awarded fees. *Id.* at ¶ 11. Also similar to DRA, AFL seeks fees at the end of a case under a statute that awards fees to the prevailing party; thus, AFL does not receive fees when it is not the prevailing party. *Id.* at ¶ 15. AFL also seeks a 1.65 multiplier, based on the "numerous novel questions of law presented in this case, the complicated factual issues, and the significant resources required to prosecute this case [which] meant that this case was very risky for all co-counsel or plaintiffs, including AFL." *Id.* at ¶ 17.

Kohrman attests that though AFL relied on DRA and Allen to coordinate and take the lead in discovery on the state and federal matters, AFL contributed significantly by conducting research, assisting in discovery review and response to discovery requests, motion work, meet and confer sessions, and settlement conferences. *Id.* at ¶ 18. At the beginning of the litigation, Kohrman was the only AFL attorney assigned to the matter. *Id.* at ¶ 19. Subsequently, AFL assigned Julie Nepveu to be the primary attorney on the case, at which point Kohrman took a largely supervisory role. *Id.* AFL attorneys billed only for significant substantive work such as reviewing documents and participation in meetings, but not other matters. *Id.* at ¶¶ 19, 28. Where possible, senior attorneys delegated less complex tasks to student law clerks working under supervision, thereby using what Kohrman terms a "lean approach to staffing [the] case and billing for actual work performed." *Id.*

Kohrman graduated from Columbia Law School in 1984 and has been practicing law since that time. *Id.* at ¶ 3. Since 1996, the focus of his practice has been civil rights litigation, and he has been a senior attorney with AFL since 2001. *Id.* Kohrman billed 258.75 hours throughout this litigation and his current hourly rate is $740 per hour; Kohrman thus seeks $191,475 in fees. (*Id.* at ¶ 23, Kohrman Decl. ¶ 7, Dkt. #499.)

Julie Nepveu has been practicing law since her 1991 graduation from the University of Maine Law School; her current hourly rate is $660 per hour. (Kohrman Decl. ¶ 25, Dkt. #464.) Nepveu billed 686.25 hours on this matter and thus seeks $452,925 in fees. (*Id.*; Kohrman Decl. ¶ 7, Dkt. #499.)

AFL also relied on summer associates with two years of law school experience to perform the following tasks: researching specific legal issues and preparing legal memoranda; reviewing

United States District Court
For the Northern District of California

1   documents produced in discovery; and interviewing clients and drafting declarations.  (Kohrman

2   Decl. ¶ 28, Dkt. #464.)   Summer associates billed 223.75 hours at an hourly rate of $245 per hour,

3   and thus seek $54,818.75 in fees.  *Id.* at ¶¶ 23, 28.

4       Finally, AFL seeks to recoup its costs incurred in connection with this case, totaling

5   $7,608.32.  (*Id.* at ¶ 30; Kohrman Decl. ¶ 10, Dkt. #499.)

6       Kohrman attests that the fees sought by AFL are reasonable as he no-charged approximately

7   40 hours at a value of $29,600.00 and Nepveu no-charged 80 hours at a value of $52,800.  *Id.* at ¶

8   34.  Kohrman further attests that he reduced the amount billed for merits-related work across the

9   board by five percent, resulting in a deduction of $34,543.  *Id.*  Thus, the amount of fees sought by

10  AFL, including fees on fees and absent costs and the 1.65 multiplier sought, is $673,697.  (Kohrman

11  Decl. ¶ 35, Dkt. #464; Kohrman Decl. ¶ 14, Dkt. #499.)

12              *ii.    Fees Sought Litigating Fee Issue*

13      AFL also seeks fees for 4.7 hours billed for fees on fees litigation by Nepveu at her current

14  hourly rate of $660, totaling $3,102, and for eight hours billed by Kohrman at his rate of $740 per

15  hour, totaling $5,920.  (Kohrman Decl. ¶ 31, Dkt. #464; Kohrman Decl. ¶ 8, Dkt. #499.)

16              *iii.    Defendants' Opposition*

17      In response, Defendants contend that AFL's rates exceed *Laffey* Matrix rates, that AFL's

18  2010 rates are not justified by inflation, and thus that the Court should reduce the rates sought.  *Id.* at

19  2:3-8.  Defendants maintain that Kohrman, as a lead attorney, is entitled to no more than $530 per

20  hour "given his minor role in this case."  *Id.* at 4:3-9.  Defendants also claim that Nepveu is entitled

21  to no more than $425 per hour.  *Id.* at 5:1.  Defendants contend that the summer associates as AFL

22  should receive no more than $195 per hour, and that such a rate is reasonable.  *Id.* at 7:9-14, n.21.

23          *c.    Whether Skadden Arps' Fees Are Reasonable*

24              *i.    Fees Sought Litigating the Merits of the Cases*

25      Plaintiffs submitted a detailed itemization of Skadden Arps' fees and costs, as summarized in

26  the Allen Declaration, Supplemental Declaration, and attached exhibits.  (Allen Decl. Dkt. ##463,

27  527.)  Allen graduated from Boston College Law School in 1976 and has been practicing law since

28  that time.  (Allen Decl. ¶ 3, Dkt. #463.)  He has been a partner with Skadden Arps since 1990, and

United States District Court
For the Northern District of California

prior to that, was an associate at Orrick, Herrington and Sutcliffe. *Id.* Prior to that, Allen worked in the Environment and Natural Resources Division of the United States Department of Justice, preceded by three years as an Assistant Attorney General in Massachusetts. *Id.* Allen's thirty-four years of practice have focused on "environmental litigation and complex civil litigation, including defense of consumer class actions, securities law, products liability, and commercial disputes." *Id.* at ¶ 7. Allen has also represented plaintiffs pro bono as co-counsel in civil rights cases. *Id.* Allen attests that prior to associating as co-counsel in the instant case, he gained experience in disability-related litigation in *Putnam v. Oakland Unified School District*, C 93-3772 CW, 980 F. Supp. 1094 (N.D. Cal. 1997) and *Lopez, et al. v. San Francisco Unified School District, et al.*, C 99-3260 SI, 385 F. Supp. 2d 981 (N.D. Cal. 2005). *Id.*

Allen joined the litigation team after the Court issued its class certification order in the federal action and Plaintiffs re-filed their state law claims in state court, in order to provide DRA with the resources required to litigate both cases contemporaneously. *Id.* at ¶ 9. Allen attests that at the beginning of Skadden Arps' involvement in the litigation, he and associates working with him spent the bulk of their time on conducting discovery and planning a motion for summary adjudication in the state action. *Id.* at ¶ 10. In the federal matter, Allen deposed several of Defendants' expert witnesses and drafted briefs, memoranda, assisted in preparing Plaintiffs' proposed findings of fact and conclusions of law, and attended nearly all of the settlement negotiations. *Id.* at ¶¶ 11, 12.

Allen billed 1879.9 hours during his involvement in the litigation. *Id.* at ¶ 16, Ex. A. His hourly rate for the period between May 5, 2008 through August 31, 2008, during which he billed 211.60 hours, was $855 per hour, and his hourly rate for the period between September 1, 2008 through December 31, 2009, during which he billed 1,668.30 hours, was $930 per hour, totaling $1,732,437.00 in fees sought. (*Id.* at ¶ 16, Ex. A; Allen Decl. ¶ 2, Dkt. #527.) Allen attests that the rates were set by the firm's management and he believes that the rates reflect those charged by attorneys of comparable experience and reputation in the community. (Allen Decl. ¶ 16, Dkt. #463.) Allen further attests that three associates, two legal assistants, and various other litigation support personnel at Skadden Arps worked on the matters. *Id.* at ¶ 17. Allen attests that he utilized the

13

hourly rates in effect at the time he and each Skadden Arps associate or employee performed the work, rather than current rates.  (Allen Decl. ¶ 10, Dkt. #527.)

Sheryl Wu Leung graduated from Stanford Law School in 2005 and has been with Skadden Arps since that time; her current hourly rate during the applicable period was $530 per hour.  (Allen Decl. ¶ 3, Ex. A, Dkt. #527.)  Leung billed 132.40 hours during her work on the cases and thus seeks $70,172.00 in fees.  *Id.*

Jason Breeding graduated from Columbia University in 2008 and has been with Skadden Arps since then.  (Allen Decl. ¶ 4, Ex. A, Dkt. #527.)  Breeding billed a total of 324.30 hours on the matter at his then-current hourly rate of $395 per hour; thus, Breeding seeks a total $128,098.50 in fees.[5]  *Id.*

Nathaniel Fisher has been at Skadden Arps since his 2008 graduation from New York University.  *Id.* at ¶ 5.  Fisher billed a total of 179.30 hours on the cases; his hourly rate for the period from February 25, 2009 through April 30, 2009 was $395 per hour and from September 1, 2009 to September 30, 2009, Fisher's hourly rate was $440 per hour.  *Id.*  Accordingly, Fisher seeks $72,776.50 in fees.  *Id.* at Ex. A.

David Zygarewicz was the principal legal assistant assigned to the cases; he worked at Skadden Arps from 2002 to 2009, when he earned his J.D.  *Id.* at ¶ 6.  During the time he worked on the cases, Zygarewicz' hourly rate was $285 per hour, and he billed 516.50 on the matters.  *Id.* at ¶ 6, Ex. A.  Accordingly, Zygarewicz seeks $147,202.50 in fees.  *Id.*

Patricia Owens is another legal assistant who worked on the cases; she has been a legal assistant at Skadden Arps since 1987.  *Id.* at ¶ 7.  During the time she worked on the cases, Owens' hourly rate was $285 per hour, and she billed 25 hours.  *Id.* at ¶ 7, Ex. A.  Owens seeks an award of $7,125.  *Id.*

Scott Lane has been a legal technology manager with Skadden Arps since 2005; he obtained his J.D. from U.C. Davis in 1989.  *Id.* at ¶ 8.  Lane's regular billing rate during the time he worked

---

[5]In his previous Declaration, Allen attested that Breeding was seeking an award of $132,288.00 in fees for his work on the cases.  (Allen Decl. ¶ 19, Ex. A, Dkt. #463.)  In his more recent Declaration, Allen attests that that number was calculated in error based on incorrectly stating that Breeding's billing rate was $440 per hour.

United States District Court
For the Northern District of California

on the cases was $320 per hour. *Id.* at ¶ 8, Ex. A. Lane billed 61.10 hours and seeks $19,552.00 in fees. *Id.*

Kimberly Holbrook is a legal technology document analyst at Skadden Arps who worked on the matters; she has been with the firm since 2001. *Id.* at ¶ 9. Holbrook worked on the cases for 3.60 hours, and her regular billing rate at the time was $65 per hour; she seeks $234 in fees. *Id.* at ¶ 9, Ex. A.

All told, Skadden Arps seeks an award of $2,253,995.34 in fees and costs. (Allen Decl., Ex. C, Dkt. #463; Allen Decl., Ex. A, Dkt. #527.)

### ii.   *Defendants' Opposition*

In response, Defendants argue that Skadden Arps' 2009 rates exceed market rates in the Northern District and the *Laffey* Matrix. *Id.* at 1:28-2:6. Defendants contend that, as to Allen, they "know[ ] of no case in which an attorney has been awarded a $930 rate, much less, in a civil rights/ADA case to a 'pro bono' attorney with relevant experience." *Id.* at 3:1-2. Defendants maintain that a reasonable, in fact generous, rate for Allen would be $510. *Id.* at 3:11-14. Defendants argue further that Allen's "private client" rate is not appropriate here, and that he must be awarded less than Wolinsky, Kohrman, and Paradis, as each is more experienced in litigating civil rights cases. *Id.* at 3:13-15. Defendants offer competing numbers for all Skadden Arps attorneys, from law school graduates to those with 9 years of practice.[6] *Id.* at 6:3-17. As to the legal and technology assistants at Skadden Arps who worked on the matters, Defendants contend, as they did with DRA, that paralegals should be awarded no more than $225 per hour, $195 for summer associates, and $155 for all clerks. *Id.* at 7:9-14, n.21. Defendants contend that "technical assistants" are akin to paralegals, and thus should be awarded the rate of $225 per hour. *Id.* at n.21.

### e.   *Analysis*

As discussed above, the Ninth Circuit does not tend to utilize the *Laffey* Matrix, and thus the undersigned declines to apply it in this matter. *Freitag*, 2009 WL 2485552, at *2.

---

[6]For 9th year attorneys, Defendants argue that $410 per hour is appropriate; for 8th year attorneys, $400; for 7th year attorneys, $390, for 6th year attorneys, $380; for 5th year, $350, for 4th year, $335; for 3rd year, $310; for 2nd year, $305; for first year Skadden Arps associates, $275; and for law school graduates, $250. (Defs.' Opp'n 6:3-17, Dkt. #492.)

1    In support of their fee request, Plaintiffs offer the Declaration of Sanford Jay Rosen, an

2  attorney who practices in the Northern District.  (Rosen Decl. ¶ 1, Dkt. #466.)  Rosen attests that he

3  graduated from Yale Law School in 1962 and has since been a law professor, Assistant Legal

4  Director of the ACLU, Legal Director at MALDEF, and is currently the senior partner at a law firm

5  in San Francisco.  *Id.* at ¶ 3.  Rosen has litigated numerous civil rights, employment, and disability

6  rights cases.  *Id.* at ¶¶ 5-8.  Rosen attests that he has become familiar with the rates charged by and

7  billing practices of attorneys in California through his involvement in attorney's fees litigation, by

8  representing other attorneys seeking fees, by reviewing attorney's fees applications and awards, and

9  by conducting research in preparing to testify as an expert in attorney's fees matters.  *Id.* at ¶ 10.

10  Additionally, Rosen has published articles and lectured on the subject of statutory attorney's fees.

11  *Id.* at ¶ 13.  Rosen offers his own firm's 2010 hourly rate schedule, and attests that the rates are

12  consistent with the rates charged by other firms in the Bay Area.  *Id.* at ¶ 16, Ex. 2.  Rosen attests

13  that he has been a senior partner of several small law firms in San Francisco since 1976, and thus

14  that he has been setting billing rates and practices for over 30 years.  *Id.* at ¶ 15.  The 2010 rates for

15  his firm are up to $800 for partners (himself) up to $510 for associates, up to $275 for paralegals, up

16  to $220 for other litigation support staff, and $190 for law students.  *Id.* at Ex. 2.  Rosen attests that

17  Plaintiffs' rates in this matter are "well within market rates" and thus are reasonable.  *Id.* at ¶ 18.

18    Plaintiffs also offer the D1eclaration of Todd Schneider, a California attorney personally

19  familiar with DRA, in support of their fee request.  (Schneider Decl. ¶ 6, Dkt. #469.)  Schneider

20  attests that, as the founding attorney of a law firm that handles litigation — including litigation in

21  the fields of consumer rights, employment, and disability rights — he believes that the hourly rates

22  sought by DRA attorneys and staff are reasonable and comparable to other firms handling complex

23  civil rights litigation in the Bay Area.  *Id.* at ¶¶ 2, 3, 7.  Schneider declares that the outstanding

24  results achieved by Plaintiffs in the matters following lengthy litigation also merit the requested 1.65

25  multiplier.  *Id.* at ¶¶ 12, 13.

26    In further support of their fee request, Plaintiffs offer the Declaration of William Alderman, a

27  partner in the San Francisco office of Orrick, Herrington & Sutcliffe LLP.  (Alderman Decl. ¶ 2,

28  Dkt. #468.)  Alderman attests that his practice focuses on business litigation and dispute resolution,

United States District Court
For the Northern District of California

1   and that he is familiar with the hourly rates charged by attorneys handling complex litigation matters

2   in the Bay Area. *Id.* at ¶¶ 6, 9. Alderman states that he co-authored a piece on fee arrangements,

3   and that he reviews the billing practices of a wide variety of law firms in order to prepare annual

4   updates to that piece. *Id.* at ¶ 9. Alderman declares that the majority of his practice involves

5   securities class action defense, so he regularly reviews fee applications and related opinions in such

6   matters. *Id.* at ¶ 10. Alderman's own hourly rate in 2010 is $895 per hour. *Id.* at ¶ 11. Alderman

7   attests that, upon review of the rates sought by DRA and AFL, the rates sought are well within the

8   range of reasonableness for attorneys of comparable skill in non-contingency cases in the Bay Area.

9   *Id.* at ¶ 13. Regarding Paradis, Alderman declares that he personally is aware of Paradis' reputation

10   as an expert in disability rights cases. *Id.* at ¶ 14.

11          Finally, Plaintiffs offer the Declaration of Richard Pearl in support of their fee request. (Dkt.

12   #467.) Pearl has been practicing law since his 1969 graduation from Boalt Hall. *Id.* at ¶ 3. Pearl

13   specializes in issues related to attorney's fees litigation and has served as an expert, mediator, and

14   arbitrator in attorney's fees matters. (Pearl Decl. ¶¶ 2, 6, Dkt. #467.) Pearl attests that more that

15   ninety percent of his practice is devoted to issues involving court-awarded attorney's fees, and that

16   he has been counsel in over 140 attorney's fees applications in both state and federal court. *Id.* at ¶

17   5. Pearl states that he is frequently called upon to submit declarations regarding the reasonableness

18   of attorney's fees, and that these declarations have been favorably cited by courts. *Id.* at ¶ 7. Pearl

19   attests that the rates requested by DRA and AFL are in line with non-contigent market rates charged

20   by attorneys of similar experience working on similar matters in the Bay Area, and thus are

21   reasonable. *Id.* at ¶ 9. In his declaration, Pearl offers the rates awarded to counsel involved in this

22   case in other matters. For example, in *Santa Fe Pointe L.P. v. Greystone Servicing Corp.*,

23   C-07-5454 MMC, 2009 WL 3353449, at *1 (N.D. Cal. 2009), the court awarded an attorney with 20

24   years' experience his requested 2009 rate of $675 per hour. In *Fitzgerald v. City of Los Angeles*,

25   2009 WL 960825, at *11 (C.D. Cal. April 7, 2009), the court awarded an attorney with 35 years'

26   experience $740 per hour, an attorney with 20 years' experience $575 per hour, and an attorney with

27   7 years' experience $375 per hour. Law students and paralegals were awarded $200 and $175 per

28

**United States District Court**
For the Northern District of California

1   hour, respectively. *Id.* In addition to these district court cases, Pearl lists four Bay Area superior

2   court cases where similar and even higher rates were awarded. (Pearl Decl. ¶ 9, Dkt. #467.)

3         Additionally, Pearl discusses *National Federation of the Blind*, 2009 WL 2390261 (N.D. Cal.

4   2009) a recent case in which Paradis was involved. In that matter, the court found reasonable the

5   following 2009 rates: $745 per hour for an attorney with 47 years of experience, $625 per hour for

6   23 years of experience, $550 per hour for 21 years of experience, $450 per hour for seven years

7   experience, $400 per hour for 4 years experience, $325 per hour for 3 years experience, $285 per

8   hour for an attorney with one year of experience, $225 per hour for paralegals, $195 per hour for

9   summer associates, and finally, $155 per hour for law clerks. (Pearl Decl. ¶ 9(a)(7), Dkt. #467.)

10  Paradis attests that the fees awarded in *National Federation of the Blind* were DRA's requested 2008

11  rates, for both attorneys and non-attorney legal staff. (Paradis Decl. ¶ 23, Dkt. #462.) In another

12  case involving DRA, *Kidd v. Cal. Dept. of Educ.*, No. JCCP 004468 (Cal. Superior Court March 4,

13  2009), Paradis attests that the same rates were awarded by the Alameda County Superior Court.

14  (Paradis Decl. ¶ 23, Dkt. #462.)

15        To determine the reasonableness of a rate, the court must look to the market rate for highly

16  qualified civil rights attorneys. *Lopez*, 385 F. Supp. 2d at 989. Plaintiffs have submitted numerous

17  declarations evidencing the qualifications of their attorneys and support for their requested rates. Of

18  course, Defendants have submitted myriad declarations and objections in response. Gregory Hurley,

19  lead counsel for Defendants, declares that his hourly rate is $530, the highest hourly rate of any

20  timekeeper billing Defendants in the matter. (Hurley Decl. ¶ 20, Dkt. #493.) However, attorneys

21  with comparable civil rights experience have been awarded more in this District, and Plaintiffs have

22  submitted ample evidence that their rates are reasonable. For example, in *Prison News v.*

23  *Schwarzenegger*, 561 F. Supp. 2d 1095, 1105-06, (N.D. Cal. 2008), the court found that because a

24  high level of skill was involved and a significant amount of work was required to reach a settlement,

25  Rosen (the selfsame who submitted a declaration here), an attorney admitted to practice in 1962, was

26  entitled to his $700 per hour requested rate. The court engaged in little analysis, stating that

27  Plaintiffs had submitted declarations evidencing higher hourly rates charged throughout the Bay

28  Area by many firms, and that much skill and work was required to reach a settlement. *Id.*

18

Accordingly, the undersigned finds that Plaintiffs have met their burden to show that DRA and AFL's requested rates are reasonable. Plaintiffs have submitted the declarations, listed above, of attorneys in the field who attest that the fees sought are reasonable. There is also case law involving these and other attorneys who were previously awarded similar fees for similar work.

Notably, no attorney submitted a declaration in support of Skadden Arps' fee request, other than Allen himself. However, as the undersigned has already found reasonable the fee requests submitted by DRA and AFL attorneys, it will award Skadden Arps attorneys similar amounts based on the rates sought by the other attorneys. The rates below are the rates the undersigned finds reasonable:

| DRA Attorneys | Years Experience | Reasonable Hourly Rate |
|---|---|---|
| Sid Wolinsky | 49 | $835 |
| Laurence Paradis | 25 | $730 |
| Melissa Kasnitz | 18 | $650 |
| Ron Elsberry | 23 | $640 |
| Jennifer Bezoza | 10 | $570 |
| Roger Heller | 9 | $560 |
| Kevin Knestrick | 7 | $535 |
| Alexius Markwalder | 7 | $535 |
| Kasey Corbit | 6 | $500 |
| Mary-Lee Kimber | 5 | $475 |
| Stephanie Biedermann | 3 | $350 |
| Becca von Behren | 2 | $290 |
| Stephanie Enyart | 1 | $265 |
| Senior Paralegal | n/a | $265 |
| Summer Associates | n/a | $245 |
| Paralegals | n/a | $225 |
| Law Clerks | n/a | $175 |
| Case Clerks | n/a | $165 |

United States District Court
For the Northern District of California

| AFL Attorneys | Years Experience | Reasonable Hourly Rate |
|---|---|---|
| Daniel Kohrman | 26 | $740 |
| Julie Nepveu | 19 | $660 |
| Summer Associates | n/a | $245 |
| **Skadden Arps Attorneys** | | |
| José R. Allen | 34 | $730[7] |
| Sheryl Wu Leung | 5 | $475 |
| Jason Breeding | 2 | $290 |
| Nathaniel Fisher | 2 | $290 |
| Legal Assistants | | $245[8] |
| Legal Technology Manager | | $245[9] |
| Legal Technology Analyst | | $65[10] |

The undersigned must now determine whether the number of hours expended is reasonable.

2.     Hours Reasonably Expended

Plaintiffs maintain that class counsel worked only as much as was necessary to fully protect the interests of a class facing a determined opposition with great resources in extremely complex litigation. (Pls.' Mot. 10:4-6, Dkt. #460.) Plaintiffs contend that much of the work performed was required because of tactics by Defendants which made the litigation more complex and time-consuming. *Id.* at 10:6-8. Plaintiffs maintain that Defendants' maneuver in 2007 of seeking to have the state claims dismissed, necessitating additional litigation and requiring Plaintiffs to re-file the state claims in state court, "greatly magnified the complexity and costs of the litigation by forcing the distinct but related federal and state claims to be pursued in two separate actions before two

---

[7]The undersigned recommends a rate equal to that of Paradis because, although Allen has practiced law for several years longer, Paradis has nearly a decade more experience practicing disability rights law.

[8]The undersigned recommends the rate equal to the reasonable rate for summer associates because Skadden Arps' Legal Assistants either have J.D.s or have spent nearly 20 years in their positions.

[9]The undersigned finds this rate reasonable as the Legal Technology Manager also holds a J.D.

[10]This is the requested rate, and considering the conservative amount requested, the undersigned finds it reasonable.

1    separate judges." *Id.* at 10:22-24.  In their papers, Plaintiffs discuss in detail the litigation tactics

2    advanced by Defendants which required such additional litigation.  Additionally, counsel for

3    Plaintiffs all attest that they exercised billing judgment, "no-charging" over 660 hours billed and

4    reducing the amount billed by an additional five percent across-the-board to err on the side of

5    conservation.  (*Id.* at 18:10-16; Paradis Decl. ¶ 30, Dkt. #462; Allen Decl. ¶¶ 27-28, Dkt. #463;

6    Kohrman Decl. ¶ 34, Dkt. #464.)

7         In response, Defendants argue that Plaintiffs have not met their burden to justify the hours

8    expended.  (Defs.' Opp'n 7:16-8:7, Dkt. #492.)  Defendants contend that Plaintiffs did not make a

9    good faith effort to exclude excessive, redundant, or otherwise unnecessary hours, and that the Court

10   should deny fees for such hours.  *Id.* at 8:8-9.  Defendants argue that the involvement of thirty-plus

11   Plaintiffs' attorneys, interns, paralegals, clerks, and other assistants from three law firms necessarily

12   caused duplicative work.  *Id.* at 9:1-3.  Defendants assert that Plaintiffs' fees for "excessive internal

13   conferencing" should be reduced by twenty percent to eliminate unnecessary hours which were a

14   result of too many attorneys working on the case.  *Id.* at 9:14-15.  Next, Defendants argue that

15   Plaintiffs' block-billed hours (Kohrman and almost all Skadden Arps timekeepers) should be

16   reduced by thirty-three percent because the Court can't determine whether each task was reasonable.

17   *Id.* at 10:10-12.  Defendants further argue that Kohrman's hours should be reduced by twenty

18   percent for billing by one quarter hour increments.  *Id.* at 10:12-15.  Defendants contend that the

19   Court should deny fees for entries where the subject matter is unidentified.  *Id.* at 10:18-19.

20   Defendants also assert that the Court should reduce any "media fees" by fifty percent.  *Id.* at 11:11.

21   Finally, Defendants argue that the Court should deny fees for clerical work, such as copying or

22   printing.  *Id.* at 11:11-13.

23        In their reply, Plaintiffs contend that Defendants have failed to justify any reduction in

24   Plaintiffs' hours because they have not shown that the time billed was obviously and convincingly

25   excessive.  (Pls.' Obj. to Hurley Decl. 3:8-19, Dkt. #501.)

26        In granting a fee award, the court must explain how it arrived at the amount.  *Moreno v. City*

27   *of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  The explanation does not need to be elaborate;

28   rather, it "must be concise but clear." *Id.* (citing *Hensley*, 461 U.S. at 437).  "Where the difference

United States District Court
For the Northern District of California

21

United States District Court
For the Northern District of California

between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice.  But where the disparity is larger, a more specific articulation of the court's reasoning is expected."  *Id.*  The party seeking the award of fees bears the burden of submitting time records detailing the hours spent; courts may reduce the award where the records do not justify the hours spent.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Courts also have discretion to reduce the amount of hours billed in the event that entries are block-billed, as a court will be unable to determine whether all time in the entry was reasonably expended.  *Mendez v. County of San Bernadino*, 540 F.3d 1109, 1128-29 (9th Cir. 2008).  Courts may also reduce fees for duplicative work, but only where that duplication is unnecessary.  *Id.* at 1129.

It is within the court's discretion to reduce a fee award based upon careful review.  However, "[d]espite the 'concise but clear' requirement, in cases where a voluminous fee application is filed[,] in exercising its billing judgment[,] the district court is not required to set forth an hour-by-hour analysis of the fee request."  *In re Smith*, 586 F.3d 1169, 1174 (citing *Gates*, 987 F.2d at 1399).  While the court has authority to make an across-the-board percentage cut in the number of hours claimed, rather than meticulously discuss each time entry, a reduction more substantial than ten percent will require clear explanation.  *Id.*  (citing *Moreno*, 534 F.3d at 1112).  Accordingly, the undersigned will first discuss Defendants' contentions regarding certain excessive, duplicative, or non-billable entries, and will then provide an appropriate across-the-board percentage reduction recommendation.

   a.   *Fees on Fees*

In their motion, Plaintiffs argue that they are entitled to recover fees for the work expended in negotiating and attempting to recover their fees and costs.  (Pls.' Mot. 4:2-4, Dkt. #460.)  The total sought for fees on fees litigation by Plaintiffs is $293,206.  (Kohrman Decl. ¶ 35, Dkt. #464; Kohrman Decl. ¶ 8, Dkt. #499; Paradis Decl. ¶ 12, Dkt. #496.)

Paradis attests that counsel for the parties attempted to negotiate a resolution of Plaintiffs' claim for fees and costs on several occasions, including a mediation session before a retired judge and a settlement conference before Magistrate Judge Laporte.  (Paradis Decl. ¶ 27, Dkt. #462; Paradis Decl. ¶ 10, Dkt. #496.)  Paradis further attests that after these efforts were unsuccessful,

1    Plaintiffs proposed submitting the issue to an arbitrator, which Defendants refused to do.  (Paradis

2    Decl. ¶ 10, Dkt. #496.)  Following this refusal, the parties again participated in an unsuccessful

3    mediation before the retired judge.  *Id.*  Paradis attests that the time spent was reasonable in light of

4    the multiple efforts to resolve the fee issue, as well as the time spent responding to Defendants'

5    opposition to the rates requested by each timekeeper and Defendants' 150-plus evidentiary

6    objections.[11]  *Id.*

7         In their opposition, Defendants request that the Court (1) deny any fees for fee work done

8    after Plaintiffs' initial motion was submitted; and (2) reduce the fees on fees demand in Plaintiffs'

9    motion by ten percent to prevent Plaintiffs from recovering fees for boilerplate fee work used in

10   other cases.  (Defs.' Opp'n 25:2-7, Dkt. #492.)

11        In the Ninth Circuit, it is well established that the time spent by counsel in establishing the

12   right to a fee award is compensable.  *Davis*, 976 F.2d at 1544.  Even where multiple attorneys work

13   on the fee matter, their time is compensable as long as the work is not duplicative.  *Id.*  However,

14   work on a fee motion that is boilerplate and has been used in other cases for similar purposes is not

15   compensable.  *Payne v. Bay Area Rapid Transit*, 2009 WL 1626588, at *5 (N.D. Cal. 2009).

16        Defendants maintain that because DRA and AFL are experienced in fee litigation, sections of

17   Plaintiffs' fee motion summarizing the law are similar to sections in other fee motions.  (Defs.'

18   Opp'n 25:7-10, Dkt. #492.)   However, Defendants do not offer other fee motions as comparison.

19        Defendants also argue that Plaintiffs should not receive fees for Pearl's fee work, citing two

20   earlier cases denying fees for his work.  *Id.* at n.54.  However, the undersigned finds that

21   Defendants' largely unsupported argument is insufficient to prove that the work done by Plaintiffs

22   on the fee litigation is duplicative.  *Mendez*, 540 F.3d at 1129.  In fact, Paradis attests that Plaintiffs

23   could not recycle an old fee brief for the current litigation, and that research was required to

24   establish current market rates, among other things.  (Paradis Decl. ¶ 10, Dkt. #496.)  Paradis further

25   attests that the time spent on the current fee motion was reduced to the extent that the mediation

26   brief and prior fee motions set for the facts and law pertinent to the matter at hand.  *Id.*  Accordingly,

27

28        [11]The undersigned finds Defendants' myriad evidentiary objections entirely unhelpful to the
     resolution of the fee issue and, accordingly, will not address them or Plaintiffs' responses to each.

the undersigned RECOMMENDS awarding Plaintiffs the full amount sought for fees on fees, and as such will include that time in the calculations below.

*b.      Fees Sought for Clerical Work*

"[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  Clerical work such as copying and scanning, mailing, and organizing and tabbing exhibits are not tasks that should be billed to clients; rather, they should be covered or subsumed by an attorney's hourly rate, just as are the costs of overhead.  *Leuzinger v. County of Lake*, C 06-0398 SBA, 2009 WL 839056, at *4 (N.D. Cal. March 30, 2009).  Other clerical tasks that cannot be billed, even at paralegal rates, include filing and updating the calendar.  *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1102 (N.D. Cal. 2008).  However, when those tasks are billed together with tasks which require document review or other legal analysis, only a partial reduction is proper.  *Leuzinger*, 2009 WL 839056, at *5.

Defendants offer a fifty-three page table of Plaintiffs' time entries which they argue are clerical and thus not properly billed.  (Hurley Decl. ¶ 3, Dkt. #516-1.)  Defendants categorize these time entries as: (1) creating binders; (2) calendaring; (3) call to court clerk; (4) check tentative ruling; (5) circulate (memos and transcripts); (6) locate contact info; (7) copy; (8) file; (9) find; (10) format; (11) mail; (12) organize; (13) print; (14) save/scan/route; (15) schedule; (16) met with self (i.e., Paradis enters time for meetings with himself); (17) serve (documents); (18) technical; and (19) train (on use of technical applications).  *Id.*  Defendants argue that work billed such as printing documents, routing unidentified documents to files, and saving and scanning documents do not require legal skill and thus must be deducted from the fee award.  (Supp. Clarification of Deductions 3:11-17, Dkt. #516.)

Upon review, the undersigned agrees with Defendants that many of the disputed tasks are entries for clerical work.  However, the undersigned finds that tasks such as filing documents on ECF, revising and preparing documents referred to in the time records as "filings," and organizing certain files in anticipation of preparing a motion are not clerical tasks.  Additionally, many entries such as those billed for finalizing documents and reviewing emails regarding filings, editing and

United States District Court
For the Northern District of California

24

conferencing regarding exhibits, reviewing declarations, internal conferencing regarding expert reports, communicating with class members, teleconferencing with opposing counsel, scheduling witnesses, scheduling depositions (rather than simply entering them on the calendar), service of documents and notices by clerks, and technical activities regarding trial software are neither clerical activities nor do they appear to have been properly listed as such by Defendants.

Quite unhelpfully, Defendants do not provide a dollar amount for the clerical activities which they request be reduced from the fee award. Nor do they bother to list sequentially the timekeepers' clerical activities or the number of hours they claim each timekeeper unnecessarily spent on clerical tasks. Because of these omissions, the undersigned cannot — without wasting an inordinate amount of time — determine an appropriate award minus certain non-billable clerical hours. As such, the undersigned estimates, by reading through the fifty-plus pages of allegedly clerical entries, that Defendants seek to eliminate approximately 765 hours of time they deem clerical tasks. (Hurley Decl. ¶ 3, Dkt. #516-1.) However, as stated above, a great deal of those tasks appear to have been appropriately billed. Accordingly, the undersigned recommends that the Court meet Defendants at the half-way point. The timekeepers' entries most frequently billed as clerical are law clerks and paralegals, and the undersigned has already determined that a reasonable rate for those timekeepers are $175 and $225, respectively, the average of which is $200 per hour. Accordingly, the undersigned recommends a reduction of 382.5 hours for clerical tasks, at the rate of $200 per hour. Thus, the undersigned RECOMMENDS that the fee award be reduced by $76,500 for clerical work improperly billed by Plaintiffs.

> c.   *Fees Sought for Media Work*

"Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same." *Prison Legal News*, 561 F.Supp 2d at 1101 (citing *Davis*, 976 F.2d at 1545). However, "the district court should disallow any hours claimed by . . . counsel for public relations work which did not contribute, directly and substantially, to the attainment of . . . litigation goals." *National Federation of the Blind*, 2009 WL 2390261, at *4 (citing *Davis*, 976 F.2d at 1545).

United States District Court
For the Northern District of California

According to Defendants, Plaintiffs billed Caltrans $29,504.50 for media fees. (Hurley Decl., Ex. G, Dkt. #516-1.) As discussed above, Defendants ask the Court to reduce these fees by fifty percent. (Hurley Decl. ¶ 51, Dkt. #493.)

The *National Federation of the Blind* court noted that while media work is necessary to publicize the efforts of the plaintiffs and identify additional class members, media work is also a tool to promote the reputations of class counsel. *National Federation of the Blind*, 2009 WL 2390261, at \*4. On that basis, the court granted half of the hours sought for media fees. *Id.* Upon review of the hours sought here, the undersigned finds that deduction reasonable as well. Accordingly, the undersigned RECOMMENDS that Plaintiffs's fee award reflect a reduced rate of $14,752.25 for Plaintiffs' work related to media efforts.

### d.     Defendants' Remaining Challenges

The remaining 350 pages of Defendants' challenges to Plaintiffs' time entries concern entries Defendants contend are duplicative, unnecessary, vague, and excessive. (Supp. Clarification of Deductions 1:26-13:7, Dkt. #516.) For example, regarding allegedly vague entries, Defendants argue that entries describing "status" telephone calls are so vague that it is impossible to determine whether the time expenditures were reasonable. *Id.* at 4:21-25. Defendants also contend that these entries are duplicative as there are so many that say exactly the same thing. *Id.* at 5:1-15. Another of Defendants' issues with Plaintiffs' allegedly duplicative entries is that the same exact entry with the same amount of time will be listed on the time sheet in both the state and federal action; Defendants maintain that this may evidence an over-estimation of time. *Id.* at 4:24-5:25. Defendants also seek a twenty percent overall reduction for entries billed as conferencing, arguing that the entries are vague and evidence excessive internal conferencing. *Id.* at 6:1-9. Finally, Defendants contend that the time billed on preparation of motions in limine, the state class certification motion, form interrogatories, and other trial preparation, including Plaintiffs' fees on fees work all require a significant deduction. *Id.* at 6:10-16:12. Defendants have gone so far as to create a table which suggests the exact award they believe Plaintiffs are entitled to after all of the suggested reductions, and that number is $5,119,187.95. *Id.* at 16:8.

The undersigned has reviewed the hundreds of pages of double-sided time entries submitted by Plaintiffs, as well as the over 500 pages of Defendants' objections to those entries.  Recalling that while "[t]he 'concise but clear' explanation requirement mandates that the district court explain the reasons for its fees award; it does not demand that the court make findings as to each of defendants' specific objections to plaintiffs' billing judgment[,]" the undersigned finds that a ten-percent across the board reduction in hours billed by Plaintiffs is appropriate.  *Gates*, 987 F.2d at 1400.  Although the undersigned has already recommended a sizable reduction for clerical tasks inappropriately billed as well as media fees, both billed predominately by support staff, further reductions to tasks performed by non-attorneys will also account for excessive or inappropriately billed tasks.

Most importantly, this ten percent reduction will account for any possibly duplicative entries, such as billing the exact same task to both the federal and state action or billing the same task as both merits work and fees work.  (Supp. Clarification of Deductions 2:27-3:12, Dkt. #516.)  Further, this reduction is meant to address Defendants' challenge to, for example, Plaintiffs' billing 385 hours on preparing and opposing motions in limine, when the Court limited motions in limine to 15 pages each and replies to 5 pages each, meaning that Plaintiffs billed a total of 385 hours on one fifteen-page motion, one five-page reply, and oppositions to Defendants' motions in limine.  *Id.* at 6:10-15.  The ten percent reduction will also account for Defendants' concern that Plaintiffs mistakenly billed hours listed as not charged.  *Id.* at 2:13-20.  In sum, the undersigned has reviewed the time records submitted and Defendants' oppositions to them.  While the undersigned finds that Plaintiffs have more than adequately documented their hours, this reduction is meant to compensate for the likely fact that there have been mistakes.

The undersigned will calculate the proposed ten percent reduction as follows.  The fees sought by DRA, including fees on fees and absent costs, after a five percent across-the-board reduction and a no-charge for 412.1 hours, amounts to $7,628,027.50.[12]  (Paradis Decl. ¶¶ 30, 31, Dkt. #462; Paradis Decl. ¶¶ 26, 27, Dkt. #496.)  Because the undersigned previously found appropriate the hourly rates requested by DRA, it is necessary only to deduct ten percent from this

---

[12]Paradis does not supply the Court with this ultimate number.  Rather, after careful calculations based on the amounts sought in Paradis' Declarations, the undersigned arrived at this amount.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

fee request — $762,802.75 — for a total award of $6,865,224.75.  The undersigned also found reasonable AFL's requested rates, above.  Kohrman attests that both he and Nepveu no-charged approximately 120 hours, and also applied a five percent across-the-board reduction, bringing the total amount of fees sought for merits and fees on fees work to $673,697.  (Kohrman Decl. ¶¶ 34, 35, Dkt. #464.)  Thus, AFL's fee award, after the ten percent additional deduction of $67,370, is $606,327.

For Skadden Arps timekeepers, the undersigned will calculate the proposed fee award as follows.  First, the undersigned will adjust the hours billed by each timekeeper according to the hours eliminated by Allen, as attested to in his declaration.  (Allen Decl. ¶ 27, Dkt. #463.)  Next, the undersigned will multiply the previously determined reasonable rate for each attorney by the number of hours sought, add them together, and will deduct five percent from that number as Allen attests he has done, in his declaration.  *Id.* at ¶ 28.  To arrive at the final award due Skadden Arps, the undersigned will deduct ten percent from that figure.

| Skadden Arps Attorneys | Reasonable Hourly Rate | Hours Billed | Rate Award Prior to Percentage Deductions |
|---|---|---|---|
| José R. Allen | $730 | 1838.2[13] | $1,341,886 |
| Sheryl Wu Leung | $475 | 132.4 | $62,980 |
| Jason Breeding | $290 | 324.3 | $94,047 |
| Nathaniel Fisher | $290 | 179.3 | $51,997 |
| Legal Assistants | $245 | 454.75[14] | $111,413.75 |
| Legal Technology Manager | $245 | 61.1 | $14,969.50 |
| Legal Technology Analyst | $65 | 3.6 | $234 |
| **Sub-Total** | | | $1,677,527.25 |
| **Minus 5%** | | | $1,593,650.89 |

[13]In his declaration, Allen attests that he billed 1879.9 hours but no-charged 41.7 of them.  (Allen Decl. ¶¶ 16, 27, Ex. A, Dkt. #463.)

[14]Zygarewicz and Owens were the legal assistants assigned to the case; together, they billed 541.5 hours.  (Supp. Allen Decl. ¶¶ 6, 7, Ex. A., Dkt. #527.)  Allen attests that he no-charged 34.5 hours for Zygarewicz and 52.25 for "other legal assistants."

28

| TOTAL (after 10% reduction) | | | $1,434,285.80 |
|---|---|---|---|

Accordingly, the total fee award, exclusive of costs, is as follows:

| DRA Lodestar | | $6,865,224.75 |
|---|---|---|
| AFL Lodestar | | $606,327 |
| Skadden Arps Lodestar | | $1,434,285.80 |
| | Reduction for Clerical Work | $76,500 |
| | Media Reduction | $14,752.25 |
| Sub-Total | | $8,814,585.30 |
| | | |
| DRA Reduced Fee Award[15] | | $6,834,807.33 |
| AFL Reduced Fee Award | | $575,909.59[16] |
| Skaaden Arps Reduced Fee Award | | $1,403,868.38 |

3.    Costs

Finally, to determine the ultimate fee award, the undersigned must determine the amount of costs due to Plaintiffs. The negotiated cap on costs is $391,477. (Settlement Agreement Ex. 6 ¶ 5, Dkt. #465.) DRA seeks to recover $290,422.86 for costs expended during litigation. (Paradis Decl. ¶ 27, Dkt. #496.) AFL seeks to recoup $7,608.32 in costs incurred throughout litigation of the matters. (Kohrman Decl. ¶ 10, Dkt. #499.) Finally, Allen attests that Skadden Arps is entitled to $76,397.84 in costs. (Allen Decl. ¶ 25, Dkt. #463.) Plaintiffs thus seek costs totaling $374,429.02.

In their opposition, Defendants only dispute one aspect of Plaintiffs' costs — those used to compensate Plaintiffs' expert, Peter Margen. (Defs.' Opp'n 25:11-13, Dkt. #492.) Defendants argue that Margen's fee of $71,686.73 is excessive given his "substandard performance." *Id.* at 25:13-14. Defendants cite to the transcript of the trial, which they argue depicts Margen attempting

---

[15]For purposes of clarity, the undersigned has divided the deductions (totaling $91,252.25) by three ($30,417.42), and will reduce each firm's fee award accordingly.

[16]Adjusted upward one cent so as to reflect the correct sub-total.

United States District Court
For the Northern District of California

1   to distance himself from his expert opinions and not directly answering questions posed by counsel

2   or the Court. *Id.* at 25:14-19.

3        In response, Paradis attests that Defendants take Margen's testimony and Judge Armstrong's

4   remarks from the bench out of context. (Paradis Decl. ¶ 9, Dkt. #496.)  Paradis points out that not

5   only did Judge Armstrong find that Margen was qualified to testify as an expert, but also that

6   Plaintiffs had no opportunity to perform a redirect examination of Margen because the trial recessed

7   during Defendants' cross-examination of him. *Id.*  However, Defendants offer no case law in

8   support of their argument and thus the undersigned declines to reduce Plaintiffs' costs in the amount

9   of Margen's fee.

10       Other deductions do appear appropriate.  The Ninth Circuit has previously held that costs for

11   word processing are not recoverable, as they are subsumed by overhead expenses. *Lopez*, 385 F.

12   Supp. 2d at 1001.  Although not challenged by Defendants, Skadden Arps seeks $17,530.50 in costs

13   for word processing, and the undersigned will thus deduct that amount from the total costs award.

14   (Allen Decl. ¶ 25, Ex. C, Dkt. #463.)  Similarly, DRA seeks $3,553.00 in word processing costs,

15   which the undersigned will deduct from the costs award.  (Paradis Decl., Ex. G, Dkt. #462.)

16   Accordingly, DRA is entitled to $286,869.86 in costs; Skadden Arps is entitled to $58,867.34 in

17   costs; and AFL is entitled to the full amount of the costs it seeks.  Thus, the undersigned

18   RECOMMENDS a total costs award of $353,345.52.

19       4.   <u>Award</u>

20       Based on the foregoing, the total award of fees and costs would be $9,167,930.82.  For DRA,

21   the total award would be $7,121,677.19.  For AFL, the total award would be $583,517.91.  For

22   Skadden Arps, the total award would be $1,462,735.72.  However, the parties agreed to a maximum

23   award of $8.75 million in the Settlement Agreement, which reads:

24       Plaintiffs agree not to seek more than $8.75 million for all Fees related to the
         Litigation, settlement, and future monitoring of these claims including any Fees for
25       time spent preparing a fee motion.  Plaintiffs' Attorneys expressly waive any claim
         for Fees in excess of $8.75 million.  The only additional Fees available for any work
26       by Plaintiffs' Attorneys related to these claims would be any Fees ordered by the
         Court in future enforcement proceedings as provided for in <u>Section 5.2.2.3</u> of the
27       Settlement Agreement.

28

30

(Settlement Agreement, Ex. 6 ¶ 4, Dkt. #465.)  The language is explicit; thus, the undersigned must RECOMMEND that the fee award, including fees on fees and costs, be the maximum amount contemplated in the Settlement Agreement, $8.75 million.  The undersigned will apportion the fee award for each firm according to the amount of the fee award, above.  Accordingly, DRA is entitled to 77.7% of the fee award, $6,798,750; AFL is entitled to 6.4% of the fee award, $560,000; and Skadden Arps is entitled to 15.9% of the fee award, $1,391,250.

Finally, the undersigned must address Plaintiffs' persistent contentions that they are entitled to a multiplier above the agreed-upon cap.  (Pls.' Mot. 22:20-22, Dkt. #460.)  Plaintiffs argue that a multiplier is necessary based on the exceptional results they attained in the face of vigorous opposition and in the absence of supporting precedent.  (Pls.' Mot. 19:20-24, Dkt. #460.)  Plaintiffs contend that they were required to turn down other cases in order to prosecute this litigation, that they faced great risk in working on these cases for three years, and argue on that basis that a multiplier is warranted.  *Id.* at 20:13-19.  Plaintiffs maintain that the public benefit resulting from their efforts in this litigation are so great as to merit a multiplier.  *Id.* at 21:4-12.

Defendants argue that Plaintiffs are not entitled to a multiplier based on the language of the settlement agreement.  (Defs.' Opp'n 12:12-17, Dkt. #492.)  Defendants maintain that fees must be expressly limited to fees incurred for actual work performed pursing claims pleaded in the litigation, and that fee enhancements do not reflect actual work performed.  *Id.* at 12:19-22.

In addition to the language quoted above, the Settlement Agreement also provides that "Defendants shall pay Plaintiffs' Attorneys reasonable attorneys fees and costs for work pursuing the claims pleaded in the Federal Action and the State Action ("Fees" and "Costs"), subject to the limits set forth herein."  (Settlement Agreement, Ex. 6 ¶ 2, Dkt. #465.)  As do Defendants, the undersigned interprets the language in the Settlement Agreement to preclude Plaintiffs from seeking an award in excess of $8.75 million.  Plaintiffs' attempt to seek a multiplier by arguing that a fee enhancement is necessary in order to compensate for "the lack of future fee payments for monitoring" expressly contradicts the plain language of the Settlement Agreement.  (Pls.' Opp'n 22:17-19, Dkt. #460.)  That language reads "Plaintiffs agree not to seek more than $8.75 million for all Fees related to the Litigation, settlement, and future monitoring of these claims . . . ."

United States District Court
For the Northern District of California

(Settlement Agreement, Ex. 6 ¶ 4, Dkt. #465.)  The Settlement Agreement language could not be more clear.  In their reply, Plaintiffs again state that a fee enhancement "is particularly appropriate because Defendants insisted that the fee award for the merits work on the case cover all future monitoring for the next thirty years of the implementation period."  (Pls.' Reply 15:13-15, Dkt. #495.)  However, in their conclusion, Plaintiffs ask the Court to award the full cap of $8.75 million, and do not mention a multiplier.  *Id.* at 15:17-20.  Regardless of whether this is a concession that they are entitled to that amount and not a dollar more, the undersigned finds that the Settlement Agreement precludes a fee enhancement and thus will not address Plaintiffs' arguments that they are entitled to a multiplier.

### IV.  CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that the Court GRANT Plaintiffs' motion for attorney's fees as laid out above and award Plaintiffs' counsel the full amount of the agreed-upon cap, $8.75 million, apportioned as follows:  DRA is entitled to $6,798,750; AFL is entitled $560,000; and Skadden Arps is entitled to $1,391,250.  Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation within 14 days of being served.

**IT IS SO RECOMMENDED.**

Dated: December 13, 2010

_____
MARIA-ELENA JAMES
Chief United States Magistrate Judge

32